RCH:AXB/LZ
F. #2022R01030

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **MAY 09 2023** ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

GEORGE ANTHONY DEVOLDER
SANTOS,
    also known as "George Santos,"

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

Cr. No. **C R 23 197**

(T. 18, U.S.C., §§ 641, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1001(a)(2),
1001(c)(1), 1343, 1957(a), 1957(b), 2
and 3351 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

**SEYBERT, J.**

**SHIELDS, M.J.**

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>Relevant Individuals and Entities</u>

    1.    The defendant GEORGE ANTHONY DEVOLDER SANTOS, also

known as "George Santos," was a resident of Queens and Suffolk Counties.   During the 2020

and 2022 election cycles, DEVOLDER SANTOS campaigned as a candidate for the United

States House of Representatives (the "House").   On or about November 8, 2022, DEVOLDER

SANTOS was elected the United States Representative for New York's Third Congressional

District, which covered parts of Queens and Nassau Counties in the Eastern District of New

York.   DEVOLDER SANTOS was sworn into office on or about January 7, 2023.

    2.    The Devolder Organization LLC was a Florida Limited Liability

Company ("LLC") formed on or about May 11, 2021, with its principal place of business in

Melbourne, Florida.   The defendant GEORGE ANTHONY DEVOLDER SANTOS was the sole beneficial owner of the Devolder Organization LLC.

        3.      Company #1, an entity the identity of which is known to the Grand Jury, was a Florida LLC formed on or about November 1, 2021, with its principal place of business in Merritt Island, Florida.   At the time of its organization, Company #1 had two authorized managers, one of which was the Devolder Organization LLC.

        4.      Person #1, an individual whose identity is known to the Grand Jury, was a political consultant operating in Queens County and surrounding areas, including areas within the Eastern District of New York.   In and about and between September 2022 and October 2022, at the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS, Person #1 acted on behalf of Company #1.

        5.      Investment Firm #1, an entity the identity of which is known to the Grand Jury, was a Nevada corporation with its principal place of business in Melbourne, Florida. Investment Firm #1 was purportedly engaged in retail sales of securities products.   In and about and between January 2020 and March 31, 2021, the defendant GEORGE ANTHONY DEVOLDER SANTOS was employed by Investment Firm #1 as a Regional Director.   In that capacity, DEVOLDER SANTOS received an annual salary of approximately $120,000, which was deposited into a personal bank account maintained by DEVOLDER SANTOS ("Devolder Santos Bank Account #1") in regular intervals beginning on or about February 3, 2020 and continuing through on or about April 15, 2021.

II.    Fraudulent Political Contribution Solicitation Scheme

        6.      In and about and between September and October 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS devised and executed a scheme to defraud

supporters of his candidacy for the House and to obtain money from them by fraudulently inducing supporters to contribute funds to Company #1 under the false pretense that the money would be used to support DEVOLDER SANTOS's candidacy and then actually spending thousands of dollars of the solicited funds on personal expenses, including luxury designer clothing and credit card payments.   DEVOLDER SANTOS communicated and directed Person #1 to communicate to those supporters false information about Company #1, including:   that Company #1 was a Section 501(c)(4) social welfare organization or an independent expenditure committee and that contributions made to Company #1 would be used on independent expenditures in support of DEVOLDER SANTOS's candidacy during the 2022 election cycle. In actuality, as explained below, Company #1 was neither a Section 501(c)(4) social welfare organization nor an independent expenditure committee, and upon receipt of contributions by those supporters to Company #1, DEVOLDER SANTOS converted most of those funds to his own personal benefit.

      A.    Applicable Campaign Finance Laws

      7.    The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, et seq. ("FECA"), limited financial influence in the election of candidates for federal office and provided for public disclosure of the financing of federal election campaigns.   FECA limited the amount and sources of money that could be contributed to a federal candidate or that candidate's authorized campaign committee and political committees established and maintained by a national political party.   In particular, while candidates for federal office were permitted to give or loan their own campaigns unlimited sums of money, for the 2022 election cycle, other individuals were limited to contributing $2,900 per

4

election per candidate committee.  FECA expressly provided that contributions made through an
intermediary were treated as contributions from the original source.

8.      An independent expenditure-only committee, or "Super PAC," was a type
of political committee that could accept unlimited contributions and make unlimited
expenditures independent of a candidate or campaign.  Super PACs were prohibited from
making contributions to candidates in the form of coordinated expenditures.  Super PACs were
required to register with the FEC within 10 days of receiving contributions or making
expenditures aggregating more than $1,000 during a calendar year.  The defendant GEORGE
ANTHONY DEVOLDER SANTOS knew that Company #1 was not, in fact, registered with the
FEC as a Super PAC.

9.      Section 501(c)(4) of the Internal Revenue Code related to tax-exempt
social welfare organizations.  The defendant GEORGE ANTHONY DEVOLDER SANTOS
knew that Company #1 was not, in fact, registered with the Internal Revenue Service as a Section
501(c)(4) social welfare organization.

B.      Defendant's Fraud Scheme

10.     As part of the scheme to defraud, the defendant GEORGE ANTHONY
DEVOLDER SANTOS directed Person #1 to solicit contributions to Company #1 from
prospective contributors via emails, text messages and telephone calls.  In furtherance of those
efforts, DEVOLDER SANTOS arranged for the creation of an email address associated with
Company #1 for Person #1, provided Person #1 with the names and contact information of
prospective contributors and conveyed false information to Person #1 about the nature of
Company #1 and the purpose of the contributions, knowing that Person #1 would then
communicate the false information to prospective contributors.

5

11.     At the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS, Person #1 falsely advised prospective contributors, inter alia, that Company #1 was a Section 501(c)(4) social welfare organization or an independent expenditure committee and therefore not subject to contribution limits, and that contributions to Company #1 would be spent on television advertisements and other independent expenditures benefitting DEVOLDER SANTOS's candidacy for the House.   At the direction of DEVOLDER SANTOS, Person #1 also provided prospective contributors with instructions for wiring funds to a bank account maintained by Company #1, as to which DEVOLDER SANTOS was an authorized signatory ("Company #1 Bank Account").

12.     It was further a part of the scheme to defraud that the defendant GEORGE ANTHONY DEVOLDER SANTOS sent to prospective contributors one or more text messages in which he requested that those prospective contributors speak with representatives of Company #1, indicated that he needed contributions to Company #1 and falsely represented that such contributions would be spent on television advertisements independently purchased by Company #1 in support of DEVOLDER SANTOS's candidacy for the House.

13.     After receiving emails and text messages from the defendant GEORGE ANTHONY DEVOLDER SANTOS and Person #1, and in reliance upon the materially false statements therein, one or more individuals made contributions to Company #1 in sums exceeding the limits pertaining to candidate committees.

14.     On or about September 12, 2022, DEVOLDER SANTOS falsely advised Person #1 via text message that Company #1 was "a small C4" that existed "just to help this race" and that there were "no limits" with respect to contributions.

15.     On or about October 4, 2022, Person #1, acting at the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS and on behalf of Company #1, sent an email to Contributor #1, an individual whose identity is known to the Grand Jury.   That email falsely stated, inter alia, that Company #1 was attempting to "raise another $700,000 dollars to reach our goal of $1.5 million to invest in [DEVOLDER SANTOS's] race" to compete with the money "independently" raised for DEVOLDER SANTOS's opponent.   Thereafter, on or about October 20, 2022, Person #1, again acting at the direction of DEVOLDER SANTOS and on behalf of Company #1, sent to Contributor #1 another email, which falsely stated that a contribution from Contributor #1 would be spent, at least in part, "to get our advertising up on TV."   On or about October 25, 2022, Person #1, again acting at the direction of DEVOLDER SANTOS and on behalf of Company #1, sent to Contributor #1 a text message, which again falsely stated that a contribution from Contributor #1 would be spent, at least in part, "to purchase ads supporting George Santos."   On or about October 26, 2022, in reliance upon these emails and text message, Contributor #1 caused the sum of $25,000 to be wired to Company #1.

16.     In addition, on or about October 12, 2022, Person #1, acting at the direction of the defendant GEORGE ANTHONY DEVOLDER SANTOS and on behalf of Company #1, sent an email to Contributor #2, an individual whose identity is known to the Grand Jury.   That email falsely stated, inter alia, that Company #1 was formed "exclusively" to aid in electing DEVOLDER SANTOS and that "[t]here are no limits for contributors as we are a 501c4 Independent Expenditure committee under federal campaign finance law and do not coordinate directly with the Santos campaign."   The email to Contributor #2 further stated that all funds raised by Company #1 would be spent "directly on supporting George and his election." Further, the email to Contributor #2 contained an attachment, which DEVOLDER SANTOS had

previously approved.   That attachment described Company #1 as having been "created for this singular purpose, to support that candidate, George Santos" and represented that Company #1 was "fully committed to dedicating all its resources to making sure that George Santos is the next member of Congress representing NY-03."   On or about October 21, 2022, DEVOLDER SANTOS sent to Contributor #2 one or more text messages in which DEVOLDER SANTOS reiterated the need for contributions to Company #1, which he falsely stated would be spent "on TV" advertisements.   That same day, in reliance upon the email and accompanying text messages, Contributor #2 caused the sum of $25,000 to be wired to Company #1.

17.     Shortly after the contributions from Contributor #1 and Contributor #2 were received by Company #1 in the Company #1 Bank Account, they were transferred into bank accounts controlled by the defendant GEORGE ANTHONY DEVOLDER SANTOS, including the Devolder Santos Bank Account #1 and a second personal bank account maintained by DEVOLDER SANTOS ("Devolder Santos Bank Account #2").   From there, the funds received from Contributor #1 and Contributor #2 were spent by DEVOLDER SANTOS for his personal benefit, including to make cash withdrawals, personal purchases of luxury designer clothing, credit card payments, a car payment, payments on personal debts, and one or more bank transfers to DEVOLDER SANTOS's personal associates.   Thus, contrary to representations made by DEVOLDER SANTOS and Person #1, who was acting at the direction of DEVOLDER SANTOS, these contributions to Company #1 were not spent on television advertisements or other independent expenditures in support of DEVOLDER SANTOS's candidacy for the House.

III.    Fraudulent Application for and Receipt of Unemployment Benefits

18.     On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic
Security ("CARES") Act was enacted.   In light of the ongoing health crisis related to the novel
coronavirus, COVID-19, the CARES Act allocated additional unemployment benefits for
eligible individuals.   Specifically, the CARES Act established additional unemployment
insurance programs, including the Pandemic Unemployment Assistance program and the Federal
Pandemic Unemployment Compensation program.   Both programs were federally funded and
were administered by states, including New York State.   Funds from both programs, as well as
from the Federal Emergency Management Agency's Lost Wages Assistance Program, comprised
the benefits fraudulently obtained by the defendant GEORGE ANTHONY DEVOLDER
SANTOS in connection with the scheme outlined below.

19.     On or about June 17, 2020, the defendant GEORGE ANTHONY
DEVOLDER SANTOS applied to receive unemployment insurance benefits through the New
York State Department of Labor ("NYS DOL").   In that application, DEVOLDER SANTOS
falsely claimed to have been unemployed since the week of March 22, 2020.   Beginning on or
about June 19, 2020, and continuing through on or about April 15, 2021, DEVOLDER SANTOS
certified his continuing eligibility for unemployment benefits on a weekly basis, in each case
falsely attesting, inter alia, that he was unemployed, available to take on new work, and eligible
for benefits.   In truth and in fact, however, beginning on or about February 3, 2020, and
continuing through on or about April 15, 2021, DEVOLDER SANTOS was a Regional Director
at Investment Firm #1.   During that period, with the exception of on or about and between July
5, 2020 and August 30, 2020, DEVOLDER SANTOS received regular deposits into his personal
bank accounts as part of his Regional Director salary of approximately $120,000 per year.

20.     For the period of on or about and between March 22, 2020 and April 15, 2021, based on a false application and false weekly certifications to the NYS DOL, the defendant GEORGE ANTHONY DEVOLDER SANTOS received approximately $24,744 in unemployment insurance benefits, which were deposited into Devolder Santos Bank Account #2. The benefits received by DEVOLDER SANTOS were fully funded by the United States and a department and agency thereof, to wit: the United States Department of the Treasury.

IV.     False Statements in House Disclosure Reports

21.     Pursuant to the Ethics in Government Act of 1978, as a candidate for the House in 2020 and 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS had a legal duty to file a Financial Disclosure Statement ("House Disclosures") at designated times prior to each of the general elections held on November 3, 2020 and November 8, 2022, respectively.   In each of those House Disclosures, DEVOLDER SANTOS was required to make a "full and complete statement" disclosing, inter alia: (a) his assets and income, transactions, liabilities, positions held and arrangements and agreements; (b) "the source, type, and amount or value of income . . . from any source (other than from current employment by the United States Government)"; and (c) "the source, date, and amount of honoraria from any source, received" for "the year of filing and the preceding calendar year."   As a candidate, DEVOLDER SANTOS was personally required to certify the House Disclosures were "true, complete, and correct to the best of my knowledge and belief."   The Instruction Guide for Financial Disclosure Statements published by the U.S. House of Representatives Committee on Ethics provided that there were civil and criminal penalties for knowingly and willfully falsifying a financial disclosure statement and cited to Title 18, United States Code, Section 1001.

22.    The defendant GEORGE ANTHONY DEVOLDER SANTOS was
required to make these House Disclosures via an online filing system maintained by the House
Committee on Ethics or pre-printed form, and to certify that the statements made therein were
true, complete and correct.   DEVOLDER SANTOS was required to file the House Disclosures
with the Clerk of the House, for transmission to the House Committee on Ethics.

23.    On or about May 11, 2020, in connection with the 2020 election for the
House, the defendant GEORGE ANTHONY DEVOLDER SANTOS filed two House
Disclosures (the "2020 House Disclosures"), in which he falsely certified that, during the
reporting period: (a) his only earned income consisted of salary, commission and bonuses
totaling $55,000 from Company #2, an entity the identity of which is known to the Grand Jury;
and (b) the only compensation exceeding $5,000 he received from a single source in which he
had an ownership interest was an unspecified commission bonus from Company #2.

24.    Contrary to these attestations, however, as the defendant GEORGE
ANTHONY DEVOLDER SANTOS then and there well knew and believed, from approximately
February 1, 2020 through the date upon which he filed the 2020 House Disclosures,
DEVOLDER SANTOS received approximately $25,403 in income from Investment Firm #1,
which he failed to truthfully report as required.   Further, DEVOLDER SANTOS knew that he
had received only $27,555 in compensation from Company #2 in 2019.

25.    Thereafter, on or about September 6, 2022, in connection with the 2022
election for the House, the defendant GEORGE ANTHONY DEVOLDER SANTOS filed a
House Disclosure (the "2022 House Disclosure"), in which he falsely certified that, during the
reporting period: (a) his earned income consisted of $750,000 in salary from the Devolder
Organization LLC; (b) his unearned income included dividends from the Devolder Organization

LLC valued at between $1,000,001 and $5,000,000; (c) he had no compensation exceeding $5,000 from a single source in which he had an ownership interest; (d) he owned a checking account with deposits totaling between $100,001 and $250,000; and (e) he owned a savings account with deposits totaling between $1,000,001 and $5,000,000.

26.     Contrary to these attestations, as the defendant GEORGE ANTHONY DEVOLDER SANTOS then and there well knew and believed, during the applicable reporting period, he had not received from the Devolder Organization LLC the reported amounts of salary or dividends and, during the reporting period, he did not maintain checking or savings accounts with deposits in the reported amounts.   In addition, from approximately January 2021 through September 2021, DEVOLDER SANTOS received approximately $28,107 in income from Investment Firm #1 and approximately $20,304 in unemployment insurance benefits from the NYS DOL, both of which he failed to truthfully report as required.

<u>COUNTS ONE THROUGH FIVE</u>
(Wire Fraud – Fraudulent Political Contribution Solicitation Scheme)

27.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

28.     In or about and between September 2022 and October 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money by means of one or more materially false and fraudulent pretenses, representations and promises.

29.     On or about the dates set forth below, for the purpose of executing such scheme and artifice, and attempting to do so, the defendant GEORGE ANTHONY DEVOLDER

SANTOS, also known as "George Santos," did transmit and cause to be transmitted, by means of

wire communication in interstate and foreign commerce, one or more writings, signs, signals,

pictures and sounds, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| ONE | October 4, 2022 | Email on behalf of Company #1 to Contributor #1 falsely stating that funds received from Contributor #1 would be used in support of DEVOLDER SANTOS's candidacy for the House. |
| TWO | October 12, 2022 | Email on behalf of Company #1 to Contributor #2 falsely stating that funds received from Contributor #2 would be used to independently support DEVOLDER SANTOS's candidacy for the House and that Company #1 was a Section 501(c)(4) social welfare organization that could accept limitless contributions. |
| THREE | October 20, 2022 | Email on behalf of Company #1 to Contributor #1 falsely stating that funds received from Contributor #1 would be used, in part, to purchase television advertisements supporting DEVOLDER SANTOS's candidacy for the House. |
| FOUR | October 21, 2022 | Text message from DEVOLDER SANTOS to Contributor #2 falsely stating that funds received from Contributor #2 would be used, in part, to purchase television advertisements supporting DEVOLDER SANTOS's candidacy for the House. |
| FIVE | October 25, 2022 | Text message on behalf of Company #1 to Contributor #1 falsely stating that funds received from Contributor #1 would be used, in part, to purchase television advertisements supporting DEVOLDER SANTOS's candidacy for the House. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNTS SIX THROUGH EIGHT
(Unlawful Monetary Transactions Over $10,000)

30.    The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

31.    On or about and between October 21, 2022 and October 26, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," together with others, did knowingly and intentionally engage in one or more monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, as set forth in the chart below, and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a):

| Count | Approximate Date | Description |
|---|---|---|
| SIX | October 21, 2022 | On or about October 21, 2022, DEVOLDER SANTOS electronically transferred approximately $25,000 fraudulently obtained from Contributor #2 from Company #1 Bank Account to Devolder Santos Bank Account #1. |
| SEVEN | October 26, 2022 | On or about October 26, 2022, DEVOLDER SANTOS electronically transferred approximately $25,000 fraudulently obtained from Contributor #1 from Company #1 Bank Account to Devolder Santos Bank Account #2. |
| EIGHT | October 26, 2022 | On or about October 26, 2022, DEVOLDER SANTOS electronically transferred approximately $24,000 fraudulently obtained from Contributor #1 from Devolder Santos Bank Account #2 to Devolder Santos Bank Account #1. |

(Title 18, United States Code, Sections 1957(a), 1957(b), 2 and 3551 et seq.)

### COUNT NINE
(Theft of Public Money)

32.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

33.     In or about and between June 2020 and April 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did knowingly, willfully and without lawful authority embezzle, steal, purloin and convert to his own use money and things of value of the United States and a department and agency thereof, to wit: money of the United States Department of the Treasury, the aggregate value of which exceeded $1,000.

(Title 18, United States Code, Sections 641 and 3551 et seq.)

### COUNTS TEN AND ELEVEN
(Wire Fraud – Fraudulent Application for and Receipt of Unemployment Benefits)

34.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

35.     On or about and between June 19, 2020 and April 15, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did knowingly and intentionally devise a scheme and artifice to defraud the NYS DOL, and to obtain money from the NYS DOL by means of one or more materially false and fraudulent pretenses, representations and promises.

36.     On or about the dates set forth below, for the purpose of executing the scheme, and attempting to do so, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," did transmit and cause to be transmitted, by means of wire

communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

| Count | Date | Description |
|---|---|---|
| TEN | January 19, 2021 | On or about January 19, 2021, DEVOLDER SANTOS received $564.00 through interstate wires from the NYS DOL in New York to Devolder Santos Bank Account #2 in New York, passing through one or more computer servers located outside New York. |
| ELEVEN | January 26, 2021 | On or about January 26, 2021, DEVOLDER SANTOS received $564.00 through interstate wires from the NYS DOL in New York to Devolder Santos Bank Account #2 in New York, passing through one or more computer servers located outside New York. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT TWELVE

(False Statements – 2020 House Disclosure Reports)

37.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

38.     On or about May 11, 2020, within the Eastern District of New York and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as "George Santos," in a matter within the jurisdiction of the legislative branch of the Government of the United States, did knowingly and willfully make one or more materially false, fictious and fraudulent statements and representations, to wit: DEVOLDER SANTOS submitted to the Clerk of the House, for delivery to the House Committee on Ethics, an amended House Disclosure falsely stating that, during the applicable reporting period: (a) his only earned income consisted of a salary, commission and bonus totaling $55,000 from Company #2; and (b) the only compensation exceeding $5,000 he received from a single source in which he had an ownership interest was a commission bonus from Company #2, when in truth and in fact, as DEVOLDER

SANTOS then and there well knew and believed, he had earned $27,555 from Company #2 in

2019 and had received approximately $25,403 in income from Investment Firm #1 during the

same reporting period, which he failed to report as required.

(Title 18, United States Code, Sections 1001(a)(2), (c)(1) and 3551 et seq.)

### COUNT THIRTEEN
(False Statements – 2022 House Disclosure Report)

39.     The allegations contained in paragraphs one through 26 are realleged and

incorporated as if fully set forth in this paragraph.

40.     On or about September 6, 2022, within the Eastern District of New York

and elsewhere, the defendant GEORGE ANTHONY DEVOLDER SANTOS, also known as

"George Santos," in a matter within the legislative branch of the Government of the United

States, did knowingly and willfully make one or more materially false, fictitious and fraudulent

statements and representations, to wit: DEVOLDER SANTOS submitted to the Clerk of the

House, for delivery to the House Committee on Ethics, a House Disclosure falsely stating that, in

the year 2021 and in 2022 up to the filing date: (a) his earned income consisted of $750,000 in

salary from the Devolder Organization LLC; (b) his unearned income included dividends from

the Devolder Organization LLC valued at between $1,000,001 and $5,000,000; and (c) he had no

compensation exceeding $5,000 from a single source in which he had an ownership interest.

Further, DEVOLDER SANTOS falsely stated that (d) he owned a checking account with

deposits totaling between $100,001 and $250,000; and (e) he owned a savings account with

deposits totaling between $1,000,001 and $5,000,000.   Contrary to these statements, in truth and

in fact, as DEVOLDER SANTOS then and there well knew and believed, he had not received

from the Devolder Organization LLC the reported amounts of salary or dividends; he did not

maintain checking or savings accounts with deposits in the reported amounts; and he received

approximately $28,107 in income from Investment Firm #1 and approximately $20,304 in

unemployment insurance benefits from the NYS DOL during the same reporting period, all of

which he failed to report as required.

(Title 18, United States Code, Sections 1001(a)(2), (c)(1) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH FIVE AND NINE THROUGH ELEVEN

41.    The United States hereby gives notice to the defendant that, upon his

conviction of any of the offenses charged in Counts One, Two, Three, Four, Five, Nine, Ten and

Eleven, the government will seek forfeiture in accordance with Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any

person convicted of such offenses to forfeit any property, real or personal, constituting, or

derived from, proceeds obtained directly or indirectly as a result of such offenses.

42.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

> (a)    cannot be located upon the exercise of due diligence;
>
> (b)    has been transferred or sold to, or deposited with, a third party;
>
> (c)    has been placed beyond the jurisdiction of the court;
>
> (d)    has been substantially diminished in value; or
>
> (e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS SIX THROUGH EIGHT

43.     The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Six through Eight, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

44.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

19

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*Corey R. Amundson*

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
U.S. DEPARTMENT OF JUSTICE

F.#: 2022R01030

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

GEORGE ANTHONY DEVOLDER SANTOS,
*also known as* "George Santos,"

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 641, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1001(a)(2),
1343, 1957(a), 1957(b), 2 and 3351 et seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c)

*A true bill.*

_____
Foreperson

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
Clerk

*Bail, $* _____

_____

*Ryan C. Harris / Laura Zuckerwise, Assistant U.S. Attorneys (718) 254-6489 / 6204*
*Anthony Bagnuola Assistant U.S. Attorney (631) 715-7849*
*Jolee Porter / Jacob R. Steiner, Trial Attorneys (202) 514-1412*