

Dana Green
Senior Counsel

T 212 556 5290
Dana.green@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

May 23, 2023

The Honorable Joanna Seybert
United States District Court
Eastern District of New York
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

  Re: <u>U.S. v. George Anthony Devolder Santos</u>, 2:23-cr-00197-JS-AYS

Dear Judge Seybert:

I write on behalf of The New York Times Company ("The Times") to respectfully seek an order releasing unredacted versions of judicial records identifying the bail suretors ("the surety records") in the above-referenced case. The Times also respectfully requests that the Court docket any sealed proceedings that occurred in this case and make public a transcript of those proceedings (the "sealed bond proceedings"). Under both the federal common law and the First Amendment, the surety records and sealed bond proceedings are judicial records that are properly open to the public.[1]

**I. Background**

The information sought here relates to the prosecution of United States Representative George Santos. On May 9, 2023, a grand jury indicted Rep. Santos on multiple federal crimes. Dkt. 1. Prosecutors allege that Rep. Santos engaged in three criminal schemes: the first, to divert political campaign donations to pay for personal expenses and luxuries; the second, to fraudulently claim unemployment benefits; and the third, to make false financial disclosures to Congress. *Id.* The prosecution follows months of

---

[1] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

reporting on allegations that Rep. Santos extensively fabricated his personal and professional history and engaged in potentially unlawful charitable, business, and fundraising schemes.

At Rep. Santos's initial appearance on May 10, 2023, Magistrate Judge Anne Y. Shields set his conditions of release. *See* Order Setting Conditions of Release and Appearance Bond, Dkt. 12 ("Release Order"). At that hearing, which Times reporters attended, the Government stated that Rep. Santos's release was based on "a $500,000 unsecured bond cosigned by three suretors." Transcript of May 10, 2023 Arraignment ("Tr."), 4:24-25; 8:17-9:24. The suretors' identities were not disclosed and apparently remain under seal.

It is our understanding that the Court also held at least one subsequent hearing with the suretors. *See, e.g.* Tr. 5:5-5:10. However, it appears these bond proceedings were not open to the public and no record of the hearing appears in the docket.

Both the federal common law and First Amendment endow the public with a presumptive right of access to judicial proceedings and records, including to bond proceedings. While that right is not absolute, parties seeking sealing face a particularly heavy burden where, as here, disclosure would not prejudice the investigation or prosecution, the information serves public oversight, and there is a substantial public interest in the prosecution. For the reasons set out below, The Times respectfully requests that the Court unseal the surety records, docket any sealed bond proceedings, and make public a transcript of any sealed bond proceedings.

## II.     The Surety Records Should be Public

The public's common law right of access to judicial records in this jurisdiction is well established. Any "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Under *Lugosch*, the strength of the presumption varies depending on the document's purpose, but judicial documents can be withheld only if countervailing interests outweigh the public's right of access. *Id.*

The legal principles governing the First Amendment right of access to judicial records are equally well settled and provide a second and independent basis for unsealing. *See id.* (common law and constitutional

right to judicial documents in civil case); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to judicial documents in a criminal case).

### A. There is a Strong Presumption of Access to Surety Records

The weight of the presumption of access to a specific document varies based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal marks omitted). Once the court has determined the weight of that presumption, it must then balance the value of public disclosure against "countervailing factors." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

The surety records play a significant role in this Court's exercise of its Article III power. The Second Circuit, among other federal appellate courts, has held that the public has a common law right of access to bail hearings. *See United States v. Graham*, 257 F.3d 143, 156 (2d Cir. 2001); *see also, e.g.*, *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (holding that common law right of access to criminal trials includes access to bail proceedings); *Associated Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) (holding that "pretrial documents, such as those dealing with the question whether [the defendant] should be incarcerated prior to trial ... are often important to a full understanding of the way in which the judicial process and the government as a whole are functioning") (citation omitted); *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) ("Pretrial release proceedings require decisions that attract significant public interest, and invite legitimate and healthy public scrutiny.").

The public interest in openness is particularly strong in this case. The surety records relate to three individuals who have committed large sums of money to ensure that Rep. Santos can remain at liberty, pending further proceedings. This presents an obvious opportunity for political influence, given Rep. Santos's elected position and his dependence on these suretors.[2]

---

[2] If the suretors are not family members, the surety also may be contrary to Congressional ethics rules. *See generally* House Ethics Manual (2008),

3

That risk is further heightened by the fact that the very crimes Rep. Santos has been charged with involve abusing the political process for personal gain.

The public also has an interest in ensuring that Rep. Santos duly appears in court and, thus, an interest in exercising democratic oversight of the effectiveness of the bond. For the bond to be effective, first, the suretors must be individuals with sufficient influence or connection to Rep. Santos that forfeiture of their security would deter him from flight. Second, the amount of the forfeiture must be sufficient that the impact on the suretor would similarly deter flight. And, at the same time, the suretors would need to be free from circumstances that would undermine bail's intended purpose. For example, a suretor who owed sums of money to Rep. Santos potentially would not be appropriate.

B. No Countervailing Factors Overcome the Presumption of Access to Surety Records

The burden rests on the proponent of secrecy to establish that countervailing factors should set aside the public's right of access. For example, in other circumstances, countervailing factors have included "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. Neither factor appears to have weight here.

*First*, there does not appear to be any risk of impairing law enforcement interests. If the suretors' identities had a bearing on the Government's investigation, the suretors would not be appropriate for that role.

*Second*, the legitimate privacy interests in the surety records appear negligible. The Second Circuit has held that where the privacy of third parties is at issue, courts should consider (1) whether the subject matter is traditionally considered private rather than public; (2) the nature and degree of injury resulting from disclosure; and (3) the reliability of the information contained in the record. *Amodeo*, 71 F.3d at 1051.

These factors are not a barrier to unsealing. The identity of a suretor is traditionally public. There is no obvious harm that would rise to the level to

---

https://ethics.house.gov/sites/ethics.house.gov/files/documents/2008_House_Ethics_Manual.pdf.

4

justify sealing: there is no allegation of wrongdoing by the suretors and there is nothing improper about posting bond for a defendant. And third, the reliability of the information—that certain individuals signed Rep. Santos's bond—is not in question.

The First Amendment also requires public access to the surety records. The constitutional right attaches to records that meet a two-part test, based on "experience" and "logic." *See Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8 (1986). With respect to the "experience" prong, multiple federal courts have held that the public has a First Amendment right to access bail proceedings. *See, e.g., Globe*, 729 F.2d at 52; *Associated Press*, 705 F.2d at 1145; *Chagra*, 702 F.2d at 363. Logically, this right extends to the documents filed in bail proceedings. *See, e.g.*, *Associated Press*, 705 F.2d at 1145 ("There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them."). And as set out above, as a matter of logic, access to individual bond surety information aids the public in monitoring the Court's use of its Article III powers.

Where the First Amendment applies, it can be "overcome only by an overriding interest based on finding that [sealing] is essential to preserve higher values and is narrowly tailored to serve the interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984); *see also Lugosch*, 435 F.3d at 124. That is a heavier burden than the one imposed by the common law. *Lugosch*, 435 F.3d at 126. For the same reasons set out above in respect to the common law right, the First Amendment right of access to the surety records is not overcome by any countervailing interest.

### III.  The Sealed Bond Proceedings Should be Public

It is The Times's understanding that sometime after the May 9 hearing, the Court held at least one hearing with the suretors. It appears those bond proceedings were closed to the public and the event is omitted from the docket.

It is well-settled that the public has a common law and First Amendment right to attend judicial proceedings and access judicial records. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980); *Lugosch*, 435 F. 3d 110; *Suarez*, 880 F.2d at 630 (First Amendment right to judicial documents in a criminal case). This includes access to bail proceedings. *See, e.g.*, *United States v. Abuhamra*, 389 F.3d 309, 323-24 (2d Cir. 2004).

Further, the Second Circuit repeatedly has emphasized the fundamental importance of open and accurate docket sheets to our system of government. *See, e.g.*, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93-96 (2d Cir. 2004) (setting out the many common law and constitutional infirmities that arise from secret and incomplete docketing).

While the presumptive right of access to bail hearings and docket sheets may be overcome in certain circumstances, at a minimum the public must be afforded an opportunity to attend and object to the proposed sealing. *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988) ("vindication" of the public right of access to criminal proceedings "requires that designated procedural steps be followed in order to give some form of public notice and an opportunity to be heard").

Moreover, prior to sealing criminal proceedings, the Court must make specific findings on the record to justify sealing. *Press-Enterprise*, 464 U.S. at 510 (an interest in closure must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."); *Waller v. Georgia*, 467 U.S. 39, 48 (1984) (trial court "must make findings adequate to support the closure.").

To defeat the presumptive right of access, a party must demonstrate and a Court must find that:

1. There exists a "substantial probability" that public access will cause harm to a compelling governmental interest;
2. There exists no reasonable alternative to adequately protect the threatened interest;
3. Any denial of access is narrowly tailored to serve that interest; and
4. A denial of access would prevent the harm sought to be avoided.

*Press-Enterprise*, 464 U.S. at 13-14.

Here, it appears the Court may not have made the requisite findings prior to closure of the bond proceedings with the suretors or the redaction of the event from the docket. It also does not appear that such complete closure can be justified. And while those bond proceedings cannot now be opened

to the public, The Times respectfully requests that the Court docket the event and make publicly available a transcript of those proceedings.

**IV. Conclusion**

For all of the foregoing reasons, The Times respectfully requests that the surety records and sealed proceedings be made public, or, alternatively, that the Government and Rep. Santos be required to demonstrate why the records should remain under seal. If they seek to do so, The Times respectfully requests an opportunity to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

Dana R. Green
Senior Counsel
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Phone: 212-556-5290