

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Jeremy A. Chase**
jeremychase@dwt.com

**Alexandra Settelmayer**
alexandrasettelmayer@dwt.com

212-489-8230 tel.
212-489-8340 fax

May 25, 2023

**VIA ECF**

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    **Unsealing Request in *U.S. v. George Anthony Devolder Santos*, 2:23-cr-00197-JS-AYS**

Dear Judge Seybert:

      This firm writes on behalf of various news organizations, including, American Broadcasting Companies, Inc., d/b/a ABC News, The Associated Press, The Atlantic Monthly Group LLC (publisher of *The Atlantic*), Bloomberg L.P, Cable News Network, Inc., Insider, Inc., National Public Radio, Inc., NBCUniversal News Group, Newsday LLC, and WP Company LLC (publisher of *The Washington Post*) (collectively, the "News Organizations") to respectfully seek an order releasing a final version of the Appearance Bond disclosing the identities of the bail sureties in the above-captioned matter.[1]  There is a compelling public interest in maintaining the greatest transparency possible in these proceedings, which involve criminal charges brought against a sitting member of the United States House of Representatives for fraud and theft of public money, among other alleged criminal conduct.  Moreover, the public and press maintain a right of access to these judicial records under both the common law and the First Amendment.

      **I.**    **Background**

      The public's interest in this matter cannot be overstated.  A United States Congressman stands accused of perpetuating financial fraud in connection with his election to the House of Representatives.  Representative Santos was indicted by a grand jury on May 9, 2023.  The government alleges that Rep. Santos engaged in three broad categories of criminal conduct.  Dkt. 1.  *First*, Rep. Santos purportedly engaged in a fraudulent political contribution solicitation scheme.  He allegedly defrauded political donors, using their campaign contributions for his own personal expenses.  *Second*, Rep. Santos is alleged to have fraudulently claimed unemployment

---

[1] The News Organizations understand that on May 23, 2023, The New York Times filed a separate application seeking both the identity of the sureties and the transcripts of any sealed bond proceedings.  Dkt. 13.  The News Organizations also join in The New York Times's request for access to transcripts of any such proceedings.

benefits.  *Third*, Rep. Santos purportedly made false financial disclosures to Congress in connection with two separate campaigns.[2]

On May 10, 2023, Rep. Santos was arraigned before Magistrate Judge Anne Y. Shields and the conditions of his release were set.  *See* Transcript of May 10, 2023 Arraignment ("Arraignment Tr."), at 4:16–23.  Rep. Santos was released on a $500,000 unsecured bond which was to be co-signed by three unidentified sureties.  *Id.* at 4:24–25.  Although we understand that all three of the sureties have since signed Rep. Santos' bond, the final Order Setting Conditions of Release and Appearance Bond disclosing the names of the sureties has not been made public.

The public has a right of access to the identities of the sureties grounded in both the First Amendment and the common law.  The United States Supreme Court has made clear that the First Amendment provides a "presumption of openness" to judicial proceedings and documents that "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise Co. v. Supreme Court of California*, 464 U.S. 501, 510 (1984).  The constitutional presumption in favor of access requires "the most compelling circumstances" to justify any restriction upon that right, *In re Application of Nat'l Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir. 1980), and requires "specific, on the record findings" that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest" under the First Amendment.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citations and internal marks omitted).  The Court has not made the requisite "specific, on the record findings" supporting the denial of access here.  *Press Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8–14 (1986). Accordingly, for this reason, and the reasons noted below, the requirements for barring public access to these judicial documents and proceedings have not been satisfied here.

The common law right to inspect and copy judicial records is likewise beyond dispute.  This common law presumption is intended to promote accountability in the judicial process and to encourage public confidence in the administration of justice.  *See*, *e.g.*, *Lugosch*, 435 F.3d at 119.  The common law presumption of access attaches to any "judicial document."  *Id*. (defining "judicial document" as any material presented to the court "relevant to the performance of the judicial function and useful in the judicial process") (citation and internal marks omitted).  The weight of the common law presumption turns on "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts."  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d

---

[2] Prior to his indictment, Rep. Santos was already the subject of public scrutiny.  Specifically, before taking office in January 2023, Rep. Santos acknowledged that he fabricated much of his personal and professional background in the lead up to being elected to Congress.  *See* Michael Kranish, Azi Paybarah, and Hannah Knowles, *Rep.-elect George Santos acknowledges 'résumé embellishment' but answers little on finances*, THE WASHINGTON POST (Dec. 26, 2022), https://www.washingtonpost.com/politics/2022/12/26/george-santos-resume-wealth/; *see also* Steven Dennis and Jarrell Dillard, *George Santos Made Up Much of His Resume, But GOP's McCarthy May Need His Vote*, Bloomberg (Dec. 27, 2022), https://www.bloomberg.com/news/articles/2022-12-27/republican-george-santos-falsehoods-are-key-early-test-for-gop-s-kevin-mccarthy#xj4y7vzkg; Steve Inskeep, and Brian Mann, *Rep.-elect George Santos of New York is being investigated for lying about his past*, NPR (Dec. 29, 2022), https://www.npr.org/2022/12/29/1145952336/rep-elect-george-santos-of-new-york-is-being-investigated-for-lying-about-his-pa.

Cir. 2016) (citation and internal marks omitted). Once the right of access attaches and the appropriate weight of the presumption determined, it may be overcome only where "competing considerations" such as "the privacy interests of those resisting disclosure" outweigh the presumption. *Id.* (quoting *Lugosch*, 435 F.3d at 119–20).

The Appearance Bond containing the identities of the sureties is a "judicial document" subject to the presumption of access under both the common law and the First Amendment. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (holding a report of a Court Officer not required to be filed with the Court was a judicial document); *cf. United States v. Bankman-Fried*, 2023 WL 1108471, at *4 (S.D.N.Y. Jan. 30, 2023) (adopting parties' position that appearance bond identifying bail sureties was a judicial document subject to common law right of access). The Appearance Bonds with the sureties identities are not only traditionally filed with the Court and made publicly available, *see infra*, but the records play a significant role in this Court's exercise of its Article III power, since any order setting conditions of release is not static and sureties can be rejected by the Court, the Court can modify conditions of bail, and terminate bail at any time. *See* Dkt. 12, at 2 (observing "this appearance bond may be terminated at any time by the Court"). As set forth below, Rep. Santos cannot overcome the presumption of openness.

### A. The Common Law Right of Access Mandates Unsealing the Identities of the Bail Sureties

*First*, there is a strong presumption of access to the surety records at issue here as the records play an important role in this Court's exercise of its Article III function and impact Rep. Santos' substantive rights. "[T]he bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached." *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984). Indeed, "[t]he detention of criminal defendants pending trial is a quintessential exercise of a court's Article III judicial power, and the public has a legitimate interest monitoring a court's use of that power." *United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001) (citing *In re Globe*, 729 F.2d at 52). For documents like the sureties' individual bonds that "are usually filed with the court and are generally available, the weight of the presumption is *stronger* than where filing with the court is unusual or is generally under seal." *United States v. Basciano*, 2010 WL 11679716, at *3 (E.D.N.Y. May 12, 2010) (emphasis added) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049–50 (2d Cir. 1995)); *see also Associated Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("[P]retrial documents, such as those dealing with the question whether [the defendant] should be incarcerated prior to trial . . . are often important to a full understanding of the way in which the judicial process and the government as a whole are functioning") (citation omitted).

Critically, the bail decision is not final, and nothing prevents the Court from rejecting Rep. Santos's sureties, amending the conditions of release, or revoking bail. *See* Dkt. 12, at 2; *see also*, *e.g.*, *United States v. Dzhamgarova*, 2021 WL 3113036, at *1 (S.D.N.Y. Jul. 21, 2021) (quoting 18 U.S.C. § 3142(c)(3) for the proposition that the court "may at any time amend [its] order to impose additional or different conditions of release."); *see also United States v. Nebbia*, 357 F.2d

303, 304 (2d Cir. 1966) ("If the court lacks confidence in the surety's purpose or ability to secure the appearance of a bailed defendant, it may refuse its approval on a bond even though the financial standing of bail is beyond question."). Ultimately, the identities of the bail sureties and the bonds themselves are inextricably linked. The effectiveness of bail—which ensures Rep. Santos's appearance before this Court and the ultimate administration of justice—entirely depends on the sureties themselves. To be an effective surety, the individuals must have a sufficient relationship to Rep. Santos to deter any flight-risk. Accordingly, both the bonds and the sureties' identities are subject to a strong presumption of access.

This is particularly so given the overwhelming public interest in the identities of the sureties. As noted above, Rep. Santos is charged with defrauding members of the public while campaigning for office. The alleged criminal conduct fundamentally challenges the integrity of our democratic institutions. And the decision to keep the identities of the sureties hidden from public view only exacerbates those challenges. The unidentified sureties voluntarily decided to stand behind Rep. Santos, using their own financial means and credibility to guarantee that this Defendant will appear before this Court. As to the specific criminal conduct of which Rep. Santos is charged, members of the House of Representatives have detailed financial disclosure obligations that are mandated by statute.[3] These laws exist for a reason: to enable the People to make informed choices about their leaders, to foster trust in our democratic institutions, and to give the People confidence that their elected representatives are working for them, and not for outside or moneyed interests. That the identities of these sureties have been shielded from public scrutiny, particularly in light of the specific charges against Rep. Santos, only breeds suspicion that the sureties could be lobbyists, donors, or even fellow-congressmen or public officials seeking to exert influence. It is also entirely possible that the sureties lack any agenda at all. But as Justice Brandeis so eloquently put it, "Sunlight is the best of disinfectants."[4]

*Second*, neither the parties in this matter, nor the sureties have offered any competing considerations to justify sealing this information. However, it stands to reason that these concerns would be limited to the privacy and safety interests of third-parties implicated by the documents at issue.[5] The Second Circuit has explained that when evaluating a third party's privacy rights in the face of a request to unseal, the Court should consider (1) "the degree to which the subject matter is traditionally considered private rather than public," (2) the "nature and degree of injury," and (3) the "reliability of the information" in the record. *Amodeo*, 71 F.3d at 1051. Any weighing of these considerations, reveals that they are simply insufficient to overcome the strong presumption of access here.

With respect to the first factor, as Judge Kaplan observed in ruling that the bail sureties for FTX founder Sam Bankman-Fried must be publicly disclosed, "the names of bail sureties . . .

---

[3] *See*, *e.g.*, U.S. House of Representatives Committee on Ethics, "Specific Disclosure Requirements," https://ethics.house.gov/financial-dislosure/specific-disclosure-requirements (last visited May 25, 2023).

[4] Louis D. Brandeis, "What Publicity Can Do," Harper's Weekly (Dec. 20, 1913), at 10.

[5] While the risk of impairing law enforcement interests is also considered a countervailing factor in some instances, there is simply no risk that the release of the sureties identities could impair any Government investigation, as the Government simply could have rejected those sureties. *See* Arraignment Tr. at 5:11-14 ("The Court: So none of the suretors are in the courtroom today but are they sufficient as far as the government is concerned? Mr. Harris: Yes, they are, your Honor.").

traditionally is public information." *Bankman-Fried*, 2023 WL 1108471, at *4.[6] Next, it is far from evident what the harm to the third parties would be, if any, by revealing their identities as bail sureties. Indeed, "[s]hielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny." *Basciano*, 2010 WL 11679716, at *4; *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011) (holding on a party's request to redact names of individuals whose conduct had been investigated in relation to alleged harassment and discrimination complaints, "[w]hile the conduct at issue may be potentially embarrassing to these employees (and JPMC) and may negatively impact their career prospects, any injury the employees may suffer by release of the information is insufficient to rebut the strong presumption of access to the information at issue here"). Moreover, the "sureties have entered voluntarily into a highly publicized criminal proceeding by signing the Individual Bonds" and "[a]ccordingly, they do not have the type of privacy interests in their names that the Court of Appeals found to warrant confidential treatment." *Bankman-Fried*, 2023 WL 1108471, at *4. Last, the "reliability of the information," i.e., the identities of bail sureties, is not in dispute.

The purported privacy interests of third parties has overcome the presumption of access to the identities of bail sureties in only the most extreme cases. For example, in *United States v. Maxwell*, 20-cr-330 (S.D.N.Y.), the court permitted the redaction of bail guarantors for Ghislaine Maxwell who was charged in connection with her involvement with Jeffrey Epstein in one of the most notorious child sex trafficking rings in history. The unique stigma of association with Epstein, Maxwell, and their ring of pedophilia, sexual abuse of minors, and sex trafficking no doubt animated the Court's decision to permit the names of those proposing to post her bail—which was ultimately denied—to be kept a secret. None of these concerns are present here. While Rep. Santos is accused of serious financial crimes, a public association with him does not carry nearly the same stigma as with the Jeffrey Epstein child sex trafficking scandal.[7]

Put simply, there are no competing considerations sufficient to overcome the strong common law presumption of access here. As such, the identities of Rep. Santos' bail sureties should be made available to the public.

  **B.  The First Amendment Right of Access Also Mandates Unsealing the Identities of the Bail Sureties**

The First Amendment right of access applies to the judicial documents at issue here for similar reasons.

Public access to the identities of the bond sureties play a significant positive role in the administration of justice. Courts have long held that "pretrial release decisions benefit from public

---

[6] "While the privacy interests of innocent third parties are entitled to significant weight, judicial documents entitled to a strong presumption of public access must remain public 'absent the most compelling reasons.'" *Basciano*, 2010 WL 11679716, at *3 (citing *Lugosch*, 435 F.3d at 123).

[7] Indeed, the *Maxwell* decision underscores that "[b]road and general findings by the trial court . . . are not sufficient to justify closure," *Lugosch*, 435 F.3d at 120. A court's detailed findings are necessary to explain to the public and press why their overwhelming presumption of access has been curtailed and the exact overwhelming interest that is being served.

Hon. Joanna Seybert
May 25, 2023
Page 6

scrutiny." *Seattle Times Co. v. U.S. Dist. Ct. for Western Dist. Of Washington*, 845 F.2d 1513, 1517 (9th Cir. 1988).; *see generally* Fenner & Koley, *Access to Judicial Proceedings: to Richmond Newspapers and Beyond*, 16 Harv.C.R.—C.L.L.Rev. 415, 436 n. 109 (1981) (quoting Zion, *High Court v. The Press*, N.Y. TIMES (Nov. 18, 1979), § 6 (Magazine), at 45) ("It has been noted that 'the whole uncovering [of the Watergate Scandal] might have been cut off at the pass by closing the original bail hearing to the press. That way, reporters Bob Woodward and Carl Bernstein could hardly have noticed that high-priced lawyers were representing third-rate burglars.'"). Ultimately, the Court's oversight of bail conditions is ongoing and does not conclude upon entry of the Order Setting Conditions of Release and Appearance Bond (Dkt. No. 12). Moreover, the greater context surrounding these proceedings is of particular importance. As discussed above, Rep. Santos has been criminally charged with fraud that directly relates to his role as an elected official in Congress, eroding public confidence in our government institutions and political leaders. Given Rep. Santos's role as a public servant, access to the identity of the bond sureties will bolster trust in the judicial process here.

Finally, for the same reason that no competing considerations can overcome the common law right of access, no "higher value" exists sufficient to overcome the First Amendment presumption of access here.

\* \* \*

In sum, the News Organizations respectfully request that the Court order that the names and identifying information of Defendant's bail sureties be unsealed as soon as possible.[8] If it would assist the Court in reaching its decision, counsel for the News Organizations respectfully requests to be heard at any hearing on this matter. We thank the Court for its consideration in that matter.

Respectfully Submitted,

Davis Wright Tremaine LLP

Jeremy A. Chase
Alexandra Settelmayer

cc: Attorneys of Record (via ECF)

---

[8] This case is reflective of the often repeated adage "justice delayed is justice denied." Ultimately, "the primary value of the information [sought] lies in its ability to inform the public of ongoing proceedings of national importance; and in these circumstances,' stale information is of little value." *Ctr. For Public Integrity v. U.S. Dep't of Defense*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019) (quoting *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).