FILED
CLERK

6/20/2023 4:03 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

                                  MEMORANDUM & ORDER

    -against-                    23-CR-00197 (JS)(AYS)


GEORGE ANTHONY DEVOLDER SANTOS,

                    Defendant.
-------------------------------X
APPEARANCES
For Government:      Jacob Steiner, Esq.
                      Jolee Porter, Esq.
                      Department of Justice - Criminal
                      1301 New York Avenue, 10th Floor
                      Washington, District of Columbia  20530

                      Ryan C. Harris, Esq.
                      Anthony Bagnuola, Esq.
                      Laura Amber Zuckerwise, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York  11201


For Defendant:      Joseph W. Murray, Esq.
                      Joseph W. Murray
                      185 Great Neck Road, Suite 461
                      Great Neck, New York  11021


SEYBERT, District Judge:

        Presently before the Court, pursuant to 18 U.S.C. § 3145(a)(2), is the letter motion of Defendant George Anthony Devolder Santos ("Defendant") objecting to the June 6, 2023 Order of Magistrate Judge Anne Y. Shields granting the motions of several

news organizations[1] seeking the unsealing of information regarding the identities of the Suretors of a bond setting the conditions for Defendant's release (hereafter, the "Objection"). (See Objection, ECF No. 23; see also Unsealing Order, ECF No. 22 (sealed).) The News Organizations oppose Defendant's Objection. (See Opposition, ECF No. 26.) The Government has not responded but has previously taken no position as to the public disclosure of the Suretors' identities. (See Response to Unsealing Motion, ECF No. 16.)

BACKGROUND

I.   Facts & Procedural History

The Court presumes the parties' familiarity with the background giving rise to the instant Objection.[2] Therefore, an extensive recitation of the same is not provided; rather, the Court addresses only the discrete matter before it.[3]

---

[1] The coalition of news organizations includes: American Broadcasting Companies, Inc., d/b/a ABC News; the Associated Press; The Atlantic Monthly Group LLC; Bloomberg L.P; Cable News Network, Inc.; Insider, Inc.; National Public Radio, Inc.; NBCUniversal News Group; The New York Times Company; Newsday LLC; and WP Company LLC (collectively, the "News Organizations").

[2] The Court further presumes the parties' familiarity with the terms of art defined in the Unsealing Order, which are incorporated herein.

[3] For a thorough recitation of the factual and procedural background of this case, the Court refers the parties to the Unsealing Order.

II.   <u>Judge Shields' Unsealing Order</u>

In her Unsealing Order, Magistrate Judge Shields stated, in relevant part:

> The Court considered the familial nature of the relationships among the Defendant and the Suretors and spoke with them to ensure that they understood the nature of the obligations they wished to assume, <u>and to determine whether they could carry out their responsibilities as suretors of Defendant's conduct</u>. As is common in cases where there is neither property nor cash offered to secure a bond, the Court considered whether the Suretors were truly willing to stand up and make themselves responsible for Defendant's compliance with the terms of his release. The Court also inquired about their ties to this District and employment. Having made such inquiry, <u>the Court was satisfied that the Suretors had discussed this matter with the Defendant</u>, and that they maintained sufficient personal contact with him to make themselves aware of his conduct.

(Unsealing Order at 4 (sealed) (emphasis added).)  Since the court "considered the identity of the Suretors and the nature of their relationships with Defendant when determining their suitability to serve," the Magistrate Judge found that "any document revealing the names of the Suretors" was judicial in nature and, as such, within the bounds of the common law presumption of access.[4]  (<u>See</u>

---

[4]  Magistrate Judge Shields recognized that the "public and press also have a qualified First Amendment right to access" but did "not consider any alternative grounds for disclosure" because she found "common law right of access applies."  (Unsealing Order at 5 n.2.)  Defendant does not object to this finding.  (<u>See</u> Objection at 2.)

id.)  Given the concerns raised by the News Organizations regarding speculation that the Suretors were lobbyists, donors, or others seeking to influence Defendant, as well as similar concerns expressed by the House Ethics Committee, Magistrate Judge Shields determined that the weight of the presumption of access in this case was substantial.  (See id. at 4-5.)  Further, the Magistrate Judge found that because "[t]here [wa]s no way to quell such speculation and foster confidence in the judicial process but to reveal the identities of the Suretors," the documents revealing the names of the Suretors were "judicial documents entitled to a weighty presumption of access."  (Id. at 5 (omitting citations).)  Magistrate Judge Shields next weighed the strong presumption of access against "the privacy rights of the Defendant's family members," and, despite acknowledging that neither Suretor was a public figure, concluded that the presumption of access outweighed any of the Suretors' privacy rights.  (See id.)

## DISCUSSION

I.  Legal Standard[5]

        "A district court reviews de novo a magistrate judge's order of pretrial release or detention."  United States v. Minnici, 128 F. App'x 827, 828 n.1 (2d Cir. Apr. 26, 2005) (citing United

_____

[5] Since the parties do not object to the legal standards articulated in the Unsealing Order that detail the common law right to inspect judicial records, and the presumption of access, such standards are incorporated herein by reference.

States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985); further citation omitted); see also United States v. Ritterhoff, No. 11-CR-1955, 2011 WL 13289664, at *2 (D.N.M. Aug. 8, 2011) ("The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." (quoting United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003)).

II. Analysis

    A. Defendant's Objection to the Unsealing Order is Overruled

In objecting to the Unsealing Order, "Defendant is largely in agreement with the legal standard and legal analysis applied by Judge Shields." (Objection at 2 (stating further that Defendant "incorporate[s] by reference . . . the legal standard contained within" the Unsealing Order).) Moreover, Defendant concedes "the judicial nature of the documents sought to be unsealed" and "that these records fall under the common law presumptive right of access to judicial records." (Id. at 3.) Thus, the basis of Defendant's Objection is simply his disagreement with Magistrate Judge Shields' weighing of the Suretors' privacy interests against the strong presumption of access that attaches to the subject documents. (See id. at 2.)

In disagreeing with the Unsealing Order, Defendant contends his response to the House Ethics Committee's inquiry about the Suretors should assuage any concerns about the Suretors'

identities.  (See id. at 3-4.)  In responding to the House Ethics'
inquiry, Defendant noted that the Suretors' actions fell within an
acceptable exception to the House Gifts Rule as implied by
Defendant's reliance upon the exception dealing with gifts from
relatives.  (See id. at 4 ("Defendant has essentially publicly
revealed that the suretors are family members and not lobbyists,
donors or others, seeking to exert influence over the
Defendant.").)  Consequently, Defendant argues the Magistrate
Judge erred when she placed weight on the fact that the News
Organizations and the Committee on Ethics were concerned that
Defendant's suretors could have been "lobbyists, donors or others
seeking to exert influence."  (See id. at 3-4.)

Next, in characterizing his case as a "heater case,"
Defendant highlights that he, his staff, and his attorney, have
been subjected to "angry, anti-gay, anti-Republican" attacks, and
that "[i]t is reasonable to conclude that if Defendant's suretors
are identified, that the attacks and harassment will commence
against them" also.  (Id. at 5.)  Defendant contends that "given
the political temperature in this Country and [the] acts of
political violence that occur, the privacy interests of the[]
suretors are far more concerning, especially considering their
ages and respective employment."  (Id.)  Defendant avers that these
considerations are compounded by the "media frenzy" that surrounds
this case, and which had previously caused a third, unnamed,

6

suretor to withdraw.  (Id. at 5-6.)  Defendant hypothesizes that "the media frenzy" and the assumed harassment that will manifest, should the identities of the Suretors be released to the public, further risks impairing the Suretors' ability to monitor "the Defendant's conduct, location, and compliance with the conditions of Defendant's release," thereby impairing law enforcement and judicial efficiency.  (Id. at 6.)

The News Organizations counter that "[t]he competing considerations that Defendant identifies are . . . insufficient to overcome the strong presumption of access" in this case. (Opposition at 2.)  They elaborate that Defendant's arguments, i.e., that his Suretors may suffer harassment if their identities are revealed, are speculative.  (Id.)  Furthermore, the News Organizations aver that since "family members serve as sureties for criminal defendants on a regular basis . . . public disclosure of their identities . . . should not . . . subject them to opprobrium."  (Id. at 2-3.)

Having reviewed Defendant's Objection and the News Organizations' Opposition filed thereto, the Court finds Defendant's objections to be unavailing.  As Defendant readily concedes and as the Court agrees, Magistrate Judge Shields accurately stated the applicable law and analysis.  Upon de novo review of the record and the Unsealing Order, the Court finds Magistrate Judge Shields' weighing of the Suretors' privacy

interests against the strong presumption of accessibility that attaches to the Suretor-related documents was proper, and her conclusion was sound.  To the extent Defendant raises privacy concerns for the Suretors, Defendant's House Ethics Committee response in which he "has essentially publicly revealed that the suretors are family members" undermines his argument.  Similarly, it is disingenuous for Defendant to maintain that the self-characterized media frenzy, or the purported vitriolic reactions which Defendant encountered surrounding his Indictment, risk inhibiting the Suretors' ability to fulfil their supervisory role. The Suretors did not come before the Court until May 15, 2023, five days <u>after</u> Defendant's highly publicized arraignment and plea; it is spurious to contend that the Suretors were unaware of the media reaction that had occurred earlier.  At that time, Defendant did nothing to diffuse the "media frenzy" when leaving the courthouse, instead choosing to address the numerous reporters awaiting his departure.  At the May 15 Bond Hearing, after her inquiries of the Suretors, Magistrate Judge Shields stated that she was satisfied the Suretors "had discussed this matter with the Defendant, and that they maintained sufficient personal contact with him to make themselves aware of his conduct."  (Unsealing Order at 4 (sealed).)  Indeed, notwithstanding the media coverage that had previously occurred, both Suretors affirmed that they remained comfortable with their supervisory role.  (<u>See</u> Tr. of

Bond Hr'g, ECF No. 24, at 2-3 (sealed); <u>see also</u> <u>id.</u> at 6-8.) Moreover, neither Suretor raised any concerns that the media interest in the Defendant's case was in anyway problematic to their serving as suretors. (See <u>id.</u>, <u>in toto</u>.)

Furthermore, the Court agrees with the News Organizations that it does not follow that simply because Defendant, his staff, and his attorney have been exposed to media frenzy and harassment, that Defendant's family-member Suretors will also be subject to similar attacks.[6] Such argument is mere speculation and conjecture. As the News Organizations aptly note, family members frequently serve as suretors for criminal defendants in this country every day. Consequently, it is more likely that disclosure of the Suretors' identities will render any potential "story" a "non-story," especially considering the News Organizations' acknowledgement of this fact. Indeed, it appears Defendant's continued attempts to shield the identity of his Suretors, notwithstanding the fact that he is aware their identities are not controversial, has simply created hysteria over what is, in actuality, a nonissue.

In sum, given the facts and circumstances of this case, disclosure of the family-member Suretors' identities is necessary to quell the speculations surrounding the granting of Defendant's

---

[6] Upon the record presented, these attacks have been verbal, and not physical, in nature.

release bond, thereby outweighing the speculative privacy concerns raised by Defendant.  Disclosure will further foster confidence in the judicial process, which functions under the weighty presumption of access to judicial documents such as the presently sought bond-related documents.

To the extent Defendant has raised other arguments in support of his Objection that the Court has not explicitly addressed herein, the Court has considered them and finds them to be without merit.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the Unsealing Order is affirmed.[7]  Therefore, this Order, the Unsealing Order, and all previously sealed documents, including the Bond, are to be unsealed to the extent that the names of Defendant's Suretors are to be disclosed.[8]

---

[7]  Defendant is reminded that if the Suretors no longer wish to serve in that role, he may move to modify the conditions of his release.  (See Unsealing Order at 6.)  However, that does not affect the Court's ruling herein.

[8] The Clerk of the Court is directed to redact other personal identifying information contained in the above-referenced sealed documents.

**IT IS FUTHER ORDERED** that the aforementioned documents shall be kept under seal until **Thursday, 22 June at 12:00 PM** during which time Defendant may move to modify the conditions of his release, should the Suretors seek to withdraw from serving as suretors.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June 20, 2023
      Central Islip, New York