FILED
CLERK

4:56 pm, Apr 24, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

                                           MEMORANDUM & ORDER
    -against-                              23-CR-00197 (JS)(AYS)

GEORGE ANTHONY DEVOLDER SANTOS,

              Defendant.
---------------------------------X
APPEARANCES
For Government:      Jacob Steiner, Esq.
                     Jolee Porter, Esq.
                     John Taddei, Esq.
                     Department of Justice - Criminal
                     1301 New York Avenue, 10th Floor
                     Washington, District of Columbia  20530

                     Ryan C. Harris, Esq.
                     Anthony Bagnuola, Esq.
                     Laura Amber Zuckerwise, Esq.
                     United States Attorney's Office,
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York  11201


For Defendant:       Joseph W. Murray, Esq.
                     Joseph W. Murray
                     185 Great Neck Road, Suite 461
                     Great Neck, New York  11021

                     Andrew Leopoldo Mancilla, Esq.
                     Robert Mario Fantone, Jr., Esq.
                     Mancilla & Fantone, LLP
                     260 Madison Avenue, 22nd Floor
                     New York, New York  10016
```

SEYBERT, District Judge:

Presently before the Court is the letter motion of Defendant George Anthony Devolder Santos ("Defendant" or "Santos") seeking: (1) an Order de-designating as confidential allegedly

exculpatory Brady material (the "De-Designation Request"); and (2) a 30-day Extension of the pre-trial motion schedule (the "Extension Request"). (See Letter Motion, ECF No. 65.) For the reasons that follow, Defendant's Letter Motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

The Court assumes the Parties' familiarity with the facts of this case and recites only those procedural facts necessary to resolve the instant motion.

PROCEDURAL HISTORY

I. The Parties Jointly Entered into a Protective Order to Govern the Use of Certain Categories of Documents Disclosed by the Government in this Case

On June 13, 2023, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, the Government, jointly with Defendant, submitted a stipulated protective order which "limit[ed] the disclosure of certain sensitive material" in Defendant's case. (Motion for Protective Order, ECF No. 25, at 1.) The Parties elaborated that "[d]ue to the nature of the conduct at issue . . . unrestricted disclosure of certain information could result in the dissemination of the personally identifiable information of third parties and witnesses or information related to ongoing investigations or uncharged

individuals." (Id.) The Parties explained that entry of the protective order would allow the Government to produce materials "expeditiously," and "without the need for extensive redacting, while addressing" the Government's concerns regarding disclosure. (Id.) In pertinent part, the Parties' Stipulation & Proposed Protective Order provided:

> All material and information disclosed or produced by the government to the defendant [hereafter the "Confidential Discovery Materials"] . . . and the Defendant's counsel . . . including, but not limited to, material and information disclosed or produced pursuant to Rule 16 of the Federal Rules of Criminal Procedure; 18 U.S.C. § 3500; Brady v. Maryland, 373 U.S. 83 (1963); or Giglio v. United States, 405 U.S. 150 (1972), shall be governed by this protective order (the "Protective Order").
>
> . . .
>
> Confidential Discovery Materials . . . may be used by the Defendant, Defense Counsel and Defense Staff . . . only for the purposes of defending against the charges in the above-captioned case[.]
>
> . . .
>
> Except as otherwise provided in this Protective Order, any and all Confidential Discovery Materials disclosed or produced to the Defendant and/or Defense Counsel by the government . . . shall not be further disclosed, disseminated, or discussed by the Defendant, Defense Counsel, or Defense Staff to, or with, any individuals, organizations, or other entities.
>
> None of the Confidential Discovery Materials nor any copies, notes, transcripts, documents,

> or other information and materials derived or prepared from the Confidential Discovery Materials shall be disseminated to, or discussed with, the media <u>in any form</u>.

(Stipulation & Proposed Protective Order, ECF No. 25-1, <u>attached to</u> Motion for Protective Order (emphasis added).) On June 22, 2023, this Court so ordered the Parties' joint, stipulated, protective order. (<u>See</u> ECF No. 29.)

### II. <u>The Court Adopted the Present Pre-Trial Motion Schedule at the Joint Request of the Parties</u>

On December 11, 2023, the Government proposed a pre-trial motion schedule which required Defendant to file his initial defense brief on, or before, January 19, 2024. (Letter Proposing Agenda, ECF No. 54, at 2.) During the December 12 Status Conference, the Court characterized the Government's proposed pre-trial motion schedule as "vigorous" given the likelihood of a September trial date. (<u>See</u> Dec. 12, 2023 Hr'g Tr., Ex. A, ECF No. 68-1, <u>attached to</u> Opp'n, 3:11-15.) Similarly, Defense Counsel argued it was premature to set a date for pre-trial motions and requested "30 days" for the parties to come back to the Court with a schedule. (<u>Id.</u> at 3:18-5:13, 12:22-13:8.) The Court agreed to Defendant's request. (<u>Id.</u> at 12:22-13:5.)

Subsequently, on January 22, 2024, the Parties filed a letter in which they "jointly request[ed] that the Court set a pre-trial schedule" which was as follows:

(1) Initial Defense Brief Due - April 26, 2024;

4

(2) Government Response Due - May 24, 2024;

(3) Defense Reply Due - June 7, 2024.

(Letter Proposing Agenda, ECF No. 58, at 1.) On January 23, 2024, the Court adopted the pre-trial motion schedule proposed by the Parties. (See Min. Entry, ECF No. 59.)

ANALYSIS

I. Legal Standard

Judicial documents, i.e., "item[s] filed [with the court that are] relevant to the performance of the judicial function and useful in the judicial process" are presumptively available to the public. S.E.C. v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) (alterations in original)). However, "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than . . . any other document which is presented to the court to invoke its powers or affect its decisions." United States v. Longueuil, 567 F. App'x 13, 15 (2d Cir. 2014) (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) (alteration and emphasis in original)); see also United States v. Smith, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("While protective orders related to judicial documents and criminal proceedings are subject

to constitutional and common law scrutiny, protective orders related to discovery are not. This is because experience and logic show that there is no right of access to discovery materials. With respect to experience, pre-trial discovery, 'unlike the trial itself, is usually conducted in private[.]'" (quoting <u>Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.</u>, 178 F.3d 943, 945 (7th Cir. 1999))).

II. <u>Discussion</u>

A. <u>Defendant's De-Designation Request is Denied</u>

In sum, Defendant argues the information here "should be de-designated as confidential because it is highly exculpatory, directly relevant to [Defendant's] defenses, and is necessary to safeguard his First Amendment right to offer brief insight into his defense without jeopardizing the fair administration of justice." (Support Memo, ECF No. 65, at 3.) Defendant contends "de-designation of these materials is entirely consistent with Local Rule 23.1(e)(7)[], as it would offer Santos the opportunity to briefly comment, using the government's own words and witnesses, on his defense." (<u>Id.</u>) Defendant adds:

> [e]ach of these disclosures in and of themselves could fairly be characterized as "a brief description of the nature of the defense" under Local Rule 23.1(e)(7) and thus "presumptively" would "not involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

6

(Id. 3-4 (quoting E.D.N.Y. Local Crim. Rule 23.1(e)(7)).)

The Government counters since the disclosures in this case "were provided by the government during the discovery process and in reasonable reliance upon the Protective Order" there is "no presumptive right of public access to that information under either common law or the First Amendment." (Opp'n, ECF No. 68 at 6.) The Government highlights "Santos has been uninhibited in exercising his First Amendment rights, including in making statements to the press about this matter, and has repeatedly outlined the nature of his defense, including during an impromptu press conference he convened outside the courthouse on the day he was arrested."[1] (Id. at 8.) Regarding the Protective Order, the Government emphasizes Defendant "has not argued that [it] was improvidently granted" but, instead, characterizes Defendant's Letter Motion as "a transparent effort to litigate this matter in the press rather than in the courtroom." (Id. at 6.) The Government argues Defendant's efforts in this regard are also violative of Local Criminal Rule 23.1(d). (Id. at 7-8.) Furthermore, the Government avers dissemination of the witness

---

[1] The Government provides numerous other instances of Santos opining as to the charges alleged in the Superseding Indictment and his defenses on each of those charges. (See, e.g., Opp'n at 8-9.) The Court does not repeat them here, but simply notes its agreement with the Government that Defendant has not been coy in exercising his First Amendment rights.

statements that are the subject of Defendant's Motion "would jeopardize important law enforcement interests and the privacy interests of third parties." (Id. at 10.) The Government elaborates:

> Santos's proposed course of conduct threatens to expose private individuals to undue public scrutiny and chill cooperation with law enforcement investigations. Redacting the names of the witnesses is not a viable alternative, since the nature and context of the statements would likely make clear the identities of the witnesses. Thus, because public dissemination of the Disclosures would reveal the identity of third-party witnesses and excerpted summaries of their statements, the damage to law enforcement interests and privacy interests here would be significant and severalfold.

(Id.)

As an initial matter, Local Criminal Rule 23.1(e)(7) provides that "[a]n announcement, without further comment, that the accused denies the charges, and a brief description of the nature of the defense" qualifies as a statement, the public dissemination of which, would "not involve a substantial likelihood" of "interfer[ing] with a fair trial or otherwise prejudice the due administration of justice." Contrary to Defendant's contention, the Court finds public dissemination of the Confidential Discovery Material goes beyond the limits permitted by Local Rule 23.1(e)(7). Indeed, and as highlighted by the Government, Local Criminal Rule 23.1(d)(4) makes clear, statements concerning either "[t]he identity, testimony or

8

credibility of prospective witnesses" "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." The nature of the Confidential Discovery Materials informs the Court's conclusion that Local Criminal Rule 23.1(d)(4) is the applicable provision by which the Court must evaluate Defendant's De-Designation Request.

Additionally, notwithstanding the applicability of Local Criminal Rule 23.1(d)(4), the Court concurs with the Government that Defendant has not demonstrated any bases in law that would support de-designation of the Confidential Discovery Materials, and, thus, permit Defendant's public dissemination or discussion of same. Indeed, Defendant identifies no legal authority supporting his contention that his First Amendment rights would be infringed absent an Order from this Court permitting de-designation of the Confidential Discovery Materials.[2] Instead, Defendant points to vagaries such as the "principles of fairness and transparency" without providing any substance to his argument. (See Reply, ECF No. 69, at 3-4.) The simple fact of the matter at hand is that the documents Defendant seeks to de-designate are

---

[2] In fact, and as demonstrated in the Government's Opposition, there exists a plethora of authority for the proposition that there is no presumptive right of access under the First Amendment to documents exchanged by the parties during discovery which do not play a role in the exercise of the Court's Article III functions. (See e.g., Opp'n at 5-6 (collecting cases).)

9

certainly covered by the Parties' Protective Order. The Protective Order was entered into voluntarily by Defendant who agreed to be bound by its terms. Defendant's Letter Motion does nothing to convince the Court that, after-the-fact, Defendant should be permitted to publicly disseminate the Confidential Discovery Materials disclosed to him by the Government under the Protective Order, and in reliance thereon.

Additionally, the Government has identified several compelling law enforcement interests, and public interests, which caution adherence to the Protective Order. Of particular significance, the Court agrees with the Government that to permit selective weaponization of the Confidential Discovery Materials, by either side, risks jeopardizing the fairness of the trial, since prospective jurors may be inappropriately influenced by the dissemination. See United States v. White, No. 04-CR-0370, 2004 WL 2399731, at *5 (E.D. Pa. Sept. 22, 2004) (highlighting "a practice of disclosing discovery materials to the media . . . could be disruptive to a fair trial for all parties, and also [work] to the detriment of individuals who have not been accused of any crime"). Likewise, there is ample legal authority supporting the Government's position that there exists "no constitutional right to use the media to influence public opinion concerning [a] case so as to gain an advantage at trial." Smith, 985 F. Supp. 2d at 540 (quoting United States v. Lindh, 198 F.

Supp. 2d 739, 743 (E.D. Va. 2002)); see also id. ("The Court has an independent obligation to 'avoid the creation of a "carnival atmosphere" in high-profile cases.'" (quoting United States v. Brown, 218 F.3d 415, 429 (5th Cir. 2000))). While he may argue otherwise, in the Court's view, Defendant's dissemination of the Confidential Discovery Materials would serve only to improperly influence public opinion.

B. Defendant's Request for an Extension of the Pre-Trial Motion Schedule is Granted in Part

As to the Extension Request, Defendant avers, inter alia, "[o]n March 14, 2024, the government sent defense a discovery letter outlining crucial exculpatory information that the government learned in January 2023, more than a year earlier, and additional exculpatory details it learned in November 2023, more than four months earlier." (Support Memo at 1-2 (emphasis in original).) Defendant represents "the defense is currently engaging with the government to secure the records, documents, and/or recordings related to this recent Brady disclosure" and that "the information and discovery requested by the defense will substantially impact [the Defense's] motions." (Id. at 2.) Defendant adds, "[a]n extension is required because the[] [allegedly] delayed disclosures directly impact the architecture of [Defendant's] pretrial motions." (Reply, at 1.)

11

The Government rejects Defendant's characterization of the disclosures as "exculpatory" and, furthermore, vehemently rejects Defendant's contentions that the timing of its disclosures were violative of Brady and its progeny. (Opp'n at 2-4.) The Government highlights Defendant's Motion fails to identify how the timing of the disclosures have impaired the Defense's ability to make effective use of them. (Id. at 3.) Likewise, the Government emphasizes Defendant has not identified any legal authority supporting his position that the Government's disclosures were insufficient under either Brady or Giglio. (Id.) Regarding timing of the Disclosures, the Government asserts Defendant's contention it has not complied with Brady is "absurd." (Id.) The Government highlights, "one of the Disclosures Santos characterizes as 'late' was made by the government more than six months ago, and approximately three months before the parties jointly submitted the proposed pre-trial motion schedule to the court." (Id.) Similarly, the Government avers, "[t]he second Disclosure was made in mid-March 2024, approximately six weeks before the motion deadline and approximately six months before trial." (Id.) The Government emphasizes, Defendant "has had more than sufficient opportunity to make effective use of the Disclosures either in motion practice or at trial." (Id.)

Regarding the need for an extension of time for the Government to make supplemental disclosures, the Government

asserts it has already advised Defendant "it has far exceeded its disclosure obligations and no further supplementation of the Disclosures is required or appropriate at this time." (Id. at 4.) The Government emphasizes, whether it complied with its disclosure obligations is "uncontroverted" since Defendant has failed to provide any legal authority supporting his arguments that the Disclosures were in anyway untimely under Brady. (Id.)

In reply, Defendant highlights, inter alia, that the Government ignores that it "appears to have withheld exculpatory material while previously purporting to engage in good faith plea negotiations with Santos." (Reply at 2-3.) Defendant asserts "the government [has] represented that once defense motions are filed, it will no longer engage in plea negotiations with the defense." (Id. at 3.)

Without addressing the exculpatory value of the at-issue Disclosures, the Court agrees with the Government that Defendant has failed to articulate how the timing of the Government's Disclosures has impaired his ability to make effective use of them as part of any pre-trial motion. See United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of [the] disclosure Brady and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." (quoting Leka v. Portuondo, 257 F.3d 89,

13

100 (2d Cir. 2001) (alterations and emphasis in original))). Indeed, and as highlighted by the Government, Defendant has been in possession of one of the Disclosures since October 27, 2023, and was provided the remainder of the Disclosures on March 14, 2024. The disclosure of the at-issue materials made by the Government approximately six weeks in advance of Defendant's deadline to file his pre-trial motions strikes the Court as ample time to permit Defendant the opportunity to effectively make use of the Disclosures. Compounding the weakness of Defendant's position in this regard, Defendant has also failed to identify any legal authority supporting his position that the Disclosures were either untimely or insufficient under Brady.

Nevertheless, Defendant's contention that the Government may have engaged in plea negotiations, without first disclosing potentially exculpatory Brady material gives the Court pause. See Coppa, 267 F.3d at 142 ("[W]e reiterate the longstanding constitutional principle that as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial, or at a plea proceeding." (emphasis added)); see also United States v. Avellino, 129 F. Supp. 2d 214, 218 (E.D.N.Y. 2001) ("The

14

government's obligation to make such disclosure is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty. The defendant is entitled to make that decision with full awareness of favorable material evidence known to the government." (quoting United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998))).

The Court highlights the present motion is framed as a Motion to Extend the Pre-Trial Motion schedule; it is not a formal Brady motion. Consequently, the Court makes no finding as to whether the Disclosures actually constitute exculpatory Brady material.³ Additionally, since these allegations were not raised in the underlying Letter Motion, but were instead included in Defendant's Reply Memorandum, the Court acknowledges that the Government has not had an opportunity to address Defendant's allegations in this regard. Nonetheless, given Defendant's deadline to file any pre-trial motions is approaching hard on the heels of this Court's Order, out of an abundance of caution, the Court finds a short extension of the pre-trial motion schedule **of**

---

³ The Court notes Defendant's present allegations, that the Disclosures are exculpatory Brady material, and, as such, the Government was required to disclose the information prior to engaging in plea negotiations, is, like the vast majority of Defendant's Letter Motion, conclusory and without legal support. Likewise, Defendant fails to explain how the timing of the disclosures adversely affected his ability to make effective use of the Disclosures during plea negotiations.

15

**seven (7) days** is appropriate for Defendant to determine "the architecture" of any pre-trial motions he may seek to file.[4] **DEFENDANT IS ON NOTICE**: **Absent extraordinary circumstances no further extension requests of the pre-trial motion schedule will be granted**.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED that** Defendant's Letter Request to De-Designate Specified Information and for a 30-day Extension (ECF No. 65) is GRANTED IN PART AND DENIED IN PART, specifically:

1. Defendant's De-Designation Request is DENIED; and
2. Defendant's Extension Request is GRANTED TO THE EXTENT the Court extends the pre-trial motion schedule by seven (7) days.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 24, 2024
      Central Islip, New York

---

[4] Indeed, with his extended defense team, the Court expects Defendant to be well positioned to simultaneously engage in plea negotiations; timely file his pre-trial motions; and, if he so chooses, file a Brady motion.