# SUPREME COURT
# OF THE UNITED STATES

---

```
         IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

DAVID FOX DUBIN,                      )

              Petitioner,            )

              v.                     ) No. 22-10

UNITED STATES,                       )

              Respondent.            )

- - - - - - - - - - - - - - - - - -
```

```
Pages:  1 through 106

Place:  Washington, D.C.

Date:   February 27, 2023
```

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
www.hrccourtreporters.com

Official

1

1       IN THE SUPREME COURT OF THE UNITED STATES

2     - - - - - - - - - - - - - - - - - -

3     DAVID FOX DUBIN,                        )

4                      Petitioner,            )

5                 v.                          ) No. 22-10

6     UNITED STATES,                          )

7                      Respondent.            )

8     - - - - - - - - - - - - - - - - - -

9

10                      Washington, D.C.

11                 Monday, February 27, 2023

12

13          The above-entitled matter came on for

14    oral argument before the Supreme Court of the

15    United States at 10:03 a.m.

16

17    APPEARANCES:

18    JEFFREY L. FISHER, ESQUIRE, Stanford, California; on

19          behalf of the Petitioner.

20    VIVEK SURI, Assistant to the Solicitor General,

21          Department of Justice, Washington, D.C.; on behalf

22          of the Respondent.

23

24

25

1                    C O N T E N T S

2    ORAL ARGUMENT OF:                        PAGE:

3    JEFFREY L. FISHER, ESQ.

4         On behalf of the Petitioner          3

5    ORAL ARGUMENT OF:

6    VIVEK SURI, ESQ.

7         On behalf of the Respondent         63

8    REBUTTAL ARGUMENT OF:

9    JEFFREY L. FISHER, ESQ.

10        On behalf of the Petitioner        101

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2                                   (10:03 a.m.)
 3              CHIEF JUSTICE ROBERTS:  We'll hear
 4    argument this morning in Case 22-10, Dubin
 5    versus United States.
 6              Mr. Fisher.
 7              ORAL ARGUMENT OF JEFFREY L. FISHER
 8                 ON BEHALF OF THE PETITIONER
 9              MR. FISHER:  Mr. Chief Justice, and
10    may it please the Court:
11              The Fifth Circuit's decision here
12    stretches the aggravated identity theft statute
13    beyond its breaking point.  Overbilling Medicaid
14    by $101 may provide fodder for a simple
15    healthcare fraud prosecution, but, as even the
16    concurring judges below recognized, it does not
17    meet any ordinary understanding of the term
18    "identity theft."
19              Nor, for two independent reasons, does
20    Mr. Dubin's conduct fall within the terms of
21    Section 1028A.  First, he did not use Patient
22    L's name in relation to his healthcare fraud
23    offense.  That statutory element requires that
24    the use of the name be instrumental, not merely
25    incidental, to the fraud.
```

4

1              In a fraud case, another way to think

2      about that is it requires the name to be the

3      "who" in the fraud, that is, misrepresenting who

4      received services, not merely how or when those

5      services were received.  And Mr. Dubin's conduct

6      falls only in the latter camp.

7              Second, Mr. Dubin did not use Patient

8      L's identity without lawful authority.  He had

9      permission to use Patient L's identity to bill

10     Medicaid for psychological services, and that's

11     precisely what he did.

12             A contextual perspective confirms this

13     analysis.  The federal fraud statute that's the

14     predicate here, like the other federal fraud

15     statutes, covers an enormously broad swath of

16     conduct, and, therefore, Congress has made

17     prison time discretionary in those instances.

18             And as the Federal Defenders' brief

19     explains, the median sentence in a fraud case in

20     this country is 12 months.  Twenty-five percent

21     of offenders receive only probation.  The --

22     this statute, by contrast, requires a two-year

23     mandatory minimum.

24             So all indications are what Congress

25     was doing is targeting a particularly egregious

1    form of fraud, use of somebody's name through

2    stealing it, misappropriating it, or -- or

3    impersonating the person, identity theft.

4            But, if the government is right and if

5    the Fifth Circuit is right about how broad the

6    statute is, what it would do is it would

7    transform fraud prosecutions to having every one

8    of them be essentially an aggravated identity

9    theft prosecution too, and that would thwart

10   Congress's careful design.

11           The Court should reverse, and I'm

12   happy to answer any questions the Court has.

13           JUSTICE THOMAS:  Mr. Fisher, you said

14   that -- that Mr. Dubin was authorized to use the

15   -- Patient L's identity.  Was Dubin authorized

16   to use Patient -- Patient L's identity for this

17   particular transaction?

18           MR. FISHER:  Well, I think the best I

19   can answer is yes, he was in the sense that he

20   was authorized to use Patient L's identity for

21   billing Medicaid.  That was the name that was at

22   the center --

23           JUSTICE THOMAS:  Well, I understand --

24   that's a little broader.  Well, you could say

25   that if you drop a car off at a valet, your

1    Porsche -- I don't have one -- but, if you had a

2    Porsche, you'd be concerned about the use of it,

3    and the valet is authorized to drive it

4    generally but not to drive it around the city,

5    but to park it.

6         So I don't see how this is any

7    different from that.  He's authorized to bill at

8    the appropriate charges, but it's not a general

9    authorization.

10         MR. FISHER:  Well, I think, Justice

11    Thomas, the only way to make sense of that

12    element in the statute is to do it more

13    generally, and I think there's a couple of

14    reasons why that is so.

15         And, first, let me just start with the

16    record in this case.  The only thing the

17    government ever argued in this case was that the

18    unauthorized use was the fact that Mr. Dubin

19    committed a crime with the name.  That's at

20    Joint Appendix page 31 and 32, and it's also at

21    the Pet. App. 66a and 67a.  So the Fifth

22    Circuit's theory and the government's theory was

23    simply using the name to commit a crime is what

24    makes it unauthorized use.

25         And so, when you turn to the statute,

1    that cannot be right for two reasons.  One is

2    because the statute already requires a

3    violation.  That's the predicate crime.  And

4    this would just make it superfluous.

5              And, second of all, remember, just as

6    a matter of grammar, lawful authorized --

7    "lawful" modifies use, not -- I'm sorry,

8    "lawful" modifies "authority," not "use."

9              And so what the government would do

10   and I think, with all due respect, what your

11   hypothetical would do would ask whether the --

12   whether the item was used lawfully, not whether

13   the person had authority in a general sense.

14             And I think one other analogy -- one

15   other analogy that -- that we give the Court in

16   our brief is burglary law, which is a common

17   criminal law thing, where you don't ask whether

18   the person had authority to enter the building

19   to commit a crime, because nobody has that kind

20   of authority.  You ask whether they had general

21   authority to enter the building.  We think

22   that's what the element is doing in the statute.

23             JUSTICE JACKSON:  But how general are

24   you -- you know, is your analysis?  I mean, I --

25   you use a reference to a hypo about a waiter,

1    and I thought that was very interesting and

2    maybe illuminating in this regard.

3            So, you know, I give the waiter my

4    credit card, and rather than charging me for the

5    food, he charges me -- you know, he pays down

6    his mortgage with my credit card.

7            Is that use with or without lawful

8    authority and why?

9            MR. FISHER:  I think that's probably

10   use without lawful authority because, when you

11   give your credit card to the waiter, you are

12   assuming that the waiter's going to charge you

13   for the meal or at least -- at least something

14   from the restaurant.

15           JUSTICE JACKSON:  All right.  So, if

16   he charges --

17           MR. FISHER:  And so, if the waiter --

18           JUSTICE JACKSON:  Yeah.

19           MR. FISHER:  Sorry.

20           JUSTICE JACKSON:  So go ahead.

21   Mm-hmm.

22           MR. FISHER:  So, if the waiter uses it

23   to charge something else, that's an additional

24   transaction that is not authorized.

25           JUSTICE JACKSON:  What if he charges

1    me for a bunch of things I didn't order?  So it

2    is using for the meal, right?  We're not in that

3    other scenario.  But I didn't order all these

4    things, and suddenly they're on the bill.

5              MR. FISHER:  So I think that is --

6    that is without lawful authority, but I think it

7    might be -- you might -- it might still not be

8    in relation to the crime because there --

9              JUSTICE JACKSON:  Right, right.  But

10   I'm just -- so -- so you -- so isn't that the

11   same thing as is being alleged here with respect

12   to your client?

13             MR. FISHER:  I don't think so because,

14   if you look at the actual bill in this case or

15   the Medicaid claim -- it's at the very last two

16   pages of the Joint Appendix -- it is -- under --

17   there's a procedure code that -- that says what

18   you are billing for, and the procedure code is

19   exactly the same as whether or not -- the

20   dispute here is whether the licensed

21   psychologist versus a licensed psychological

22   associate provided the services.

23             JUSTICE JACKSON:  But that's not what

24   he ordered.  I mean, that's not what the law --

25   what the law orders.  I don't see how that's any

1    different than the waiter putting something on

2    the bill that was not -- you know, fraudulently,

3    that -- that was not actually ordered.

4            MR. FISHER:  Well, I think that the --

5    the -- the mortgage example is easier.  And I

6    think that is why "without lawful authority" as

7    -- I mean, I -- I acknowledge that it's -- that

8    it's -- that it's challenging to figure out

9    exactly what level of generality you're asking,

10   but I think the best way to do it is say, did

11   the person give authority to -- to bill for this

12   type of service or this type of product?  So --

13           JUSTICE KAGAN:  So, when you --

14           MR. FISHER:  -- I think, Justice --

15   sorry.

16           JUSTICE KAGAN:  Go ahead.  Sorry.

17           MR. FISHER:  I think, Justice Jackson,

18   if it's just extra food on the bill, that may

19   not be without lawful authority, but, if it's

20   something different from the items in the

21   restaurant, then that would be outside of the

22   expectation of the transaction.

23           JUSTICE SOTOMAYOR:  But that's not --

24           JUSTICE KAGAN:  Same --

25           JUSTICE SOTOMAYOR:  I'm sorry.

1            JUSTICE KAGAN:  No, go ahead.

2            JUSTICE SOTOMAYOR:  That's not

3   identity theft, meaning there's two --

4            MR. FISHER:  It's still not identity

5   theft --

6            JUSTICE SOTOMAYOR:  -- there's two

7   elements.

8            MR. FISHER:  That's right.

9            JUSTICE SOTOMAYOR:  And, as I

10  understand your description of "in relation to,"

11  you keep going back to that means that the name

12  must be a part of what makes the predicate

13  conduct fraudulent.  And the name there isn't

14  because the extra food isn't helping the --

15  isn't on the who may -- who you're -- who that

16  person is.  They gave you the credit card.

17  You're charging extra food.

18            MR. FISHER:  That's right, Justice

19  Sotomayor.  I think it --

20            JUSTICE SOTOMAYOR:  It's like, if I

21  ordered a tomahawk steak and they gave me a big

22  sirloin steak, that would be a fraud, but my

23  name isn't used in that way, correct?

24            MR. FISHER:  Right.  That's right.  I

25  think it's important to keep -- these are --

```
 1              CHIEF JUSTICE ROBERTS:  Well, but --
 2    but you needed to use an actual patient's name,
 3    right?  So it's not just like you got a credit
 4    card and you don't care whose it is and you're
 5    just sort of charging it.  It had to be, if it's
 6    not Patient L, it had to be Patient A, B, C or
 7    whatever, because I assume they check that this
 8    is somebody covered by whatever it is, Medicare
 9    or Medicaid.
10              MR. FISHER:  Well, two things, Your
11    Honor.  First of all, as a technical matter,
12    under the Medicaid -- under the healthcare fraud
13    statute here, there doesn't have to be any name
14    at all, let alone a Medicaid-eligible name, on
15    the claim to violate the statute.  So, as a
16    technical matter, I think a name is not required
17    to violate the statute.
18              And I think this was --
19              CHIEF JUSTICE ROBERTS:  There has to
20    be --
21              MR. FISHER:  -- the General's point --
22              CHIEF JUSTICE ROBERTS:  Does there
23    have to be a name not to violate the statute?
24              MR. FISHER:  Pardon me?
25              CHIEF JUSTICE ROBERTS:  Does there
```

1    have to be a name not to violate a statute?  In

2    other words, you're saying you could -- could

3    put any name, somebody who doesn't have any

4    coverage or any relation at all?

5            MR. FISHER:  Yes, it would still be

6    healthcare fraud if you were listing a service

7    you didn't provide or overbilling or what -- or

8    whatever else.  So the name is not essential to

9    commit the crime.

10           But I would add to that, even if the

11   name were essential to commit the crime, we

12   still think that's too low a bar for "in

13   relation to."  And, as we point out, one example

14   is, if all you need is a but-for relationship to

15   satisfy the "in relation to" element, then every

16   mail or wire fraud case that has a name on an

17   envelope or a name in the e-mail address or the

18   phone number becomes identity theft.

19           JUSTICE SOTOMAYOR:  Isn't that why --

20           MR. FISHER:  Every time --

21           JUSTICE SOTOMAYOR:  -- isn't that why

22   the government disclaims that and it comes up

23   with a theory that says a name on an envelope is

24   something that anybody can use, correct?

25           MR. FISHER:  Well, that's right,

1    Justice Sotomayor.  That's what the government

2    says, but, again, it's important to distinguish

3    the elements, one from the other.  I don't think

4    the government disputes that the name on the

5    envelope satisfies its but-for test under the

6    "in relation to" element.

7                JUSTICE SOTOMAYOR:  Right.

8                MR. FISHER:  And so they do have a

9    different answer for the mail fraud hypo there.

10   On "without lawful authority," they say somebody

11   is assumed to have authority to send an

12   unsolicited letter, but that brings me back to

13   the level of generality question.  That answer

14   violates their own rule.

15               Their rule is you have to have

16   specific authorization to the exact thing you

17   did in the manner you did it.  So you would not

18   ask whether somebody has authorization to send

19   an unsolicited letter.  You'd ask whether

20   somebody has authorization to send a fraudulent

21   letter, and the answer to that would be no, just

22   like here.

23               JUSTICE JACKSON:  But why isn't that

24   right?  I mean, I -- I -- I'm still struggling

25   with the -- with the waiter hypo.  Isolating

15

            1    "without authority," I understand your point in

            2    -- "during and in relation," it probably still

            3    wouldn't be --

            4            MR. FISHER:  Yes.

            5            JUSTICE JACKSON:  -- triggering this

            6    statute, you know, because of the nature of it.

            7    Fine.

            8            But, without authority, if the waiter

            9    is charging things, you've given him permission

           10    to charge it for food, you say that's enough to

           11    allow it to be with authority.

           12            But I guess I don't understand why, if

           13    he's charging it for food that I didn't order

           14    fraudulently, that is with authority.

           15            MR. FISHER:  No, I think if I -- I may

           16    have misunderstood then if I said that.  As to

           17    food on the menu, I think, if something is

           18    charged that was not ordered, you do -- or you

           19    are giving authority at least for the -- for the

           20    transaction where you give the credit card to

           21    charge the bill.

           22            Now, if the next day the waiter were

           23    to charge something else after you've left the

           24    restaurant and after that charge has been done,

           25    then I think the authority is expired after you

1    leave the restaurant.  But -- but maybe I

2    misunderstood in the mix of --

3              JUSTICE JACKSON:  I mean, where does

4    that come from?  I mean, that just sort of --

5    why does it matter whether I'm still sitting in

6    the restaurant or he does it the next day?  The

7    point is, what is the scope of my authority?

8    When I give him the card, I am giving him the

9    card, I think, to charge the food I ordered.

10             If he charges, you know, either the

11   food I didn't order or something on Amazon or

12   pays down his mortgage, aren't all of those

13   scenarios the same with respect to the scope of

14   my authority?

15             MR. FISHER:  I don't think so, Justice

16   Jackson.  I think that, as I said to Justice

17   Thomas, you need to say something more than

18   you're billing for something other than exactly

19   what was ordered because, if that's what the

20   rule is, then it collapses into the requirement

21   that there be a predicate fraud.

22             And the Solicitor General's rule or

23   the Fifth Circuit's rule would then cover any

24   misbilling anytime a cashier bills anything

25   wrong.  That cannot be right under the identity

1    theft statute.

2           JUSTICE KAGAN:  Just -- just the same

3    line of questions, but, you know, put it in a

4    context that's closer to this one.  I mean,

5    suppose -- I think you say at one point that if

6    he had charged for cancer services, that would

7    fail your test, is that correct?

8           MR. FISHER:  I think that would likely

9    be outside of the scope of authority, so it

10   would -- so it -- so it would do so --

11          JUSTICE KAGAN:  Yeah, that's -- that's

12   right.  That's what I'm talking about.

13          MR. FISHER:  So, if we had more facts

14   in the record, it may be without authority.  It

15   would not be in relation to the crime for the

16   reasons Justice Sotomayor mentioned.

17          JUSTICE KAGAN:  Yeah.  So it's outside

18   the scope of authority for cancer services

19   because the patient is only supposed to get

20   psychological services.

21          But, you know, it's the same question

22   as Justice Jackson is asking.  Suppose now he

23   bills for a hundred hours of sessions with a

24   full-bore psychiatrist, right, very different

25   both in type and in quantity of the services he

1   actually received.

2           Why should that be anything -- any

3   less outside the authority that's been given?

4           MR. FISHER:  I think the answer would

5   be because, again, in that scenario, Mr. Dubin

6   would have -- would have authority to bill for

7   those kinds of services.

8           Now, Justice Kagan, to bill a hundred

9   hours instead of three would be an egregious

10  fraud for which he could be prosecuted and

11  punished and perhaps severely, but it doesn't

12  make it outside of his authority in a way that

13  --

14          JUSTICE KAGAN:  Right.  I guess I --

15  what I'm not getting, and it's the same thing

16  that Justice Jackson is not getting, is -- is --

17  is why you're drawing the line between, you

18  know, here, cancer and psychological, as opposed

19  to drawing the line between the psychological

20  services I received and other psychological

21  services that I never received and, indeed,

22  didn't come close to.

23          MR. FISHER:  I think the reason I'm

24  drawing the line there with admittedly blunt

25  textual tools that -- that Congress has given

1      us, but the reason I'm drawing the line there is

2      because the only alternative that I think I see

3      on the table is that literally every mischarge

4      becomes without lawful authority.

5                JUSTICE ALITO:  Mr. Fisher --

6                MR. FISHER:  So it sweeps in --

7                JUSTICE ALITO:  I'm sorry.  Finish.

8                MR. FISHER:  So -- so it would just

9      sweep in every misbilling, a lawyer who bills

10     4.9 hours when he worked 4.8, bills for a

11     second-year associate when it was really a

12     first-year, et cetera.

13               JUSTICE ALITO:  Your argument has a

14     lot of intuitive appeal because this does not

15     seem like what one normally thinks of as

16     identity theft, but I'm wondering if you are

17     trying to get too much out of the caption of

18     this -- out of -- of this provision.

19               And I know it's a little -- it's

20     unfair to ask you about a case that we heard

21     argument in last week, but I know you follow our

22     cases, so I'm going to do it.  If you just want

23     to take a pass, that's fine.

24               But we heard very extensive argument

25     on the meaning of Section 230 of the

1    Communications Act, which provides -- has been

2    held by the lower courts to provide pretty broad

3    immunity from civil liability for Internet

4    service providers.  But the -- the caption of

5    that section is "Protection for Good Samaritan

6    Blocking and Screening of Offensive Material."

7         So the -- the interpretation that the

8    lower courts have given to that provision goes

9    way beyond what you might think of just by

10   looking at the caption.  So, I mean, how far can

11   we go in reading -- taking the caption as the

12   gloss on the actual text of the statute?

13        MR. FISHER:  So I don't think the tech

14   -- I don't think the caption can trump otherwise

15   clear language in the statute.  I think the high

16   watermark perhaps for the -- for -- for the

17   title mattering, if I could turn the Court back

18   to criminal law, would be the Yates case, where

19   the Court dealt with the -- the provision in the

20   Sarbanes-Oxley Act that said that any tangible

21   object was covered by the statute, and what the

22   Court said was that -- was that "records," the

23   word in the title, limited actually the scope of

24   that.  And I think that was perhaps a quite

25   muscular use of the title, nowhere near what

1    we're asking for here.

2              Our point here, which goes all the way

3    back to 1805 and Chief Justice Marshall's

4    opinion in the Fisher case, is that the title

5    can illuminate and make you better understand

6    what the statutory text means.

7              And so the title here, "Aggravated

8    Identity Theft," simply gives you a lens through

9    which you can understand these very ambiguous

10   phrases like "without lawful authority" and "in

11   relation to" and those sorts of things.

12             JUSTICE KAGAN:  The dissent in Yates

13   --

14             MR. FISHER:  And we think --

15             JUSTICE KAGAN:  -- pointed out that --

16   pointed out that titles are always abridgements,

17   right?  I mean, you know, given the complexity

18   of statutory language, you couldn't possibly put

19   everything that statutory language is about into

20   a three-word title.

21             So this seems like an unfortunate

22   abridgement in -- in a way.  It doesn't really

23   get at the gist of what the statutory text seems

24   to be about or it doesn't get to the scope of

25   the apparent -- the apparent scope of the

1   statutory text, but it is just -- you know, it's

2   -- it's Congress's attempt to abridge a

3   complicated statutory provision.

4           MR. FISHER:  Well, let me say two

5   things, Justice Kagan.  First of all, with due

6   respect to the dissent in Yates, I'm not looking

7   to use the title as -- as -- as aggressively as

8   there.  Really, there, the word "records" did

9   limit the language quite directly.

10          Here, I'm just saying it gives you a

11  lens through which to understand the words, and

12  I think that is well in the Court's mainstream

13  of cases, majority or dissents.

14          JUSTICE SOTOMAYOR:  Mr. Fisher, when

15  you look at the word "theft," I've gone through

16  burglary statute -- not burglary statute -- a

17  variety of different state statutes, and theft

18  is always defined as transfers, possessions, or

19  use.

20          So it's not as if the title is not in

21  the very words of the statute.  Most theft

22  statutes are using transfer, possession, or

23  using of someone else's property, correct?

24          MR. FISHER:  I think that's right, and

25  in Flores-Figueroa, the Court actually, with

23

1    this particular statute in mind, looked at the

2    title.  So there's precedent on the books from

3    this Court as to the usefulness of this title.

4              JUSTICE SOTOMAYOR:  So why do you rely

5    on "in relation to"?  I relied on -- just on the

6    word "use."  If I look at it through the lens of

7    the words that are being used, "transfer,

8    possession, or use," I think of a theft because

9    that's what's generally defined as thieving, and

10   the question is, are you lying about the person

11   who gave you permission, and you're not,

12   correct?

13             MR. FISHER:  I think "use" gives you

14   all you would need to get there.  The Solicitor

15   General itself recognized in this Court a couple

16   terms ago that "use" can mean "instrumental to."

17   That was the definition they used from the

18   dictionary in Van Buren.  And I think, when you

19   couple "use" with the phrase "means of

20   identification," it's a particular kind of

21   instrumental use.

22             And I think, Justice Sotomayor, you

23   could say that's enough, but my point in this

24   Court is that when you couple that yet more with

25   "in relation to," that cements the notion that

official

24

1    you need a nexus and you need something that is

2    instrumental.

3            And, Justice Kagan, I did want to turn

4    back to the second thing I wanted to say on your

5    point about titles, which is that I understand

6    that a title can be an abridgement and a

7    shorthand, and there's courts -- the Court has

8    cases that say every last little subsection

9    within a provision is not going to be captured

10   by a title, and we understand that.

11           But that's not the submission that

12   you're being given today.  The submission you're

13   given today is that conduct by Mr. Dubin is the

14   heartland of identity theft.  Their argument is

15   that this very conduct is exactly what Congress

16   intended to capture.  And so what they're be

17   saying is that the title -- if you disagree with

18   that, and maybe like Justice Alito was

19   suggesting, that the words "identity theft"

20   don't really cover this conduct, that they're

21   suggesting that you should nevertheless read the

22   statute to cover all this thing that doesn't

23   fall under there, the -- you know, this vast

24   swath of conduct.

25           And I think that's what I was trying

1    to say at the end of my opening, is that think

2    about what this would mean for the fraud

3    statutes.  You know, you have a two-year

4    mandatory minimum, which is a very, very big

5    deal both for plea bargaining and back-end

6    sentencing if somebody goes to trial, and that

7    should be strong medicine for particularly

8    egregious frauds.  It's not something that ought

9    to be there for every single case for charging.

10            JUSTICE JACKSON:  And Mr. --

11            JUSTICE GORSUCH:  Mr. Fisher --

12            JUSTICE JACKSON:  -- Mr. Fisher, don't

13    we know that in part because we have another

14    statute that sort of covers this same conduct?

15    So the reason why I thought you weren't

16    necessarily relying on the title is because this

17    seemed to me to be a pretty standard thing that

18    Congress does, that in (a)(7) of -- of 1028,

19    they're laying out the base offense --

20            MR. FISHER:  Yes.

21            JUSTICE JACKSON:  -- because it uses

22    almost identical terms, right, "knowingly

23    transfer, possess, or use," and then we have "in

24    connection with" unlawful activity.  So that's

25    kind of like the base offense.  And then, in

1    1028A, we have the aggravated offense, where

2    they say not just "in connection with" but

3    "during and in relation to" the particular

4    enumerated crimes.

5            So it seemed to me to be a -- a

6    familiar structure in penalty statutes at least,

7    where Congress -- you have -- you -- you have

8    one that doesn't have a mandatory minimum that's

9    sort of the base, and then you get aggravated

10   with this different level of, you know,

11   egregiousness.

12           Is that -- is that close to your

13   argument?

14           MR. FISHER:  Yes and no --

15           JUSTICE JACKSON:  Okay.

16           MR. FISHER:  -- Justice Jackson.  So,

17   yes, in the sense I agree that (a)(7) is

18   something of a base offense, and this is the

19   aggravating offense, but I don't think it's so

20   much with the "in connection to" versus "in

21   relation to" language.  You know, the Court has

22   said in ERISA cases, for example, that those are

23   basically interchangeable phrases.

24           The difference between (a)(7) and this

25   statute is that you have a much -- you have a

1    tighter group of predicate offenses.  In (a)(7),

2    you have any federal offense or any -- any state

3    offense, and there are federalism consequences

4    for the reading that you're being urged to

5    follow today that we lay out in our brief.

6            The narrowing effect of -- of -- of

7    the statute you have in front of you today is

8    the particular list of federal offenses.

9            JUSTICE JACKSON:  Yeah, but it's a

10   subset, right?  It --- it has to be.  There has

11   to be a difference in terms of the egregiousness

12   of the conduct because the -- the -- the federal

13   offenses in this --

14           MR. FISHER:  Yeah.

15           JUSTICE JACKSON:  -- aggravated is a

16   subset of the other.

17           MR. FISHER:  That's right, but I just

18   want to say that the -- the predicate offenses

19   under 1028A are still a quite long list.  And

20   like the predicate offense here, the healthcare

21   fraud offense, and like the mail and wire fraud

22   statutes, there is no required jail time at all

23   for those offenses.

24           So the aggravated identity theft

25   kicker on top of any conviction there, predicate

1    offense conviction, is quite serious and quite a

2    big deal.  And that's my point, that Congress

3    would have not expected --

4              JUSTICE JACKSON:  And that's why you

5    have to have more egregious conduct in order to

6    trigger it, right?

7              MR. FISHER:  That's right.  And the

8    more --

9              JUSTICE JACKSON:  Yeah.

10             MR. FISHER:  -- egregious conduct

11   should be more than just incidentally using

12   somebody's name while you're committing that

13   crime.  So my point is, if the government is

14   right, then every provider who provides an

15   improper bill and commits healthcare fraud is

16   also committing identity theft.  Everyone who

17   sends a letter to somebody else or every cashier

18   who mischarges a bill, et cetera, is also

19   committing identity theft.

20             And I don't think Congress would have

21   wanted to transform those discretionary

22   sentencing regimes for those low-level frauds to

23   all situations where somebody is facing a

24   two-year mandatory minimum.

25             And if -- and I see my white light and

1    I wanted to circle back to one thing before the
2    one-by-one questioning, which is we've talked a
3    lot about "without lawful authority," and I just
4    wanted to underscore one feature of the "in
5    relation to" argument that I'm making here,
6    which is the instrumental use, not merely
7    incidental use.
8             Judge Sutton on the Sixth Circuit
9    wrote a very -- I think probably the best
10   opinion in the lower courts I've seen on that
11   issue that describes how the idea is, because
12   we're dealing with identity theft, it has to be
13   a lie about who receives services or who obtains
14   services, not a lie about how those services
15   were rendered, when those services were
16   rendered, et cetera.  And that rule of thumb, I
17   think, is very, very helpful for sorting out the
18   "in relation to" element as it works in the
19   statute here.
20            And it's also just intuitively
21   correct.  Remember, whether you want to rely on
22   the -- the title "Identity Theft" or whether you
23   want to just look at the words "means of
24   identification" in the statute itself, you're
25   being asked to decide whether the fraud had to

1    do with the misuse of somebody's name, whether

2    it was instrumental -- that the name was

3    instrumental to the crime, and you have a case

4    like this, whereas the government put it in its

5    own closing argument at pages 31 and 32, this is

6    incorrect billing for services rendered.  That's

7    how the government put it to the jury when it

8    described the fraud.

9              In the Fifth Circuit, where the

10   government was asked to describe the fraud, the

11   government said the fraud here is that Mr. Dubin

12   claimed that the services were provided by a

13   licensed psychologist when they were really

14   provided by a licensed psychological associate.

15   That's the fraud here.

16             So, when the government is asked in

17   ordinary English to describe what the fraud is,

18   it's described having nothing to do with Patient

19   L's identity or who received the services.  It's

20   only in its brief, when forced to defend an

21   aggravated identity thought -- theft conviction,

22   that they twist the -- the notion here and say

23   these are fictional services somehow or this is

24   really about who received the services.

25             But, if you just use Judge -- Chief

 1    Judge Sutton's heuristic, I think that helps you

 2    sort out the cases in a way on the "in relation

 3    to" side that can do all the work you need in

 4    this case.

 5              CHIEF JUSTICE ROBERTS:  Thank you,

 6    counsel.  It seems to me that one of the factors

 7    that might be pertinent is whether it makes a

 8    difference whose name is used.  Now the -- the

 9    Solicitor General says that here it -- it did

10    because the overbilling for the three hours

11    deprived Patient L of three of the eight hours

12    to which he was entitled.

13              First of all, do you agree with that

14    statement of the facts?

15              MR. FISHER:  Well, I agree in the

16    sense that billing for three hours takes three

17    hours away, but, remember, Patient L did receive

18    services here.  And I think the more -- the more

19    -- the more narrow argument the Solicitor

20    General makes is that billing those services in

21    May instead of April had some effect, but, as we

22    explain at pages 1 and 15 of our reply brief,

23    that's just factually incorrect.  And the

24    government itself admitted that in the district

25    court, that that argument had been debunked.

1              So you could have cases -- I -- I --

2      can I say one more thing, Mr. Chief Justice?

3              CHIEF JUSTICE ROBERTS:  Sure.

4              MR. FISHER:  You could have cases

5      where somebody would be, I think, sometimes

6      deprived of benefits they would have due.  We

7      don't disagree that could exist.  It's not in

8      this case, but we don't disagree.

9              But those would be case-by-case

10     situations, where that could be, I think, better

11     taken into account at sentencing.  The statute

12     itself is not keyed to that kind of harm.  That

13     would just be something the district judge in an

14     ordinary fraud sentence could take account of.

15             CHIEF JUSTICE ROBERTS:  The -- the

16     representative of the Solicitor General, I'll

17     ask him about the three hours --

18             MR. FISHER:  Mm-hmm.

19             CHIEF JUSTICE ROBERTS:  -- as well,

20     but, if it does make a difference how much harm

21     the person whose name is being used suffers,

22     wouldn't that be a significant factor?  I mean,

23     if it -- if it, you know, caused him to lose all

24     his credit and it took -- you know, it can take

25     a year and a half or whatever to restore that,

1    shouldn't that be taken into consideration if

2    the -- in deciding whether or not this is the

3    sort of identity theft that's covered?

4            MR. FISHER:  I don't think there's any

5    language in the statute that directs you to the

6    type of harm.  I think a better-written statute

7    might have looked at the type of harm, whether

8    it's --

9            CHIEF JUSTICE ROBERTS:  It's not so

10   much the type of harm that I -- that I'm

11   concerned with but who is harmed.  In other

12   words, it makes a difference that this is

13   Patient L rather than somebody else.

14           MR. FISHER:  Well, no, I think,

15   Mr. Chief Justice, just take your garden-variety

16   fraud case where somebody is, you know, swindled

17   out of money.  They're harmed.  They've lost

18   their money, just like, in the hypothetical

19   you're giving, somebody in an ordinary

20   healthcare benefit case has been deprived of,

21   you know, possible insurance coverage or

22   overbilled or the like.  So people are harmed

23   quite regularly in these fraud statutes.

24           The question is whether their identity

25   was stolen, to use the sort of colloquial here,

1    and whether the crime involves misrepresenting

2    what they received or how they received it.  And

3    so that's what is -- that's what makes an

4    identity theft case different from an ordinary

5    fraud case, not the fact that the victim is

6    harmed but that they're harmed in the sense that

7    their identity is stolen.

8              CHIEF JUSTICE ROBERTS:  Thank you.

9              Justice Thomas?

10             JUSTICE THOMAS:  Mr. Fisher, beyond

11    the title, there is no reference to "identity

12    theft," right?

13             MR. FISHER:  Those words do not

14    otherwise appear in the statute.

15             JUSTICE THOMAS:  Let's assume that the

16    title wasn't there.  What would your argument

17    look like?

18             MR. FISHER:  I think it would look

19    like most of what I've said today, which is

20    understanding the -- the broad abstract phrases

21    "in relation to" and "without lawful authority"

22    needs to be done through the lens of

23    understanding this is a sentence enhancement for

24    a particularly egregious form of an underlying

25    crime, the predicate offense.

     1          And I think what I would direct the

     2     Court to are cases like Marinello, cases like

     3     Yates, your honest services cases, where over

     4     and over the Court has said, when Congress uses

     5     broad language, we don't construe those

     6     literally in the maximalist way.  Instead,

     7     because we're dealing with criminal statutes, we

     8     give them a measured reach.

     9          And I think that's underscored in this

    10     case, Justice Thomas, to end where I began,

    11     where you have -- you have a statute that is a

    12     enhancement, in effect, for a base offense.  So

    13     you have to be understanding that you're dealing

    14     with a subset that are an egregious version of

    15     that underlying offense.

    16          JUSTICE THOMAS:  But didn't we

    17     confront a similar problem with use in Smith?

    18          MR. FISHER:  I don't think so.  I

    19     don't -- I -- I think what you said in Smith

    20     were two things.  One is you said the phrase "in

    21     relation to" limits the reach of "use."  And the

    22     other thing is you said those words have to be

    23     read contextually.

    24          And so I -- on that score, I pull two

    25     things out of Smith.  What the Court ended up

1    saying in Smith was that the gun there was used

2    in relation to the crime because it was integral

3    to the offense.  And I think "integral" is a

4    synonym for "instrumental," which is the word

5    that I've been using today.

6            And I think that just shows that when

7    you take that word in context, it has to be

8    narrow and I think all the more so here.

9            JUSTICE THOMAS:  So how would this

10   particular crime that's charged have been

11   effectuated without the use of Patient L's

12   identity?

13           MR. FISHER:  Well, I think, if the

14   exact same bill had been submitted to Medicaid

15   without Patient L's name on it, it likely would

16   have still been healthcare fraud.  It would have

17   violated Section 1347 because it covers

18   artifices and schemes that attempt to defraud

19   the government.  So, even if the bill had not

20   been paid, it still would have been healthcare

21   fraud.

22           CHIEF JUSTICE ROBERTS:  Justice Alito?

23           JUSTICE ALITO:  Suppose we think that

24   "without lawful authority" can plausibly be read

25   in a number of different ways.  Then you need

1    something to persuade us that you -- we should

2    adopt your interpretation.

3          Now one would be something, the force

4    you can get from the title.  Put that aside.

5    Another would be perhaps some version of the

6    Rule of Lenity.  But you have accepted some

7    limiting principles.  So you would not read

8    "without lawful authority" in its broadest

9    sense, which might be where the Rule of Lenity

10   would lead.

11         So, in the next case -- suppose we

12   rule in your favor.  The next case involves a

13   different type of service, and the case after

14   that involves a person who was once a patient of

15   this doctor but hasn't been for a while.

16         How would you justify your limiting

17   principles?

18         MR. FISHER:  Well, Justice Alito, let

19   me say a couple things about the other tools I

20   would use to construe it and then how I would

21   justify.

22         So, first, beyond the title and the

23   Rule of Lenity, I would also look at the canon

24   that says all elements of the statute have to

25   have independent meaning.  And so it has to mean

38

something more than simply you've committed a
crime, committed a fraud, or put in the other
words that I was answering questions this
morning, it has to mean something more than
you've billed for something other than the exact
services provided.  And so I think that pushes
you towards something that narrows it.

Now -- now how I would answer those
other cases is I think the "in relation to"
element comes into play there.  So, if you're
billing for one service instead of another, I
think, at some point, the other service becomes
so different that you would lack authority to do
so.  But "in relation to," as Justice Sotomayor
was saying, would still prevent some of those
instances from being aggravated identity theft
because you'd be lying about the service
provided, not who received the service.

Now, when you get into additional
billing for additional types of things, I think,
there, you could start to be in the actual
territory of identity theft.  And, you know, I
hope -- what I'm trying to do is give the Court
some measured understanding of these terms that
makes sense of them with a difficult statute

1    you've been provided.

2            Yes, I could say the whole thing is

3    vague or the whole thing should be construed

4    down to a nub of almost nothing, but I'm trying

5    to give the Court a sensible understanding that

6    at least gives the terms meaning and context and

7    doesn't just say everything constitutes

8    aggravated identity theft.

9            JUSTICE ALITO:  All right.  Thank you.

10            CHIEF JUSTICE ROBERTS:  Justice

11    Sotomayor?

12            JUSTICE SOTOMAYOR:  If you take the

13    government's definition at face value, it's hard

14    to define exactly what their definition is

15    because every time you point to something that

16    seems absurd, they come up with a limiting rule.

17    So the vagueness is a problem.

18            But let's talk about those

19    absurdities.  The patient tells the doctor:  You

20    can submit this a month later, it's okay by me,

21    a co-conspirator, in other words.

22            The government -- on the government's

23    reading, even though they have the permission of

24    the person to use their name in the fraud, that

25    would still be aggravated theft, correct?

40

         1              MR. FISHER:  I think that's right.

         2    I'm not a hundred percent sure what the

         3    government would say on that, but I think that's

         4    right.  And that's certainly the argument they

         5    ran to the jury and in the lower courts.

         6              JUSTICE SOTOMAYOR:  That's what I

         7    read --

         8              MR. FISHER:  Yes.

         9              JUSTICE SOTOMAYOR:  -- in the Fifth

        10    Circuit's ruling as well.

        11              MR. FISHER:  Right.  And so they say,

        12    as soon as you use the name to commit a crime,

        13    you are acting without lawful authority.  And

        14    that was the -- that was the argument also if

        15    you look at the charging memo in the appendix to

        16    the Federal Defenders' brief --

        17              JUSTICE SOTOMAYOR:  I just want to

        18    give some of the other absurdities.

        19              MR. FISHER:  Yes.

        20              JUSTICE SOTOMAYOR:  Tax return, a

        21    parent lists their child as a dependent and lies

        22    about childcare services.

        23              There's no way to exempt that out

        24    because -- under the government's broad

        25    definition of the statute because they use the

 1    child's name to commit a fraud on the

 2    government, correct?

 3            MR. FISHER:  I think that's right.

 4    And Justice -- Judge Easterbrook recognized that

 5    in his opinion dealing with the statute that

 6    talked about tax and immigration cases where

 7    every one of those --

 8            JUSTICE SOTOMAYOR:  You talked about

 9    the envelope case.

10            MR. FISHER:  Yeah.

11            JUSTICE SOTOMAYOR:  You put the name

12    of your victim on an envelope and mail it to

13    them, that's using their name without their

14    permission, correct?

15            MR. FISHER:  Well, it's certainly

16    using their name, and, under the government's

17    theory, it's without permission because you're

18    committing a crime by --

19            JUSTICE SOTOMAYOR:  Now they come up

20    later and say no, but you're socially permitted

21    to use anybody's name on an envelope.

22            MR. FISHER:  But, again, that's not

23    the way their test works when you look at it in

24    this case and everything else.  They ask whether

25    you're permitted to send it for that purpose, in

1    other words, to commit a fraud.

2                JUSTICE SOTOMAYOR:  I'm defrauding a

3    friend or someone that I'm trying to pretend I'm

4    being a friend with, and I say:  You know

5    something, you should enter this deal with me.

6    Bill Gates is a personal friend of mine and he

7    taught me everything I know.

8                Would that be aggravated theft?

9                MR. FISHER:  I think so.  I think

10   that's -- that's the problem here, is that at

11   least when you have any situation where -- this

12   goes back to the Chief Justice's questions --

13   where you can say you couldn't have committed

14   that fraud the way you did without using the

15   name, then I think that falls within the

16   government's test.

17               JUSTICE SOTOMAYOR:  So the issue of

18   vagueness permeates this statute on both sides

19   potentially?

20               MR. FISHER:  I think that's right.  I

21   think the government's argument or at least the

22   Fifth Circuit's rule is vague in the sense that

23   it covers -- seems to cover basically

24   everything, and then it leads into the line of

25   cases about vagueness that have just absolute

1    standardless --

2              JUSTICE SOTOMAYOR:  All right.  So

3    what --

4              MR. FISHER:  -- discretion left in

5    prosecutors.

6              JUSTICE SOTOMAYOR:  -- what principles

7    of ours besides lenity would lead us to accept

8    your narrower definition as opposed to the

9    government's narrow individual doctrines?

10              MR. FISHER:  Well --

11              JUSTICE SOTOMAYOR:  The government

12    seems to be creating exceptions --

13              MR. FISHER:  Right.

14              JUSTICE SOTOMAYOR:  -- as --

15              MR. FISHER:  Well, I think, for one

16    thing, constitutional avoidance, so when you do

17    start to come up against vagueness, that's

18    another principle that is operating in the

19    background.  For some of you, I think I would

20    say the title, I think, does carry some weight.

21              And I think consequences.  You know,

22    the Court has had a lot of cases in recent

23    years, I gave Marinello as one example, Van

24    Buren was another recent example that held --

25    some of the honest services cases are examples

1    where the Court has said not in -- not -- not so

2    much the Rule of Lenity, but they've just said

3    understanding what Congress meant by words, we

4    would not assume Congress would sweep in vast

5    arrays of conduct without doing it clearly.

6            And so I think, as Justice Breyer put

7    it in Marinello, we use interpretive restraint

8    in that setting, and I think that's what I'm

9    asking the Court for today.

10            JUSTICE SOTOMAYOR:  Thank you.

11            CHIEF JUSTICE ROBERTS:  Justice Kagan?

12            JUSTICE KAGAN:  Mr. Fisher, you

13    referred us to what you called Judge Sutton's

14    heuristic, and I just want to make sure that I

15    understand how that would work, and -- and --

16    and maybe I'll ask it in reference to what I

17    think is the toughest line that you're drawing,

18    which is on the one hand, if you bill for cancer

19    services, that falls within the enhancement,

20    but, if you bill for psychiatric services that

21    weren't rendered, it doesn't.  So, to me,

22    neither of those seems very much like a "who."

23    They both seem like "whats."

24            MR. FISHER:  Yeah.

25            JUSTICE KAGAN:  So how does Judge

1    Sutton's heuristic work to draw that line?  And,

2    if it doesn't work, doesn't that suggest that we

3    need something else?

4            MR. FISHER:  So -- so two things, and

5    I want to point out I think there's a little bit

6    of a misconception in your question.  So the --

7    so the two things, is the heuristic that just --

8    Judge Sutton lays out is who on the one category

9    versus how or when on the other.

10           And so those are the easy cases.  And

11   that's where this case is.  This is just a how

12   or when case.  And just like the stretchers case

13   that Judge Sutton was deciding, the ambulance

14   that lied -- the ambulance service that lied

15   about whether stretchers were required, that's a

16   "how," the nature of the services provided.

17   That's what this case is.

18           JUSTICE KAGAN:  Well, I mean, it's

19   certain --

20           MR. FISHER:  And so --

21           JUSTICE KAGAN:  -- there's certainly a

22   "when" in this case, but there's also a "what."

23   It's like, which psychiatric services did you

24   get?  And that's the same for the cancer

25   services.  And how does this supposed heuristic,

1    you know, separating out three-letter words help

2    us?

3                    MR. FISHER:  So -- so two things.  One

4    is I think this is not a "what" case because the

5    procedure code used is the same whether it's a

6    licensed psychologist or a psychological

7    associate.

8                    Now, even if it were a "what" case,

9    what services were provided --

10                   JUSTICE KAGAN:  Okay.  So, if the code

11   were different for, let's say, a full-fledged

12   psychiatrist, that would make all the

13   difference?

14                   MR. FISHER:  It might.  I'm just

15   saying this is the easy case if you want to take

16   the easy case.  I think the "what" cases, which

17   is what you're asking about, that's what the --

18   that's what the cancer hypo is, and that's where

19   the government moves in its brief, to the "what"

20   category, which, I agree with you, Justice

21   Kagan, is the hardest category.  So that's the

22   in between category, between the "who" or the

23   "how" and the "when."

24                   JUSTICE KAGAN:  Okay.  So you're

25   saying --

1          MR. FISHER:  And I think --

2          JUSTICE KAGAN:  -- that the Sutton

3    heuristic has nothing to say about that?

4          MR. FISHER:  I don't think it speaks

5    directly to it.  So it's separating out who on

6    the one side from how and when on the other.

7    And I think -- and this gets to the

8    misconception -- I'm agreeing that the cancer

9    hypothetical would be potentially without lawful

10   authority.  That might be without lawful

11   authority.  It still would not be in relation

12   to, and it still wouldn't violate the statute.

13         So I think what you should do is --

14   the best way to read the statute is that the

15   "who" cases, the lies about who received the

16   services, are on one side of the line, and all

17   the other lies about how, when, or even what are

18   on the other side of the line.

19         And, again, I'm not saying those

20   aren't fraud, and sometimes it can be egregious

21   fraud.  If it's a hundred hours instead of one

22   or if it's a -- a -- the Rolls Royce version of

23   the service instead of the -- the -- the base

24   level, those can be frauds and they can be

25   punished quite severely, but they're not lies

1    about who received the services, and they're not

2    using the person's identity as the

3    instrumentality, core instrumentality of the

4    offense.

5        JUSTICE KAGAN:  Thank you.

6        CHIEF JUSTICE ROBERTS:  Justice

7    Gorsuch?

8        JUSTICE GORSUCH:  So, Mr. Fisher,

9    you've talked about various canons that you

10   think might help us resolve this case, but one

11   that hasn't been mentioned much is the

12   federalism canon.

13       MR. FISHER:  Mm-hmm.

14       JUSTICE GORSUCH:  In Bond, for

15   example, we -- we made clear that we don't

16   normally interpret federal law to swallow up

17   vast swaths of state law authority as

18   traditionally understood.

19       And I wanted to return to the question

20   about the impact of (a)(7) --

21       MR. FISHER:  Yes.

22       JUSTICE GORSUCH:  -- on -- on that.

23   If the government's theory is correct and every

24   time I order salmon at a restaurant I'm told

25   it's fresh, but it's frozen, and my credit card

```
 1    is run for fresh salmon, that's identity theft,

 2    what's left of state law?

 3            MR. FISHER:  I don't think much,

 4    Justice Gorsuch.  And with all due respect to

 5    the government, I don't think they give an

 6    answer to our point that if they're right about

 7    what "in relation to" means and they're right

 8    about "without" -- "without lawful authority,"

 9    then every state law offense that uses

10    somebody's name becomes identity theft.

11            JUSTICE GORSUCH:  Whether it's in a

12    restaurant billing scenario, a healthcare

13    billing scenario, or lawyers who round their

14    hours up, and I'm sure nobody --

15            (Laughter.)

16            JUSTICE GORSUCH:  -- in this audience

17    has ever done that.

18            MR. FISHER:  Right.  And I want to

19    underscore -- I mean, we could think of even the

20    salmon example as wire fraud if the credit card

21    is run through --

22            JUSTICE GORSUCH:  Sure.

23            MR. FISHER:  -- so there's a federal

24    predicate offense.

25            JUSTICE GORSUCH:  But -- but -- but
```

50

1    put aside the federal --

2              MR. FISHER:  But we give examples of

3    graffiti and DUI --

4              JUSTICE GORSUCH:  -- put aside the

5    federal statutory crime that might be committed.

6              MR. FISHER:  Yeah.

7              JUSTICE GORSUCH:  All state

8    misrepresentations become federal crimes under

9    (a)(7).

10             MR. FISHER:  That's right.  That's

11   right.  And I think we give other examples in

12   our brief of just using somebody's name in the

13   course of committing the crime.  That would all

14   be chargeable as federal identity theft.

15             And, remember, the way these statutes

16   works is -- I've called them enhancements,

17   which, in a sense, they are, but they're truly

18   stand-alone crimes.  So a federal prosecutor

19   could -- could -- could charge that even if the

20   predicate offense under (a)(7) was nothing more

21   than a state law offense.

22             JUSTICE GORSUCH:  I guess my second

23   question is, do we need to decide whose

24   heuristic is right if we reject the government's

25   view?  Wouldn't it be enough for the day to say

1    that this reading of the statute was overbroad

2    and that it cannot possibly mean that every time

3    I order fresh salmon at a restaurant and get

4    billed for -- given frozen salmon and billed for

5    fresh, that cannot be federal identity theft --

6           MR. FISHER:  Yes.  I --

7           JUSTICE GORSUCH:  -- and just simply

8    reject that principle?  And, as I understand it,

9    there are at least two heuristics that are

10   knocking around in the lower courts.  One is

11   Judge Sutton's thought, and the other is Judge

12   Easterbrook's thought in -- in the Seventh

13   Circuit, which is slightly different --

14          MR. FISHER:  Right.

15          JUSTICE GORSUCH:  -- as I read it.

16   And you've kind of advanced echoes of both.

17          MR. FISHER:  Yeah.

18          JUSTICE GORSUCH:  Do we need to decide

19   between them, or perhaps they're both right?

20   Can't we just reject the Fifth Circuit's?

21          MR. FISHER:  I think that would be

22   enough, Justice Gorsuch.  I've pointed the Court

23   a couple of times to the government's closing

24   argument, which I think is the best

25   encapsulation of what it put in front of the

1    jury, and its argument was that you cannot use

2    somebody's name to commit a crime.  That's what

3    "unlawful authority" means.

4            And if you just reject that, that was

5    their only theory.  They provided no other

6    evidence that Mr. Dubin acted beyond the scope

7    of authority.  And maybe this is also responsive

8    to Justice Kagan and some of the other

9    hypotheticals, all the things about could you

10   bill for this, could you bill for the other.

11   Even the contract was not introduced by the

12   government in this case.

13           The only theory they ran -- and this

14   is also reflected in the charging memo in the

15   appendix to the Federal Defenders' brief, this

16   is the argument that prosecutors have been

17   circulating with each other -- is that all you

18   have to do is prove to the jury that an

19   underlying crime was committed and you're home.

20           And if you reject that, that's enough

21   to overturn the Fifth Circuit.

22           JUSTICE GORSUCH:  And if that were

23   right, maybe there's another canon besides

24   federalism that we can mention, and you've

25   alluded to it as well, which is vagueness.  What

1    notice does a statute like that provide to the

2    world, to every waiter in America who misbills a

3    client for the food he -- he -- he purchases?

4          MR. FISHER:  Right.  I think -- I

5    think you start to get into very serious

6    vagueness problems here because of the un --

7    incredible breadth, which I think, as we put in

8    our brief, are compounded by the kind of

9    misleading nature of the title.  If somebody

10    were looking at the table of contents of the

11    U.S. Code, if that waiter were looking at the

12    title of the U.S. Code, that waiter would

13    probably not see, oh, I better look and see what

14    identity theft is before I do that.

15          JUSTICE GORSUCH:  Thank you.

16          CHIEF JUSTICE ROBERTS:  Justice

17    Kavanaugh?

18          JUSTICE KAVANAUGH:  In response to

19    Justice Kagan, you said that the cancer

20    hypothetical would still not fall within the

21    statute because it wouldn't meet the "in

22    relation to" requirement.  Can you just spell

23    that out for us?

24          MR. FISHER:  Yes, Justice Kavanaugh.

25    The reason it wouldn't is because it would be a

1    lie about what services are provided, not who

2    received those services, or, if it were a

3    product, about what product was sold, not who

4    received the product.

5         And that makes sense under the statute

6    because we're asking whether the person's name,

7    whether, as the statute puts it, the means of

8    identification, was used in relation to the

9    offense.  And so the -- the critical nexus in

10    the instrumentality requirement in the statute

11    would not be satisfied.

12         And I think the government -- the

13    government only response to that in its brief,

14    Justice Kavanaugh, is, well, we can kind of play

15    word games and we can say, well, these cases

16    about what services were provided could also be

17    thought of as lies about who received them.

18         But, if you just use ordinary speech

19    and imagine complaining to somebody the next day

20    about being charged for something different than

21    what you've -- than what you ordered, you

22    probably wouldn't say -- you'd say they charged

23    me for the wrong thing.  You wouldn't say they

24    stole my name and used my name improperly.

25         JUSTICE KAVANAUGH:  Thank you.

1          CHIEF JUSTICE ROBERTS:  Justice

2     Barrett?

3          JUSTICE BARRETT:  I have a question

4     that's similar to Justice Sotomayor's.  So you

5     didn't make much of ejusdem generis in your

6     brief, but I looked at "transfer and possess,"

7     you know, "transfer to sell or give, convey or

8     remove from one place to another."  "Possess,"

9     you know, to have possession of.  And it seems

10    to me that you can't transfer or possess unless

11    something is stolen.  It seems to me like that's

12    a tie to the title to identity theft.

13         MR. FISHER:  Mm-hmm.  Mm-hmm.

14         JUSTICE BARRETT:  And so it seems to

15    me that if you're trying to interpret "use,"

16    which is a really broad route -- a really broad

17    "word" in the context of that trio, that that

18    serves a narrowing function.  Why didn't you

19    advance that argument?

20         MR. FISHER:  I think some lower courts

21    have pointed that out, and we -- we -- we agree

22    with it.  I think, Justice Barrett, the only

23    thing that I would acknowledge is I don't think

24    it's a requirement under the statute that

25    something be stolen.  I think you can -- you --

1    like, you can get something legitimately and

2    then misappropriate it.  So there are examples

3    in legislative history of government --

4    government workers who get somebody's Social

5    Security number by way of their ordinary work,

6    and then they misuse it to do other things or

7    sell those security numbers to somebody else.

8    Or we give a hypothetical in our -- in our reply

9    brief of a landlord who gets credit information

10   of a -- of a would-be tenant and then uses --

11   misuses that credit information.

12           So I think that's where "uses" comes

13   in for this narrow slice of misappropriation

14   cases.  But they're still for entirely fictional

15   services where you are, in effect, making the

16   identity the sole driver of the offense.

17           JUSTICE BARRETT:  And I agree with

18   you, and it seems to me that that's the

19   different work that "use" does --

20           MR. FISHER:  Mm-hmm.

21           JUSTICE BARRETT:  -- to transfer and

22   possession --

23           MR. FISHER:  Mm-hmm.

24           JUSTICE BARRETT:  -- are the kinds of

25   cases that you're talking about, but it still

1    seems to me that all of those verbs have as

2    their focus the unlawful possession of the

3    identity itself, the who --

4              MR. FISHER:  Yes.

5              JUSTICE BARRETT:  -- in Judge Sutton's

6    heuristic.

7              Okay.  Second question.  I appreciate

8    Justice Gorsuch's point about we could decide

9    the case narrowly by just saying whatever it

10   means this is wrong, but what if we wanted to

11   rule in your favor?  What does the holding look

12   like?  Because it can't quite be Judge Sutton's

13   heuristic, right, because it won't solve all the

14   cases.  Maybe it solves some heartland cases.

15             You've said must be instrumental, not

16   incidental.

17             MR. FISHER:  Mm-hmm.

18             JUSTICE BARRETT:  But you could say

19   Patient L's identity was instrumental because he

20   was a Medicaid, you know, recipient, and so,

21   without Patient L's name on the form, the crime

22   couldn't have been completed.

23             So I'm not sure instrumental, not

24   incidental, will kind of do the work for the

25   lower court having to decide the case.  So tell

1    me what the -- the decision line should say.

2              MR. FISHER:  So I think you could do

3    two things, and it might be quite helpful to the

4    lower court if you talked about both elements.

5    I think the "without lawful authority" element,

6    as I described with Justice Gorsuch, can be

7    decided the way we talked about, and that would

8    -- that would be enough to reverse.

9              But, if you look at the "in relation

10   to" element, which the lower courts are also

11   struggling mighty -- mightily with, I think I

12   agree with you, Justice Barrett, "instrumental"

13   is a standard, it's a more descriptive term, but

14   it could use some fleshing out.  And I think

15   that's where the Judge Sutton heuristic --

16   forgive me for returning to that -- actually,

17   that's the work it's doing.

18             JUSTICE BARRETT:  No, I like Judge

19   Sutton.  I'm fine with that.

20             MR. FISHER:  But that -- that's

21   actually the work it's doing, is it's saying

22   when is something -- he used the word "integral"

23   -- when is something integral, and that's -- and

24   that -- his heuristic is enough to decide this

25   case "in relation to."

 1          I mean, this case is remarkably like

 2     the one he described, which is the example of

 3     the -- the ambulance operator that lied about

 4     using stretchers when they did the service.

 5          And he said, if you lie about the

 6     nature of the services provided, not who

 7     received those services, you are not committing

 8     the crime in relation to -- you're not using the

 9     name in relation to the crime.  And that would

10     totally decide this case.

11          JUSTICE BARRETT:  Thank you.

12          CHIEF JUSTICE ROBERTS:  Justice

13     Jackson?

14          JUSTICE JACKSON:  So you've given us a

15     number of ways in which we could rule in your

16     favor and things we can look at and rely on.

17     I -- I was trying to keep a list.  We have

18     title, the Rule of Lenity, all the statutory

19     terms have meaning, federalism canon, and then

20     there was this talk of constitutional avoidance.

21          And I am interested in particular in

22     sort of the species of constitutional avoidance

23     that I was bringing up with you before, which

24     basically looks at this provision in context and

25     in relation to (a)(7).  In other words, this is

1    an aggravated penalty and we have a mandatory

2    minimum that attaches.

3                MR. FISHER:  Mm-hmm.

4                JUSTICE JACKSON:  And so don't we have

5    to believe that it is calling for something more

6    than just use in connection with the crimes?

7                MR. FISHER:  I don't think so, Justice

8    Jackson, and I hope I can be clear on this.  The

9    difference between (a)(7) --

10               JUSTICE JACKSON:  Yeah.

11               MR. FISHER:  -- and -- and 1028A,

12   which is what you have here, is the list of

13   predicate offenses, so --

14               JUSTICE JACKSON:  No, I understand.

15   You said that before.  But I guess what I'm

16   saying is the list of predicate offenses in this

17   statute --

18               MR. FISHER:  Mm-hmm.

19               JUSTICE JACKSON:  -- in this one, is a

20   subset of all federal crimes --

21               MR. FISHER:  Correct.

22               JUSTICE JACKSON:  -- which is in the

23   other statute.

24               MR. FISHER:  Right.

25               JUSTICE JACKSON:  And if I'm wrong

1    about this, then we have two statutes that would

2    be calling for exactly the same thing, and --

3            MR. FISHER:  I see, I see.

4            JUSTICE JACKSON:  -- the second one

5    gives you a mandatory minimum.  And I feel like

6    there's a constitutional problem if the

7    executive could look at these two statutes and

8    arbitrarily pick between the two, some people

9    get the one with the mandatory minimum, some

10   don't.  If their elements are exactly the same,

11   you would have that problem.

12           So the (a)(7) says use, you know,

13   without lawful authority, the same language, a

14   means of identification, right, in connection

15   with the crime.

16           And this one says use -- everything is

17   the same --

18           MR. FISHER:  Yeah.

19           JUSTICE JACKSON:  -- during and in

20   relation to the crime.  And it's a list of

21   crimes.  I get that.  But --

22           MR. FISHER:  Yeah.  Uh-huh.

23           JUSTICE JACKSON:  -- don't we have to

24   believe that what Congress is calling for to

25   attach the mandatory minimum is something more

1    than just in connection with?

2             MR. FISHER:  I think that's one -- so

3    now I'm following you.  And forgive me.

4             JUSTICE JACKSON:  Yes.

5             MR. FISHER:  I think that's one way to

6    answer, that would be one way to compare the two

7    statutes and read "in relation to" the way that

8    I'm describing.

9             I think the push-back from that could

10   be, well, they could still mean the same thing

11   and all you're dealing with then is a lesser

12   included offense, which doesn't create a

13   constitutional problem.

14            But I think then my reply to that

15   would be you nevertheless under the government's

16   theory are left with this incredibly broad

17   statute that makes every fraud prosecution also

18   punishable as aggravated identity theft, and

19   that --

20            JUSTICE JACKSON:  And it's vague to

21   know in the world when you would get the

22   mandatory minimum or not, right?

23            MR. FISHER:  Exactly.  And so that

24   creates exactly the kind of standardless sweep,

25   to use a term from this Court's cases, that the

1        -- that the Due Process Clause is directly

2    concerned with and gives you very serious pause.

3            JUSTICE JACKSON:  Thank you.

4            CHIEF JUSTICE ROBERTS:  Thank you, Mr.

5    Fisher.

6            Mr. Suri.

7                ORAL ARGUMENT OF VIVEK SURI

8                ON BEHALF OF THE RESPONDENT

9            MR. SURI:  Mr. Chief Justice, and may

10   it please the Court:

11           I'd like to start with the

12   hypothetical that Justice Jackson was discussing

13   with Mr. Fisher about the waiter who uses a

14   customer's credit card to bill for something

15   that the customer didn't order.  Let's say the

16   customer ordered steak, and the waiter uses the

17   credit card to ring up a bottle of wine as well.

18           And I think the discussion earlier

19   today established that the waiter was acting

20   without lawful authority.  He had the authority

21   to use the credit card number to bill only for

22   the food that was ordered.  He didn't have the

23   authority to use it for other things, whether it

24   be wine or Amazon.com products or paying down

25   his mortgage.

1           But I think, Justice Sotomayor, you

2      had suggested that the "in relation to" element

3      might do some work there and might keep that

4      hypothetical out of the statute.

5           I don't think that's correct, and the

6      reason it's not correct is that no matter how

7      you define "in relation to" -- you can say a

8      substantial nexus, you can say instrumental to,

9      integral to, facilitates further -- on any of

10     those definitions, the use of the credit card

11     number is going to be in relation to the fraud

12     of charging that credit card account improperly.

13           Of course, you can't charge a

14     particular credit card without using that credit

15     card number.  And that's analogous to the

16     relationship that's at issue here.  In this

17     case, you can't possibly charge a particular

18     Medicaid account fraudulently without using that

19     patient's Medicaid number.  And, therefore, the

20     use of the Medicaid number is on any reasonable

21     definition in relation to that particular fraud.

22           Now I understand the argument on the

23     other side about the title.  Maybe, as Justice

24     Alito pointed out, that doesn't seem like

25     identity theft.  But the test that this Court

1    should be applying is not "does it seem like

2    identity theft."  Congress translated the

3    concept of identity theft into specific textual

4    elements in the statute, and because that

5    hypothetical, like this case, falls within those

6    elements, that's covered by the statute.

7              I'll turn to the Court's questions.

8              JUSTICE THOMAS:  The -- we're talking

9    about very broad language.  I mean, when I first

10   came on the Court, in ERISA, we wrestled with

11   "in relation to," and, of course, in Smith and

12   some of the others, we wrestled with "use."  I'd

13   like to see how far you will go with this.

14             Let's say the only allegation here

15   involved the rounding up from 2.5 hours to three

16   hours.  Would that be sufficient to violate this

17   provision?

18             MR. SURI:  Yes, Justice Thomas.  And I

19   appreciate that that may seem an unattractive

20   result.

21             JUSTICE THOMAS:  Well, I think

22   unattractive is -- is an understatement.

23             (Laughter.)

24             MR. SURI:  It is nevertheless the

25   correct reading of the statute.  The reason that

1    result seems unattractive is that the fraud in

2    that context is a relatively small fraud.  It's

3    not a big fraud.

4            But it's inherent in this statute,

5    which has a flat two-year penalty, regardless of

6    the size of the fraud in a particular case, that

7    the small fraud is going to be punished the same

8    way as the big fraud.

9            JUSTICE THOMAS:  How -- how would you

10   distinguish in this context between a mistake

11   and a fraud?  Let's say it's 2.75 to 3.0.

12           MR. SURI:  Well, we still have to

13   prove that there was a fraud.  That has a

14   scienter element.  We have to prove that it

15   wasn't just an accident, that the person had the

16   requisite fraudulent intent.

17           So, if we couldn't prove beyond a

18   reasonable doubt that the person fraudulently,

19   rather than accidentally, overbilled, then we

20   wouldn't have the predicate crime in the first

21   place and the -- this additional --

22           JUSTICE THOMAS:  I mean, we're dealing

23   with small amounts in this case, so it doesn't

24   seem inconceivable that you could be successful

25   in prosecuting someone for a smaller amount.

1          MR. SURI:  First, with respect to this

2     case, it's true that this one claim was $338,

3     but the entire conspiracy the district court

4     found involved a lot of claims, $282,000.

5          Second, I acknowledge, yes, it is

6     possible that when it's a small amount, we could

7     still prosecute.  But we'd have hurdles that

8     we'd have to overcome when it's a small amount.

9     It's going to be harder to convince a jury of

10    fraudulent intent when the amount is extremely

11    small.

12          I take, however, the point of the

13    question --

14          JUSTICE GORSUCH:  Counsel, it seems to

15    me you've just given up the ghost and -- and

16    clarified things substantially that every time

17    anyone overbills for anything, that triggers

18    this statute, and all you have to prove -- now

19    it may be small, as the amounts here were, $338,

20    or it might be rounding up, a lawyer rounding up

21    his hours to the next tenth of an hour, but that

22    is still identity theft because you are using

23    somebody's identity in a way that is unlawful

24    and perhaps arguably exceeds their permission.

25          If that's true, where do we stand in

1      terms of federalism, given that (a)(7) speaks in

2      much the same language and would seem to

3      federalize pretty much every state

4      misrepresentation claim?  Where do we stand in

5      terms of vagueness, notice to the world, fair

6      notice to the world?

7             I'm not sure most waiters in America

8      appreciate that they're committing identity

9      theft when they bill for that bottle of wine.

10            MR. SURI:  Let me start with

11     federalism and (a)(7).  (a)(7)'s language is not

12     the same as the language of 1028A.  (a)(7) uses

13     the phrase "with [...] intent to commit, or

14     [...] aid or abet or in connection with."  And

15     you could read "in connection with" differently

16     from "during and in relation to" and there --

17            JUSTICE GORSUCH:  We -- we could.

18     But, if we read them the same, as this Court has

19     done in the past --

20            MR. SURI:  Well, if you read them --

21            JUSTICE GORSUCH:  -- then we'd have a

22     serious federalism problem, wouldn't we?

23            MR. SURI:  -- if you read them the

24     same, you'd be creating a federalism problem

25     that you could avoid by reading them

1    differently.

2              (Laughter.)

3              MR. SURI:  And --

4              JUSTICE GORSUCH:  That seems a bit

5    question-begging, but --

6              JUSTICE KAGAN:  Well, but in this

7    case, necessarily, really, "in connection with,"

8    "in relation to," who draws a distinction

9    between those words?

10             MR. SURI:  Let me explain why there's

11   a distinction.  First of all --

12             JUSTICE GORSUCH:  Let -- let -- let --

13   first of all -- first of all, just so we're

14   clear -- I'm sorry to interrupt.

15             JUSTICE KAGAN:  No, please.  I

16   interrupted you.

17             JUSTICE GORSUCH:  Well, okay.  Suppose

18   we did read them the same way.  Then you would

19   concede there would be a federalism problem?

20             MR. SURI:  No, I wouldn't concede that

21   because there's also a jurisdictional element in

22   1028(a)(7).  That's contained in 1028(c).  And

23   that jurisdictional element ensures that every

24   prosecution is within --

25             JUSTICE GORSUCH:  How?

1          MR. SURI:  -- the federal government's

2     authority.

3          It has a list of elements that must be

4     satisfied in order for an (a)(7) prosecution to

5     be brought.  And I grant one of them is affects

6     commerce, but --

7          JUSTICE GORSUCH:  Yeah.  So, if -- if

8     -- if he runs the credit card and it goes across

9     state lines, good to go?

10          MR. SURI:  But this Court has held

11     that --

12          JUSTICE GORSUCH:  Can't you concede

13     that's a serious federal -- federalism problem

14     if we were to read those terms the same way?

15          MR. SURI:  No, because this Court has

16     held that that's within the scope of the

17     Commerce Clause.  So it's not a federalism --

18          JUSTICE GORSUCH:  Every fraud in

19     America is within the scope of the Commerce

20     Clause, counsel?

21          MR. SURI:  If that's a problem,

22     Justice Gorsuch, it's attributable to the

23     Court's Commerce Clause cases and not to this --

24          (Laughter.)

25          JUSTICE GORSUCH:  Okay.  All right.

1    It's our -- it's our fault.  Fine.  How about

2    the -- how about the vagueness problem then?

3              MR. SURI:  I -- I -- I -- might I

4    finish explaining why --

5              JUSTICE GORSUCH:  Well, move on to the

6    vagueness problem.

7              MR. SURI:  Yes.

8              JUSTICE GORSUCH:  You know, what about

9    the vagueness problem?  What notice does this

10   provide to people in the world that they're

11   committing a federal felony?

12             MR. SURI:  Again, Justice Gorsuch, you

13   can avoid that problem by reading "in connection

14   with" --

15             JUSTICE GORSUCH:  I understand that.

16   Put that aside.  I asked you to put that aside,

17   counsel.  Please do so.

18             MR. SURI:  Yes.

19             JUSTICE GORSUCH:  Answer my question

20   about vagueness.

21             MR. SURI:  The Court's vagueness

22   precedents are concerned with ensuring that

23   law-abiding people aren't trapped into being

24   prosecuted for a violation that they couldn't

25   have anticipated.  And that problem doesn't

1  arise with respect to either of these statutes

2  because these statutes apply only if an

3  individual has committed a predicate crime in

4  the first place.  So --

5           JUSTICE GORSUCH:  Well, we -- we know,

6  though, that the law has to provide notice not

7  just that you committed some crime; it has to

8  provide notice to the bad man that there are

9  more consequences for worse crimes.

10          And I don't doubt that the waiter who

11  overbills for that bottle of wine knows he's

12  committed some sort of state misdemeanor or

13  maybe even felony, but does he know that he's

14  committed a federal offense too?

15          MR. SURI:  The way he would know is by

16  reading that statute and by looking at the

17  elements and finding that his conduct fits

18  within the most natural reading of those

19  elements.

20          JUSTICE GORSUCH:  Thank you.

21          JUSTICE JACKSON:  Mr. Suri, can I --

22  can I ask you to do almost the opposite of what

23  Justice Gorsuch was just asking you, and that is

24  to assume that the statute (a)(7) and 1028A are

25  distinct.

```
 1                MR. SURI:  Yes.

 2                JUSTICE JACKSON:  All right.  So can

 3     you just help me to understand how your --

 4     first, how your "facilitates" view of 1028A is

 5     different than "use in connection with"?

 6                MR. SURI:  Yeah, I'm not taking a

 7     definitive position on what exactly "in

 8     connection with" would mean because that's not

 9     presented in this case.  I'm suggesting the

10     Court could interpret it differently.

11                JUSTICE KAGAN:  It means "in relation

12     to."

13                JUSTICE JACKSON:  But -- but what I'm

14     asking is, you know, this is kind of like, I

15     think, creating another constitutional problem

16     that I hope we can focus on, which is, to the

17     extent they are the same --

18                MR. SURI:  Yes.

19                JUSTICE JACKSON:  -- then I don't

20     understand why we don't have a serious due

21     process problem because we have a mandatory

22     minimum with respect to the second one.  So,

23     unlike Mr. Fisher's suggestion that the second

24     one is a lesser included offense, it is, in

25     fact, an aggravated offense.  It is more serious
```

1    because you get two years tacked onto your

2    underlying offense as a result of it.

3            So is -- is -- is it the government's

4    position that you do not have to have more

5    egregious conduct or behavior to -- to trigger

6    the two-year man min?

7            MR. SURI:  It is more egregious

8    because the predicate offense has to be more

9    egregious.  And I appreciate --

10            JUSTICE JACKSON:  I don't think that's

11    how it works.  It doesn't.  Mr. -- Mr. Fisher

12    says look at the list of predicate offenses.

13    It's like every fraud in the world.  And you've

14    just admitted in response to Justice Thomas that

15    it could be a teeny, teeny fraud.

16            So it's not more serious just because

17    of the predicate offense.  It would seem to me

18    it would have to be more serious because of the

19    way in which you're using the name.

20            MR. SURI:  No, I respectfully disagree

21    with that.

22            JUSTICE JACKSON:  Okay.

23            MR. SURI:  It is a subset of crimes

24    that triggers 1028A.  And --

25            JUSTICE JACKSON:  But, if those crimes

1    are broader and less serious than other crimes

2    you can put into the other -- and into (a)(7),

3    you're still believing that it's a lesser

4    included offense?  The --

5          MR. SURI:  But they're not -- but

6    they're not broader.  They're a narrower set of

7    crimes.  They're a more serious set of crimes

8    than all crimes whatsoever.

9          You can violate 1028A if the predicate

10    crime is a felony.  You can violate 1028(a)(7)

11    if the predicate crime is a misdemeanor.  So,

12    yes, 1028A is going to be more serious than

13    1028.  And there's no due process problem.

14          CHIEF JUSTICE ROBERTS:  Does it make

15    any difference to your position if the predicate

16    crime always requires a misuse of identifying

17    information?  In other words, my -- my

18    conception of the identity theft crime is that

19    it is -- it provides additional punishment.  But

20    what if the underlying offense always requires

21    misuse of identity?

22          MR. SURI:  That can happen under the

23    statute with respect to other predicate

24    offenses, though not this one.  For example, one

25    of the other predicate offenses is Section -- I

1    think it's 1424 if I -- I might be

2    misremembering the number, but it's

3    impersonating another person in an immigration

4    proceeding.  Now that's always going to involve

5    using another person's identity even on Mr.

6    Fisher's definition, so --

7            CHIEF JUSTICE ROBERTS:  Well, doesn't

8    that suggest that you ought to have a narrower

9    definition of the aggravated identity theft

10   provision?

11           MR. SURI:  No, Mr. Chief Justice.

12   What it suggests is that Congress picked out a

13   specific set of predicate crimes, and it picked

14   those out where the aggravated identity theft

15   elements are more likely to arise than with

16   respect to other crimes.  So it shouldn't be a

17   surprise that with respect to this particular

18   set of crimes, there are going to be some where

19   the elements of the statute are met more

20   frequently.

21           But, of course, we don't run into that

22   problem here because there are a lot of

23   different ways you can commit healthcare fraud

24   without using a means of identification of

25   another person without lawful authority in

1    relation to that crime.

2              JUSTICE KAGAN:  Well, what are those

3    ways?  Because it strikes me that the delta here

4    is very slim, that in your brief, you had, you

5    know, some hypotheticals which were more or less

6    outlandish but that when you really get down to

7    it, all healthcare fraud is done using people's

8    names.

9              MR. SURI:  I'll give some of the less

10   outlandish hypotheticals then.

11             First, frauds committed by patients.

12   For example, if someone lies about his income in

13   order to become eligible for Medicaid or lies

14   about whether he smokes in order to get a lower

15   health insurance premium.

16             Second, healthcare frauds committed by

17   pharmaceutical companies.  Let's say a vaccine

18   manufacturer commits fraud in connection with a

19   contract to provide vaccine doses, or a

20   prescription drug manufacturer commits fraud

21   when negotiating with Medicare about

22   prescription drug prices.  That doesn't involve

23   individual patients.

24             Third set of examples:  Frauds by

25   providers that don't involve specific patients.

1    Let's say the provider here lied when he was

2    enrolling for Medicaid in the first place, or he

3    -- the Court had a case last year about the

4    disproportionate share fraction reimbursements

5    under Medicare and Medicaid.  Let's say there's

6    a fraud in connection with that.  That's not

7    connected with any specific patient.

8              Fourth set of examples is honest

9    services healthcare fraud.  Let's say an

10   insurance executive accepts a bribe or a

11   kickback.  Again, that doesn't involve a

12   specific patient.

13             I grant that --

14             JUSTICE KAGAN:  So that's very

15   helpful.  Are you saying that anytime that

16   there's a provider that bills Medicaid for

17   services, it's covered?

18             MR. SURI:  Almost.

19             JUSTICE KAGAN:  I guess this just goes

20   --

21             MR. SURI:  Almost.  I mean, you could

22   imagine the fictitious patient or other

23   hypotheticals like that, but, yes, almost all of

24   those cases would be covered, I -- I grant that.

25             And, Mr. Chief Justice, you had --

```
 1              JUSTICE SOTOMAYOR:  But what do we do

 2      about the incongruity that under Flores-Figueroa

 3      we said fictitious people are not covered by

 4      this?

 5              MR. SURI:  That's right.  I'm

 6      conceding that fictitious people aren't covered.

 7              JUSTICE SOTOMAYOR:  So we're not going

 8      to cover fictitious people under our case law,

 9      but we're going to cover the stretcher case,

10      Justice Sutton's stretcher case?

11              MR. SURI:  Yes, but there's a reason

12      that Congress drew that distinction.  When

13      you're billing to a fictitious patient, you're

14      not causing a harm to a real person.  You're

15      just harming --

16              JUSTICE SOTOMAYOR:  Well, I don't -- I

17      actually don't think that the patient thinks

18      that he's been -- his identity has been stolen.

19      He may think that -- at rightly, that you

20      cheated the government or your healthcare

21      provider, insurance, but I doubt very much he

22      thinks that you've misused his name or -- or

23      transferred his name or that you committed

24      identity theft with his name.

25              MR. SURI:  I -- I have already
```

1    accepted that you could say this doesn't feel

2    like identity theft, but that's not the test,

3    whether the patient feels like his identity has

4    been stolen.  The test is the elements set forth

5    in the statute, and the conduct here meets that.

6              JUSTICE KAVANAUGH:  But the elements

7    in the statute are -- are vague, "in relation

8    to," "uses authority."  And why doesn't the

9    title then give us a helpful clue about how

10   broadly to read those somewhat elastic terms?

11             MR. SURI:  Yeah, I -- I certainly

12   accept, Justice Kavanaugh, that if you thought

13   the statute were ambiguous, then the title is a

14   useful clue in resolving that ambiguity.  But I

15   don't think the title --

16             JUSTICE KAVANAUGH:  Well, -- well,

17   isn't "in relation to," for example, an

18   inherently, I guess, vague term in the sense

19   that everything can relate to everything else?

20   You have to have -- make a judgment call about

21   the unit of or the level of generality you're

22   going to read it, and to help guide us where to

23   draw the line there, the title can help pinpoint

24   a place where to do that.

25             MR. SURI:  Yeah, I agree with that in

1       principle, but there's a better source of

2       guidance to look to than the title, namely, this

3       Court's interpretation of 924(c).  924(c) was

4       the model for this statute.  It used the same

5       language.  It used "during and in relation to."

6       And, in that context, the Court has interpreted

7       "in relation to" to mean have some purpose or

8       effect with respect to the predicate crime.

9               And since Congress adopted this

10      statute modeled on that other statute, the most

11      sensible thing to do, I would submit, is to

12      interpret "in relation to" the same way.

13              Now, Mr. Chief Justice, you had said

14      that you wanted to address a question to me

15      about the three hours of harm and whether there

16      really were three hours of harm.  I'd like to

17      address that.  Yes, there were.  There's a

18      factual dispute between the defendant and us

19      about whether Medicaid billed on a rolling

20      12-month basis or a calendar year basis.

21              The evidence supporting our view is

22      set forth at Joint Appendix pages 19, 20, and

23      27.  And, since this is a sufficiency of the

24      evidence challenge, you should look at the

25      evidence in the light most favorable to us.

1           In addition to that, even if you

2    resolve that factual dispute the way they

3    proposed, it would make no difference, because

4    it would mean that instead of saying three hours

5    of testing are taken out of the rolling 12-month

6    period, Patient L would have lost three hours of

7    testing out of the calendar year period.

8           Now, Justice Gorsuch, I -- I must get

9    back to this question of "in connection with"

10   and the federalism problems.

11          JUSTICE GORSUCH:  Well, let's -- let's

12   -- let's skip that.

13          (Laughter.)

14          JUSTICE GORSUCH:  I think we've beaten

15   that horse, but I do have another question for

16   you since you -- you looked over here.  Maybe

17   you -- maybe you regret that.

18          (Laughter.)

19          MR. SURI:  I regret it already.

20          (Laughter.)

21          JUSTICE GORSUCH:  If we were to reject

22   the government's view, so, yes, you are going to

23   regret it, is there a reducible core?  Is there

24   an alternative?  Is there a backup?  If -- if we

25   reject the idea that every time a real patient's

1    name is used in an overbilling, that that is

2    automatically identity theft, which is your

3    position --

4              MR. SURI:  Yes.

5              JUSTICE GORSUCH:  -- is there

6    something else that the government wishes to

7    purvey today?

8              MR. SURI:  Yes.  If the Court is to

9    rule against us, then I would urge the Court to

10   adopt the Sixth Circuit's interpretation that

11   has been attributed to Judge Sutton, even though

12   he was bound by circuit precedent in adopting

13   that.  And the reason --

14             JUSTICE GORSUCH:  Let's not diminish

15   our colleagues, okay?  But you -- you -- you

16   then are where Mr. Fisher is as an alternative?

17             MR. SURI:  All I'm suggesting is we

18   shouldn't be blaming Judge Sutton for that test

19   --

20             JUSTICE GORSUCH:  Oh.

21             MR. SURI:  -- which we think is

22   incorrect.  But the reason we suggest that that

23   test would be better than the "with law" --

24   "without lawful authority" alternative that Mr.

25   Fisher has suggested is that the "without lawful

1    authority" test raises all sorts of -- that he's

2    proposed raises all sorts of complications about

3    where to draw the line in terms of the level of

4    generality at which authority is being assessed.

5    And the Judge Sutton test avoids those concerns.

6            JUSTICE ALITO:  Well, how does the --

7    what's the justification for that?  What -- what

8    exactly is the Sixth Circuit Sutton test?

9            MR. SURI:  The Sixth Circuit test is a

10   distinction between lies about who received a

11   service --

12           JUSTICE ALITO:  Yeah.

13           MR. SURI:  -- and lies about how and

14   when the service was provided.  We don't think

15   it's justified, which is why we think we prevail

16   in this particular case, but it's the least

17   unjustified approach if you were to rule against

18   us.

19           JUSTICE ALITO:  Well, isn't the "who"

20   question answered by the statutory term, another

21   person?

22           MR. SURI:  No, I took the test that

23   the Sixth Circuit was putting forward to be that

24   the false statement has to be a falsity as to

25   who received a particular service.  So they're

1    not interpreting the term "another person."

2    They're interpreting the term "in relation to"

3    in that context.

4         JUSTICE JACKSON:  Do you dispute that

5    this 1028A is an aggravated nature of the

6    commission of this crime?

7         MR. SURI:  No, I don't dispute that.

8         JUSTICE JACKSON:  All right.  And you

9    suggested in response to me earlier that the

10   aggravation comes from the list of offenses?

11        MR. SURI:  Yes.

12        JUSTICE JACKSON:  Do you agree, as I'm

13   looking at the list of offenses, that it

14   includes things like mail, bank, and wire fraud?

15        MR. SURI:  Yes.

16        JUSTICE JACKSON:  And so you're

17   suggesting that -- that the aggravation alone --

18   it has nothing to do with the use -- the way in

19   which you use?  You can use it --

20        MR. SURI:  Yeah.

21        JUSTICE JACKSON:  -- in the same way

22   as triggering (a)(7) in connection to, but it's

23   just the fact that you're committing mail and

24   wire or bank fraud that subjects you to the

25   two-year man min?

1            MR. SURI:  Yes.  Let me summarize the

2    point in the following way.  If you use

3    someone's identity with respect to a federal

4    misdemeanor, that could be covered by

5    1028(a)(7).

6            If you use it with respect to a

7    federal felony that's on that list, such as mail

8    fraud, then that's aggravated identity theft.

9            JUSTICE JACKSON:  Yes, but (a)(7) also

10    covers felonies.

11            MR. SURI:  State felonies.

12            JUSTICE JACKSON:  Yes, "unlawful

13    activity that constitutes a violation of federal

14    law."  And I appreciate that that sweeps in

15    misdemeanors, but --

16            MR. SURI:  Yes.

17            JUSTICE JACKSON:  -- you're suggesting

18    that the two-year mandatory minimum penalty in

19    this area of fraud is only distinguishable on

20    the basis of the fact that you could do -- you

21    -- you could be charged with a misdemeanor under

22    (a)(7), that that's the difference, that's the

23    delta between the two?

24            MR. SURI:  That is the difference

25    between the two.  And, remember, (a)(7) in one

1    respect is harsher than 1028A because it has a

2    five-year maximum penalty.

3                   So, under 1028A, you -- you're getting

4    --

5                   JUSTICE JACKSON:  Of course, that's

6    not the function of mandatory minimums.  I mean,

7    they're not really -- I appreciate that it has a

8    higher top level, but Congress, when it -- when

9    it enacts a mandatory minimum, is constraining

10   judicial discretion with respect to what you can

11   impose as a penalty.  And usually Congress does

12   that in situations in which it has identified

13   substantially more serious or more egregious

14   conduct on the part of the person who is subject

15   to the mandatory minimum.

16                  And what's strange to me about your

17   argument is that you're saying, in this

18   situation, unlike many others, we don't care

19   about that.  We're not focused on the fact that

20   it's necessarily more egregious.  We're just

21   looking at the list of offenses, and, to the

22   extent a misdemeanor could be charged in the

23   other world, that -- that justifies a two-year

24   mandatory minimum in this one?

25                  MR. SURI:  Let me take the worst

 1    version of that hypothetical for us and say

 2    Congress has enacted two identical statutes and

 3    one has a mandatory minimum and one doesn't, and

 4    it's entirely up to the prosecutor which of

 5    those charges is -- is brought.

 6           This Court has held specifically that

 7    that is not a violation of the Constitution.  I

 8    believe the case is United States against

 9    Batchelder if I'm remembering correctly.

10           JUSTICE JACKSON:  All right.  I

11    appreciate that.  But, here, we don't have two

12    entirely identical statutes.  We have ones that,

13    in fact, use different terms.

14           So why would we interpret them to be

15    identical?  I mean, even if we've said that's

16    okay to do, we have "in connection with" in one

17    and we have "during and in relation to" in

18    another.

19           MR. SURI:  I --

20           JUSTICE JACKSON:  And you're asking us

21    to interpret "during and in relation to" as if

22    it is the same.

23           MR. SURI:  I'm not asking you to

24    interpret them as if they're the same.  I think

25    that was the point of my colloquy with Justice

```
1    Gorsuch.  They're different.

2              JUSTICE JACKSON:  But you can't tell

3    me what difference "facilitates" makes.  Your --

4    your definition is facilitates, and so all I

5    want to know is, why is that any different than

6    "in connection with"?

7              MR. SURI:  "In connection with" is

8    used alongside with "intent to aid" -- "commit

9    or to aid or abet."  And you could read that

10   ejusdem generis to be similar to "with intent to

11   commit or to aid or abet."  And you don't have

12   that contextual limitation with respect to

13   "during and in relation to."

14              In the phrase "during and in relation

15   to," the word "during" is what is doing most of

16   the limiting work.  The word "during" is saying

17   that the use of the identity must be

18   contemporaneous with the crime.  So that's

19   already limiting the universe quite a bit.

20              Now, within that context, "relation

21   to" simply serves to exclude fortuities, cases

22   in which it's a coincidence that the name was

23   used at the same time as the commission of that

24   particular crime.

25              JUSTICE ALITO:  Speaking of ejusdem
```

1    generis, could you address the argument

2    regarding the application of that canon to the

3    statutory terms -- terms use, possess, transfer?

4            MR. SURI:  Yes, Justice Alito.  I

5    think that the presence of the term "possess"

6    strongly supports our interpretation, and the

7    reason is that it would be quite odd for this

8    statute to prohibit the passive possession of

9    another person's name, to prohibit a

10   particularly egregious type of use, namely, use

11   for the purpose of impersonation, but to cover

12   nothing in between the active uses that fall

13   short of impersonation.  There's no reason to

14   think Congress would have included that

15   discontinuity in the statute.

16           In addition, I think Justice Barrett

17   raised the question that "transfer and possess"

18   could be read to refer to circumstances in which

19   the information is stolen.  And I agree with

20   that.

21           But "use" has to be doing some

22   independent work.  If you've stolen the

23   information, you've already possessed it without

24   lawful authority.  And in order to give "use"

25   some independent work to do, you have to make

1    sure that there -- there isn't a stealing

2    element built into that.

3              CHIEF JUSTICE ROBERTS:  Thank you,

4    counsel.

5              Justice Thomas, anything further?

6              Justice Alito?

7              Justice Sotomayor?

8              Justice Kagan?

9              JUSTICE KAGAN:  Mr. Suri, you -- just

10   on this question of "without lawful authority,"

11   different kind of issue, in your brief, you say

12   that means if he uses it with permission -- no,

13   sorry, if he uses it without permission or --

14   here's what I want to ask you about -- if he

15   uses it with permission but the conferral of

16   that permission contravened some other law.

17              So suppose somebody had said to this

18   doctor -- that Patient L had said to this

19   doctor, you know, you gave me five hours of

20   service X, but you've been a great doctor; I'm

21   happy for you to bill 20 hours of some more

22   expensive service.

23              Would that count as without lawful

24   authority or not?

25              MR. SURI:  We would say that we could

1    prosecute that case, but that's a more difficult

2    case and would raise issues that are not present

3    here.  In that hypothetical, unlike this case,

4    there would be authority, and the question would

5    be whether the authority was lawful.

6         The argument on the other side would

7    be that "lawful" should be interpreted to apply

8    only to procedural unlawfulness.  You've held a

9    gun to the person's head in order to extract the

10   consent.  But you could also interpret "lawful"

11   to include substantive unlawfulness.

12        JUSTICE KAGAN:  So you think it goes

13   that far, but you're saying, you know, don't

14   worry about it, we can do that next case?

15        MR. SURI:  Correct.

16        JUSTICE KAGAN:  And last question is,

17   just coming back to the Judge Sutton test, which

18   may or may not be the Judge Sutton test, how do

19   you understand the Judge Sutton test to work

20   with respect to hypotheticals which I take the

21   Petitioner to have conceded, which is like

22   billing cancer services, billing some other

23   product entirely, not psychological services now

24   but something else entirely.

25        How does the Judge Sutton test work

1    with relationship to those hypotheticals --

2                MR. SURI:  I think --

3                JUSTICE KAGAN:  -- which also means

4    with connection to those hypotheticals.

5                (Laughter.)

6                MR. SURI:  I think the fairest answer

7    to that question is that the opinion doesn't

8    address that, and, therefore, I'm not sure how

9    the Sixth Circuit would resolve that issue.

10               We would suggest that if the Court

11   adopt that test, it'd say that those

12   hypotheticals are covered, because it seems

13   pretty clear that the fraud in that case is in

14   relation to the use of the name and also that

15   it's without lawful authority.

16               JUSTICE KAGAN:  Right.  But, if I

17   understood the Judge Sutton test to be asking,

18   well, was there a misrepresentation with respect

19   to identity, it would seem as though in those

20   hypotheticals there is no misrepresentation with

21   respect to identity.  So I would think -- I

22   guess I was a little bit surprised that you came

23   out in favor of the Judge Sutton test as your

24   preferred way of losing because I would think

25   then that you lose those set of cases.

1              MR. SURI:  Judge Sutton suggested that

2    if no one received a particular service and you

3    say that someone did, that is a

4    misrepresentation as to identity.  So, in the

5    cancer services example, the clinic is providing

6    cancer services to no one and you're still

7    saying you provided it to Patient L, that is a

8    misrepresentation as to identity as he conceived

9    of the test.

10             JUSTICE KAGAN:  I see.  And then how

11   would he separate or the -- somebody received

12   psychological services from a certain level of

13   psychologist but not from a psychiatrist, let's

14   say?

15             MR. SURI:  I don't think those should

16   be separated, Justice Kagan.  That's precisely

17   why we think we should prevail in this case.

18   There is no principal distinction between those.

19             CHIEF JUSTICE ROBERTS:  Justice

20   Gorsuch?

21             Justice Kavanaugh?

22             JUSTICE KAVANAUGH:  In the court of

23   appeals, Judge Costa's opinion said that this

24   Court's precedents had sent an "unmistakable"

25   message that "[c]ourts should not assign federal

 1    criminal statutes [of] a 'breath-taking' scope

 2    when a narrower reading is reasonable."

 3         And the Petitioner also cites a long

 4    line of cases you're familiar with, Marinello,

 5    Van Buren, Kelly, the list goes on, where we

 6    have rejected, I would say, the broadest

 7    interpretation of criminal statutes, the literal

 8    reading as compared to the ordinary reading of

 9    criminal statutes, based on fair notice concerns

10    and not trapping the unwary or increasing the

11    sentence on an unwary person.

12         So what -- why does this case not fall

13    within that concern and with that body of

14    precedent about reading it as broadly as you

15    possibly could and thereby raising fair notice

16    concerns of the kinds that Judge Costa raised?

17         MR. SURI:  Because this statute,

18    unlike the statutes in all of those other cases,

19    comes into play only if someone has committed a

20    predicate crime.  In all of the cases that

21    you've just mentioned, there was a concern that

22    law-abiding individuals would be prosecuted by

23    the federal government for routine conduct.

24         For example, in Marinello, you could

25    be prosecuted under the interpretation that was

1    advanced there for paying someone in cash rather

2    than paying by check.  And in Van Buren, there

3    was a concern that you could prosecute people

4    who used their computers at work to check sports

5    scores.

6         There's no concern like that in this

7    case.  In this case, the statute at issue here

8    comes into play only if a predicate federal

9    offense has already been committed.

10    JUSTICE KAVANAUGH:  Well, that's

11    similar to an argument I heard years ago from

12    the government about mens rea:  Don't worry

13    about mens rea requirements for sentence

14    enhancements as opposed to the crime itself.

15    And I didn't find that persuasive then because

16    the concern about sentence enhancements is -- is

17    still, as Justice Gorsuch said earlier, you

18    know, the -- the ordinary citizen may know,

19    okay, well, this is going to trigger a certain

20    amount of punishment, but you're on no notice

21    that it could trigger a mandatory minimum or a

22    significantly increased amount of punishment.

23         So don't the same concerns about fair

24    notice still kick in in that situation, where

25    you're talking about an enhancement as to the

1    underlying crime?

2          MR. SURI:  I don't think the same

3    concerns kick in.  I think -- I -- I appreciate

4    that the concerns do arise, but they're

5    mitigated by the fact that the person has to

6    have committed a predicate crime in the first

7    place.

8          And there is no danger of giving

9    federal prosecutors the power to turn otherwise

10   law-abiding citizens into criminals.  That

11   simply doesn't arise with respect to this

12   statute.

13          JUSTICE KAVANAUGH:  Thank you.

14          CHIEF JUSTICE ROBERTS:  Justice

15   Barrett?

16          Justice Jackson?

17          JUSTICE JACKSON:  Can I just quickly

18   get your understanding of the Fifth Circuit's

19   view of "without lawful authority" and whether

20   or not the government endorses it?

21          MR. SURI:  I don't take the Fifth

22   Circuit to have taken a view on "without lawful

23   authority."  It wasn't raised at the panel

24   stage, and at the en banc stage, all the Fifth

25   Circuit did was say we affirm for the reasons

1    given in the panel opinion.

2              JUSTICE JACKSON:  Oh, so you don't

3    think they held that "without lawful authority"

4    means to use it to commit a crime?

5              MR. SURI:  No, I don't think they did.

6              JUSTICE JACKSON:  What -- is that the

7    government's position or no?

8              MR. SURI:  No, that's not the

9    government's position.

10             JUSTICE JACKSON:  What is the

11   government's position?

12             MR. SURI:  The government's position

13   is that a person acts without lawful authority

14   only if he uses the means of identification in a

15   manner that requires prior authorization, but he

16   either didn't get that authorization or the

17   authorization was conferred in an invalid way.

18             And I think that limitation eliminates

19   a lot of the parade of horribles that arises on

20   the other side.  So circumstances in which

21   you're simply addressing someone by his name or

22   mentioning his name or talking about him or

23   making a statement about him wouldn't be covered

24   by this phrase because those don't require prior

25   authorization in the first place.  Neither --

    1            JUSTICE JACKSON:  So -- you can end
    2    where you started, which is with the waiter
    3    hypothetical.  The government's view is that all
    4    of those would be without lawful authority?
    5            MR. SURI:  Those would be without
    6    lawful authority because you do need someone's
    7    permission to charge his credit card in the same
    8    way you do need someone's permission to bill
    9    something to his Medicaid number.
   10            JUSTICE JACKSON:  Thank you.
   11            CHIEF JUSTICE ROBERTS:  Justice
   12    Sotomayor?
   13            JUSTICE SOTOMAYOR:  A couple
   14    follow-ups.  In the Bond case, clearly, the
   15    woman who poisoned the mistress or the person
   16    she suspected of being a mistress wasn't a
   17    law-abiding citizen, and we still narrowed that
   18    statute, correct?
   19            MR. SURI:  Correct.
   20            JUSTICE SOTOMAYOR:  Number two,
   21    following up on what Justice Jackson just said,
   22    if I disagree with you, reading the record,
   23    because I have, it was very clear that the Fifth
   24    Circuit said "without lawful authority" exists
   25    whenever someone uses the name -- the means of

1    identification of another person to commit a

2    crime.

3              You argued the same thing.  That's the

4    jury instruction that was given to the jury.  If

5    this is my view of the evidence, where does that

6    leave us on this case?  Do we vacate and remand

7    and say that's too broad, now pay attention to

8    what the scope of "without lawful authority"

9    might mean?  It's unsatisfying, by the way, but

10   is that what we do?

11             MR. SURI:  No.  You would still rule

12   for us, and the reason is that they haven't

13   challenged the jury instructions here.  In fact,

14   they agreed to the jury instructions that were

15   given.

16             This is a sufficiency of the evidence

17   challenge.  The issue is whether the evidence

18   supports findings on each of the elements of the

19   crimes, not whether the jury was instructed

20   properly.

21             JUSTICE SOTOMAYOR:  Thank you.

22             CHIEF JUSTICE ROBERTS:  Thank you,

23   counsel.

24             Mr. Fisher.

25

1           REBUTTAL ARGUMENT OF JEFFREY L. FISHER

2                ON BEHALF OF THE PETITIONER

3           MR. FISHER:  Thank you.  I'd like to

4      first -- first address a couple things about the

5      two different components of the statutory text

6      that we've been discussing today and then turn

7      to consequences.

8                So, first, on the statutory text,

9      we've talked about the "in relation to" element

10     and the "without lawful authority" element.  On

11     "in relation to," forgive me, but I'll turn back

12     to just -- Judge Sutton's opinion and point out

13     at page 628 of that opinion, in describing the

14     Sixth Circuit's prior case, he said the Sixth

15     Circuit held quite correctly that this -- that

16     the claim of the stretchers did not fall within

17     the statute.  So he not only discussed the prior

18     case, he endorsed it.

19               And that paragraph says, if the lie

20     just goes to about the nature of the services

21     provided, not who received them, it does not --

22     it is not falling within the "in relation to"

23     element of the statute.

24               So we think that would resolve the

25     case in our favor in a way that Judge Sutton has

1    explicitly endorsed.

2              As to "without lawful authority," I

3    think Justice Sotomayor is right, the only

4    argument ever made below was the one you

5    described.  It's at JA 31 and 32.

6              And, Justice Jackson, at pages 66a and

7    67a of the Petition Appendix, the Fifth Circuit

8    panel decision, which was adopted by the en banc

9    court, quite directly adopts that reading of the

10   "without lawful authority" element in this case

11   and applies it to Mr. Dubin's conduct, and then

12   the en banc court, of course, accepts that.  So

13   the Fifth Circuit quite directly did address

14   that issue and got it wrong.

15             Now we heard a suggestion in the brief

16   and I just heard it a moment ago that the

17   government maybe doesn't agree anymore with the

18   argument it made below, that -- that any use to

19   violate the law constitutes "without lawful

20   authority," but, with due respect to my friend,

21   I just don't understand what their alternative

22   test means.

23             No court has ever adopted it.  And

24   this notion that you need to have permission --

25   it's only something that you need to have

1    permission for to do, I don't even understand
2    how that works with respect to the one example
3    we used in the briefs, which is putting a name
4    on an envelope or making a phone call because
5    things like the Do Not Call List and Junk Fax
6    restrictions under federal law do require
7    permission to send those sorts of things.
8              So I don't understand, as we said in
9    our reply brief, how that test would even work.
10   And, at the very least, you'd just be
11   interjecting another layer of vagueness and
12   difficulty into the statute.  So we think it's
13   best to stick with what the government argued
14   below and what the Fifth Circuit decided.
15             Now let me turn to the scope and the
16   consequences of this very broad position that
17   the government has endorsed, and I think the
18   government stood here and said yes, every
19   mischarge by a waiter, a cashier, et cetera,
20   constitutes -- that -- that violates the mail or
21   wire fraud statute would fall within our
22   understanding.  That's an incredibly broad
23   sweep.
24             I heard some resistance about the
25   healthcare fraud statute.  So there was an

1    admission that virtually every provider case

2    would fall within the statute.

3         Now the government in its brief tried

4    to give a few other examples, and we answered

5    those in our reply brief, and this is at pages

6    18 and 19 of our reply brief.  We point out that

7    the examples the government gave would require

8    the use of somebody's name.  So, again, I heard

9    today the notion of applying for Medicare

10   benefits and then lying or Medicaid benefits and

11   lying about your age or your smoking.

12        But, to do that application, you have

13   to list your doctor, your employer, a contact at

14   your employer.  You're putting names all over

15   that form.  And the form won't be approved if

16   those names are not there.

17        So exactly the same argument the

18   government is making today would apply to the

19   only hypotheticals that the government has put

20   forth in a brief, and I -- some of these things

21   were new today.  I don't know every last detail,

22   but I bet you, if you run down the details,

23   you'll find names on those forms as well.

24        And I think that leads me to the

25   consequences and the real-world consequences for

1     this.  So it's not just that a mandatory minimum

2     comes into play where it wouldn't otherwise come

3     into play.  But what you would be doing by

4     accepting the government's position is creating

5     a world where every simple fraud prosecution is

6     now also chargeable as aggravated identity

7     theft.

8              And what happens then?  Well, in a

9     world of plea bargaining, that becomes, in the

10    words that other prosecutors have used, powerful

11    plea bargaining leverage we can use to procure

12    quick pleas in federal fraud cases.

13             We're not talking about an aggravated

14    penalty for actually misusing somebody's name.

15    We're talking about in practical terms a very

16    strong cudgel to use against people to procure

17    pleas in very low-level fraud cases.

18             And that's not what Congress was aimed

19    for in this case.  Congress wasn't trying to

20    create a two-year mandatory minimum all of a

21    sudden for ordinary fraud offenses.  It was

22    aimed at a particular new form of misconduct

23    that's simply not present in the words

24    "aggravated identity theft" and on the facts of

25    this case.

1              If there are no further questions,

2    I'll submit.

3              CHIEF JUSTICE ROBERTS:  Thank you, Mr.

4    Fisher, Mr. Suri.  The case is submitted.

5          (Whereupon, at 11:36 a.m., the case

6    was submitted.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# $

**$101** [1] 3:14
**$282,000** [1] 67:4
**$338** [2] 67:2,19

# 1

**1** [1] 31:22
**10:03** [2] 1:15 3:2
**101** [1] 2:10
**1028** [2] 25:18 75:13
**1028(a)(7** [3] 69:22 75:10 86:5
**1028(c** [1] 69:22
**1028A** [13] 3:21 26:1 27:19 60:11 68:12 72:24 73:4 74:24 75:9,12 85:5 87:1,3
**11:36** [1] 106:6
**12** [1] 4:20
**12-month** [2] 81:20 82:5
**1347** [1] 36:17
**1424** [1] 76:1
**15** [1] 31:22
**18** [1] 104:6
**1805** [1] 21:3
**19** [2] 81:22 104:6

# 2

**2.5** [1] 65:15
**2.75** [1] 66:11
**20** [2] 81:22 91:21
**2023** [1] 1:11
**22-10** [1] 3:4
**230** [1] 19:25
**27** [2] 1:11 81:23

# 3

**3** [1] 2:4
**3.0** [1] 66:11
**31** [3] 6:20 30:5 102:5
**32** [3] 6:20 30:5 102:5

# 4

**4.8** [1] 19:10
**4.9** [1] 19:10

# 6

**628** [1] 101:13
**63** [1] 2:7
**66a** [2] 6:21 102:6
**67a** [2] 6:21 102:7

# 9

**924(c** [2] 81:3,3

# A

**a)(7** [20] 25:18 26:17,24 27:1 48:20 50:9,20 59:25 60:9 61:12 68:1,11,12 70:4 72:24 75:2 85:22 86:9,22,25
**a)(7)'s** [1] 68:11
**a.m** [3] 1:15 3:2 106:6
**abet** [2] 89:9,11
**above-entitled** [1] 1:13
**abridge** [1] 22:2

**abridgement** [2] 21:22 24:6
**abridgements** [1] 21:16
**absolute** [1] 42:25
**abstract** [1] 34:20
**absurd** [1] 39:16
**absurdities** [2] 39:19 40:18
**accept** [2] 43:7 80:12
**accepted** [2] 37:6 80:11
**accepting** [1] 105:4
**accepts** [2] 78:10 102:12
**accident** [1] 66:15
**accidentally** [1] 66:19
**account** [4] 32:11,14 64:12,18
**acknowledge** [3] 10:7 55:23 67:5
**across** [1] 70:8
**Act** [2] 20:1,20
**acted** [1] 52:6
**acting** [2] 40:13 63:19
**active** [1] 90:12
**activity** [2] 25:24 86:13
**acts** [1] 98:13
**actual** [4] 9:14 12:2 20:12 38:21
**actually** [8] 10:3 18:1 20:23 22:25 58:16,21 79:17 105:14
**add** [1] 13:10
**addition** [2] 82:1 90:16
**additional** [3] 8:23 38:19,20 66:21 75:19
**address** [7] 13:17 81:14,17 90:1 93:8 101:4 102:13
**addressing** [1] 98:21
**admission** [1] 104:1
**admitted** [3] 31:24 74:14
**admittedly** [1] 18:24
**adopt** [3] 37:2 83:10 93:11
**adopted** [3] 81:9 102:8,23
**adopting** [1] 83:12
**adopts** [1] 102:9
**advance** [1] 55:19
**advanced** [2] 51:16 96:1
**affects** [1] 70:5
**affirm** [1] 97:25
**age** [1] 104:11
**aggravated** [22] 3:12 5:8 21:7 26:1,9 27:15,24 30:21 38:16 39:8,25 42:8 60:1 62:18 73:25 76:9,14 85:5 86:8 105:6,13,24
**aggravating** [1] 26:19
**aggravation** [2] 85:10,17
**aggressively** [1] 22:7
**ago** [2] 23:16 96:11 102:16
**agree** [11] 26:17 31:13,15 46:20 55:21 56:17 58:12 80:25 85:12 90:19 102:17
**agreed** [1] 100:14
**agreeing** [1] 47:8
**ahead** [3] 8:20 10:16 11:1

**aid** [3] 89:8,9,11
**aimed** [2] 105:18,22
**ALITO** [15] 19:5,7,13 24:18 36:22,23 37:18 39:9 64:24 84:6,12,19 89:25 90:4 91:23 79:6
**allegation** [1] 65:14
**alleged** [1] 9:11
**allow** [1] 15:11
**alluded** [1] 52:25
**almost** [6] 25:22 39:4 72:22 78:18,21,23
**alone** [2] 12:14 85:17
**alongside** [1] 89:8
**already** [6] 7:2 79:25 82:19 89:19 90:23 96:9
**alternative** [5] 19:2 82:24 83:16,24 102:21
**Amazon** [1] 16:11
**Amazon.com** [1] 63:24
**ambiguity** [1] 80:14
**ambiguous** [2] 21:9 80:13
**ambulance** [3] 45:13,14 59:3
**America** [3] 53:2 68:7 70:19
**amount** [6] 66:25 67:6,8,10 96:20,22
**amounts** [1] 66:23 67:19
**analogous** [1] 64:15
**analogy** [2] 7:14,15
**analysis** [2] 4:13 7:24
**another** [19] 4:1 25:13 37:5 38:11 43:18,24 52:23 55:8 73:15 76:3,5,25 82:15 84:25 20 85:1 88:18 90:9 100:1 103:11
**answer** [11] 5:12,19 14:9, 13,21 18:4 38:8 49:6 62:6 71:19 93:6
**answered** [2] 84:20 104:4
**answering** [1] 38:3
**anticipated** [1] 71:25
**anybody** [1] 13:24
**anybody's** [1] 41:21
**anytime** [2] 16:24 78:15
**App** [1] 6:21
**apparent** [2] 21:25,25
**appeal** [1] 19:14
**appeals** [1] 94:23
**appear** [1] 34:14
**APPEARANCES** [1] 1:17
**Appendix** [6] 6:20 9:16 40:15 52:15 81:22 102:7
**application** [40] 90:2 104:12
**applies** [1] 102:11
**apply** [3] 72:2 92:7 104:18
**applying** [2] 65:1 104:9
**appreciate** [8] 57:7 65:19 68:8 74:9 86:14 87:7 88:11 97:3
**approach** [1] 84:17
**appropriate** [1] 6:8

**approved** [1] 104:15
**April** [1] 31:21
**arbitrarily** [1] 61:8
**area** [1] 86:19
**aren't** [4] 16:12 47:20 71:23 79:6
**arguably** [1] 67:24
**argued** [3] 6:17 100:3 103:13
**argument** [32] 1:14 2:2,5,8 3:4,7 19:13,21,24 24:14 26:13 29:5 30:5 31:19,25 34:16 40:4,14 42:21 51:24 52:1,16 55:19 63:7 64:22 87:17 90:1 92:6 96:11 101:1 102:4,18 104:17
**arise** [4] 72:1 76:15 97:4,11
**arises** [1] 98:19
**around** [2] 6:4 51:10
**arrays** [1] 44:5
**artifices** [1] 36:18
**aside** [5] 37:4 50:1,4 71:16,16
**assessed** [1] 84:4
**assign** [1] 94:25
**Assistant** [1] 1:20
**associate** [4] 9:22 19:11 30:14 46:7
**assume** [4] 12:7 34:15 44:4 72:24
**assumed** [1] 14:11
**assuming** [1] 8:12
**attach** [1] 61:25
**attaches** [1] 60:2
**attempt** [2] 22:2 36:18
**attention** [1] 96:7
**attributable** [1] 70:22
**attributed** [1] 83:11
**audience** [1] 49:16
**authority** [71] 4:8 7:8,13,18, 20,21 8:8,10 9:6 10:6,11, 19 14:10,11 15:1,8,11,14, 19,25 16:7,14 17:9,14,18 18:3,6,12 19:4 21:10 29:3 34:21 36:24 37:8 38:13 40:13 47:10,11 48:17 49:8 52:3,7 58:5 61:13 63:20,20,23 70:2 76:25 80:8 83:24 84:1,4 90:24 91:10,24 92:4,5 93:15 97:19,23 98:3,13 99:5 100:8 101:8 101:20 102:2,10,20
**authorization** [6] 8:9 14:16,18,20 98:15,16,17,25
**authorized** [7] 5:14,15,20 6:3,7 7:6 8:24
**automatically** [1] 83:2
**avoid** [2] 68:25 71:13
**avoidance** [3] 43:16 59:20,22
**avoids** [1] 84:5
**away** [1] 31:17

## B

**back** [10] 11:11 14:12 20:17 21:3 24:4 29:1 42:12 82:9 92:17 101:11
**back-end** [1] 25:5
**background** [1] 43:19
**backup** [1] 82:24
**bad** [1] 72:8
**banc** [3] 97:24 102:8,12
**bank** [2] 85:14,24
**bar** [1] 13:12
**bargaining** [3] 25:5 105:9,11
**Barrett** [14] 55:2,3,14,22 56:17,21,24 57:5,18 58:12, 18 59:11 90:16 97:15
**base** [6] 25:19,25 26:9,18 35:12 47:23
**based** [1] 95:9
**basically** [3] 26:23 42:23 59:24
**basis** [3] 81:20,20 86:20
**Batchelder** [1] 88:9
**beaten** [1] 82:14
**become** [2] 50:8 77:13
**becomes** [5] 13:18 19:4 38:12 49:10 105:19
**began** [1] 35:10
**behalf** [8] 1:19,21 2:4,7,10 3:8 63:8 101:2
**behavior** [1] 74:5
**believe** [3] 60:5 61:24 88:8
**believing** [1] 75:3
**below** [4] 3:16 102:4,18 103:14
**benefit** [1] 33:20
**benefits** [3] 32:6 104:10,10
**besides** [2] 43:7 52:23
**best** [6] 5:18 10:10 29:9 47:14 51:24 103:13
**bet** [1] 104:22
**better** [5] 21:5 32:10 53:13 81:1 83:23
**better-written** [1] 33:6
**between** [16] 18:17,19 26:24 46:22,22 51:19 60:9 61:8 66:10 69:9 81:18 84:10 86:23,25 90:12 94:18
**beyond** [3] 3:13 20:9 34:10 37:22 52:6 66:17
**big** [5] 11:21 25:4 28:2 66:3, 8
**bill** [24] 4:9 6:7 9:4,14 10:2, 11,18 15:21 18:6,8 28:15, 18 36:14,19 42:6 44:18,20 52:10,10 63:14,21 68:9 91:21 99:8
**billed** [4] 38:5 51:4,4 81:19
**billing** [5] 5:21 9:18 16:18 30:6 31:16,20 38:11,20 49:12,13 79:13 92:22,22
**bills** [5] 16:24 17:23 19:9, 10 78:16

**bit** [4] 45:5 69:4 89:19 93:22

**blaming** [1] 83:18

**Blocking** [1] 20:6

**blunt** [1] 18:24

**body** [1] 95:13

**Bond** [2] 48:14 99:14

**books** [1] 23:2

**both** [7] 17:25 25:5 42:18 44:23 51:16,19 58:4

**bottle** [3] 63:17 68:9 72:11

**bound** [1] 83:12

**breadth** [1] 53:7

**breaking** [1] 3:13

**breath-taking'** [1] 95:1

**Breyer** [1] 44:6

**bribe** [1] 78:10

**brief** [21] 4:18 7:16 27:5 30:20 31:22 40:16 46:19 50:12 52:15 53:8 54:13 55:6 56:9 77:4 91:11 102:15 103:9 104:3,5,6,20

**briefs** [1] 103:3

**bringing** [1] 59:23

**brings** [1] 14:12

**broad** [13] 4:15 5:5 20:2 34:20 35:5 40:24 55:16,16 62:16 65:9 100:7 103:16,22

**broader** [3] 5:24 75:1,6

**broadest** [2] 37:8 95:6

**broadly** [2] 80:10 95:14

**brought** [2] 70:5 88:5

**building** [2] 7:18,21

**built** [1] 91:2

**bunch** [1] 9:1

**Buren** [4] 23:18 43:24 95:5 96:2

**burglary** [3] 7:16 22:16,16

**but-for** [2] 13:14 14:5

**C**

**c]ourts** [1] 94:25

**calendar** [2] 81:20 82:7

**California** [1] 1:18

**call** [3] 80:20 103:4,5

**called** [2] 44:13 50:16

**calling** [3] 60:5 61:2,24

**came** [3] 1:13 65:10 93:22

**camp** [1] 4:6

**cancer** [1] 17:6,18 18:18 44:18 45:24 46:18 47:8 53:19 92:22 94:5,6

**cannot** [5] 7:1 16:25 51:2,5 52:1

**canon** [1] 37:23 48:12 52:23 59:19 90:2

**canons** [1] 48:9

**caption** [5] 19:17 20:4,10,11,14

**capture** [1] 24:16

**captured** [1] 24:9

**car** [1] 5:25

**card** [19] 8:4,6,11 11:16 12:4 15:20 16:8,9 48:25 49:

**20** 63:14,17,21 64:10,12,14,15 70:8 99:7

**care** [2] 12:4 87:18

**careful** [1] 5:10

**carry** [1] 43:20

**Case** [73] 3:4 4:1,19 6:16,17 9:14 13:16 19:20 20:18 21:4 25:9 30:3 31:4 32:8 33:16,20 34:4,5 35:10 37:11,12,13 41:9,24 45:11,12,12,17,22 46:4,8,15,16 48:10 52:12 57:9,25 58:25 59:1,10 64:17 65:5 66:6,23 67:2 69:7 73:9 78:3 79:8,9,10 84:16 88:8 92:1,2,3,14 93:13 94:17 95:12 96:7,7 99:14 100:6 101:14,18,25 102:10 104:1 105:19,25 106:4,6

**case-by-case** [1] 32:9

**cases** [33] 19:22 22:13 24:8 26:22 31:2 32:1,4 35:2,2,3 38:9 41:6 42:25 43:22,25 45:10 46:16 47:15 54:15 56:14,25 57:14,14 62:25 70:23 78:24 89:21 93:25 95:4,18,20 105:12,17

**cash** [1] 96:1

**cashier** [3] 16:24 28:17 103:19

**category** [4] 45:8 46:20,21,22

**caused** [1] 32:23

**causing** [1] 79:14

**cements** [1] 23:25

**center** [1] 5:22

**certain** [3] 45:19 94:12 96:19

**certainly** [4] 40:4 41:15 45:21 80:11

**cetera** [4] 19:12 28:18 29:16 103:19

**challenge** [1] 81:24 100:17

**challenged** [1] 100:13

**challenging** [1] 10:8

**charge** [11] 8:12,23 15:10,21,23,24 16:9 50:19 64:13,17 99:7

**chargeable** [2] 50:14 105:6

**charged** [7] 15:18 17:6 36:10 54:20,22 86:21 87:22

**charges** [6] 8:8 5,16,25 16:10 88:5

**charging** [8] 4:1 11:17 12:5 15:9,13 25:9 40:15 52:14 64:12

**cheated** [1] 79:20

**check** [3] 12:7 96:2,4

**CHIEF** [37] 3:3,9 12:1,19,22,25 21:3 30:25 31:5 32:2,3,15,19 33:9,15 34:8 36:22 39:10 42:12 44:11 48:6 53:

**16** 55:1 59:12 63:4,9 75:14 76:7,11 78:25 81:13 91:3 94:19 97:14 99:11 100:22 106:3

**child** [1] 40:21

**child's** [1] 41:1

**childcare** [1] 40:22

**circle** [1] 29:1

**Circuit** [17] 5:5 29:8 30:9 51:13 52:21 83:12 84:8,9,23 93:9 97:22,25 99:24 101:15 102:7,13 103:14

**Circuit's** [9] 3:11 6:22 16:23 40:10 42:22 51:20 83:10 97:18 101:14

**circulating** [1] 52:17

**circumstances** [2] 90:18 98:20

**cites** [1] 95:3

**citizen** [2] 96:18 99:17

**citizens** [1] 97:10

**city** [1] 6:4

**civil** [1] 20:3

**claim** [9] 9:15 12:15 67:2 68:4 101:16

**claimed** [1] 30:12

**claims** [1] 67:4

**clarified** [1] 67:16

**Clause** [4] 63:1 70:17,20,23

**clear** [6] 20:15 48:15 60:8 69:14 93:13 99:23

**clearly** [2] 44:5 99:14

**client** [2] 9:12 53:3

**clinic** [1] 94:5

**close** [2] 18:22 26:12

**closer** [1] 17:4

**closing** [2] 30:5 51:23

**clue** [2] 80:9,14

**co-conspirator** [1] 39:21

**code** [6] 9:17,18 46:5,10 53:11,12

**coincidence** [1] 89:22

**collapses** [1] 16:20

**colleagues** [1] 83:15

**colloquial** [1] 33:25

**colloquy** [1] 88:25

**come** [6] 16:4 18:22 39:16 41:19 43:17 105:2

**comes** [7] 13:22 38:10 56:12 85:10 95:19 96:8 105:2

**coming** [1] 92:17

**commerce** [4] 70:6,17,19,23

**commission** [2] 85:6 89:23

**commit** [13] 6:23 7:19 13:9,11 40:12 41:1 42:1 52:2 76:23 89:8,11 98:4 102:1

**commits** [3] 28:15 77:18,20

**committed** [16] 6:19 38:1,2 42:13 50:5 52:19 72:3,7,12,14 77:11,16 79:23 95:

**19** 96:9 97:6

**committing** [9] 28:12,16,19 41:18 50:13 59:7 68:8 71:11 85:23

**common** [1] 7:16

**Communications** [1] 20:1

**companies** [1] 77:17

**compare** [1] 62:6

**compared** [1] 95:8

**complaining** [1] 54:19

**completed** [1] 57:22

**complexity** [1] 21:17

**complicated** [1] 22:3

**complications** [1] 84:2

**components** [1] 101:5

**compounded** [1] 53:8

**computers** [1] 96:4

**concede** [3] 69:19,20 70:12

**conceded** [1] 92:21

**conceding** [1] 79:6

**conceived** [1] 94:8

**concept** [1] 65:3

**conception** [1] 75:18

**concern** [5] 95:13,21 96:3,6,16

**concerned** [4] 6:2 33:11 63:2 71:22

**concerns** [6] 84:5 95:9,16 96:23 97:3,4

**concurring** [1] 3:16

**conduct** [39] 3:20 4:5,16 11:13 24:13,15,20,24 25:14 27:12 28:5,10 44:5 72:17 74:5 80:5 87:14 95:23 102:11

**conferral** [1] 91:15

**conferred** [1] 98:17

**confirms** [1] 4:12

**confront** [1] 35:17

**Congress** [22] 4:16,24 18:25 24:15 25:18 26:7 28:2,20 35:4 44:3,4 61:24 65:2 76:12 79:12 81:9 87:8,11 88:2 90:14 105:18,19

**Congress's** [2] 5:10 22:2

**connected** [1] 78:7

**connection** [15] 25:24 26:2,20 60:6 61:14 62:1 68:15 69:7 71:13 73:5,8 77:18 78:6 82:9 85:22 88:16 89:6,7 93:4

**consent** [2] 92:10

**consequences** [7] 27:3 43:21 72:9 101:7 103:16 104:25,25

**consideration** [1] 33:1

**conspiracy** [1] 67:3

**constitutes** [4] 39:7 86:13 102:19 103:20

**Constitution** [1] 88:7

**constitutional** [6] 43:16 59:20,22 61:6 62:13 73:15

**constraining** [1] 87:9

**construe** [2] 35:5 37:20

**construed** [1] 39:3

**contact** [1] 104:13

**contained** [1] 69:22

**contemporaneous** [1] 89:18

**contents** [1] 53:10

**context** [10] 17:4 36:7 39:6 55:17 59:24 66:2,10 81:6 85:3 89:20

**contextual** [2] 4:12 89:12

**contextually** [1] 35:23

**contract** [2] 52:11 77:19

**contrast** [1] 4:22

**contravened** [1] 91:16

**convey** [1] 55:7

**conviction** [3] 27:25 28:1 30:21

**convince** [1] 67:9

**core** [2] 48:3 82:23

**correct** [11] 11:23 13:24 17:7 22:23 23:12 29:21 39:25 41:2,14 48:23 60:21 64:5,6 65:25 92:15 99:18,19

**correctly** [2] 88:9 101:15

**Costa** [1] 95:16

**Costa's** [1] 94:23

**couldn't** [5] 21:18 42:13 57:22 66:17 71:24

**counsel** [6] 31:6 67:14 70:20 71:17 91:4 100:23

**count** [1] 91:23

**country** [1] 4:20

**couple** [8] 6:13 23:15,19,24 37:19 51:23 99:13 101:4

**course** [6] 50:13 64:13 65:11 76:21 87:5 102:12

**COURT** [45] 1:11,14 3:10 5:11,12 7:15 20:17,19,22 22:25 23:3,15,24 24:7 26:21 31:25 35:2,4,25 38:23 39:5 43:22 44:1,9 51:22 57:25 58:4 63:10 64:25 65:10 67:3 68:18 70:10,15 73:10 78:3 81:6 83:8,9 88:6 93:10 94:22 102:9,12,23

**Court's** [7] 22:12 62:25 65:7 70:23 71:21 81:3 94:24

**courts** [8] 20:2,8 24:7 29:10 40:5 51:10 55:20 58:10

**cover** [7] 16:23 24:20,22 42:23 79:8,9 90:11

**coverage** [2] 13:4 33:21

**covered** [11] 12:8 20:21 33:3 65:6 78:17,24 79:3,6 86:4 93:12 98:23

**covers** [5] 4:15 25:14 36:17 42:23 86:10

**create** [2] 62:12 105:20

**creates** [1] 62:24

**creating** [4] 43:12 68:24 73:15 105:4

**credit** [20] 8:4,6,11 11:16

12:3 15:20 32:24 48:25 49:
20 56:9,11 63:14,17,21 64:
10,12,14,14 70:8 99:7
crime [44] 6:19,23 7:3,19 9:
8 13:9,11 17:15 28:13 30:
3 34:1,25 36:2,10 38:2 40:
12 41:18 50:5,13 52:2,19
57:21 59:8,9 61:15,20 66:
20 72:3,7 75:10,11,16,18
77:1 81:8 85:6 89:18,24
95:20 96:14 97:1,6 98:4
100:2
crimes [17] 26:4 50:8,18
60:6,20 61:21 72:9 74:23,
25 75:1,7,7,8 76:13,16,18
100:19
criminal [6] 7:17 20:18 35:
7 95:1,7,9
criminals [1] 97:10
critical [1] 54:9
cudgel [1] 105:16
customer [2] 63:15,16
customer's [1] 63:14

**D**

D.C [2] 1:10,21
danger [1] 97:8
DAVID [1] 1:3
day [4] 15:22 16:6 50:25 54:
19
deal [3] 25:5 28:2 42:5
dealing [6] 29:12 35:7,13
41:5 62:11 66:22
dealt [1] 20:19
debunked [1] 31:25
decide [7] 29:25 50:23 51:
18 57:8,25 58:24 59:14
decided [2] 58:7 103:14
deciding [2] 33:2 45:13
decision [3] 3:11 58:1 102:
8
defend [1] 30:20
defendant [1] 81:18
Defenders' [3] 4:18 40:16
52:15
define [2] 39:14 64:7
defined [2] 22:18 23:9
definition [9] 23:17 39:13,
14 40:25 43:8 64:21 76:6,
9 89:4
definitions [1] 64:10
definitive [1] 73:7
defraud [1] 36:18
defrauding [1] 42:2
delta [2] 77:3 86:23
Department [1] 1:21
dependent [1] 40:21
deprived [3] 31:11 32:6 33:
20
describe [2] 30:10,17
described [5] 30:8,18 58:6
59:2 102:5
describes [1] 29:11
describing [2] 62:8 101:13

description [1] 11:10
descriptive [1] 58:13
design [1] 5:10
detail [1] 104:21
details [1] 104:22
dictionary [1] 23:18
difference [1] 26:24 27:
11 31:8 32:20 33:12 46:13
60:9 75:15 82:3 86:22,24
89:3
different [22] 6:7 10:1,20
14:9 17:24 22:17 26:10 34:
4 36:25 37:13 38:13 46:11
51:13 54:20 56:19 73:5 76:
23 88:13 89:1,5 91:11 101:
5
differently [3] 68:15 69:1
73:10
difficult [2] 38:25 92:1
difficulty [1] 103:12
diminish [1] 83:14
direct [1] 35:1
directly [5] 22:9 47:5 63:1
102:9,13
directs [1] 33:5
disagree [5] 24:17 32:7,8
74:20 99:22
disclaims [1] 13:22
discontinuity [1] 90:15
discretion [2] 43:4 87:10
discretionary [2] 4:17 28:
21
discussed [1] 101:17
discussing [2] 63:12 101:
6
discussion [1] 63:18
disproportionate [1] 78:4
dispute [5] 9:20 81:18 82:2
85:4,7
disputes [1] 14:4
dissent [2] 21:12 22:6
dissents [1] 22:13
distinct [1] 72:25
distinction [5] 69:8,11 79:
12 84:10 94:18
distinguish [1] 14:2 66:10
distinguishable [1] 86:19
district [5] 31:24 32:13 67:
10,18
doctor [4] 37:15 39:19 91:
18,19,20 104:13
doctrines [1] 43:9
doing [8] 4:25 7:22 44:5 58:
17,21 89:15 90:21 105:3
done [5] 15:24 34:22 49:17
68:19 77:7
doses [1] 77:19
doubt [3] 66:18 72:10 79:
21
down [6] 8:5 16:12 39:4 63:
24 77:6 104:22
draw [1] 45:1 80:23 84:3
drawing [5] 18:17,19,24 19:
1 44:17

draws [1] 69:8
drew [1] 79:12
drive [2] 6:3,4
driver [1] 56:16
drop [1] 5:25
drug [2] 77:20,22
DUBIN [10] 1:3 3:4 4:7 5:
14,15 6:18 18:5 24:13 30:
11 52:6
Dubin's [3] 3:20 4:5 102:
11
due [8] 7:10 22:5 32:6 49:4
63:1 73:20 75:13 102:20
DUI [1] 50:3
during [5] 1:5 12:2 26:3 61:19
68:16 81:5 88:17,21 89:13,
14,15,16

**E**

e-mail [1] 13:17
each [2] 52:17 100:18
earlier [4] 63:18 85:9 96:17
easier [1] 10:5
Easterbrook [1] 41:4
Easterbrook's [1] 51:12
easy [3] 45:10 46:15,16
echoes [1] 51:16
effect [3] 27:6 31:21 35:12
56:15 81:8
effectuated [1] 36:11
egregious [14] 4:25 18:9
25:8 28:5,10 34:24 35:14
47:20 74:5,7,9 87:13,20
90:10
egregiousness [2] 26:11
27:11
eight [1] 31:11
either [3] 16:10 72:1 98:16
ejusdem [3] 55:5 89:10,25
elastic [1] 80:10
element [18] 3:23 6:12 7:
22 13:15 14:6 29:18 38:10
58:5,10 64:2 66:14 69:21,
23 91:2 101:9,10,23 102:
10
elements [15] 11:7 14:3 37:
24 58:4 61:10 65:4,6 70:3
72:17,19 76:15,19 80:4,6
100:18
eligible [1] 77:13
eliminates [1] 98:18
else's [1] 22:23
employer [2] 104:13,14
en [3] 97:24 102:8,12
enacted [1] 88:2
enacts [1] 87:9
encapsulation [1] 51:25
end [3] 25:1 35:10 99:1
ended [1] 35:25
endorsed [3] 101:18 102:1
103:17
endorses [1] 97:20
English [1] 30:17
enhancement [4] 34:23

35:12 44:19 96:25
enhancements [3] 50:16
96:14,16
enormously [1] 4:15
enough [7] 15:10 23:23 50:
25 51:22 52:20 58:8,24
enrolling [1] 78:2
ensures [1] 69:23
ensuring [1] 71:22
enter [3] 7:18,21 42:5
entire [1] 67:3
entirely [6] 56:14 88:4,12
92:23,24
entitled [1] 31:12
enumerated [1] 26:4
envelope [7] 13:17,23 14:5
41:9,12,21 103:4
ERISA [2] 26:22 65:10
ESQ [2] 2:3,6,9
ESQUIRE [1] 1:18
essential [2] 13:8,11
essentially [1] 5:8
established [1] 63:19
et [4] 19:12 28:18 29:16
103:19
even [16] 3:15 13:10 36:19
39:23 46:8 47:17 49:19 50:
19 52:11 72:13 76:5 82:1
83:11 88:15 103:1,9
Everyone [1] 28:16
everything [8] 21:19 39:7
41:24 42:7,24 61:16 80:19,
19
evidence [7] 52:6 81:21,24,
25 100:5,16,17
exact [3] 14:16 36:14 38:5
exactly [12] 9:19 10:9 16:
18 24:15 39:14 61:2,10 62:
23,24 73:7 84:8 104:17
example [14] 10:5 13:13
26:22 43:23,24 48:15 49:
20 59:2 75:24 77:12 80:17
94:5 95:24 103:2
examples [8] 43:25 50:2,
11 56:2 77:24 78:8 104:4,
7
exceeds [1] 67:24
exceptions [1] 43:12
exclude [1] 89:21
executive [2] 61:7 78:10
exempt [1] 40:23
exist [1] 32:7
exists [1] 99:24
expectation [1] 10:22
expected [1] 28:3
expensive [1] 91:22
expired [1] 15:25
explain [2] 31:22 69:10
explaining [1] 71:4
explains [1] 4:19
explicitly [1] 102:1
extensive [1] 19:24
extent [2] 73:17 87:22
extra [3] 10:18 11:14,17

extract [1] 92:9
extremely [1] 67:10

**F**

face [1] 39:13
facilitates [4] 64:9 73:4 89:
3,4
facing [1] 28:23
fact [9] 6:18 34:5 73:25 85:
23 86:20 87:19 88:13 97:5
100:13
factor [1] 32:22
factors [1] 31:6
facts [3] 17:13 31:14 105:
24
factual [2] 81:18 82:2
factually [1] 31:23
fail [1] 17:7
fair [4] 68:5 95:9,15 96:23
fairest [1] 93:6
fall [3] 8:3 20 24:23 53:20 90:
12 95:12 101:16 103:21
104:2
falling [1] 101:22
falls [4] 4:6 42:15 44:19 65:
5
false [1] 84:24
falsity [1] 84:24
familiar [2] 26:6 95:4
far [3] 20:10 65:13 92:13
fault [1] 71:1
favor [5] 37:12 57:11 56:19
93:23 101:25
favorable [1] 81:25
Fax [1] 103:5
feature [1] 29:4
February [1] 1:11
federal [30] 4:13,14,18 27:
2,8,12 40:16 48:16 49:23
50:1,5,8,14,18 51:5 52:15
60:20 70:1,13 71:11 72:14
86:3,7,13 94:25 95:23 96:
8 97:9 103:6 105:12
federalism [12] 27:3 48:12
52:24 59:19 68:1,11,22,24
69:19 70:13,17 82:10
federalize [1] 68:3
feel [2] 61:5 80:1
feels [1] 80:3
felonies [2] 86:10,11
felony [4] 71:11 72:13 75:
10 86:7
few [1] 104:4
fictional [3] 30:23 56:14
fictitious [5] 78:22 79:3,6,
8,13
Fifth [16] 3:11 5:5 6:21 16:
23 30:9 40:9 42:22 51:20
52:21 97:18,21,24 99:23
102:7,13 103:14
figure [1] 10:8
find [2] 96:15 104:23
finding [1] 72:17
findings [1] 100:18

**Fine** [4] 15:7 19:23 58:19 71:1
**Finish** [2] 19:7 71:4
**First** [21] 3:21 6:15 12:11 22:5 31:13 37:22 65:9 66:20 67:1 69:11,13,13 72:4 73:4 77:11 78:2 97:6 98:25 101:4,4,8
**first-year** [1] 19:12
**FISHER** [132] 1:18 2:3,9 3:6,7,9 5:13,18 6:10 8:9,17,19,22 9:5,13 10:4,14,17 11:4,8,18,24 12:10,21,24 13:5,20,25 14:8 15:4,15 16:15 17:8,13 18:4,23 19:5,6,8 20:13 21:4,14 22:4,14,24 23:13 25:11,12,20 26:14,16 27:14,17 28:7,10 31:15 32:4,18 33:4,14 34:10,13,18 35:18 36:13 37:18 40:1,8,11,19 41:3,10,15,22 42:9,20 43:4,10,13,15 44:12,24 45:4,20 46:3,14 47:1,4 48:8,13,21 49:3,18,23 50:2,6,10 51:6,14,17,21 53:4,24 55:13,20 56:20,23 57:4,17 58:2,20 60:3,7,11,18,21,24 61:3,18,22 62:2,5,23 63:5,13 74:11 83:16,25 100:24 101:1,3 106:4
**Fisher's** [2] 73:23 76:6
**fits** [1] 72:17
**five** [1] 91:19
**five-year** [1] 87:2
**flat** [1] 66:5
**fleshing** [1] 58:14
**Flores-Figueroa** [2] 22:25 79:2
**focus** [2] 57:2 73:16
**focused** [1] 87:19
**fodder** [1] 3:14
**follow** [2] 19:21 27:5
**follow-ups** [1] 99:14
**following** [3] 62:3 86:2 99:21
**food** [11] 8:5 10:18 11:14,17 15:10,13,17 16:9,11 53:3 63:22
**force** [1] 37:3
**forced** [1] 30:20
**forgive** [3] 58:16 62:3 101:11
**form** [6] 5:1 34:24 57:21 104:15,15 105:22
**forms** [1] 104:23
**forth** [3] 80:4 81:22 104:20
**fortuities** [1] 89:21
**forward** [1] 84:23
**found** [1] 67:4
**Fourth** [1] 78:8
**FOX** [1] 1:3
**fraction** [1] 78:4
**fraud** [72] 3:15,22,25 4:1,3,13,14,19 5:1,7 11:22 12:12

**13**:6,16 14:9 16:21 18:10 25:2 27:21,21 28:15 29:25 30:8,10,11,15,17 32:14 33:16,23 34:5 36:16,21 38:2 39:24 41:1 42:1,14 47:20,21 49:20 62:17 64:11,21 66:1,2,3,6,7,8,11,13 70:18 74:13,15 76:23 77:7,18,20 78:6,9 85:14,24 86:8,19 93:13 103:21,25 105:5,12,17,21
**frauds** [6] 25:8 28:22 47:24 77:11,16,24
**fraudulent** [4] 11:13 14:20 66:16 67:10
**fraudulently** [4] 10:2 15:14 64:18 66:18
**frequently** [1] 76:20
**fresh** [4] 48:25 49:1 51:3,5
**friend** [4] 42:3,4,6 102:20
**front** [2] 27:7 51:25
**frozen** [2] 48:25 51:4
**full-bore** [1] 17:24
**full-fledged** [1] 46:11
**function** [2] 55:18 87:6
**further** [3] 64:9 91:5 106:1

## G

**games** [1] 54:15
**garden-variety** [1] 33:15
**Gates** [1] 42:6
**gave** [6] 11:16,21 23:11 43:23 91:19 104:7
**General** [9] 1:20 6:8 7:13,20,23 23:15 31:9,20 32:16
**General's** [2] 12:21 16:22
**generality** [4] 10:9 14:13 80:21 84:4
**generally** [3] 6:4,13 23:9
**generis** [3] 55:5 89:10 90:1
**gets** [2] 47:7 56:9
**getting** [3] 18:15,16 87:3
**ghost** [1] 67:15
**gist** [1] 21:23
**give** [19] 7:15 8:3,11 10:11 15:20 16:3 35:8 38:23 39:5 40:18 49:5 50:2,11 55:7 56:8 77:9 80:9 90:24 104:4
**given** [14] 15:9 18:3,25 20:8 21:17 24:12,13 51:4 59:14 67:15 68:1 98:1 100:4,15
**gives** [6] 21:8 22:10 23:13 39:6 61:5 63:2
**giving** [4] 15:19 16:8 33:19 97:8
**gloss** [1] 20:12
**GORSUCH** [50] 25:11 48:7,8,14,22 49:4,11,16,22,25 50:4,7,22 51:5,18,22 52:22 53:15 58:6 67:14 68:17,21 69:4,12,17,25 70:7,12,18,22,25 71:5,8,12,15,19

**72**:5,20,23 82:8,11,14,21 83:5,14,20 89:1 94:20 96:17
**Gorsuch's** [1] 57:8
**got** [2] 12:3 102:14
**government** [38] 5:4 6:17 7:9 13:22 14:1,4 28:13 30:4,7,10,11,16 31:24 36:19 39:22 40:3 41:2 43:11 46:19 49:5 52:12 54:12,13 56:12 97:20 102:17 103:13,17,18 104:3,7,18,19
**government's** [6] 6:22 39:13,22,40 24 41:16 42:16,21 43:9 48:23 50:24 51:23 62:15 70:1 74:3 82:22 98:7,9,11,12 99:3 105:4
**graffiti** [1] 50:3
**grammar** [1] 7:6
**grant** [3] 70:5 78:13,24
**great** [1] 91:20
**group** [1] 27:1
**guess** [7] 15:12 18:14 50:22 60:15 78:19 80:18 93:22
**guidance** [1] 81:2
**guide** [1] 80:22
**gun** [2] 36:1 92:9

## H

**half** [1] 32:25
**hand** [1] 44:18
**happen** [1] 75:22
**happens** [1] 105:8
**happy** [2] 5:12 91:21
**hard** [1] 39:13
**harder** [1] 67:9
**hardest** [1] 46:21
**harm** [8] 32:12,20 33:6,7,10 79:14 81:15,16
**harmed** [5] 33:11,17,22 34:6,6
**harming** [1] 79:15
**harsher** [1] 87:1
**head** [1] 92:9
**health** [1] 77:15
**healthcare** [16] 3:15,22 12:12 13:6 27:20 28:15 33:20 36:16,20 49:12 76:23 77:7,16 78:9 79:20 103:25
**hear** [1] 3:3
**heard** [7] 19:20,24 96:11 102:15,16 103:24 104:8
**heartland** [2] 24:14 57:14
**held** [8] 20:2 43:24 70:10,16 88:6 92:8 98:3 101:15
**help** [5] 46:1 48:10 73:3 80:22,23
**helpful** [4] 29:17 58:3 78:15 80:9
**helping** [1] 11:14
**helps** [1] 31:1
**heuristic** [11] 31:1 44:14

**72**:5,20,23 82:8,11,14,21 83:5,14,20 89:1 94:20 96:17
**heuristics** [1] 51:9
**high** [1] 20:15
**higher** [1] 87:8
**history** [1] 56:3
**holding** [1] 57:11
**home** [1] 52:19
**honest** [3] 35:3 43:25 78:8
**Honor** [1] 12:11
**hope** [3] 38:23 60:8 73:16
**horribles** [1] 98:19
**horse** [1] 82:15
**hour** [1] 67:21
**hours** [19] 17:23 18:9 19:10 31:10,11,16,17 32:17 47:21 49:14 65:15,16 67:21 81:15,16 82:4,6 91:19,21
**however** [1] 67:12
**hundred** [4] 17:23 18:8 40:2 47:21
**hurdles** [1] 67:7
**hypo** [4] 7:25 14:9,25 46:18
**hypothetical** [11] 7:11 33:18 47:9 53:20 56:8 63:12 64:4 65:5 88:1 92:3 99:3
**hypotheticals** [10] 52:9 77:5,10 78:23 92:20 93:1,4,12,20 104:19

## I

**idea** [2] 29:11 82:25
**identical** [4] 25:22 88:2,12,15
**identification** [7] 23:20 29:24 54:8 61:14 76:24 98:14 100:1
**identified** [1] 87:12
**identifying** [1] 75:16
**identity** [69] 3:12,18 4:8,9 5:3,8,15,16,20 11:3,4 13:18 16:25 19:16 21:8 24:14,19 27:24 28:16,19 29:12,22 30:19,21 33:3,24 34:4,7,11 36:12 38:16,22 39:8 48:2 49:1,10 50:14 51:5 53:14 55:12 56:16 57:3,19 62:16,17,22,23 68:8 75:18,21 76:5,9,14 79:18,24 80:2,3 83:2 86:3,8 89:17 93:19,21 94:4,8 105:6,24
**illuminate** [1] 21:5
**illuminating** [1] 8:2
**imagine** [2] 54:19 78:22
**immigration** [2] 41:6 76:3
**immunity** [1] 20:3
**impact** [1] 48:20
**impersonating** [2] 5:3 76:3
**impersonation** [2] 90:11,13

**important** [2] 11:25 14:2
**impose** [1] 87:11
**improper** [1] 28:15
**improperly** [2] 54:24 64:12
**incidental** [4] 3:25 29:7 57:16,24
**incidentally** [1] 28:11
**include** [1] 92:11
**included** [4] 62:12 73:24 75:4 90:14
**includes** [1] 85:14
**income** [1] 77:12
**inconceivable** [1] 66:24
**incongruity** [1] 79:2
**incorrect** [3] 30:6 31:23 83:22
**increased** [1] 96:22
**increasing** [1] 95:10
**incredible** [1] 53:7
**incredibly** [2] 62:16 103:22
**indeed** [1] 18:21
**independent** [4] 3:19 37:25 90:22,25
**indications** [1] 4:24
**individual** [3] 43:9 72:3 77:23
**individuals** [1] 95:22
**information** [5] 56:9,11 75:17 90:19,23
**inherent** [1] 66:4
**inherently** [1] 80:18
**instances** [2] 4:17 38:16
**instead** [7] 18:9 31:21 35:6 38:11 47:21,23 82:4
**instructed** [1] 100:19
**instruction** [1] 100:4
**instructions** [2] 100:13,14
**instrumental** [3] 3:24 23:16,21 24:2 29:6 30:2,3 36:4 57:15,19,23 58:12 64:8
**instrumentality** [1] 48:3,3 54:10
**insurance** [4] 33:21 77:15 78:10 79:21
**integral** [5] 36:2,3 58:22,23 64:9
**intended** [1] 24:16
**intent** [4] 66:16 67:10 89:8,10
**interchangeable** [1] 26:23
**interested** [1] 59:21
**interesting** [1] 8:1
**interjecting** [1] 103:11
**Internet** [1] 20:3
**interpret** [8] 48:16 55:15 73:10 81:12 88:14,21,24 92:10
**interpretation** [7] 20:7 37:2 81:3 83:10 90:6 95:7,25
**interpreted** [2] 81:6 92:7
**interpreting** [2] 85:1,2

interpretive [1] 44:7
interrupt [1] 69:14
interrupted [1] 69:16
introduced [1] 52:11
intuitive [1] 19:14
intuitively [1] 29:20
invalid [1] 98:17
involve [4] 76:4 77:22,25 78:11
involved [2] 65:15 67:4
involves [3] 34:1 37:12,14
isn't [11] 9:10 11:13,14,15, 23 13:19,21 14:23 80:17 84:19 91:1
Isolating [1] 14:25
issue [8] 29:11 42:17 64:16 91:11 93:9 96:7 100:17 102:14
issues [1] 92:2
it'd [1] 93:11
item [1] 7:12
items [1] 10:20
itself [6] 23:15 29:24 31:24 32:12 57:3 96:14

## J

JA [1] 102:5
JACKSON [67] 7:23 8:15, 18,20,25 9:9,23 10:17 14: 23 15:5 16:3,16 17:22 18: 16 25:10,12,21 26:15,16 27:9,15 28:4,9 59:13,14 60:4,8,10,14,19,22,25 61:4, 19,23 62:4,20 63:3,12 72: 21 73:2,13,19 74:10,22,25 85:4,8,12,16,21 86:9,12,17 87:5 88:10,20 89:2 97:16, 17 98:2,6,10 99:1,10,21 102:6
jail [1] 27:22
JEFFREY [5] 1:18 2:3,9 3: 7 101:1
Joint [3] 6:20 9:16 81:22
Judge [29] 28:8 30:25 31:1 32:13 41:4 44:13,25 45:8, 13 51:11,11 57:5,12 58:15, 18 83:11,18 84:5 92:17,18, 19,25 93:17,23 94:1,23 95: 16 101:12,25
judges [1] 3:16
judgment [1] 80:20
judicial [1] 87:10
Junk [1] 103:5
jurisdictional [2] 69:21,23
jury [10] 30:7 40:5 52:1,18 67:9 100:4,4,13,14,19
Justice [298] 1:21 3:3,9 5: 13,23 6:10 7:23 8:15,18,20, 25 9:9,23 10:13,14,16,17, 23,24,25 11:1,2,6,9,18,20 12:1,19,22,25 13:19,21 14: 1,7,23 15:5 16:3,15,16 17: 2,11,16,17,22 18:8,14,16 19:5,7,13 21:3,12,15 22:5,

14 23:4,22 24:3,18 25:10, 11,12,21 26:15,16 27:9,15 28:4,9 31:5 32:2,3,15,19 33:9,15 34:8,9,10,15 35:10, 16 36:9,22,22,23 37:18 38: 14 39:9,10,10,12 40:6,9,17, 20 41:4,8,11,19 42:2,17 43: 2,6,11,14 44:6,10,11,11,12, 25 45:18,21 46:10,20,24 47:2 48:5,6,6,8,14,22 49:4, 11,16,22,25 50:4,7,22 51:7, 15,18,22 52:8,22 53:15,16, 16,18,19,24 54:14,25 55:1, 1,3,4,14,22 56:17,21,24 57: 5,8,18 58:6,12,18 59:11,12, 12,14 60:4,7,10,14,19,22, 25 61:4,19,23 62:4,20 63:3, 4,9,12 64:1,23 65:8,18,21 66:9,22 67:14 68:17,21 69: 4,6,12,15,17,25 70:7,12,18, 22,25 71:5,8,12,15,19 72:5, 20,21,23 73:2,11,13,19 74: 10,14,22,25 75:14 76:7,11 77:2 78:14,19,25 79:1,7,10, 16 80:6,12,16 81:13 82:8, 11,14,21 83:5,14,20 84:6, 12,19 85:4,8,12,16,21 86: 12,17 87:5 88:10,20,25 89: 2,25 90:4,16 91:3,5,6,7,8,9 92:12,16 93:3,16 94:10,16, 19,19,21,22 96:10,17 97: 13,14,14,16,17 98:2,6,10 99:1,10,11,11,13,20,21 100:21,22 102:3,6 106:3
Justice's [1] 42:12
justification [1] 84:7
justified [1] 84:15
justifies [1] 87:23
justify [2] 37:16,21

## K

KAGAN [39] 10:13,16,24 11:1 17:2,11,17 18:8,14 21:12,15 22:5 24:3 44:11, 12,25 45:18,21 46:10,21, 24 47:2 48:5 52:8 53:19 69:6,15 73:11 77:2 78:14, 19 91:8,9 92:12,16 93:3,16 94:10,16
Kavanaugh [12] 53:17,18, 24 54:14,25 80:6,12,16 94: 21,22 96:10 97:13
keep [4] 11:11,25 59:17 64: 3
Kelly [1] 95:5
keyed [1] 32:12
kick [2] 96:24 97:3
kickback [1] 78:11
kicker [1] 27:25
kind [11] 7:19 23:20 25:25 32:12 51:16 53:8 54:14 57: 24 62:24 73:14 91:11
kinds [3] 18:7 56:24 95:16
knocking [1] 51:10

knowingly [1] 25:22
knows [1] 72:11

## L

L's [11] 3:22 4:8,9 5:15,16, 20 30:19 36:11,15 57:19, 21
lack [1] 38:13
landlord [1] 56:9
language [13] 20:15 21:18, 19 22:9 26:21 33:5 35:5 61:13 65:9 68:2,11,12 81: 5
last [6] 9:15 19:21 24:8 78: 3 92:16 104:21
later [2] 39:20 41:20
latter [1] 4:6
Laughter [8] 49:15 65:23 69:2 70:24 82:13,18,20 93: 5
law [17] 7:16,17 9:24,25 20: 18 48:16,17 49:2,9 50:21 72:6 79:8 83:23 86:14 91: 16 102:19 103:6
law-abiding [4] 71:23 95: 22 97:10 99:17
lawful [45] 4:3 7:6,7,8 8:7, 10 9:6 10:6,19 14:10 19:4 21:10 29:3 34:21 36:24 37: 8 40:13 47:9,10 49:8 58:5 61:13 63:20 76:25 83:24, 25 90:24 91:10,23 92:5,7, 10 93:15 97:19,22 98:3,13 99:4,6,24 100:8 101:10 102:2,10,19
lawfully [1] 7:12
lawyer [2] 19:9 67:20
lawyers [1] 49:13
lay [1] 27:5
layer [1] 103:11
laying [1] 25:19
lays [1] 45:8
lead [2] 37:10 43:7
leads [2] 42:24 104:24
least [10] 8:13,13 15:19 26: 6 39:6 42:11,21 51:9 84: 16 103:10
leave [2] 16:1 100:6
left [4] 15:23 43:4 49:2 62: 16
legislative [1] 56:3
legitimately [1] 56:1
Lenity [6] 37:6,9,23 43:7 44:2 59:18
lens [4] 21:8 22:11 23:6 34: 22
less [4] 18:3 75:1 77:5,9
lesser [3] 62:11 73:24 75:3
letter [4] 14:12,19,21 28:17
level [8] 10:9 14:13 26:10 47:24 80:21 84:3 87:8 94: 12
leverage [1] 105:11
liability [1] 20:3

licensed [5] 9:20,21 30:13, 14 46:6
lie [29] 13:14,14 54:1 59:5 101:19
lied [4] 45:14,14 59:3 78:1
lies [9] 40:21 47:15,17,25 54:17 77:12,13 84:10,13
light [2] 28:25 81:25
likely [3] 17:8 36:15 76:15
limit [1] 22:9
limitation [2] 89:12 98:18
limited [1] 20:23
limiting [5] 37:7,16 39:16 89:16,19
limits [1] 35:21
line [14] 17:3 18:17,19,24 19:1 42:24 44:17 45:1 47: 16,18 58:1 80:23 84:3 95: 4
lines [1] 70:9
list [15] 27:8,19 59:17 60:12, 16 61:20 70:3 74:12 85:10, 13 86:7 87:21 95:5 103:5 104:13
listing [1] 13:6
lists [1] 40:21
literal [1] 95:7
literally [2] 19:3 35:6
little [5] 5:24 19:19 24:8 45: 5 93:22
long [2] 27:19 95:3
look [17] 9:14 22:15 23:6 29:23 34:17,18 37:23 40: 15 41:23 53:13 57:11 58:9 59:16 61:7 74:12 81:2,24
looked [4] 23:1 33:7 55:6 82:16
looking [7] 20:10 22:6 53: 10,11 72:16 85:13 87:21
looks [1] 59:24
lose [2] 32:23 93:25
losing [1] 93:24
lost [2] 33:17 82:6
lot [10] 19:14 29:3 43:22 67: 4 76:22 98:19
low [1] 13:12
low-level [2] 28:22 105:17
lower [10] 20:2,8 29:10 40: 5 51:10 55:20 57:25 58:4, 10 77:14
lying [4] 23:10 38:17 104: 10,11

## M

made [4] 4:16 48:15 102:4, 18
mail [8] 13:16 14:9 27:21 41:12 85:14,23 86:7 103: 20
mainstream [1] 22:12
majority [1] 22:13
man [3] 72:8 74:6 85:25
mandatory [19] 4:23 25:4 26:8 28:24 60:1 61:5,9,25

62:22 73:21 86:18 87:6,9, 15,24 88:3 96:21 105:1,20
manner [2] 14:17 98:15
manufacturer [2] 77:18,20
many [1] 87:18
Marinello [5] 35:2 43:23 44:7 95:4,24
Marshall's [1] 21:3
Material [1] 20:6
matter [6] 1:13 7:6 12:11, 16 16:5 64:6
mattering [1] 20:17
maximalist [1] 35:6
maximum [1] 87:2
meal [2] 8:13 9:2
mean [28] 7:24 9:24 10:7 14:24 16:3,4 17:4 20:10 21:17 23:16 25:2 32:22 37: 25 38:4 45:18 49:19 51:2 59:1 62:10 65:9 66:22 73: 8 78:21 81:7 82:4 87:6 88: 15 100:9
meaning [5] 11:3 19:25 37: 25 39:6 59:19
means [17] 11:11 21:6 23: 19 29:23 49:7 52:3 54:7 57:10 61:14 73:11 76:24 91:12 93:3 98:14,14 99:25 102:22
meant [1] 44:3
measured [2] 35:8 38:24
median [1] 4:19
Medicaid [8] 3:13 4:10 5: 21 9:15 12:9,12 36:14 57: 20 64:18,19,20 77:13 78:2, 5,16 81:19 99:9 104:10
Medicaid-eligible [1] 12: 14
Medicare [4] 12:8 77:21 78:5 104:9
medicine [1] 25:7
meet [2] 3:17 53:21
meets [1] 80:5
memo [2] 40:15 52:14
mens [2] 96:12,13
mention [1] 52:24
mentioned [3] 17:16 48:11 95:21
mentioning [1] 98:22
menu [1] 15:17
merely [3] 3:24 4:4 29:6
message [1] 94:25
met [1] 76:19
might [19] 9:7,7,7 20:9 31: 7 33:7 37:9 46:14 47:10 48:10 50:5 58:3 64:3,3,67: 20 71:3 76:1 100:9
mightily [1] 58:11
mighty [1] 58:11
min [2] 74:6 85:25
mind [1] 23:1
mine [1] 42:6
minimum [18] 4:23 25:4 26:8 28:24 60:2 61:5,9,25

Heritage Reporting Corporation

Official

**62**:22 **73**:22 **86**:18 **87**:9,15, 24 **88**:3 **96**:21 **105**:1,20
**minimums** [1] **87**:6
**misappropriate** [1] **56**:2
**misappropriating** [1] **5**:2
**misappropriation** [1] **56**:13
**misbilling** [2] **16**:24 **19**:9
**misbills** [1] **53**:2
**mischarge** [2] **19**:3 **103**:19
**mischarges** [1] **28**:18
**misconception** [2] **45**:6 **47**:8
**misconduct** [1] **105**:22
**misdemeanor** [5] **72**:12 **75**:11 **86**:4,21 **87**:2
**misdemeanors** [1] **86**:15
**misleading** [1] **53**:9
**misremembering** [1] **76**:2
**misrepresentation** [5] **68**:4 **93**:18,20 **94**:4,8
**misrepresentations** [1] **50**:8
**misrepresenting** [2] **4**:3 **34**:1
**mistake** [1] **66**:10
**mistress** [2] **99**:15,16
**misunderstood** [2] **15**:16 **16**:2
**misuse** [4] **30**:1 **56**:6 **75**:16, 21
**misused** [1] **79**:22
**misuses** [1] **56**:11
**misusing** [1] **105**:14
**mitigated** [1] **97**:5
**mix** [1] **16**:2
**Mm-hmm** [10] **8**:21 **32**:18 **48**:13 **55**:13,13 **56**:20,23 **57**:17 **60**:3,18
**model** [1] **81**:4
**modeled** [1] **81**:10
**modifies** [2] **7**:7,8
**moment** [1] **102**:16
**Monday** [1] **1**:11
**money** [2] **33**:17,18
**month** [1] **39**:20
**months** [1] **4**:20
**morning** [2] **3**:4 **38**:4
**mortgage** [4] **8**:6 **10**:5 **16**:12 **63**:25
**Most** [7] **22**:21 **34**:19 **68**:7 **72**:18 **81**:10,25 **89**:15
**move** [1] **71**:5
**moves** [1] **46**:19
**much** [13] **19**:17 **26**:20,25 **32**:20 **33**:10 **44**:2,22 **48**:11 **49**:3 **55**:5 **68**:2,3 **79**:21
**muscular** [1] **20**:25
**must** [5] **11**:12 **57**:15 **70**:3 **82**:8 **89**:17

**N**

**name** [59] **3**:22,24 **4**:2 **5**:1, 21 **6**:19,23 **11**:11,13,23 **12**:

2,13,14,16,23 **13**:1,3,8,11, 16,17,23 **14**:4 **28**:12 **30**:1,2 **31**:8 **32**:21 **36**:15 **39**:24 **40**: 12 **41**:1,11,13,16,21 **42**:15 **49**:10 **50**:12 **52**:2 **54**:6,24, 24 **57**:21 **59**:9 **74**:19 **79**:22, 23,24 **83**:1 **89**:22 **90**:9 **93**: 14 **98**:21,22 **99**:25 **103**:3 **104**:8 **105**:14
**namely** [2] **81**:2 **90**:10
**names** [4] **77**:8 **104**:14,16, 23
**narrow** [4] **31**:19 **36**:8 **43**:9 **56**:13
**narrowed** [1] **99**:17
**narrower** [4] **43**:8 **75**:6 **76**: 8 **95**:2
**narrowing** [2] **27**:6 **55**:18
**narrowly** [1] **57**:9
**narrows** [1] **38**:7
**natural** [1] **72**:18
**nature** [4] **15**:6 **45**:16 **53**:9 **59**:6 **85**:5 **101**:20
**near** [1] **20**:25
**necessarily** [3] **25**:16 **69**:7 **87**:20
**need** [14] **13**:14 **16**:17 **23**: 14 **24**:1,1 **31**:3 **36**:25 **45**:3 **50**:23 **51**:18 **99**:6,8 **102**:24, 25
**needed** [1] **12**:2
**needs** [1] **34**:22
**negotiating** [1] **77**:21
**neither** [2] **44**:22 **98**:25
**never** [1] **18**:21
**nevertheless** [3] **24**:21 **62**: 15 **65**:24
**new** [2] **104**:21 **105**:22
**next** [7] **15**:22 **16**:6 **37**:11, 12 **54**:19 **67**:21 **92**:14
**nexus** [3] **24**:1 **54**:9 **64**:8
**nobody** [2] **7**:19 **49**:14
**Nor** [1] **3**:19
**normally** [2] **19**:15 **48**:16
**nothing** [6] **30**:18 **39**:4 **47**: 3 **50**:20 **85**:18 **90**:12
**notice** [10] **53**:1 **68**:5,6 **71**: 9 **72**:6,8 **95**:9,15 **96**:20,24
**notion** [4] **23**:25 **30**:22 **102**: 24 **104**:9
**nowhere** [1] **20**:25
**nub** [1] **39**:4
**number** [12] **13**:18 **36**:25 **56**:5 **59**:15 **63**:21 **64**:11,15, 19,20 **76**:2 **99**:9,20
**numbers** [1] **56**:7

**O**

**object** [1] **20**:21
**obtains** [1] **29**:13
**odd** [1] **90**:7
**offenders** [1] **4**:21
**offense** [32] **3**:23 **25**:19,25 **26**:1,18,19 **27**:2,3,20,21 **28**:

1 **34**:25 **35**:12,15 **36**:3 **48**: 4 **49**:9,24 **50**:20,21 **54**:9 **56**:16 **62**:12 **72**:14 **73**:24, 25 **74**:2,8,17 **75**:4,20 **96**:9
**offenses** [14] **27**:1,8,13,18, 23 **60**:13,16 **74**:12 **75**:24, 25 **85**:10,13 **87**:21 **105**:21
**Offensive** [1] **20**:6
**Okay** [11] **26**:15 **39**:20 **46**: 10,24 **57**:7 **69**:17 **70**:25 **74**: 22 **83**:15 **88**:16 **96**:19
**once** [1] **37**:14
**one** [53] **5**:7 **6**:1 **7**:1,14,14 **13**:13 **14**:3 **17**:4,5 **19**:15 **26**:8 **29**:1,4 **31**:6 **32**:2 **35**: 20 **37**:3 **38**:11 **41**:7 **43**:15, 23 **44**:18 **45**:8 **46**:3 **47**:6, 16,21 **48**:10 **51**:10 **55**:8 **59**: 2 **60**:19 **61**:4,9,16 **62**:2,5,6 **67**:2 **70**:5 **73**:22,24 **75**:24, 24 **86**:25 **87**:24 **88**:3,3,16 **94**:2,6 **102**:4 **103**:2
**one-by-one** [1] **29**:2
**ones** [1] **88**:12
**only** [23] **4**:6,21 **6**:11,16 **17**: 19 **19**:2 **30**:20 **52**:5,13 **54**: 13 **55**:22 **63**:21 **65**:14 **72**:2 **86**:19 **92**:8 **95**:19 **96**:8 **98**: 14 **101**:17 **102**:3,25 **104**:19
**opening** [1] **25**:1
**operating** [1] **43**:18
**operator** [1] **59**:3
**opinion** [8] **21**:4 **29**:10 **41**: 5 **93**:7 **94**:23 **98**:1 **101**:12, 13
**opposed** [3] **18**:18 **43**:8 **96**: 14
**opposite** [1] **72**:22
**oral** [5] **1**:14 **2**:2,5 **3**:7 **63**:7
**order** [9] **1**:3 **15**:13 **16**:11 **28**:5 **48**:24 **51**:3 **63**:15 **70**:4 **77**:13,14 **90**:24 **97**:3
**ordered** [9] **9**:24 **10**:3 **11**: 21 **15**:18 **16**:9,19 **54**:21 **63**: 16,22
**orders** [1] **9**:25
**ordinary** [1] **37**:10 **17**
**other** [50] **4**:14 **7**:14,15 **9**:3 **13**:12 **14**:3 **16**:18 **18**:20 **27**: 16 **33**:11 **35**:22 **37**:19 **38**:2, 5,9,12 **39**:21 **40**:18 **42**:1 **45**:9 **47**:6,17,18 **50**:11 **51**: 11 **52**:5,8,10,17 **56**:6 **59**:25 **60**:23 **63**:23 **64**:23 **75**:1,2, 17,23,25 **76**:16 **78**:22 **81**: 10 **87**:23 **91**:16 **92**:6,22 **95**: 18 **98**:20 **104**:4 **105**:10
**others** [2] **65**:12 **87**:18
**otherwise** [4] **20**:14 **34**:14 **97**:9 **105**:2
**ought** [2] **25**:8 **76**:8
**out** [29] **10**:8 **13**:13 **19**:17,

18 **21**:15,16 **25**:19 **27**:5 **29**: 17 **31**:2 **33**:17 **35**:25 **40**:23 **45**:5,8 **46**:1 **47**:5 **53**:23 **55**: 21 **58**:14 **64**:4,24 **76**:12,14 **82**:5,7 **93**:23 **101**:12 **104**:6
**outlandish** [2] **77**:6,10
**outside** [5] **10**:21 **17**:9,17 **18**:3,12
**over** [4] **35**:3,4 **82**:16 **104**: 14
**overbilled** [2] **33**:22 **66**:19
**Overbilling** [4] **3**:13 **13**:7 **31**:10 **83**:1
**overbills** [2] **67**:17 **72**:11
**overbroad** [1] **51**:1
**overcome** [1] **67**:8
**overturn** [1] **52**:21
**own** [2] **14**:14 **30**:5

**P**

**PAGE** [3] **2**:2 **6**:20 **101**:13
**pages** [6] **9**:16 **30**:5 **31**:22 **81**:22 **102**:6 **104**:5
**paid** [1] **36**:20
**panel** [3] **97**:23 **98**:1 **102**:8
**parade** [1] **98**:19
**paragraph** [1] **101**:19
**Pardon** [1] **12**:24
**parent** [1] **40**:21
**park** [1] **6**:5
**part** [8] **11**:12 **25**:13 **87**:14
**particular** [17] **5**:17 **23**:1, 20 **26**:3 **27**:8 **36**:10 **59**:21 **64**:14,17,21 **66**:6 **76**:17 **84**: 16,25 **89**:24 **94**:2 **105**:22
**particularly** [4] **4**:25 **25**:7 **34**:24 **90**:10
**pass** [1] **19**:23
**passive** [1] **90**:8
**past** [1] **68**:19
**Patient** [29] **3**:21 **4**:7,9 **5**:15, 16,16,20 **12**:6,6 **17**:19 **30**: 18 **31**:11,17 **33**:13 **36**:11, 15 **37**:14 **39**:19 **57**:19,21 **78**:7,12,22 **79**:13,17 **80**:3 **82**:6 **91**:18 **94**:7
**patient's** [3] **12**:2 **64**:19 **82**: 25
**patients** [3] **77**:11,23,25
**pause** [1] **63**:2
**pay** [1] **100**:7
**paying** [3] **63**:24 **96**:1,2
**pays** [2] **8**:5 **16**:12
**penalty** [7] **26**:6 **60**:1 **66**:5 **86**:18 **87**:2,11 **105**:14
**people** [9] **33**:22 **61**:8 **71**: 10,23 **79**:3,6,8 **96**:3 **105**:16
**people's** [1] **77**:7
**percent** [4] **4**:20 **40**:2
**perhaps** [6] **18**:11 **20**:16, 24 **37**:5 **51**:19 **67**:24
**period** [2] **82**:6,7
**permeates** [1] **42**:18
**permission** [16] **4**:9 **15**:9

**23**:11 **39**:23 **41**:14,17 **67**: 24 **91**:12,13,15,16 **99**:7,8
**102**:24 **103**:1,7
**permitted** [2] **41**:20,25
**person** [22] **5**:3 **7**:13,18 **10**: 11 **11**:16 **23**:10 **32**:21 **37**: 14 **39**:24 **66**:15,18 **76**:3,25 **79**:14 **84**:21 **85**:1 **87**:14 **95**: 11 **97**:5 **98**:13 **99**:15 **100**:1
**person's** [5] **48**:2 **54**:6 **76**: 5 **90**:9 **92**:9
**personal** [1] **42**:6
**perspective** [1] **4**:12
**persuade** [1] **37**:1
**persuasive** [1] **96**:15
**pertinent** [1] **31**:7
**Pet** [1] **6**:21
**Petition** [1] **102**:7
**Petitioner** [8] **1**:4,19 **2**:4, 10 **3**:8 **92**:21 **95**:3 **101**:2
**pharmaceutical** [1] **77**:17
**phone** [2] **13**:18 **103**:4
**phrase** [5] **23**:19 **35**:20 **68**: 13 **89**:14 **98**:24
**phrases** [2] **21**:10 **26**:23 **34**:20
**pick** [1] **61**:8
**picked** [2] **76**:12,13
**pinpoint** [1] **80**:23
**place** [7] **55**:8 **66**:21 **72**:4 **78**:2 **80**:24 **97**:7 **98**:25
**plausibly** [1] **36**:24
**play** [6] **38**:10 **54**:14 **95**:19 **96**:8 **105**:2,3
**plea** [2] **25**:5 **105**:9,11
**pleas** [2] **105**:12,17
**please** [4] **3**:10 **63**:10 **69**: 15 **71**:17
**point** [21] **3**:13 **12**:21 **13**:13 **15**:1 **16**:7 **17**:5 **21**:2 **23**:23 **24**:5 **28**:2,13 **38**:12 **39**:15 **45**:5 **49**:6 **57**:8 **67**:12 **86**:2 **88**:25 **101**:12 **104**:6
**pointed** [5] **21**:15,16 **51**:22 **55**:21 **64**:24
**poisoned** [1] **99**:15
**Porsche** [2] **6**:1,2
**position** [9] **73**:7 **74**:4 **75**: 15 **83**:3 **98**:7,9,11,12 **103**: 16 **105**:4
**possess** [5] **25**:23 **55**:6,8, 10 **90**:3,5,17
**possessed** [1] **90**:23
**possession** [6] **22**:22 **23**:8 **55**:9 **56**:22 **57**:2 **90**:8
**possessions** [1] **22**:18
**possible** [2] **33**:21 **67**:6
**possibly** [4] **21**:18 **51**:2 **64**: 17 **95**:15
**potentially** [2] **42**:19 **47**:9
**power** [1] **97**:9
**powerful** [1] **105**:10
**practical** [1] **105**:15
**precedent** [3] **23**:2 **83**:12

Heritage Reporting Corporation

**95**:14
**precedents** [2] **71**:22 **94**:24
**precisely** [2] **4**:11 **94**:16
**predicate** [48] **4**:14 **7**:3 **11**:12 **16**:21 **27**:1,18,20,25 **34**:25 **49**:24 **50**:20 **60**:13,16 **66**:20 **72**:3 **74**:8,12,17 **75**:9,11,15,23,25 **76**:13 **81**:8 **95**:20 **96**:8 **97**:6
**preferred** [1] **93**:24
**premium** [1] **77**:15
**prescription** [2] **77**:20,22
**presence** [1] **90**:5
**present** [2] **92**:2 **105**:23
**presented** [1] **73**:9
**pretend** [1] **42**:3
**pretty** [4] **20**:2 **25**:17 **68**:3 **93**:13
**prevail** [2] **84**:15 **94**:17
**prevent** [1] **38**:15
**prices** [1] **77**:22
**principal** [1] **94**:18
**principle** [3] **43**:18 **51**:8 **81**:1
**principles** [3] **37**:7,17 **43**:6
**prior** [4] **98**:15,24 **101**:14,17
**prison** [1] **4**:17
**probably** [5] **8**:9 **15**:2 **29**:9 **53**:13 **54**:22
**probation** [1] **4**:21
**problem** [20] **35**:17 **39**:17 **42**:10 **61**:6,11 **62**:13 **68**:22,24 **69**:19 **70**:13,21 **71**:2,6,9,13,25 **73**:15,21 **75**:13 **76**:22
**problems** [2] **53**:6 **82**:10
**procedural** [1] **92**:8
**procedure** [3] **9**:17,18 **46**:5
**proceeding** [1] **76**:4
**Process** [3] **63**:1 **73**:21 **75**:13
**procure** [2] **105**:11,16
**product** [5] **10**:12 **54**:3,3,4 **92**:23
**products** [1] **63**:24
**prohibit** [2] **90**:8,9
**properly** [1] **100**:20
**property** [1] **22**:23
**proposed** [2] **82**:3 **84**:2
**prosecute** [3] **67**:7 **92**:1 **96**:3
**prosecuted** [4] **18**:10 **71**:24 **95**:22,25
**prosecuting** [1] **66**:25
**prosecution** [6] **3**:15 **5**:9 **62**:17 **69**:24 **70**:4 **105**:5
**prosecutions** [1] **5**:7
**prosecutor** [2] **50**:18 **88**:4
**prosecutors** [1] **43**:5 **52**:16 **97**:9 **105**:10
**Protection** [1] **20**:5

**prove** [5] **52**:18 **66**:13,14,17 **67**:18
**provide** [8] **3**:14 **13**:7 **20**:2 **53**:1 **71**:10 **72**:6,8 **77**:19
**provided** [15] **9**:22 **30**:12,14 **38**:6,18 **39**:1 **45**:16 **46**:9 **52**:5 **54**:1,16 **59**:6 **84**:14 **94**:7 **101**:21
**provider** [5] **28**:14 **78**:1,16 **79**:21 **104**:1
**providers** [2] **20**:4 **77**:25
**provides** [3] **20**:1 **28**:14 **75**:19
**providing** [1] **94**:5
**provision** [8] **19**:18 **20**:8, 19 **22**:3 **24**:9 **59**:24 **65**:17 **76**:10
**psychiatric** [2] **44**:20 **45**:23
**psychiatrist** [3] **17**:24 **46**:12 **94**:13
**psychological** [10] **4**:10 **9**:21 **17**:20 **18**:18,19,20 **30**:14 **46**:6 **92**:23 **94**:12
**psychologist** [4] **9**:21 **30**:13 **46**:6 **94**:13
**pull** [1] **35**:24
**punishable** [1] **62**:18
**punished** [3] **18**:11 **47**:25 **66**:7
**punishment** [1] **75**:19 **96**:20,22
**purchases** [1] **53**:3
**purpose** [3] **41**:25 **81**:7 **90**:11
**purvey** [1] **83**:7
**push-back** [1] **62**:9
**pushes** [1] **38**:6
**put** [17] **13**:3 **17**:3 **21**:18 **30**:4,7 **37**:4 **38**:2 **41**:11 **44**:6 **50**:1,4 **51**:25 **53**:7 **71**:16, 16 **75**:2 **104**:19
**puts** [1] **54**:7
**putting** [4] **10**:1 **84**:23 **103**:3 **104**:14

## Q

**quantity** [1] **17**:25
**question** [20] **14**:13 **17**:21 **23**:10 **32**:24 **45**:6 **48**:19 **50**:22 **55**:3 **57**:7 **67**:13 **71**:19 **81**:14 **82**:9,15 **84**:20 **90**:17 **91**:10 **92**:4,16 **93**:7
**question-begging** [1] **69**:5
**questioning** [1] **29**:2
**questions** [6] **5**:12 **17**:3 **38**:3 **42**:12 **65**:7 **106**:1
**quick** [1] **105**:12
**quickly** [1] **97**:17
**quite** [14] **20**:24 **22**:9 **27**:19 **28**:1,1 **33**:23 **47**:25 **57**:12 **58**:3 **89**:19 **90**:7 **101**:15 **102**:9,13

## R

**raise** [1] **92**:2
**raised** [3] **90**:17 **95**:16 **97**:23
**raises** [2] **84**:1,2
**raising** [1] **95**:15
**ran** [2] **40**:5 **52**:13
**rather** [4] **8**:4 **33**:13 **66**:19 **96**:1
**rea** [2] **96**:12,13
**reach** [2] **35**:8,21
**read** [18] **24**:21 **35**:23 **36**:24 **37**:7 **40**:7 **47**:14 **51**:15 **62**:7 **68**:15,18,20,23 **69**:18 **70**:14 **80**:10,22 **89**:9 **90**:18
**reading** [15] **20**:11 **27**:4 **39**:23 **51**:1 **65**:25 **68**:25 **71**:13 **72**:16,18 **95**:2,8,8,14 **99**:22 **102**:9
**real** [2] **79**:14 **82**:25
**real-world** [1] **104**:25
**really** [12] **19**:11 **21**:22 **22**:8 **24**:20 **30**:13,24 **55**:16,16 **69**:7 **77**:6 **81**:16 **87**:7
**reason** [12] **18**:23 **19**:1 **25**:15 **53**:25 **64**:6 **65**:25 **79**:11 **83**:13,22 **90**:7,13 **100**:12
**reasonable** [3] **64**:20 **66**:18 **95**:2
**reasons** [5] **3**:19 **6**:14 **7**:1 **17**:16 **97**:25
**REBUTTAL** [2] **2**:8 **101**:1
**receive** [2] **4**:21 **31**:17
**received** [21] **4**:4,5 **18**:1,20, 21 **30**:19,24 **34**:2,2 **38**:18 **47**:15 **48**:1 **54**:2,4,17 **59**:7 **84**:10,25 **94**:2,11 **101**:21
**receives** [1] **39**:1
**recent** [2] **43**:22,24
**recipient** [1] **57**:20
**recognized** [3] **3**:16 **23**:15 **41**:4
**record** [3] **6**:16 **17**:14 **99**:22
**records** [2] **20**:22 **22**:8
**reducible** [1] **82**:23
**refer** [1] **90**:18
**reference** [3] **7**:25 **34**:11 **44**:16
**referred** [1] **44**:13
**reflected** [1] **52**:14
**regard** [1] **8**:2
**regarding** [1] **90**:2
**regardless** [1] **66**:5
**regimes** [1] **28**:22
**regret** [3] **82**:17,19,23
**regularly** [1] **33**:23
**reimbursements** [1] **78**:4
**reject** [7] **50**:24 **51**:8,20 **52**:4,20 **82**:21,25
**rejected** [1] **95**:6
**relate** [1] **80**:19
**relation** [57] **3**:22 **9**:8 **11**:10

**13**:4,13,15 **14**:6 **15**:2 **17**:15 **21**:11 **23**:5,25 **26**:3,21 **29**:5,18 **31**:2 **34**:21 **35**:21 **36**:2 **38**:9,14 **47**:11 **49**:7 **53**:22 **54**:8 **58**:9,25 **59**:8,9, 25 **61**:20 **62**:7 **64**:2,7,11,21 **65**:11 **68**:16 **69**:8 **73**:11 **77**:1 **80**:7,17 **81**:5,7,12 **85**:2 **88**:17,21 **89**:13,14,20 **93**:14 **101**:9,11,22
**relationship** [3] **13**:14 **64**:16 **93**:1
**relatively** [1] **66**:2
**relied** [1] **23**:5
**rely** [3] **19**:23 **24**:21 **59**:16
**relying** [1] **25**:16
**remand** [1] **100**:6
**remarkably** [1] **59**:1
**remember** [5] **7**:5 **29**:21 **31**:17 **50**:15 **86**:25
**remembering** [1] **88**:9
**remove** [1] **55**:8
**rendered** [4] **29**:15,16 **30**:6 **44**:21
**reply** [6] **31**:22 **56**:8 **62**:14 **103**:9 **104**:5,6
**representative** [1] **32**:16
**require** [3] **98**:24 **103**:6 **104**:7
**required** [3] **12**:16 **27**:22 **45**:15
**requirement** [4] **16**:20 **53**:22 **54**:10 **55**:24
**requirements** [1] **96**:13
**requires** [7] **3**:23 **4**:2,22 **7**:2 **75**:16,20 **98**:15
**requisite** [1] **66**:16
**resistance** [1] **103**:24
**resolve** [4] **48**:10 **82**:2 **93**:9 **101**:24
**resolving** [1] **80**:14
**respect** [23] **7**:10 **9**:11 **16**:13 **22**:6 **49**:4 **67**:1 **72**:1 **73**:22 **75**:23 **76**:16,17 **81**:8 **86**:3,6 **87**:1,10 **89**:12 **92**:20 **93**:18,21 **97**:11 **102**:20 **103**:2
**respectfully** [1] **74**:20
**Respondent** [4] **1**:7,22 **2**:7 **63**:8
**response** [4] **53**:18 **54**:13 **74**:14 **85**:9
**responsive** [1] **52**:7
**restaurant** [8] **14**:14 **20**:11 **15**:24 **16**:1,6 **48**:24 **49**:12 **51**:3
**restore** [1] **32**:25
**restraint** [1] **44**:7
**restrictions** [1] **103**:6
**result** [3] **65**:20 **66**:1 **74**:2
**return** [2] **40**:20 **48**:19
**returning** [1] **58**:16
**reverse** [2] **5**:11 **58**:8
**rightly** [1] **79**:19

**ring** [1] **63**:17
**ROBERTS** [27] **3**:3 **12**:1,19, 22,25 **31**:5 **32**:3,15,19 **33**:9 **34**:8 **36**:22 **39**:10 **44**:11 **48**:6 **53**:16 **55**:1 **59**:12 **63**:4 **75**:14 **76**:7 **91**:3 **94**:19 **97**:14 **99**:11 **100**:22 **106**:3
**rolling** [2] **81**:19 **82**:5
**Rolls** [1] **47**:22
**round** [1] **49**:13
**rounding** [3] **65**:15 **67**:20, 20
**route** [1] **55**:16
**routine** [1] **95**:23
**Royce** [1] **47**:22
**rule** [19] **14**:14,15 **16**:20,22, 23 **29**:16 **37**:6,9,12,23 **39**:16 **42**:22 **44**:2 **57**:11 **59**:15, 18 **83**:9 **84**:17 **100**:11
**ruling** [1] **40**:10
**run** [4] **49**:1,21 **76**:21 **104**:22
**runs** [1] **70**:8

## S

**salmon** [5] **48**:24 **49**:1,20 **51**:3,4
**Samaritan** [1] **20**:5
**same** [35] **9**:11,19 **10**:24 **16**:13 **17**:2,21 **18**:15 **25**:14 **36**:14 **45**:24 **46**:5 **61**:2,10,13, 17 **62**:10 **66**:7 **68**:2,12,18, 24 **69**:18 **70**:14 **73**:17 **81**:4, 12 **85**:21 **88**:22,24 **89**:23 **96**:23 **97**:2 **99**:7 **100**:3 **104**:17
**Sarbanes-Oxley** [1] **20**:20
**satisfied** [2] **54**:11 **70**:4
**satisfies** [1] **14**:5
**satisfy** [1] **13**:15
**saying** [17] **13**:2 **22**:10 **24**:17 **36**:1 **38**:15 **46**:15,25 **47**:19 **57**:9 **58**:21 **60**:16 **78**:15 **82**:4 **87**:17 **89**:16 **92**:13 **94**:7
**says** [9] **9**:17 **13**:23 **14**:2 **31**:9 **37**:24 **61**:12,16 **74**:12 **101**:19
**scenario** [4] **9**:3 **18**:5 **49**:12,13
**scenarios** [1] **16**:13
**schemes** [1] **36**:18
**scienter** [1] **66**:14
**scope** [13] **16**:7,13 **17**:9,18 **20**:23 **21**:24,25 **52**:6 **70**:16, 19 **95**:1 **100**:8 **103**:15
**score** [1] **35**:24
**scores** [1] **96**:5
**Screening** [1] **20**:6
**Second** [10] **4**:7 **7**:5 **24**:4 **50**:22 **57**:7 **61**:4 **67**:5 **73**:22,23 **77**:16
**second-year** [1] **19**:11
**Section** [5] **3**:21 **19**:25 **20**:

5 36:17 75:25
**Security** [2] 56:5,7
**see** [19] 6:6 9:25 19:2 28: 25 53:13,13 61:3,3 65:13 94:10
**seem** [9] 19:15 44:23 64:24 65:1,19 66:24 68:2 74:17 93:19
**seemed** [2] 25:17 26:5
**seems** [16] 21:21,23 31:6 39:16 42:23 43:12 44:22 55:9,11,14 56:18 57:1 66: 1 67:14 69:4 93:12
**seen** [1] 29:10
**sell** [2] 55:7 56:7
**send** [5] 14:11,18,20 41:25 103:7
**sends** [1] 28:17
**sense** [12] 5:19 6:11 7:13 26:17 31:16 34:6 37:9 38: 25 42:22 50:17 54:5 80:18
**sensible** [2] 39:5 81:11
**sent** [1] 94:24
**sentence** [6] 4:19 32:14 34:23 95:11 96:13,16
**sentencing** [3] 25:6 28:22 32:11
**separate** [1] 94:11
**separated** [1] 94:16
**separating** [2] 46:1 47:5
**serious** [13] 28:1 53:5 63:2 68:22 70:13 73:20,25 74: 16,18 75:1,7,12 87:13
**serves** [2] 55:18 89:21
**service** [17] 10:12 13:6 20: 4 37:13 38:11,12,17,18 45: 14 47:23 59:4 84:11,14,25 91:20,22 94:2
**services** [48] 4:4,5,10 9:22 17:6,18,20,25 18:7,20,21 29:13,14,14,15 30:6,12,19, 23,24 31:18,20 35:3 38:6 40:22 43:25 44:19,20 45: 16,23,25 46:9 47:16 48:1 54:1,2,16 56:15 59:6,7 78: 9,17 92:22,23 94:5,6,12 101:20
**sessions** [1] 17:23
**set** [9] 75:6,7 76:13,18 77: 24 78:8 80:4 81:22 93:25
**setting** [1] 44:8
**Seventh** [1] 51:12
**severely** [2] 18:11 47:25
**share** [1] 78:4
**short** [1] 90:13
**shorthand** [1] 24:7
**shouldn't** [3] 33:1 76:16 83:18
**shows** [1] 36:6
**side** [7] 31:3 47:6,16,18 64: 23 92:6 98:20
**sides** [1] 42:18
**significant** [1] 32:22
**significantly** [1] 96:22

**similar** [4] 35:17 55:4 89: 10 96:11
**simple** [2] 3:14 105:5
**simply** [8] 6:23 21:8 38:1 51:7 89:21 97:11 98:21 105:23
**since** [3] 81:9,23 82:16
**single** [1] 25:9
**sirloin** [1] 11:22
**sitting** [1] 16:5
**situation** [3] 42:11 87:18 96:24
**situations** [3] 28:23 32:10 87:12
**Sixth** [8] 29:8 83:10 84:8,9, 23 93:9 101:14,14
**size** [1] 66:6
**skip** [1] 82:12
**slice** [1] 56:13
**slightly** [1] 51:13
**slim** [1] 77:4
**small** [7] 66:2,7,23 67:6,8, 11,19
**smaller** [1] 66:25
**Smith** [5] 35:17,19,25 36:1 65:11
**smokes** [1] 77:14
**smoking** [1] 104:11
**Social** [1] 56:4
**socially** [1] 41:20
**sold** [1] 54:3
**sole** [1] 56:16
**Solicitor** [6] 1:20 16:22 23: 14 31:9,19 32:16
**solve** [1] 57:13
**solves** [1] 57:14
**somebody** [17] 12:8 13:3 14:10,18,20 25:6 28:17,23 32:5 33:13,16,19 53:9 54: 19 56:7 91:17 94:11
**somebody's** [10] 5:1 28: 12 30:1 49:10 50:12 52:2 56:4 67:23 104:8 105:14
**somehow** [1] 30:23
**someone** [9] 22:23 42:3 66:25 77:12 94:3 95:19 96: 1 98:21 99:25
**someone's** [3] 86:3 99:6,8
**sometimes** [2] 32:5 47:20
**somewhat** [1] 80:10
**soon** [1] 40:12
**sorry** [8] 7:7 8:19 10:15,16, 25 19:7 69:14 91:13
**sort** [12] 5:16 16:4 25:14 26: 9 31:2 33:3,25 59:22 72: 12
**sorting** [1] 29:17
**sorts** [4] 21:11 84:1,2 103: 7
**SOTOMAYOR** [42] 10:23, 25 11:2,6,9,19,20 13:19,21 14:1,7 17:16 22:14 23:4, 22 38:14 39:11,12 40:6,9, 17,20 41:8,11,19 42:2,17

**43:**2,6,11,14 **44:**10 **64:**1 79:1,7,16 **91:**7 **99:**12,13,20 100:21 102:3
**Sotomayor's** [1] 55:4
**source** [1] 81:1
**Speaking** [1] 89:25
**speaks** [2] 47:4 68:1
**species** [1] 59:22
**specific** [6] 14:16 65:3 76: 13 77:25 78:7,12
**specifically** [1] 88:6
**speech** [1] 54:18
**spell** [1] 53:22
**sports** [1] 96:4
**stage** [2] 97:24,24
**stand** [2] 67:25 68:4
**stand-alone** [1] 50:18
**standard** [2] 25:17 58:13
**standardless** [2] 43:1 62: 24
**Stanford** [1] 1:18
**start** [6] 6:15 38:21 43:17 53:5 63:11 68:10
**started** [1] 99:2
**state** [11] 22:17 27:2 48:17 49:2,9 50:7,21 68:3 70:9 72:12 86:11
**statement** [3] 31:14 84:24 98:23
**STATES** [5] 1:1,6,15 3:5 88:8
**statute** [78] 3:12 4:13,22 5: 6 6:12,25 7:2,22 12:13,15, 17,23 13:1 15:6 17:1 20: 12,15,21 22:16,16,21 23:1 24:22 25:14 26:25 27:7 29: 19,24 32:11 33:5,6 34:14 35:11 37:24 38:25 40:25 41:5 42:18 47:12,14 51:1 52:1,21 54:5,7,10 55:24 60:17,23 62:17 64:4 65:4, 6,25 66:4 67:18 72:16,24 75:23 76:19 80:5,7,13 81: 4,10,10 90:8,15 95:17 96:7 97:12 99:18 101:17,23 103:12,21,25 104:2
**statutes** [20] 4:15 22:17,22 25:3 26:6 27:22 33:23 35: 7 50:15 61:1,7 62:7 72:1,2 88:2,12 95:1,7,9,18
**statutory** [13] 3:23 21:6,18, 19,23 22:1,3 50:5 59:18 84:20 90:3 101:5,8
**steak** [3] 11:21,22 63:16
**stealing** [2] 5:2 91:1
**stick** [1] 103:13
**still** [27] 9:7 11:4 13:5,12 14:24 15:2 16:5 27:19 36: 16,20 38:15 39:25 47:11, 12 53:20 56:14,25 62:10 66:21 67:7,22 75:3 94:6 96:17,24 99:17 100:11
**stole** [1] 54:24
**stolen** [8] 33:25 34:7 55:11,

25 79:18 80:4 90:19,22
**stood** [1] 103:18
**strange** [1] 87:16
**stretcher** [2] 79:9,10
**stretchers** [4] 45:12,15 59: 4 101:16
**stretches** [1] 3:12
**strikes** [1] 77:3
**strong** [2] 25:7 105:16
**strongly** [1] 90:6
**structure** [1] 26:6
**struggling** [2] 14:24 58:11
**subject** [1] 87:14
**subjects** [1] 85:24
**submission** [2] 24:11,12
**submit** [3] 39:20 81:11 106: 2
**submitted** [3] 36:14 106:4, 7
**subsection** [1] 24:8
**subset** [5] 27:10,16 35:14 60:20 74:23
**substantial** [1] 64:8
**substantially** [2] 67:16 87: 13
**substantive** [1] 92:11
**successful** [1] 66:24
**sudden** [1] 105:21
**suddenly** [1] 9:4
**suffers** [1] 32:21
**sufficiency** [2] 81:23 100: 16
**sufficient** [1] 65:16
**suggest** [4] 45:2 76:8 83: 22 93:10
**suggested** [4] 64:2 83:25 85:9 94:1
**suggesting** [6] 24:19,21 73:9 83:17 85:17 86:17
**suggestion** [2] 73:23 102: 15
**suggests** [1] 76:12
**summarize** [1] 86:1
**superfluous** [1] 7:4
**supporting** [1] 81:21
**supports** [2] 90:6 100:18
**suppose** [6] 17:5,22 36:23 37:11 69:17 91:17
**supposed** [2] 17:19 45:25
**SUPREME** [2] 1:1,14
**SURI** [81] 1:20 2:6 63:6,7,9 65:18,24 66:12 67:1 68:10, 20,23 69:3,10,20 70:1,10, 15,21 71:3,7,12,18,21 72: 15,21 73:1,6,18 74:7,20,23 75:5,22 76:11 77:9 78:18, 21 79:5,11,25 80:11,25 82: 19 83:4,8,17,21 84:9,13,22 85:7,11,15,20 86:1,11,16, 24 87:25 88:19,23 89:7 90: 4 91:9,25 92:15 93:2,6 94: 1,15 95:17 97:2,21 98:5,8, 12 99:5,19 100:11 106:4
**surprise** [1] 76:17

**surprised** [1] 93:22
**suspected** [1] 99:16
**Sutton** [18] 29:8 45:8,13 47: 2 58:15,19 83:11,18 84:5,8 92:17,18,19,25 93:17,23 94:1 101:25
**Sutton's** [8] 31:1 44:13 45: 1 51:11 57:5,12 79:10 101: 12
**swallow** [1] 48:16
**swath** [2] 4:15 24:24
**swaths** [1] 48:17
**sweep** [4] 19:9 44:4 62:24 103:23
**sweeps** [2] 19:6 86:14
**swindled** [1] 33:16
**synonym** [1] 36:4

---

## T

**table** [2] 19:3 53:10
**tacked** [1] 74:1
**talked** [7] 29:2 41:6,8 48:9 58:4,7 101:9
**tangible** [1] 20:20
**targeting** [1] 4:25
**taught** [1] 42:7
**Tax** [2] 40:20 41:6
**tech** [1] 20:13
**technical** [2] 12:11,16
**teeny** [2] 74:15,15
**tells** [1] 39:19
**tenant** [1] 56:10
**tenth** [1] 67:21
**term** [8] 3:17 58:13 62:25 80:18 84:20 85:1,2 90:5
**terms** [16] 3:20 23:16 25: 22 27:11 38:24 39:6 59:19 68:1,5 70:14 80:10 84:3 88:13 90:3,3 105:15
**territory** [1] 38:22
**test** [24] 14:5 17:7 41:23 42: 16 64:25 80:2,4 83:18,23 84:1,5,8,9,22 92:17,18,19, 25 93:11,17,23 94:9 102: 22 103:9
**testing** [2] 82:5,7
**text** [6] 20:12 21:6,23 22:1 101:5,8
**textual** [2] 18:25 65:3
**theft** [51] 3:12,18 5:3,9 11:3, 5 13:18 17:1 19:16 21:8 22:15,17,21 23:8 24:14,19 27:24 28:16,19 29:12,22 30:21 33:3 34:4,12 38:16, 22 39:8,25 42:8 49:1,10 50:14 51:5 53:14 55:12 62: 18 64:25 65:2,3 67:22 68: 9 75:18 76:9,14 79:24 80: 2 83:2 86:8 105:7,24
**theory** [8] 6:22,22 13:23 41: 17 48:23 52:5,13 62:16
**there's** [24] 6:13 9:17 11:3, 6 23:2 24:7 33:4 40:23 45: 5,21,22 49:23 52:23 61:6

**69** [10,21 **75** [13 **78** [5,16 **79**: 11 **81** [1,17 **90** [13 **96** [6
**thereby** [1] **95** [15
**therefore** [3] **4** [16 **64** [19 **93** [8
**They've** [2] **33** [17 **44** [2
**thieving** [1] **23** [9
**thinks** [3] **19** [15 **79** [17,22
**Third** [1] **77** [24
**THOMAS** [17] **5** [13,23 **6** [11 **16** [17 **34** [9,10,15 **35** [10,16 **36** [9 **65** [8,18,21 **66** [9,22 **74** [14 **91** [5
**though** [5] **39** [23 **72** [6 **75**: 24 **83** [11 **93** [19
**three** [11] **18** [9 **31** [10,11,16, 16 **32** [17 **65** [15 **81** [15,16 **82** [4,6
**three-letter** [1] **46** [1
**three-word** [1] **21** [20
**thumb** [1] **29** [16
**thwart** [1] **5** [9
**tie** [1] **55** [12
**tighter** [1] **27** [1
**title** [30] **20** [17,23,25 **21** [4,7, 20 **22** [7,20 **23** [2,3 **24** [6,10, 17 **25** [16 **29** [2 **31** [5,16 **37** [4,22 **43** [20 **53** [9,12 **55**: 12 **59** [18 **64** [23 **80** [9,13,15, 23 **81** [2
**titles** [2] **21** [16 **24** [5
**today** [13] **24** [12,13 **27** [5,7 **34** [19 **36** [5 **44** [9 **63** [19 **83**: 7 **101** [6 **104** [9,18,21
**tomahawk** [1] **11** [21
**took** [2] **32** [24 **84** [22
**tools** [2] **18** [25 **37** [19
**top** [2] **27** [25 **87** [8
**totally** [1] **59** [10
**toughest** [1] **44** [17
**towards** [1] **38** [7
**traditionally** [1] **48** [18
**transaction** [4] **5** [17 **8** [24 **10** [22 **15** [20
**transfer** [9] **22** [22 **23** [7 **25**: 23 **55** [6,7,10 **56** [21 **90** [3,17
**transferred** [1] **79** [23
**transfers** [1] **22** [18
**transform** [2] **5** [7 **28** [21
**translated** [1] **65** [2
**trapped** [1] **71** [23
**trapping** [1] **95** [10
**trial** [1] **25** [6
**tried** [1] **104** [3
**trigger** [4] **28** [6 **74** [5 **96** [19, 21
**triggering** [2] **15** [5 **85** [22
**triggers** [2] **67** [17 **74** [24
**trio** [1] **55** [17
**true** [2] **67** [2,25
**truly** [1] **50** [17
**trump** [1] **20** [14
**trying** [8] **19** [17 **24** [25 **38**: 23 **39** [4 **42** [3 **55** [15 **59** [17

**105** [19
**turn** [8] **6** [25 **20** [17 **24** [3 **65**: 7 **97** [9 **101** [6,11 **103** [15
**Twenty-five** [1] **4** [20
**twist** [1] **30** [22
**two** [25] **3** [19 **7** [1 **9** [15 **11** [3, 6 **12** [10 **22** [4 **35** [20,24 **45**: 4,7 **46** [3 **51** [9 **58** [3 **61** [1,7, 8 **62** [6 **74** [1 **86** [23,25 **88** [2, 11 **99** [20 **101** [5
**two-year** [9] **4** [22 **25** [3 **28**: 24 **66** [5 **74** [6 **85** [25 **86** [18 **87** [23 **105** [20
**type** [8] **10** [12,12 **17** [25 **33**: 6,7,10 **37** [13 **90** [10
**types** [1] **38** [20

## U

**U.S** [2] **53** [11,12
**un** [1] **53** [6
**unattractive** [3] **65** [19,22 **66** [1
**unauthorized** [2] **6** [18,24
**under** [22] **9** [16 **12** [12,12 **14** [5 **16** [25 **24** [23 **27** [19 **40**: 24 **41** [16 **50** [8,20 **54** [5 **55**: 24 **62** [15 **75** [22 **78** [5 **79** [2, 8 **86** [21 **87** [3 **95** [25 **103** [6
**underlying** [6] **34** [24 **35** [15 **52** [19 **74** [2 **75** [20 **97** [1
**underscore** [2] **29** [4 **49** [19
**underscored** [1] **35** [9
**understand** [20] **5** [23 **11**: 10 **15** [1,12 **21** [5,9 **22** [11 **24** [5,10 **44** [15 **51** [8 **60** [14 **64** [22 **71** [15 **73** [3,20 **92** [19 **102** [21 **103** [1,8
**understanding** [3] **3** [17 **34** [20,23 **35** [13 **38** [24 **39** [5 **44** [3 **97** [18 **103** [22
**understatement** [1] **65** [22
**understood** [2] **48** [18 **93**: 17
**unfair** [1] **19** [20
**unfortunate** [1] **21** [21
**unit** [1] **80** [21
**UNITED** [5] **1** [1,6,15 **3** [5 **88**: 8
**universe** [1] **89** [19
**unjustified** [1] **84** [17
**unlawful** [5] **25** [24 **52** [3 **57**: 2 **67** [23 **86** [12
**unlawfulness** [1] **92** [8,11
**unless** [1] **55** [10
**unlike** [4] **73** [23 **87** [18 **92** [3 **95** [18
**unmistakable** [1] **94** [24
**unsatisfying** [1] **100** [9
**unsolicited** [2] **14** [12,19
**unwary** [1] **95** [10,11
**up** [15] **13** [22 **35** [25 **39** [16 **41** [19 **43** [17 **48** [16 **49** [14 **59** [23 **63** [17 **65** [15 **67** [15, 20,20 **88** [4 **99** [21

**urge** [1] **83** [9
**urged** [1] **27** [4
**useful** [1] **80** [14
**usefulness** [1] **23** [3
**uses** [16] **8** [22 **25** [21 **35** [4 **49** [9 **56** [10,12 **63** [13,16 **68**: 12 **80** [8 **90** [12 **91** [12,13,15 **98** [14 **99** [25
**using** [20] **6** [23 **9** [2 **22** [22, 23 **28** [11 **36** [5 **41** [13,16 **42**: 14 **48** [2 **50** [12 **59** [4,8 **64**: 14,18 **67** [22 **74** [19 **76** [5,24 **77** [7

## V

**vacate** [1] **100** [6
**vaccine** [2] **77** [17,19
**vague** [6] **39** [3 **42** [22 **62** [20 **80** [7,18
**vagueness** [13] **39** [17 **42**: 18,25 **43** [17 **52** [25 **53** [6 **68**: 5 **71** [2,6,9,20,21 **103** [11
**valet** [2] **5** [25 **6** [3
**value** [1] **39** [13
**Van** [4] **23** [18 **43** [23 **95**: 5 **96** [2
**variety** [1] **22** [17
**various** [1] **48** [9
**vast** [3] **24** [23 **44** [4 **48** [17
**verbs** [1] **57** [1
**version** [4] **35** [14 **37** [5 **47**: 22 **88** [1
**versus** [4] **3** [5 **9** [21 **26** [20 **45** [9
**victim** [2] **34** [5 **41** [12
**view** [8] **50** [25 **73** [4 **81** [21 **82** [22 **97** [19,22 **99** [3 **100** [5
**violate** [9] **12** [15,17,23 **13**: 1 **47** [12 **65** [16 **75** [9,10 **102**: 19
**violated** [1] **36** [17
**violates** [2] **14** [14 **103** [20
**violation** [4] **7** [3 **71** [24 **86**: 13 **88** [7
**virtually** [1] **104** [1
**VIVEK** [3] **1** [20 **2** [6 **63** [7

## W

**waiter** [18] **7** [25 **8** [3,11,17, 22 **10** [1 **14** [25 **15** [8,22 **53**: 2,11,12 **63** [13,16,19 **72** [10 **99** [2 **103** [19
**waiter's** [1] **8** [12
**waiters** [1] **68** [7
**wanted** [7] **24** [4 **28** [21 **29** [1, 4 **48** [19 **57** [10 **81** [14
**Washington** [2] **1** [10,21
**watermark** [1] **94** [4
**way** [36] **4** [1 **6** [11 **10** [10 **11**: 23 **18** [12 **20** [9 **21** [2,22 **31**: 2 **35** [6 **40** [23 **41** [23 **42** [14 **47** [14 **50** [15 **56** [5 **58** [7 **62**: 5,6,7 **66** [8 **67** [23 **69** [18 **70**: 14 **72** [15 **74** [19 **81** [12 **82** [2

**85** [18,21 **86** [2 **93** [24 **98** [17 **99** [8 **100** [9 **101** [25
**ways** [4] **36** [25 **59** [15 **76** [23 **77** [3
**week** [1] **19** [21
**weight** [1] **43** [20
**whatever** [5] **12** [7,8 **13** [8 **32** [25 **57** [9
**whats** [1] **44** [23
**whatsoever** [1] **75** [8
**whenever** [1] **99** [25
**whereas** [1] **30** [4
**Whereupon** [1] **106** [6
**whether** [34] **7** [11,12,12,17, 20 **9** [19,20 **14** [18,19 **16** [5 **29** [21,22,25 **30** [1 **31** [7 **33**: 2,7,24 **34** [1 **41** [24 **45** [15 **46** [5 **49** [11 **54** [6,7 **63** [23 **77** [14 **80** [3 **81** [15,19 **92** [5 **97** [19 **100** [17,19
**white** [1] **28** [25
**whole** [2] **39** [2,3
**will** [2] **57** [24 **65** [13
**wine** [4] **63** [17,24 **68** [9 **72**: 11
**wire** [6] **13** [16 **27** [21 **49** [20 **85** [14,24 **103** [21
**wishes** [1] **83** [6
**within** [16] **3** [20 **24** [9 **42** [15 **44** [19 **53** [20 **65** [5 **69** [24 **70**: 16,19 **72** [18 **89** [20 **95** [13 **101** [16,22 **103** [21 **104** [2
**without** [54] **4** [8 **8** [7,10 **9** [6 **10** [6,19 **14** [10 **15** [1,8 **17**: 14 **19** [4 **21** [10 **29** [3 **34** [21 **36** [11,15,24 **37** [8 **40** [13 **41**: 10,19 **47** [4,7,10 **49** [8,8 **57** [21 **58** [5 **61** [13 **63** [20 **64** [14,18 **76** [24,25 **83** [24,25 **90** [23 **91** [10,13, 23 **93** [15 **97** [19,22 **98** [3,13 **99** [4,5,24 **100** [8 **101** [10 **102** [2,10,19
**woman** [1] **99** [15
**wondering** [1] **19** [16
**word** [11] **20** [23 **22** [8,15 **23**: 6 **36** [4,7 **54** [15 **55** [17 **58**: 22 **89** [15,16
**words** [19] **13** [2 **22** [11,21 **23** [7 **24** [19 **29** [23 **33** [12 **34**: 13 **35** [22 **38** [3 **39** [21 **42**: 1 **44** [3 **46** [1 **59** [25 **69** [9 **75**: 17 **105** [10,23
**work** [17] **31** [3 **44** [15 **45** [1,2 **56** [5,19 **57** [24 **58** [17,21 **64**: 3 **89** [16 **90** [22,25 **92** [19,25 **96** [4 **103** [9
**worked** [1] **19** [10
**workers** [1] **56** [4
**works** [5] **29** [18 **41** [23 **50**: 16 **74** [11 **103** [2
**world** [9] **53** [2 **62** [21 **68** [5,6 **71** [10 **74** [13 **87** [23 **105** [5,9
**worry** [2] **92** [14 **96** [12

**worse** [1] **72** [9
**worst** [1] **87** [25
**would-be** [1] **56** [10
**wrestled** [2] **65** [10,12
**wrote** [1] **29** [9

## Y

**Yates** [4] **20** [18 **21** [12 **22** [6 **35** [3
**year** [4] **32** [25 **78** [3 **81** [20 **82** [7
**years** [3] **43** [23 **74** [1 **96** [11