RCH/AXB/LAZ
F. #2022R01030

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA


      - against –                                      23 CR 197 (S-2) (JS)


GEORGE ANTHONY DEVOLDER SANTOS,
      also known as "George Santos,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S OMNIBUS PRE-TRIAL MOTION


BREON PEACE                COREY R. AMUNDSON
United States Attorney      Chief, Public Integrity Section
Eastern District of New York   U.S. Department of Justice

Ryan C. Harris             Jacob R. Steiner
Anthony Bagnuola        John P. Taddei
Laura Zuckerwise        Trial Attorneys
Assistant U.S. Attorneys    (Of Counsel)
(Of Counsel)

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

    I. The Charged Conduct ................................................................................................ 4

        A.     Campaign-Related Fradulent Schemes ...................................................... 4

            1. The Party Program Scheme ................................................................. 4

            2. The Credit Card Fraud Scheme ........................................................... 6

            3. The Company #1 Fraud Scheme ......................................................... 9

        B.     Employment-Related Fraudulent Schemes .............................................. 10

            1. Fraudulent Application for and Receipt of Unemployment Benefits .............. 10

            2. False Statements in House Disclosure Reports .................................. 11

    II. Relevant Procedural History .................................................................................... 12

ARGUMENT ...................................................................................................................... 14

POINT ONE: COUNTS 6 AND 10 SUFFICIENTLY STATE THE OFFENSE OF
AGGRAVATED IDENTITY THEFT .................................................................................... 14

    I.  Legal Standards ...................................................................................................... 14

    II. Discussion ............................................................................................................. 15

        A.     Count Six and Count Ten Satisfy the Applicable Pleading Standard .................. 15

        B.     Santos's Dubin Arguments Are Not Cognizable Before Trial ............................ 17

        C.     Counts 6 and 10 are Permissible under Dubin ..................................... 19

POINT TWO: SECTION 1028A IS NOT UNCONSTITUTIONALLY VAGUE ...................... 25

    I.  Legal Standards ...................................................................................................... 25

    II. Discussion ............................................................................................................. 26

        A.     Section 1028A Is Not Facially Vague ................................................... 26

        B.     Section 1028A Is Not Vague as Applied ............................................... 27

POINT THREE: COUNTS NINE AND TEN ARE NOT MULTIPLICITOUS ...................... 30

    I.  Legal Standards ...................................................................................................... 30

    II. Discussion ............................................................................................................. 31

POINT FOUR: COUNT NINETEEN IS NOT DUPLICITOUS ......................................... 34

    I.  Legal Standards ...................................................................................................... 34

    II. Discussion ............................................................................................................. 35

POINT FIVE: SANTOS IS NOT ENTITLED TO A BILL OF PARTICULARS......................38

    I. Legal Standards...................................................................................................38

    II. Discussion ..........................................................................................................41

        A.    The Indictment Contains Particularized Information Regarding the
            Misrepresentations Relevant to Counts Two through Eight ................................41

        B.    Voluntarily Providing the Requested Transactional Detail Moots the Motion as
            Regards Counts Nine and Ten .............................................................................43

POINT SIX: COMPULSORY PRESERVATION AND DISCLOSURE OF
INVESTIGATIVE MATERIALS IS UNNECESSARY AND IMPROPER........................45

    I. Legal Standards...................................................................................................46

    II. Discussion ..........................................................................................................48

POINT SEVEN: THE INDICTMENT DOES NOT CONTAIN IMPERMISSIBLE
SURPLUSAGE...................................................................................................................55

    I. Legal Standards...................................................................................................56

    II. Discussion ..........................................................................................................57

CONCLUSION....................................................................................................................60

TABLE OF AUTHORITIES

<u>Cases</u>

<u>Albernaz v. United States</u>,
   450 U.S. 333 (1981)..................................................................................................... 30

<u>Blockburger v. United States</u>,
   284 U.S. 299 (1932)................................................................................................ 30, 31

<u>Brady v. Maryland</u>,
   373 U.S. 83 (1963)................................................................................................ passim

<u>Dervishaj v. United States</u>,
   No. 21-CV-373, 2022 WL 3139117 (E.D.N.Y. Aug. 5, 2022)............................. 32-33

<u>Dubin v. United States</u>,
   599 U.S. 110 (2023).............................................................................................. passim

<u>Flores-Figueroa v. United States</u>,
   556 U.S. 646 (2009)..................................................................................................... 32

<u>Giglio v. United States</u>,
   405 U.S. 150 (1972)..................................................................................................... 46

<u>Harvey v. United States</u>,
   No. 23-cv-171, 2024 WL 278289 (D.N.D. Jan. 25, 2024) ......................................... 26

<u>Holder v. Humanitarian Law Project</u>,
   561 U.S. 1 (2010)................................................................................................... 26, 27

<u>Leka v. Portuondo</u>,
   257 F.3d 89 (2d Cir. 2001).......................................................................................... 47

<u>Parker v. Levy</u>,
   417 U.S. 733 (1974)..................................................................................................... 26

<u>Skilling v. United States</u>,
   561 U.S. 358 (2010)..................................................................................................... 25

<u>Smith v. Goguen</u>,
   415 U.S. 566 (1974)..................................................................................................... 25

<u>Spigelman v. United States</u>,
   No. 10-CV-7579 (SAS), 2012 WL 3594304 (S.D.N.Y. Aug. 21, 2012)................... 30

<u>United States v. Abdur-Rahman</u>,
   512 F. App'x 1 (2d Cir. 2013) ...................................................................... 2, 31, 32

<u>United States v. Adelglass</u>,
   No. 20-CR-605, 2022 WL 6763791 (S.D.N.Y. Oct. 11, 2022) ............................... 55

<u>United States v. Agrawal</u>,
   726 F.3d 235 (2d Cir. 2013)........................................................................................ 19

<u>United States v. Aguilar</u>,
   No. 20-CR-390, ECF No. 39 (E.D.N.Y. 2021)......................................................... 40

<u>United States v. Agurs</u>,
   427 U.S. 97 (1976)......................................................................................... 46, 47, 48

<u>United States v. Amer</u>,
   110 F.3d 873 (2d Cir. 1997)........................................................................................ 26

<u>United States v. Badoolah</u>,
   No. 12-CR-774, 2014 WL 4793787 (E.D.N.Y. Sept. 25, 2014)............................... 52

<u>United States v. Barret</u>,

824 F. Supp. 2d 419 (E.D.N.Y. 2011) ................................................................. 39
United States v. Barrett,
    153 F. Supp. 3d 552 (E.D.N.Y. 2015) .............................................................. 45
United States v. Bastian,
    112 F. Supp. 2d 378 (S.D.N.Y. 2000) .............................................................. 28
United States v. Bastian,
    770 F. Supp. 3d 212 (2d Cir. 2014) ................................................................. 19
United States v. Bellomo,
    263 F. Supp. 2d 561 (E.D.N.Y. 2003) .............................................................. 39
United States v. Block,
    No. 16-CR-595, 2017 WL 1608905 (S.D.N.Y. Apr. 28, 2017) .................... 56-57, 59
United States v. Bonilla,
    579 F.3d 1233 (11th Cir. 2009) ....................................................................... 32
United States v. Booth,
    No. 99-CR-378, 1999 WL 1192317 (S.D.N.Y. Dec. 14, 1999) ........................... 57
United States v. Bortnovsky,
    820 F.2d 572 (2d Cir. 1987) ...................................................................... 38, 43
United States v. Boustani,
    No. 18-CR-681, ECF No. 231 (E.D.N.Y. 2019) ............................................... 40
United States v. Brown,
    627 F. Supp. 3d 206 (E.D.N.Y. 2022) .............................................................. 54
United States v. Chacko,
    169 F.3d 140 (2d Cir. 1999) ...................................................................... 30, 31
United States v. Chen,
    378 F.3d 151 (2d Cir. 2004) ........................................................................... 39
United States v. Cherico,
    No. 08-CR-786, 2011 WL 4347178 (S.D.N.Y. Sept. 13, 2011) ......................... 44
United States v. Ciriaco,
    No. 99-CR-332, 1999 WL 1267470 (S.D.N.Y. Dec. 29, 1999) .......................... 54
United States v. Collins,
    409 F. Supp. 3d 228 (S.D.N.Y. 2019) .............................................................. 50
United States v. Columbo,
    No. 04-CR-273, 2006 WL 2012511 (S.D.N.Y. July 18, 2006) ........................... 40
United States v. Coonan,
    938 F.2d 1553 (2d Cir. 1991) .......................................................................... 27
United States v. Coppa,
    267 F.3d 132 (2d Cir. 2001) .................................................................. 45, 46, 47
United States v. Cordones,
    No. 11-CR-205, 2022 WL 815229 (S.D.N.Y. Mar. 17, 2022) ....................... 39-40
United States v. Dawkins,
    999 F.3d 767 (2d Cir. 2021) ..................................................................... passim
United States v. Demasi,
    No. 22-CR-20670, 2023 WL 8007341 (E.D. Mich. Nov. 17, 2023) ................... 27
United States v. DePalma,
    461 F. Supp. 778 (S.D.N.Y. 1978) ................................................................... 58
United States v. Dixon,

509 U.S. 688 (1993)........................................................................................ 30
United States v. Douglas,
    525 F.3d 225 (2d Cir. 2008)....................................................................... 47
United States v. Doyle,
    No. 16-CR-506, 2018 WL 1902506 (S.D.N.Y. Apr. 19, 2018)................. 55, 57
United States v. Droms,
    566 F.2d 361 (2d Cir. 1977)....................................................................... 37
United States v. Dumitru,
    991 F.3d 427 (2d Cir. 2021)....................................................................... 21
United States v. Eisenberg,
    No. 23-CR-10, 2023 WL 8720295 (S.D.N.Y. Dec. 18, 2023) .................. 53
United States v. Elusma,
    849 F.2d 76 (2d Cir. 1988)......................................................................... 54
United States v. GAF Corp.,
    928 F.2d 1253 (2d Cir. 1991)..................................................................... 42
United States v. Girard,
    601 F.2d 69 (2d Cir. 1979)......................................................... 2, 35, 36, 37
United States v. Gladden,
    78 F.4th 1232 (11th Cir. 2023) .................................................................. 26
United States v. Gonzalez,
    No. 21-CR-288, 2022 WL 3685796 (S.D.N.Y. Aug. 24, 2022) ............... 52
United States v. Guevara,
    No. 99-CR-445, 1999 WL 639720 (S.D.N.Y. Aug. 23, 1999) ................. 54
United States v. Gupta,
    No. 11-CR-907, 2012 WL 1066804 (S.D.N.Y. Mar. 27, 2012) ............... 57
United States v. Hatfield,
    No. 06-CR-550, 2009 WL 10673620 (E.D.N.Y. July 10, 2009) .............. 45
United States v. Hotte,
    No. 97-CR-669, 1997 WL 694718 (E.D.N.Y. Nov. 6, 1997).................... 54
United States v. Houtar,
    980 F.3d 268 (2d Cir. 2020)......................................................... 2, 25, 28
United States v. Huawei Technologies Co., Ltd.,
    No. 18-CR-457, ECF No. 303 (E.D.N.Y. 2021)....................................... 40
United States v. Iannelli,
    2023 WL 7165109 (D. Mass. Oct. 31, 2023)............................................ 27
United States v. Ianniello,
    621 F. Supp. 1455 (S.D.N.Y. 1985)........................................................... 39
United States v. Inniss,
    No. 18-CR-134, 2019 WL 6117987 (E.D.N.Y. Nov. 18, 2019)............... 52
United States v. James,
    No. 19-CR-382, 2023 WL 6675339 (E.D.N.Y. Oct. 12, 2023) ............... 21-22
United States v. Johnson,
    No. 16-CR-457-1, 2017 WL 11490480 (E.D.N.Y. May 24, 2017) .......... 41
United States v. Johnson,
    No. 21-CR-428, 2023 WL 5632473 (S.D.N.Y. Aug. 31, 2023)................ 59
United States v. Jones,

v

482 F.3d 60 (2d Cir. 2006).................................................................... 30

United States v. Kassir,
No. 04-CR-356, 2009 WL 995139 (S.D.N.Y. Apr. 9, 2009).................. 57

United States v. Leonard,
817 F. Supp. 286 (E.D.N.Y. 1992) ...................................................... 54

United States v. LeRoy,
687 F.2d 610 (2d Cir. 1982)................................................................. 46

United States v. Liburd,
No. 17-CR-296, 2021 WL 4521964 (E.D.N.Y. Oct. 3, 2021)................ 58

United States v. Ma,
No. 03-CR-734, 2006 WL 708559 (S.D.N.Y. Mar. 21, 2006) .............. 54

United States v. Maneti,
781 F. Supp. 169 (W.D.N.Y. 1991) ...................................................... 40

United States v. Margiotta,
646 F.2d 729 (2d Cir. 1981).......................................................... 34, 37

United States v. Mavashev,
No. 08-CR-902, 2010 WL 670083 (E.D.N.Y. Feb. 23, 2010)............... 51

United States v. Maxwell,
534 F. Supp. 3d 299 (S.D.N.Y. 2021)................................................... 59

United States v. Mercado,
No. 02-CR-675, 2003 WL 21756084 (S.D.N.Y. July 30, 2003) ........... 54

United States v. Mohamed,
148 F. Supp. 3d 232 (E.D.N.Y. 2015) ................................................. 47

United States v. Monserrate,
No. 10-CR-965, 2011 WL 3480957 (S.D.N.Y. Aug. 4, 2011).............. 55

United States v. Muyet,
945 F. Supp. 586 (S.D.N.Y. 1996)....................................................... 39

United States v. Olmeda,
461 F. 3d 271 (2d Cir. 2006)................................................................ 36

United States v. Ordaz-Gallardo,
520 F. Supp. 2d 516 (S.D.N.Y. 2007)................................................... 47

United States v. Orena,
876 F. Supp. 20 (E.D.N.Y. 1995) ........................................................ 54

United States v. Parnas,
No. 19-CR-725, 2021 WL 2981567 (S.D.N.Y. July 14, 2021) ......... 50-51

United States v. Perryman,
881 F. Supp. 2d 427 (E.D.N.Y. 2012) ................................................. 38

United States v. Persing,
No. 06-CR-815, 2008 WL 11344620 (E.D.N.Y. May 6, 2008) ............ 52

United States v. Raniere,
384 F. Supp. 3d 282 (E.D.N.Y. 2019) ................................................. 28

United States v. Reese,
No. 12-CR-629, 2023 WL 4079386 (S.D.N.Y. June 20, 2023)............. 22

United States v. Requena,
980 F.3d 30 (2d Cir. 2020).......................................................... 25-26, 27

United States v. Richards,

94 F. Supp. 2d 304 (E.D.N.Y. 2000) ............................................................ 54
United States v. Rivera,
    89 F. Supp. 3d 376 (E.D.N.Y. 2015) ......................................................... 52
United States v. Rybicki,
    354 F.3d 124 (2d Cir. 2003)............................................................... 26, 27
United States v. Salazar,
    485 F.2d 1272 (2d Cir. 1973)............................................................. 38, 41
United States v. Sampson,
    898 F.3d 270 (2d Cir. 2018)......................................................... 15, 18, 20
United States v. Schock,
    No. 16-CR-30061, 2017 WL 4780614 (C.D. Ill. Oct. 23, 2017)....................... 36
United States v. Scully,
    108 F. Supp. 3d 59 (E.D.N.Y. 2015) ........................................................... 3
United States v. Shkreli,
    No. 15-CR-637, 2016 WL 8711065 (E.D.N.Y. Dec. 14, 2016) ..................... 41, 52
United States v. Sindone,
    No. 01-CR-517, 2002 WL 48604 (S.D.N.Y. Jan. 14, 2002).............................. 39
United States v. Sturdivant,
    244 F.3d 71 (2d Cir. 2001)....................................................................... 34
United States v. Taveras,
    504 F. Supp. 3d 272 (S.D.N.Y. 2020)......................................................... 14
United States v. Tournant,
    No. 22-CR-276, 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023) ..................... 41, 57
United States v. Tutino,
    883 F.2d 1125 (2d Cir. 1989)............................................................... 34, 37
United States v. Tuzman,
    301 F. Supp. 3d 430 (S.D.N.Y. 2017).......................................................... 59
United States v. Underwood,
    No. 04-CR-424, 2005 WL 927012 (S.D.N.Y. Apr. 21, 2005)........................... 48
United States v. Watson,
    No. 23-CR-82, 2024 WL 1858199 (E.D.N.Y. Apr. 29, 2024) ................. 14, 17, 18
United States v. Weaver,
    860 F.3d 90 (2d Cir. 2017)....................................................................... 49
United States v. Wedd,
    2016 WL 1055737 (S.D.N.Y. Mar. 10, 2016) .............................................. 41
United States v. Wedd,
    993 F.3d 104 (2d Cir. 2021)............................................................... passim
United States v. Weingarten,
    713 F.3d 704 (2d Cir. 2013)..................................................................... 31
United States v. Wey,
    No. 15-CR-611, 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)....................... 57, 58
United States v. White,
    296 F. App'x 483 (6th Cir. 2008) .............................................................. 31
United States v. Williams,
    553 U.S. 285 (2008)............................................................................ 2, 25
United States v. Wilson,

No. 95-CR-668, 1997 WL 10035 (S.D.N.Y. Jan. 10, 1997)...................................................... 34
Yik Man Mui v. United States,
    No. 99-CV-3627, 2013 WL 6330661 (E.D.N.Y. Dec. 5, 2013) .............................................. 54

Statutes

18 U.S.C. § 371 ...................................................................................................................... 6
18 U.S.C. § 641 ......................................................................................................... 2, 11, 34
18 U.S.C. § 1001 .......................................................................................... 6, 12, 15, 16
18 U.S.C. § 1028A ...................................................................................................... passim
18 U.S.C. § 1029 ......................................................................................................... passim
18 U.S.C. § 1343 ......................................................................................................... passim
18 U.S.C. § 1519 ...................................................................................................................... 6
18 U.S.C. § 3500 .................................................................................................... 41, 45, 53

Rules

Federal Rule of Criminal Procedure 7 ........................................................................ passim
Federal Rule of Criminal Procedure 8 ............................................................................... 34
Federal Rule of Criminal Procedure 12 ...................................................................... passim
Federal Rule of Criminal Procedure 16 ................................................................... 45, 53

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to defendant George Anthony Devolder Santos's omnibus pretrial motion (the "Motion" or "Mot."). See ECF Nos. 71, 73, 76.

Santos principally seeks to dismiss the counts of aggravated identity theft charged in the Second Superseding Indictment (hereinafter, the "Indictment" or "S-2").[1]  In that regard, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), he moves to dismiss Count Six and Count Ten—both charging violations of 18 U.S.C. § 1028A—on the ground that those counts fail to state an offense in the wake of the Supreme Court's opinion in Dubin v. United States, 599 U.S. 110 (2023). See Mot. 9-20.  Pursuant to the Fifth Amendment, he alternatively challenges the constitutionality of Section 1028A, contending that the statute is both impermissibly vague on its face and as applied to this case.  See id. 20–24.  And, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii), he moves to dismiss Count Ten on multiplicity grounds, arguing that Count Ten's theory of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) is the same as Count Nine's theory of access device fraud under 18 U.S.C. § 1029(a)(5).  See id. 24–27.

These challenges to the aggravated identity theft charges are meritless.  Count Six and Count Ten each state an offense because they "track the language of the statute charged and

---

[1]   On May 9, 2023, a grand jury in the Eastern District of New York returned an indictment charging Santos in 13 counts.  See ECF No. 1.  All of those counts were subsequently included in a Superseding Indictment ("S-1"), returned on October 10, 2023, which charged Santos in 23 counts.  See ECF No. 50.  During the pendency of the instant Motion, the grand jury returned a Second Superseding Indictment, which did not add new charges.  It contained only minor changes to S-1, namely, typographical corrections, clarifications in the language of paragraphs 44 and 45, and, in response to Santos's overly narrow construction of Count Ten, the removal of the "to wit" clause in that count.  Therefore, because the S-1 and S-2 indictments are materially indistinguishable, the government treats the arguments raised in the Motion as directed to S-2 and refers herein to S-2 as the operative charging instrument.

state the time and place (in approximate terms) of the alleged crime[s]." United States v. Dawkins, 999 F.3d 767, 779 (2d Cir. 2021) (internal quotation marks and citation omitted).  Nor are these counts unconstitutionally vague because the statute provides "fair notice of what is prohibited." See United States v. Houtar, 980 F.3d 268, 273 (2d Cir. 2020) (quoting United States v. Williams, 553 U.S. 285, 304 (2008)).  And Counts Nine and Ten are not multiplicitous because "cumulative punishment is authorized for" Section 1028A.  See United States v. Abdur-Rahman, 512 F. App'x 1, 3 (2d Cir. 2013) (summary order).

In addition, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i), Santos moves to dismiss Count Nineteen of the Indictment on duplicity grounds, contending that Count Nineteen, which charges theft of public money under 18 U.S.C. § 641, encompasses more than one offense.  See Mot. 27–32.  But Count Nineteen is not duplicitous because it charges a scheme offense.  See United States v. Girard, 601 F.2d 69, 72 (2d Cir. 1979).

Apart from requesting dismissal of three of the 23 counts set forth in the Indictment, Santos seeks a variety of other relief.  Pursuant to Federal Rule of Criminal Procedure 7(f), he moves for a bill of particulars, claiming that several aspects of the charging document lack sufficient specificity to comply with the pleading standard in Rule 7(c)(1).  See Mot. 32–40.  This request should be denied because the Indictment provides the required specificity for Counts Two through Eight, and the government has provided the requested transactional details for Counts Nine and Ten.

Further, Santos not only moves to compel the production of witness statements and related investigative materials that he contends come within the ambit of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny ("Brady Materials"), he also asks the Court to direct the government to preserve such materials.  See Mot. 40–47, 50–51.  And, pursuant to Federal Rule of Criminal

Procedure 7(d), he moves to strike purported surplusage from the Indictment.  See id. 47–50.   His arguments in support of these requests lack a basis in either fact or law and should accordingly be rejected.

   The Motion should be denied in its entirety without a hearing.[2]

---

[2]   In his accompanying Notice of Motion, Santos "requests that the Court conduct an evidentiary hearing to resolve any factual issues concerning these motions."  ECF No. 71.  But Santos fails to identify any factual issue warranting a hearing and his legal memorandum sets forth no basis for conducting one.   Indeed, "[w]hen deciding a motion to dismiss a count of an indictment, a court must accept all the factual allegations in the indictment as true" and its inquiry "should not look beyond the face of the indictment."  United States v. Scully, 108 F. Supp. 3d 59, 117 (E.D.N.Y. 2015) (citations omitted).  Under these circumstances, an evidentiary hearing is neither warranted nor appropriate to resolve the issues presented in the Motion.

STATEMENT OF FACTS

I.   The Charged Conduct

The Indictment charges Santos in 23 counts, relating to five criminal schemes, specifically three campaign-related schemes to defraud and two employment-related schemes to defraud.  Santos's omnibus pretrial motion raises arguments that are relevant to just three of those schemes.

A.   Campaign-Related Fraudulent Schemes

As alleged in the Indictment and relevant to the arguments contained in the defendant's motion, Santos was a candidate for the United States House of Representatives (the "House") during the 2022 election cycle.  See S-2 ¶ 1.  As described more fully below, in relation to his candidacy Santos devised and executed fraudulent schemes to obtain money for himself and for his principal campaign committee (the "Committee") by making material misrepresentations and omissions to the Federal Election Commission ("FEC"), the National Party Committee #1, potential contributors to the Committee, and the public.  See id. ¶ 15.

1.   The Party Program Scheme

The National Party Committee #1 managed a program (the "Program") pursuant to which the National Party Committee #1 provided financial and logistical support for qualifying congressional candidates.  See S-2 ¶ 4.  The Program had three phases, each with its own qualifying criteria.  See id.  To qualify for the second phase of the Program, congressional candidates were required, among other things, to demonstrate that their campaign committee had raised at least $250,000 from third-party contributors in a single quarter.  See id.  Between approximately December 2021 and November 2022, Santos and his campaign treasurer, Nancy Marks, conspired to submit materially false reports to the FEC on behalf of the Committee in which they fraudulently

4

inflated the Committee's fundraising numbers for the purpose of misleading the FEC, the National Party Committee #1, and the public.  Id. ¶ 16.  The purpose of the scheme was to qualify Santos for different phases of the Program and thereby receive financial and logistical support from the National Party Committee #1.  See id.

Indeed, in October 2021, after failing to raise enough money to qualify for the Program during the third quarter of 2021, Santos stated in a text message to agents of the Committee that "[w]e are going to do this a little different.  I got it."  See S-2 ¶¶ 20-21.  Between approximately December 2021 and January 2022, Santos and Marks agreed to falsely inflate the Committee's fundraising totals, including in public filings with the FEC.  See id. ¶ 22.  Thus, in December 2021, Santos sent Marks a list of the names of family members of Santos and Marks, along with purported contribution amounts for each corresponding family member, for Marks to enter into the Year-End 2021 Report to the FEC for the purpose of ensuring that the Committee appeared to reach the $250,000 threshold necessary to qualify for the second phase of the Program.[3]  See id. ¶¶ 23-24.  None of those individuals had made, or ever did make, the listed contributions.  See id. ¶ 23.  Yet, in January 2022, the Committee, through Marks, submitted the Year-End 2021 Report to the FEC, which falsely reported contributions from those individuals. See id. ¶ 27.  Consequently, the Committee falsely claimed total quarterly receipts of $251,549.68, barely surpassing the $250,000 threshold necessary to qualify for the second phase of the Program. See id. ¶ 28.  Based, in part, on its belief that the Committee had exceeded the $250,000 quarterly fundraising benchmark as reported in the Year-End 2021 Report to the FEC, the National Party

---

[3]     A few days later, Santos provided Marks with addresses and occupations for the relatives—information he knew would be required for the Year-End 2021 Report to the FEC.  See S-2 ¶ 25.

Committee #1 announced Santos as a candidate in the second phase of the Program on or about February 25, 2022.  See id. ¶ 31.

Thereafter, between approximately March and April 2022, Santos and Marks continued the scheme to qualify Santos for all phases of the Program.  See S-2 ¶ 32.  In that regard, Santos and Marks agreed to falsely represent in presentations and communications with the National Party Committee #1 and in a quarterly submission to the FEC that Santos had loaned the Committee $500,000.   See id. ¶¶ 32, 35-36, 38.   Based, in part, on Santos's and Marks's misrepresentations about the financial position of the Committee in its reports to the FEC, the National Party Committee #1 announced in June 2022 that Santos had qualified for the third and final phase of the Program.  See id. ¶ 39.  As a result, the National Party Committee #1 provided financial and logistical support to the Committee, including by agreeing to split the cost of a political poll and entitling Santos to participate in joint fundraising committees with other qualified members of the Program.  See id. ¶¶ 41-42.

For this conduct, the grand jury charged Santos with conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371 (Count One), wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two and Three), false statements, in violation of 18 U.S.C. § 1001 (Counts Four and Seven), falsification of a record or document, in violation of 18 U.S.C. § 1519 (Counts Five and Eight), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Six).

## 2.   The Credit Card Fraud Scheme

Between approximately December 2021 and August 2022, Santos separately planned and perpetrated a scheme to steal the personal identity and financial information of individuals who had contributed to the Committee, which information he used to cause those

individuals' credit cards to be charged repeatedly without authorization for his direct and indirect benefit.  See S-2 ¶ 17.  In an effort to mask the true source of those funds and to circumvent applicable contribution limits, Santos repeatedly disguised the true source of the funds involved in those fraudulent transactions by using the names of other unwitting individuals, including individuals who had previously contributed to his campaign and his own relatives, among others. See id. ¶ 48.

One such individual is profiled in the Indictment.  In December 2021, for the purpose of authorizing a contribution to the Committee, Contributor #12 provided Santos and an agent of the Committee with billing information for two credit cards.  See S-2 ¶ 44. Approximately three days later, Santos caused a $5,000 contribution to be made to the Committee using the credit card billing information Contributor #12 provided.  See id.  However, Santos did not use Contributor #12's name when processing this charge, instead falsely identifying his relative as the putative contributor.  See id. ¶ 45.  That same day, two additional contributions were made in Contributor #12's name and using the credit card information Contributor #12 provided.  See id. ¶ 44.  Altogether, $15,800 in campaign contributions were charged to Contributor #12's credit cards in a single day, in contravention of applicable contribution limits.[4]  See id. ¶ 45.  Contributor #12 did not authorize charges that exceeded contribution limits.  See id.  The Committee's Year-

---

[4]     As outlined in the Indictment, the Federal Election Campaign Act of 1971 limited the amount and sources of money that could be contributed to a federal candidate or a federal candidate's authorized campaign committee and political committees established and maintained by a national political party.  See S-2 ¶ 11.  In particular, while candidates for federal office were permitted to give or loan their own campaigns unlimited sums of money, for the 2022 election cycle, other individuals were limited to contributing $2,900 per election per candidate committee. See id.; see also id. at ¶ 12 (describing prohibitions on "straw" or "conduit" contributions made in another person's name).

End 2021 Report to the FEC likewise falsely identified Santos's relative as the source of the funds for the unauthorized transaction that he had made.  See id.

        In the months that followed, without Contributor #12's knowledge or authorization, Santos repeatedly used Contributor #12's credit card billing information in attempts to make at least $44,800 in unauthorized charges—including, inter alia, attempts to make contributions to the Committee and to the campaign committees of other candidates for elected office—and falsely reported to the FEC that the source of those funds were his family members or other unwitting individuals.  See S-2 ¶ 46.  On at least one occasion, Santos used Contributor #12's credit card billing information to steal $12,000, which he laundered through the bank account of a Florida LLC he controlled, identified in the Indictment as "Company #1," before transferring the bulk of those funds into his personal bank account.  See id. ¶ 47.

        Santos also improperly used the credit card billing information of other victims, in addition to Contributor #12, to contribute to the Committee and to the campaigns of other candidates for elected office.  See S-2 ¶ 48.  Santos used the credit card billing information of these other victims to make tens of thousands of dollars in unauthorized charges, using the names of numerous unwitting individuals, some of whom were real people, and some fabricated.  Details of the specific transactions at issue in the Credit Card Fraud Scheme have been provided to the defense under separate cover, including, as to each transaction, the date and amount of the transaction, the name of the putative contributor, the name of the campaign receiving the funds (where applicable), the final four digits of the credit card used to make the transactions, and the name of the true cardholder.

For this conduct, the grand jury charged Santos with access device fraud, in violation of 18 U.S.C. § 1029 (Count Nine), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Ten).

### 3.  The Company #1 Fraud Scheme[5]

Between approximately September and October 2022, Santos also planned and perpetrated a scheme to defraud supporters of his candidacy by fraudulently inducing them to contribute funds to Company #1, under the false pretense that the money would be used to support Santos's congressional campaign.  See S-2 ¶ 18.  Company #1 was a Florida LLC that had as one of its authorized managers Devolder Organization LLC, a separate Florida entity wholly owned by Santos.  See id. at ¶¶ 5-6.  As part of this fraudulent scheme, Santos enlisted a Queens-based political consultant, Person #1, to solicit contributions to Company #1 from prospective contributors.  Id. at ¶¶ 7, 49.  In that regard, Santos arranged for the creation of an email address associated with Company #1 for Person #1, provided Person #1 with the names and contact information of prospective contributors, and conveyed false information to Person #1 about the nature of Company #1 and the purpose of the contributions, knowing that Person #1 would then communicate the false information to prospective contributors.  See id. at ¶ 49.

As a result, at Santos's direction, Person #1 made numerous false representations to prospective contributors regarding Company #1 and how the funds contributed to Company #1 would be spent, after which he provided prospective contributors with instructions for wiring funds to a bank account maintained by Company #1, as to which Santos was an authorized signatory. See S-2 ¶ 50.  Santos also personally repeated some of these false representations to prospective

---

[5]      Although the government provides a brief summary of the Company #1 Fraud Scheme here to orient the Court, the Motion seeks no relief from the Court regarding Counts Eleven through Eighteen, which relate to the Company #1 Fraud Scheme.

contributors.  See id. at ¶ 51.  In reliance upon these material misrepresentations, two individuals made contributions of $25,000 each to Company #1, sums exceeding the limits pertaining to candidate committees.  See id. at ¶ 52-55.

Shortly after these contributions were received in Company #1's bank account, however, they were transferred by Santos into his personal bank accounts and spent by Santos on personal expenses, including to make cash withdrawals, personal purchases of luxury designer clothing, credit card payments, a car payment, payments on personal debts, and one or more bank transfers to Santos's personal associates.  See id. ¶ 56.

For this conduct, the grand jury charged Santos with wire fraud, in violation of 18 U.S.C. § 1343 (Counts Eleven through Fifteen), and money laundering (Counts Sixteen through Eighteen).

### B. Employment-Related Fraudulent Schemes

#### 1. Fraudulent Application for and Receipt of Unemployment Benefits

In March 2020, in response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which, among other things, allocated additional unemployment benefits—consisting, in part, of federal funds—for eligible individuals.  See S-2 ¶ 57.  In June 2020, Santos submitted an application to receive unemployment insurance benefits through the New York State Department of Labor ("NYS DOL"), in which he falsely claimed to have been unemployed since mid-March 2020.  See id. at ¶ 58.  Thereafter, between approximately June 2020 and April 2021, Santos certified his continuing eligibility for unemployment benefits on a weekly basis, in each case falsely attesting, inter alia, that he was unemployed, available to take on new work and eligible for benefits.  See id.  In truth and in fact, however, between approximately February 2020 and April 2021, Santos was a Regional Director

10

at Investment Firm #1, a Florida-based investment firm, earning an annual salary of approximately $120,000.  See id. at ¶¶ 8, 58.  Nonetheless, based on his material representations to the NYS DOL, between approximately June 2020 and April 2021, Santos received payments corresponding to his claimed periods of unemployment totaling approximately $24,744.00.  See id. at ¶ 59.  The benefits Santos received were fully funded by the United States Department of the Treasury.  See id.

For this conduct, the grand jury charged Santos with theft of public money, in violation of 18 U.S.C. § 641 (Count Nineteen), and wire fraud, in violation of 18 U.S.C. § 1343 (Counts Twenty and Twenty-One).

## 2.   False Statements in House Disclosure Reports[6]

As a candidate for the House in 2020 and 2022, Santos was required to file a Financial Disclosure Statement (a "House Disclosure") at designated times prior to each of the general elections held on November 3, 2020, and November 8, 2022, respectively.  See S-2 ¶ 60. In the House Disclosures, Santos was required to make a "full and complete statement" truthfully disclosing his various financial interests, which would be transmitted to the House Committee on Ethics.  See id.

In May 2020, in connection with the 2020 election for the House, Santos filed two House Disclosures, in which he failed to disclose approximately $25,403 in income from Investment Firm #1 and overstated the income he earned from a different former employer, Company #2.  See S-2 ¶¶ 62-63.  Thereafter, on September 6, 2022, in connection with the 2022

---

[6]     Although the government provides a brief summary of the False Statements in House Disclosures Scheme here to orient the Court, the Motion seeks no relief from the Court regarding Counts Twenty-Two through Twenty-Three, which relate to the False Statements in House Disclosures Scheme.

election for the House, Santos filed a House Disclosure, in which he falsely certified that, during the reporting period: (i) his earned income consisted of $750,000 in salary from Devolder Organization LLC; (ii) his unearned income included dividends from Devolder Organization LLC valued at between $1,000,001 and $5,000,000; (iii) he had no compensation exceeding $5,000 from a single source in which he had an ownership interest; (iv) he owned a checking account with deposits totaling between $100,001 and $250,000; and (v) he owned a savings account with deposits totaling between $1,000,001 and $5,000,000.   See id. at ¶ 64.   Contrary to these attestations, however, during the applicable reporting period Santos had not received from Devolder Organization LLC the reported amounts of salary or dividends, nor did he maintain checking or savings accounts with deposits in the reported amounts.   See id. at ¶ 65.   Moreover, Santos failed to disclose approximately $28,107 in income from Investment Firm #1 and approximately $20,304 in unemployment insurance benefits from the NYS DOL.   Id.

For this conduct, the grand jury charged Santos with false statements, in violation of 18 U.S.C. § 1001 (Counts Twenty-Two and Twenty-Three).

II.   Relevant Procedural History

On May 10, 2023, Santos was arraigned on the initial indictment, entered a plea of not guilty, and was released on an unsecured bond with conditions.   See ECF No. 9.   Thereafter, on October 27, 2023, Santos was arraigned on the S-1 indictment and again entered a plea of not guilty; he was continued on the same conditions of release.   See ECF No. 53.   On January 23, 2024, upon a joint application of the parties, the Court entered a pretrial scheduling order.   See ECF No. 59.   Trial is scheduled for September 9, 2024.

The government has produced to Santos, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, significant amounts of discovery. As explained in prior briefing, see ECF

No. 68, the government also produced to Santos, in an abundance of caution, the content of certain witness statements.

ARGUMENT

POINT ONE

COUNTS 6 AND 10 SUFFICIENTLY STATE THE
OFFENSE OF AGGRAVATED IDENTITY THEFT

Santos first moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v)

to dismiss Count Six and Count Ten—both charging aggravated identity theft, in violation of 18

U.S.C. § 1028A—on the ground that those counts fail to state an offense.  See Mot. 9–20.  For the

reasons set forth below, that argument is meritless.

I.   Legal Standards

An indictment "must be a plain, concise, and definite written statement of the

essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  This standard is "a

fairly low bar."  United States v. Watson, No. 23-CR-82, 2024 WL 1858199, at *1 (E.D.N.Y. Apr.

29, 2024); see United States v. Taveras, 504 F. Supp. 3d 272, 277 (S.D.N.Y. 2020) (observing that

a defendant "faces a high standard in seeking to dismiss an indictment").[7]  "An indictment is

sufficient as long as it (1) contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend, and (2) enables the defendant to plead an

acquittal or conviction in bar of future prosecutions for the same offense."  Dawkins, 999 F.3d at

779.  "To satisfy these requirements, an indictment need do little more than track the language of

the statute charged and state the time and place (in approximate terms) of the alleged crime."  Id.

"At the indictment stage," courts "do not evaluate the adequacy of the facts to satisfy the elements

of the charged offense.  That is something we do after trial."  United States v. Wedd, 993 F.3d 104,

_____

[7]    Unless otherwise noted, all case quotations omit internal quotation marks and
citations, and accept alterations.

121 (2d Cir. 2021).  And "when a defense raises a factual dispute that is inextricably intertwined with a defendant's potential culpability, a judge cannot resolve that dispute on a Rule 12(b) motion."  United States v. Sampson, 898 F.3d 270, 281 (2d Cir. 2018); see Fed. R. Crim. P. 12(b)(3) (stating that a pretrial motion to dismiss an indictment is appropriate only if it "can be determined without a trial on the merits").  In short, "summary judgment does not exist in federal criminal procedure."  Wedd, 993 F.3d at 121.

II.    Discussion

A.  Count Six and Count Ten Satisfy the Applicable Pleading Standard

Count Six and Count Ten charge aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  See S-2 ¶¶ 77, 85.  Specifically, Count Six alleges that, on or about January 31, 2022, Santos, together with others:

> during and in relation to the crimes charged in Counts Two [wire fraud, 18 U.S.C. § 1343] and Four [false statements, 18 U.S.C. § 1001(a)(2)], did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of a person, to wit: the name[s] of Contributor[s] #1 [through #11], knowing that the means of identification belonged to said other persons.

Id. at ¶ 77; see id. at ¶¶ 70–71 (Count 2), 73 (Count 4).

Count Ten, in the First Superseding Indictment, alleged that, in or about and between December 2021 and August 2022, Santos, together with others:

> during and in relation to the crime charged in Count Nine [access device fraud, 18 U.S.C. § 1029(a)(5)], did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of one or more persons, to wit: the name and access device of

15

Contributor #12, knowing that the means of identification belonged to
another person.

S-1 at ¶ 85; see id. at ¶ 83 (Count 9).  As the government previously advised the Court, in the
Second Superseding Indictment, the government has removed the "to wit" clause of Count Ten,
which otherwise remains unchanged.

Santos does not—and cannot—dispute that these counts properly recite the
elements of aggravated identity theft.  Section 1028A provides that "[w]hoever, during and in
relation to" certain enumerated felonies "knowingly transfers, possesses, or uses, without lawful
authority, a means of identification of another person shall, in addition to the punishment provided
for such felony, be sentenced to a term of imprisonment of 2 years."  18 U.S.C. § 1028A(a)(1).
Qualifying enumerated felonies include wire fraud, in violation of 18 U.S.C. § 1343, and false
statements, in violation of 18 U.S.C. § 1001, as those offenses are charged in Count Six, as well
as access device fraud, in violation of 18 U.S.C. § 1029, as that offense is charged in Count Ten.
See 18 U.S.C. § 1028A(c)(4), (5).  And for purposes of the aggravated identity theft statute, the
term "means of identification" is defined to include "any name or number that may be used, alone
or in conjunction with any other information, to identify a specific individual."  Id. § 1028(d)(7).
Under these circumstances, it is clear that Count Six and Count Ten "track the language of the
statute charged and state the time and place (in approximate terms) of the alleged crime[s]."
Dawkins, 999 F.3d at 779.  As a result, those counts fairly inform Santos of the charges against
which he must defend and enable him to avoid double jeopardy in any future prosecutions for the

same offenses.  Id.; see also Watson, 2024 WL 1858199, at *5 (denying motion to dismiss a similarly worded aggravated identity theft count).  No more is required under the law.

## B.  Santos's Dubin Arguments Are Not Cognizable Before Trial

Unable to credibly challenge the legal sufficiency of Count Six and Count Ten, Santos instead claims that the facts alleged in the Indictment "fall outside the scope of Section 1028A."  Mot. 11.  In that regard, Santos's argument is predicated entirely on the Supreme Court's opinion in Dubin v. United States, 599 U.S. 110 (2023).  See Mot. 2–3, 9–20.  In Dubin, the Supreme Court clarified what it means to "use" a person's means of identification "during and in relation to" an enumerated felony under § 1028A(a)(1)'s statutory text.  See Dubin, 599 U.S. at 116–17.  In particular, the Court held that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal."  Id. at 131 (emphasis added).  The Court added that, "[t]o be clear, being at the crux of the criminality requires more than a causal relationship, such as facilitation of the offense or being a but-for cause of its success."  Id.  For crimes that involve fraud or deceit, "the means of identification specifically must be used in a manner that is fraudulent or deceptive.  Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved."  Id. at 132.

In his Motion, Santos contends that the facts set out in the Indictment do not meet this standard.  Specifically, he claims that "the 'crux' of the fraud underlying Count Six is [his] alleged false inflation of the amount of money raised by his campaign, not the identities of the individuals that donated."  Mot. 12.  With respect to Count Ten, Santos claims that he is charged with "alleged unauthorized overcharging of contributors' credit cards," which he argues "is now excluded from Section 1028A under Dubin."  Id. at 2–3.  As addressed below, however, Santos's

framing of the facts pleaded in Count Six and Count Ten is inaccurate and misconstrues the nature of the fraudulent schemes as alleged.  More fundamentally, though, at this pretrial stage of the criminal proceedings, Santos's arguments are plainly "a challenge to the sufficiency of the government's evidence, not to the contours of the indictment under Rule 7 or Rule 12, and as such [they] fall[] short."  Watson, 2024 WL 1858199, at *4.

Recently in this District, United States District Judge Eric R. Komitee rejected a similar Dubin-based argument that a defendant made in a pretrial motion to dismiss a Section 1028A charge, holding that the defendant's Dubin arguments "sp[oke] to the sufficiency of the government's proof, which is properly reserved for a trial jury."  Watson, 2024 WL 1858199, at *5; see also Wedd, 993 F.3d at 121 (rejecting a convicted defendant's argument that the prosecution had "improperly pled aggravated identity theft" in the indictment because "sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment").  The Court should reach the same conclusion here.

Indeed, the "extraordinarily narrow" circumstance in which it is appropriate to dismiss an indictment based on the sufficiency of the evidence described therein is the rare case where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial."  Sampson, 898 F.3d at 283.  The government had not made a "full proffer" in Watson, and neither has it done so here.  See Watson, 2024 WL 1858199, at *5 (describing this exception as "extraordinarily narrow").  In his briefing, Santos acknowledges that fact by expressing his expectation that the government's case at trial will likely contain additional evidence of his misuse of others' means of identification, as well as the relationship between that misuse and the charged predicate offenses.  For example, he recognizes that Count Ten does not simply allege the misuse of Contributor #12's credit card billing information, but also those of

18

"unidentified others."  Mot. 14 (citing S-2 ¶ 85).  Rather, the government has met, and exceeded,

its obligations under Rule 7 and is under no obligation to provide Santos with a more fulsome

preview of its trial evidence.[8]

### C. Counts 6 and 10 are Permissible under Dubin

Even if Santos's Dubin-based arguments were procedurally proper (they are not),

his claims are premised on inaccurate and premature framings of the facts.  First, Santos is wrong

that the identities of the contributors described in Count Six "are entirely ancillary to the

falsehoods" that are central to the predicate fraud and false statements offenses.  Mot. 22, 12.  In

actuality, Count Six alleges that Santos and Marks conspired to, and did, use the real names of

eleven individuals without those individuals' knowledge or consent by falsely reporting to the FEC

that those individuals had made certain non-existent campaign contributions, a "fraud or

deceit . . . . going to 'who' is involved."  Dubin, 599 U.S. at 132.  Count Six further alleges that

Santos's use of these names was during and in relation to two different predicate felonies:

(i) making materially false statements to the FEC; and (ii) defrauding the National Party

Committee #1.  See S-2 ¶ 77.  Contrary to Santos's contentions, the government intends to offer

proof at trial that using these names was at the crux of what made his conduct criminal because

the individuals' identities were "used in a manner that [was] fraudulent or deceptive" and were a

"key mover in the criminality."  See Dubin, 599 U.S. at 122–23, 132.  In particular, the government

---

[8]      To whatever extent Santos misconstrues the charging language to limit the
government's proof at trial, he is mistaken.  In describing the means of identification that Santos
transferred, possessed, and used without lawful authority, Count Six employs a list of means of
identification offset by the phrase "to wit."  See S-2 ¶¶ 77, 85.  Longstanding precedent holds that
"the 'to wit' clause is properly understood to be illustrative rather than definitional of the core of
criminality charged by the grand jury."  United States v. Agrawal, 726 F.3d 235, 261 (2d Cir.
2013); see United States v. Bastian, 770 F.3d 212, 221 (2d Cir. 2014) (stating that "we have never
suggested that a 'to wit' clause binds the government to prove the exact facts specified in a criminal
indictment").

expects that evidence at trial will establish that the misrepresentation to the National Party Committee #1 and to the FEC that these purported contributions had been made by <u>true</u> individual contributors was a material fact to both of those institutions, and thus at the crux of what made the conduct criminal.

In arguing otherwise, Santos relies heavily on the summarized statement ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ disclosed by the government to the defense in March 2024, in which ▮▮▮▮▮ stated, in sum and substance, that ▮▮▮▮▮▮▮▮▮▮▮▮ Of course, one excerpted statement from one witness is hardly the whole story. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ More fundamentally, this kind of fact-based argument is precisely the kind of argument that is inappropriate for judicial resolution in a motion to dismiss and must instead be reserved for resolution at trial.  See <u>Sampson</u>, 898 F.3d at 281.

Likewise, Santos incorrectly claims that Count Ten is based solely on his "alleged overcharging" of the credit cards of individuals who had contributed to his campaign.  Mot. 14. Not so.  In fact, as the Indictment makes clear, Santos is alleged to have committed aggravated identity theft in Count Ten in two ways.  First, Santos used contributors' credit card billing information to make unauthorized contributions to political committees, including his own, and to transfer money to his personal bank account, all without the cardholders' knowledge or consent. <u>See</u> S-2 ¶ 46.  Second, Santos "conceal[ed] the true source of the funds by misappropriating the

personal identity information" of others.  Id. ¶¶ 43–48.  Specifically, "in an effort to mask the true source of the funds and to circumvent the Election Act's limits on individual contributions, [Santos] repeatedly masked those fraudulent transactions by using the names of other unwitting individuals, including individuals who had previously contributed to his campaign and his own relatives, among others."  Id. ¶ 48.  In this way, Santos created the false impression that different people were making the various charges, thus allowing him to charge the same credit cards multiple times for campaign contributions without appearing to exceed campaign contribution limits.[9]

   "That tracks ordinary understandings of identity theft: . . . 'the fraudulent appropriation and use of another person's identifying data or documents.'"  Dubin, 599 U.S. at 125 (quoting Webster's Unabridged Dictionary xi (2d ed. 2001)).  Dubin specifically cites as an example of identity theft "'a crime in which someone steals personal information about and belonging to another, such as a bank-account number or a driver's-license number, and uses the information to deceive others.'"  Id. at 122 (quoting Black's Law Dictionary 894 (11th ed. 2019)); see United States v. James, No. 19-CR-382, 2023 WL 6675339, at *11 (E.D.N.Y. Oct. 12, 2023)

---

[9]  Santos's misinterpretation of the theory underlying Count Ten (i.e., that it pertains only to the overcharging of otherwise authorized credit card information) is not credible insofar as it is plainly inconsistent with the allegations in the Indictment.  While true that Santos's misuse of victims' credit cards is germane to the Section 1028A offense, the Indictment specifically alleges that Santos also "masked those fraudulent transactions by using the names of other unwitting individuals, including individuals who had previously contributed to his campaign and his own relatives, among others."  S-2 ¶ 48.  Despite the unsupportable nature of Santos's narrow reading of the charges, for avoidance of doubt, the Second Superseding Indictment omits the "to wit" clause from Count Ten, making unmistakable that the government's theory is not so limited.  In addition, a letter submitted under separate cover (as well as this legal memorandum) indisputably puts Santos on notice that the government intends to prove that he committed aggravated identity theft not only by using the credit card information of others, but also by falsely assigning to those transactions the names of unwitting third parties for the purpose of masking the true source of the funds.

(Seybert, J.) (denying post-trial motion for acquittal on aggravated identity theft charges where trial evidence proved that defendant "utilized" the "names and dates of birth" of victims to make false insurance claims); see also United States v. Reese, No. 12-CR-629 (VM), 2023 WL 4079386, at *1–2 (S.D.N.Y. June 20, 2023) (denying post-conviction relief for bank fraud defendant who misused a victim's name and banking information because Dubin "left intact 'uses involving fraud or deceit about identity' such as 'a defendant who had used another person's identification information to get access to that person's bank account'").  Indeed, the mere use of someone's name is a long-established means of identification for purposes of aggravated identity theft.  E.g., 18 U.S.C. § 1028A(d)(7) (defining "means of identification" for purposes of § 1028A to include "any name" of a person); United States v. Dumitru, 991 F.3d 427, 431 (2d Cir. 2021) (affirming conviction for aggravated identity theft where defendant directed others to forge signatures on asylum applications and the trial judge instructed the jury that a "means of identification . . . could include a signature").

Here, as relevant to Count Ten, the means of identification that Santos misappropriated included both credit card billing information and the names of purported contributors.  The use of each category gives rise to the aggravated identity theft charge.  See James, 2023 WL 6675339, at *11.  Contrary to Santos's claims, the evidence at trial will show that Santos fraudulently used the names of unwitting individuals as would-be contributors to conceal the true identities of the credit card holders, enabling him to charge much more money on each card without detection.

Santos notes that the Indictment "does not allege that [he] came into possession of any of the contributors' credit card information unlawfully," Mot. 14, and incorrectly argues that Count Ten should be dismissed because "Dubin explicitly limited the application of Section 1028A

to circumstances in which a defendant has <u>improperly transferred</u> the means of identification," Mot. 17 (citing <u>Dubin</u>, 143 S. Ct. at 1569–70).  To the contrary, as <u>Dubin</u> makes clear, neither initial lawful possession nor improper transfer of a means of identification is a requirement of aggravated identity theft.  "Stealing can, of course, include situations where something was initially lawfully acquired."  <u>Dubin</u>, 599 U.S. at 122 n.6.  Moreover, the plain text of Section 1028A criminalizes conduct where a defendant, "in relation to any [enumerated] felony," unlawfully "transfers, possesses, <u>or</u> uses . . . a means of identification of another."  18 U.S.C. § 1028A(a)(1) (emphasis added).  The <u>Dubin</u> Court recognized these "various possible ways to violate § 1028A(a)(1)," but limited its decision to interpreting the meaning of "uses" and "in relation to" because those two elements were the basis for the defendant's conviction in that case. 599 U.S. at 116–17.  In its analysis, the Court considered the meanings of "transfers" and "possesses" to inform its interpretation of "uses," <u>id.</u> at 124–27, but held that "each verb has an independent role to play," <u>id.</u> at 126.  "While 'transfer' and 'possess' conjure up two steps of theft, 'uses' supplies the deceitful aspect."  <u>Id.</u>  Therefore, "identity theft covers both when someone <u>steals</u> personal information about and belonging to another and <u>uses</u> the information to deceive others."  <u>Id.</u> (citation committed).

Indeed, as alleged in the Indictment here, Contributor #12 provided Santos with his/her credit card billing information and authorized a contribution to the Committee.  <u>See</u> S-2 ¶ 44.  Yet Santos misappropriated and used that credit card information, <u>inter alia</u>, by placing an unauthorized $12,000 charge, which money he laundered through Company #1's bank account, en route to his personal bank account.  <u>See id.</u> ¶ 47.  That is not merely an incidence of "garden-variety overbilling," <u>Dubin</u>, 599 U.S. at 122; it is criminal conduct that sounds in theft and fraud and forms the basis of both the access device fraud and aggravated identity theft charges.  And

when Santos attempted to use Contributor #12's credit card to make contributions purportedly in the name of other victims—including Person #2, Person #3 and Person #4—he was committing aggravated identity theft <u>both</u> by using Contributor #12's credit card <u>and</u> by using the names of Person #2, Person #3 and Person #4, without any of their knowledge or consent, in the course of attempting to commit a separate felony.

Santos's argument that Count Ten should be dismissed because <u>Dubin</u> limited Section 1028A to instances where a means of identification is "improperly transferred" has no application here.  <u>See</u> Mot. 17.  <u>Dubin</u> contemplates that Section 1028A criminalizes conduct where a defendant "us[es] another person's means of identification to deceive or defraud," which "is a common feature of identity theft."  599 U.S. at 126.  As outlined above, however, Santos did not merely "use" credit card information that he properly possessed; he abused it, with specific intent to defraud, to increase the amount of money he had appeared to raise as a candidate for the House.  Nor did he merely "use" names in entering fraudulent charges on his victims' credit cards; he misused them deceitfully, with specific intent to mask, conceal, and prolong his unlawful activities.  This is core aggravated identity theft under <u>Dubin</u>.

And again, the fact-specific nature of this conduct lays bare the premature and speculative nature of Santos's argument.  The evidence the government anticipates adducing at trial will provide more color and context to the charges in the Indictment.  At this juncture, when the allegations in the Indictment are taken as true, there exists no factual or legal basis to prevent the allegations contained in Count Six and Count Ten from being presented to the jury.

For these reasons, the Court should deny Santos's motion to dismiss Count Six and Count Ten for failure to state an offense.

POINT TWO

SECTION 1028A IS NOT UNCONSTITUTIONALLY VAGUE

Having failed to raise a viable legal or factual challenge to the Section 1028A counts, Santos attacks the statute itself.  Invoking the Fifth Amendment, he claims that Section 1028A is itself unconstitutionally vague, both on its face and as applied, requiring dismissal of the charges brought thereunder.  Mot. 20–21.  As explained below, however, this argument is meritless.

I.   Legal Standards

A statute is unconstitutionally vague, and therefore violates the Fifth Amendment's Due Process Clause, "if it either fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  Houtar, 980 F.3d at 273; see also Williams, 553 U.S. at 304. Courts "presume that acts of Congress are not unconstitutionally vague."  Houtar, 980 F.3d at 273 (citing Skilling v. United States, 561 U.S. 358, 403 (2010)).  A statute is not void for vagueness because its applicability is unclear at the margins, Williams, 553 U.S. at 306 (2008), or if a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, Skilling, 561 U.S. at 403.  Rather, a statue is void for vagueness only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.  Williams, 553 U.S. at 306; see Smith v. Goguen, 415 U.S. 566, 578 (1974) (vague statute lacks "any ascertainable standard for inclusion and exclusion" of conduct within its scope).

Challenges to statutes that do not implicate First Amendment rights (like those statutes at issue here) are typically assessed for vagueness "as applied."  United States v. Requena,

980 F.3d 30, 40 (2d Cir. 2020); United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (en

banc).  And where an as-applied challenge fails, so does the facial one, because the challenger

"who engages in some conduct that is clearly proscribed by the challenged statute cannot complain

of the vagueness of the law as applied to the conduct of others."  United States v. Amer, 110 F.3d

873, 878 (2d Cir. 1997); see also Holder v. Humanitarian Law Project, 561 U.S. 1, 23 (2010)

("[E]ven if there might be theoretical doubts regarding" whether a statute's contours could be

clearly understood in every context, a "defendant's vagueness challenge fail[s] [if] his case

presented no such problem."); Parker v. Levy, 417 U.S. 733, 756 (1974) ("[o]ne to whose conduct

a statute clearly applies may not successfully challenge it for vagueness").

II.     Discussion

A.    Section 1028A Is Not Facially Vague

Santos's facial challenge is foreclosed by Dubin.  In arguing for this Court to

invalidate Section 1028A, Santos relies on Justice Gorsuch's concurrence in Dubin to contend that

Section 1028A, even as construed by the Supreme Court, is so vague that it does not provide fair

notice.  Mot. 20–21 (citing Dubin, 599 U.S. at 133–39 (Gorsuch, J., concurring)).  But Santos fails

to mention that the Dubin majority—comprising the other eight Justices—expressly rejected this

argument, writing that the "concurrence's bewilderment is not, fortunately, the standard for

striking down an Act of Congress as unconstitutionally vague."  Dubin, 599 U.S. at 132 n.10.  The

Court need look no further than Dubin to reject Santos's facial challenge.

Indeed, after Dubin, other courts to consider vagueness challenges have upheld

Section 1028A.  See, e.g., United States v. Gladden, 78 F.4th 1232, 1247 (11th Cir. 2023); Harvey

v. United States, No. 23-cv-171, 2024 WL 278289, at *2 (D.N.D. Jan. 25, 2024) (rejecting

petitioner's argument that Section 1028A is unconstitutionally vague as a "reading of Dubin [that]

sweeps too broadly"); United States v. Demasi, No. 22-CR-20670, 2023 WL 8007341, at *1 (E.D. Mich. Nov. 17, 2023) (describing Dubin's "refinement of two elements of" Section 1028A and rejecting argument that statute is unconstitutionally vague); United States v. Iannelli, -- F. Supp. 3d ----, 2023 WL 7165109, at *3 (D. Mass. Oct. 31, 2023) (rejecting argument that Section 1028A is unconstitutionally vague, and noting that "the Dubin Court cast significant doubt on future void-for-vagueness challenges to 18 U.S.C. § 1028A").

Alternatively, the Court should "decline[] to entertain" Santos's facial challenge because he "asserts no infringement of First Amendment or other fundamental rights protected by the Constitution." Requena, 980 F.3d at 40. Seeing as such a "challenge carries a significant burden: the challenger must establish that no set of circumstances exists under which the Act would be valid," courts in the Second Circuit typically evaluate them "in light of the facts of the case at hand, i.e., only on an as-applied basis." Id.; see also Rybicki, 354 F.3d at 129–132 (explaining "disagreement" on how to analyze facial vagueness challenges). Of course, if the Court denies Santos's as-applied challenge, it must necessarily reject his facial challenge. See Humanitarian Law Project, 561 U.S. at 18–19.

B.  Section 1028A Is Not Vague as Applied

Like his other challenges to Count Six and Count Ten, Santos's as-applied vagueness challenge seeks relief based on his own self-serving forecast of what the government's evidence at trial will show. This challenge is not cognizable on a motion to dismiss because at "the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." Wedd, 993 F.3d at 121. After all, to succeed on a vagueness challenge, Santos "must demonstrate that the statute, as applied, failed to adequately warn of the prohibited conduct." United States v. Coonan, 938 F.2d 1553, 1562 (2d Cir. 1991). Accordingly, he "must

27

wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in." United States v. Raniere, 384 F. Supp. 3d 282, 320 (E.D.N.Y. 2019). Courts routinely deny as premature motions, like this one, seeking to dismiss charges based on vagueness where the evidence has not yet been presented. See, e.g., id. (denying as-applied vagueness challenge as premature and collecting cases); United States v. Bastian, 112 F. Supp. 2d 378, 380 (S.D.N.Y. 2000) (explaining that court "cannot conduct a proper examination of the application of [the statute] to [the defendant's] case on the basis of the indictment alone").

Even if Santos's as-applied challenge were procedurally proper at this early stage, it would fail on the merits. As outlined above, under basic fair-notice principles, "[a] statute can be unconstitutionally vague if it either fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Houtar, 980 F.3d at 273. Put plainly, to satisfy this standard, Santos must convince this Court that he was not provided fair notice that it was illegal to steal other people's credit card information, use that information to make repetitive charges for his personal benefit, and then conceal those transactions by masking them with the names of other, unsuspecting people who had no knowledge he was doing so. No person of ordinary intelligence would fail to understand these actions were prohibited.

Santos ignores the holding of Dubin and relies instead on the parties' briefs in that case, statements made at oral argument, and Justice Gorsuch's concurrence—none of which, "fortunately," reflects the legal standard. Dubin, 599 U.S. at 132 n.10. Rather, the straightforward holding of Dubin—that the "use" of a means of identification must be "at the crux of what makes the conduct criminal"—makes plain that people of ordinary intelligence understood his conduct

was criminal.  See id. at 131.

Santos also recycles several claims he made in Point One, above, including that the identities in Count Six "are entirely ancillary to the falsehoods," and that he "was provided the credit card information voluntarily by his contributors and given authority to make contributions to his campaign."  Mot. 22.  For the reasons already discussed, however, these arguments do nothing to indicate that Santos did not have fair notice that misappropriation and misuse of others' means of identification was not at the crux of the criminality charged in Count Six and Count Ten. Nor do they make any more plausible Santos's fair-notice argument, namely, his supposed misunderstanding that the conduct alleged in the Indictment was not illegal.  The Court should deny Santos's as-applied challenge as premature or, alternatively, reject it on the merits.

29

POINT THREE

COUNTS NINE AND TEN ARE NOT MULTIPLICITOUS

Santos next moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) to dismiss Count Ten on multiplicity grounds, arguing that Count Ten's theory of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) is the same as Count Nine's theory of access device fraud under 18 U.S.C. § 1029(a)(5).  Mot. 24–27.  For the reasons set forth below, that argument must also be rejected.

I.  Legal Standards

"An indictment is multiplicitous," and therefore violates the Fifth Amendment's protection against double jeopardy, "when a single offense is alleged in more than one count." United States v. Jones, 482 F.3d 60, 72 (2d Cir. 2006) (internal quotation marks omitted).   The relevant inquiry, known as the "Blockburger Test," asks whether each offense contains an element not contained in the other.  See Blockburger v. United States, 284 U.S. 299, 304 (1932); see also United States v. Dixon, 509 U.S. 688, 696 (1993).  "[T]he touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes." United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999).  Even where the proof offered to establish the offenses substantially overlaps, a multiplicity challenge cannot succeed where the offenses require proof of different elements.  See Albernaz v. United States, 450 U.S. 333, 338 (1981) (observing that "the Court's application of the test focuses on the statutory elements of the offense.  If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."); cf. Spigelman v. United States, No. 10-CV-7579 (SAS), 2012 WL 3594304, at *12 (S.D.N.Y. Aug. 21, 2012) (denying post-conviction multiplicity argument because "each of the charges . . . charged a separate offense

that necessarily involved different elements, even if the underlying facts were similar.  Indeed, the Government often brings charges under more than one criminal statute and under more than one theory of criminal liability.").

II.  Discussion

The defendant's multiplicity arguments may easily be set aside for several reasons, including that the Second Circuit held in an unpublished case that Congress authorized cumulative punishment for Section 1028A.  See Abdur-Rahman, 512 F. App'x at 5.

First, Santos misapprehends the Blockburger Test when he argues that Count Ten is "based on the identical facts" as Count Nine.  See Mot. 24–25.  The question under Blockburger is not whether the charges are based on the same facts, it is whether they each "require[] proof of at least one fact that the other does not"—in other words, whether they have different elements. United States v. Weingarten, 713 F.3d 704, 708 (2d Cir. 2013).  Applied here, the Blockburger Test clearly defeats Santos's multiplicity argument.  Section 1028A requires proof that Santos transferred, possessed, or used, a means of identification; Section 1029(a)(5) does not.  And unlike Section 1028A, Section 1029(a)(5) requires proof that Santos acted with intent to defraud, used an unauthorized access device, and received payment of at least $1,000.  This straightforward analysis yields the only plausible result: because Count Nine and Count Ten contain different elements, they are not multiplicitous, as a matter of law.  See Chacko, 169 F.3d at 146; see also United States v. White, 296 F. App'x 483, 490 (6th Cir. 2008) (stating that a "violation of 18 U.S.C. § 1028A occurs when a defendant, in addition to meeting the elements of Access Device Fraud under

Section 1029, meets the additional element of using specific identifying information from a known person").

Second, the text of Section 1028A demonstrates that Congress "intended to authorize separate punishments" when it explicitly mandated a two-year prison sentence for aggravated identity theft, to be served consecutive to the sentence for the underlying felony.  See id.; see also Flores-Figueroa v. United States, 556 U.S. 646, 648 (2009) (explaining that a Section 1028A conviction means a "judge must add two years' imprisonment to the offender's underlying sentence").  Santos implicitly concedes the fallacy of his own argument by acknowledging Second Circuit caselaw holding that Section 1028A does not violate the double jeopardy clause because cumulative punishment is authorized for that crime.  See Mot. 24 (citing Abdur-Rahman, 512 F. App'x at 5); see also United States v. Bonilla, 579 F.3d 1233, 1244 (11th Cir. 2009) (denying double jeopardy challenge to imposition of consecutive sentences following convictions for violating Sections 1029(a)(2) and 1028A(a)(1)).

Santos attempts to escape this clear and commonsense result by arguing that, after Dubin, "any violation of §1029(a)(5) [is] the same offense as a violation of §1028A."  Mot. 26. But other than declaring that to be so, he fails to explain how Dubin's narrowing of the aggravated identity theft statute could abrogate Congress's intent to authorize separate punishments for the different offenses.  If anything, Dubin would seem to do the opposite by imposing a heightened proof requirement at trial, thus making it more difficult to convict a defendant of both offenses.

In any event, the proper remedy for multiplicity is not dismissal of the Indictment. See, e.g., Dervishaj v. United States, No. 21-CV-373, 2022 WL 3139117, at *4 n.4 (E.D.N.Y. Aug.

5, 2022) ("[T]he remedy is not to dismiss the indictment or to order a new trial but to dismiss one set of the multiplicitous charges.").

Here, because Counts 9 and 10 require different elements of proof and Congress explicitly intended to authorize separate, and additional, punishment for aggravated identity theft, there is nothing improper or multiplicitous about the charges.

POINT FOUR

COUNT NINETEEN IS NOT DUPLICITOUS

Santos next moves pursuant to Federal Rule Criminal Procedure 12(b)(3)(B)(i) to dismiss Count Nineteen of the Indictment on duplicity grounds, contending that Count Nineteen, which charges theft of public money under 18 U.S.C. § 641, encompasses more than one offense. See Mot. 27–32.  Contrary to this contention, Count Nineteen alleges a single scheme related to Santos's fraudulent application for—and subsequent receipt of—unemployment benefits, all during a clearly-defined time period when Santos was employed and thus ineligible for unemployment benefits.  See S-2 ¶¶ 57–59, 91–92.

I.  Legal Standards

An indictment is duplicitous if it "combines two or more distinct crimes into one count in contravention of Federal Rule of Criminal Procedure 8(a)'s requirement that there 'be a separate count for each offense,' and . . . the defendant is prejudiced thereby."  United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001).  An indictment is not duplicitous where a single count merely aggregates criminal activity that takes place at different times.  See United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989) (affirming single count charging two sales of heroin); United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981) (dozens of mailings can be combined into a single count of mail fraud).  Indeed, "the government is permitted to aggregate offenses involving discrete sums of money . . . where a series of unlawful acts 'were part of a single continuing scheme.'"  United States v. Wilson, No. 95-CR-668, 1997 WL 10035, at *3 (S.D.N.Y. Jan. 10, 1997).

II.  Discussion

As Santos readily concedes, see Mot. 30, the Second Circuit has upheld an indictment that, like Count Nineteen here, charged a single count of theft of government funds that encompassed numerous transactions.  See Girard, 601 F.2d at 72.  In Girard, the appellants contended that the count was duplicitous, but the Second Circuit affirmed the district court's decision to permit the single count to stand, because "the four sales were part of a single continuing scheme."  Id.  The Court need not look further than Girard to deny this motion.

Like the theft of government funds count in Girard, Count Nineteen is not duplicitous because it charges a single continuing scheme.  Count Nineteen is titled "Fraudulent Application For and Receipt of Unemployment Benefits," and it provides, as the date range for the scheme, June 2020 through April 2021.  The prefatory language in the Indictment describes this same scheme in greater narrative detail.  See S-2 ¶¶ 57-59.

In particular, the Indictment alleges that Santos first applied for unemployment insurance benefits on June 17, 2020.  See S-2 ¶ 58.  In that application, he claimed to have been unemployed since the week of March 22, 2020.  See id.  And following that initial application, he certified his continuing unemployment and eligibility for benefits on a weekly basis between approximately June 19, 2020, and April 15, 2021.  See id.  None of this was true, however, since (with minor exceptions noted in the Indictment) Santos had been employed as a Regional Director at Investment Firm #1, earning $120,000 per year.  See id.  Hence, based on Santos's lies between June 17, 2020, and April 15, 2021, the Indictment charges him with a fraudulent scheme during that timeframe.  The fact that Santos falsely claimed in his application submitted on June 17, 2020, to have been unemployed since March 22, 2020—and received retroactive unemployment benefits from that date forward—does not, as Santos contends, amount to "a separate charge that includes

conduct during a different, albeit overlapping, timeframe." Mot. 28. Rather, the Indictment appropriately identifies both the time period in which he was certifying his eligibility for unemployment benefits, namely June 17, 2020 through April 15, 2021, <u>and</u> the time period that he claimed, in those certifications, to be unemployed, namely March 22, 2020 through April 15, 2021.

Santos contends that he is nonetheless prejudiced because Count Nineteen "charges numerous individual isolated unidentified transactions over an unspecified period of time, as one scheme." Mot. 29. But this fallback argument is baseless and inaccurate.

First, the time period of the scheme is clearly specified in the Indictment: June 2020 through April 2021. <u>See</u> S-2 ¶ 92. Second, the numerous transactions comprising the unemployment fraud scheme are identified in the Indictment's prefatory language, which describes the application for unemployment insurance benefits submitted by Santos on June 17, 2020, as well as certifications submitted on a weekly basis thereafter throughout the charged period. <u>See id.</u> ¶ 58.

Third, as a matter of law, the fact that Count Nineteen aggregates numerous transactions does not render it duplicitous. On the contrary, as the defense acknowledges, the Second Circuit has upheld an indictment charging the very same statute as here that aggregated numerous transactions into a single count. <u>See</u> Mot. 30, n.4; <u>Girard</u>, 601 F.2d at 72.[10] Indeed, far from prejudicing Santos, aggregation "may inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme.'" <u>United States v. Olmeda</u>, 461 F. 3d 271, 281 (2d Cir. 2006). As long as the

---

[10] Santos relies on an unreported case from the Central District of Illinois to support his argument that Count Nineteen should be dismissed on duplicity grounds. <u>See</u> Mot. 31 (citing <u>United States v. Schock</u>, No. 16-CR-30061, 2017 WL 4780614, at *20 (C.D. Ill. Oct. 23, 2017)). In light of the existence of a precedential Second Circuit case, <u>Schock</u> has no applicability here.

"essence of the alleged crime is carrying out a single scheme to defraud," as here, "then aggregation is permissible." Tutino, 883 F.2d at 1141. The Indictment plainly alleges a single, unified fraudulent scheme to obtain unemployment insurance benefits for which Santos was ineligible. He submitted an application for such benefits, and then followed that application with weekly certifications attesting to his supposed continued unemployment and eligibility for those benefits. This was one scheme, executed over the course of approximately ten months, through which Santos stole approximately $24,744 in funds to which he was not entitled. See S-2 ¶ 59. Under Second Circuit precedent, Count Nineteen should not be dismissed on grounds of duplicity. See Girard, 601 F.2d at 72; Tutino, 883 F.2d at 1141; Margiotta, 646 F.2d at 733.

That is true for the additional reason that the proper remedy for a duplicity problem is not dismissal. See, e.g., United States v. Droms, 566 F.2d 361, 362 n.1 (2d Cir. 1977) ("Duplicity, of course, is only a pleading rule and would in no event be fatal to the count."). Once again, then, even if Santos was right that the Indictment was flawed, there would still be no valid basis for the relief he seeks.

POINT FIVE

SANTOS IS NOT ENTITLED TO A BILL OF PARTICULARS

Santos next moves for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f), asking the Court to order the government: (i) to identify false statements related to Counts Two through Eight; and (ii) to identify the particular victims, dates, and amounts of the transactions that comprise access device fraud and aggravated identity theft charged in Counts Nine and Ten.  As explained below, these requests should be denied because Counts Two through Eight are adequately pled in the Indictment.  See United States v. Perryman, 881 F. Supp. 2d 427, 430–31 (E.D.N.Y. 2012) (bill of particulars should not be used as a "discovery device" and a "general investigative tool").  Moreover, the government has provided to Santos the transactional details requested that bear on Counts Nine and Ten, thereby mooting his motion.

I.   Legal Standards

The Federal Rules of Criminal Procedure require only that an indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c).  A bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused.  See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973) ("[W]e have consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms").  And even then, the proper scope and function of a bill of particulars is simply to provide a level of information that is sufficient to inform the defendant of the nature of the charges against him, avoid unfair surprise and determine if there are valid double jeopardy defenses.  See Bortnovsky, 850 F.2d at 574.  In fact, those are "the only legitimate purposes for a bill of

particulars." United States v. Sindone, No. 01-CR-517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("[T]he device of a bill of particulars was not created to help the defendant investigate the charges in the indictment.  Rather, it is designed to avoid unfair surprise to the defendant at trial, and to permit the defendant to invoke the defense of double jeopardy").

It is inappropriate to use Rule 7(f) to limit the government's evidence or flesh out its prosecutorial theories in advance of trial.  See United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories"); see also United States v. Bellomo, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars.").  For that reason, courts have held that the "'whens,' 'wheres,' and 'with whoms'" of charged crimes are beyond the permissible scope of a bill of particulars.  United States v. Muyet, 945 F. Supp. 586, 599 (S.D.N.Y. 1996).

If the information sought by the defendant is provided in the charging document or through some other means, including discovery, a bill of particulars is not warranted.  See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004).  Thus, motions for bills of particulars are routinely denied where, as here, the defendants are charged by speaking indictment and significant additional information has been supplied in discovery.  See, e.g., United States v. Cordones,

No. 11-CR-205 (AKH), 2022 WL 815229, at *8 (S.D.N.Y. Mar. 17, 2022) ("Courts routinely deny motions for bills of particulars where, as here, the charging document is a speaking indictment.") (collecting intra-Circuit cases); see also United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 231, at *17–20 (E.D.N.Y. 2019) (denying motion for bill of particulars identifying false statements in fraud case where defendants were charged by speaking indictment and provided extensive discovery); United States v. Aguilar, No. 20-CR-390 (ENV), ECF No. 39 (E.D.N.Y. 2021) (denying motion for bill of particulars where information sought was overbroad in view of discovery provided, among other reasons); United States v. Huawei Technologies Co., Ltd., No. 18-CR-457 (AMD), ECF No. 303 (E.D.N.Y. 2021) (denying motion for bill of particulars seeking a list of alleged fraudulent statements where defendants were charged in a speaking indictment, were provided with "detailed guidance about the relevant statements," and were not confused about the nature of the fraud scheme).

The mere volume of discovery is itself not a basis for granting a bill of particulars. See, e.g., United States v. Columbo, No. 04-CR-273 (NRB), 2006 WL 2012511, at *6 (S.D.N.Y. July 18, 2006) (rejecting a request for a bill of particulars based on defendants' assertions that the discovery was "voluminous and overwhelming" because, inter alia, the defendants "had more than a year to review discovery prior to trial"); United States v. Wedd, No. 15-CR-616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) ("Although the Court recognizes the burdens on defense counsel imposed by the volume of discovery in this case, defendants are not entitled to a roadmap of the Government's proof to facilitate their review of that discovery."). The defendant bears the burden of showing that denial of the requested particulars will result in "prejudicial surprise at trial or will adversely affect his rights." United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).

II. Discussion

    A. The Indictment Contains Particularized Information Regarding the Misrepresentations Relevant to Counts Two through Eight

Santos's request for a bill of particulars identifying misrepresentations relevant to Counts Two through Eight should be denied for two reasons. First, the 42-page speaking Indictment goes well beyond merely "track[ing] the language of a statute and . . . stat[ing] the time and place in approximate terms," which is all an indictment must do to satisfy the pleading standard of Federal Rule of Criminal Procedure 7. See Salazar, 485 F.2d at 1277. Indeed, motions seeking a granular recitation of actionable misrepresentations are routinely denied in courts in the Second Circuit. See, e.g., United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *7 (E.D.N.Y. Dec. 14, 2016) (denying request for bill of particulars regarding false and fraudulent statements or omissions in complex fraud involving multiple schemes spanning almost five years, describing the request as an attempt to gain premature access to § 3500 material); United States v. Tournant, No. 22-CR-276-LTS, 2023 WL 8649893, at *5 (S.D.N.Y. Dec. 13, 2023) (rejecting request for bill of particulars to particularize misrepresentations because "the kind of granular particularization requested by [the defendant] would be a detailed guide to the Government's evidence"); United States v. Johnson, No. 16-CR-457-1 (NGG), 2017 WL 11490480, at *7 (E.D.N.Y. May 24, 2017) (denying motion for bill of particulars identifying misrepresentations where indictment identified categories of statements and the audience for those statements).

Second, and more to the point, the bill of particulars should be rejected because the Indictment adequately puts Santos on notice as to numerous specific false statements relevant to each count:

- Counts Two and Three, which charge wire fraud, both identify the specific wires that constitute the basis for charges—namely, the submission of the "Year-End 2021 Report to the FEC referenced in paragraph 27" (Count Two) and the submission of the "April 2022 Quarterly Report to the FEC referenced

41

in paragraph 38" (Count Three).  S-2 ¶ 71.  Paragraph 27, in turn, identifies the specific, falsified contributions reported to the FEC, including details such as the amount reported, the date of the purported contribution, and the identities of the putative contributors.[11]  Id. ¶ 27.  Paragraph 38 likewise identifies the false representations in the April 2022 Quarterly Report, including the "false[] report[] that DEVOLDER SANTOS had loaned the Committee $500,000 on March 31, 2022."  Id. ¶ 38.

- Counts Four and Five, which respectively charge false statements and falsification of a record, are similarly detailed and specific.  Each of those counts enumerates twelve particularized false statements, including such details as the dates the false statements were made, the title of the report in which they were made, and the recipient of the report.

- Count Six charges Santos with aggravated identity theft, based on the use of third parties' names as purported contributors.  This count specifically identifies the means of identification that were used without authority (names) and identifies each person whose name was improperly used.

- Count Seven charges Santos with making false statements in the April 2022 Quarterly Report submitted to the FEC.  This count states that Santos caused the Committee to make the false statement to the FEC that Santos "had loaned the Committee $500,000 on March 31, 2022."  S-2 ¶ 79.

- Count Eight charges Santos with falsification of a record or document.  Like Count Seven, it identifies the falsified document as the April 2022 Quarterly Report that was submitted to the FEC on or about April 15, 2022.  It further describes the report as containing the false statement that Santos "had loaned the Committee $500,000 on March 31, 2022," when, "in truth and in fact, . . . [Santos] had not loaned the Committee $500,000 on March 31, 2022." S-2 ¶ 81.

Each of these counts provides more than enough information to permit Santos to prepare a defense, avoid unfair surprise, and preclude double jeopardy concerns.  See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991).  Indeed, each of the above-described counts lists the specific misrepresentations at issue.   The counts provide the dates of the misrepresentations, identify the names of the reports that contained the misrepresentations, and

---

[11]    While the Indictment uses anonymized labels for the contributors, the government provided a list to defense counsel on October 12, 2023, of the true names of each of the contributors and other anonymized individuals and entities in the Indictment.

name the FEC as the entity that received those false reports.  Because the information sought is provided in the Indictment, Santos's request for a bill of particulars should be denied.[12]  See Bortnovsky, 820 F.2d at 574.

      B.    <u>Voluntarily Providing the Requested Transactional Detail Moots the Motion as Regards Counts Nine and Ten</u>

      Santos also contends that a bill of particulars is necessary to identify the fraudulent transactions at issue in Counts Nine and Ten.  The government believes that the Indictment and significant Rule 16 discovery are sufficient to permit Santos to prepare a defense, avoid unfair surprise, and preclude double jeopardy.  In particular, paragraphs 43 through 48 of the Indictment explain that Santos used credit cards belonging to his contributors to make unauthorized charges, benefiting himself, his campaign, and the campaigns of others, and concealed the fraudulent nature of those transactions by associating them with the names of other unwitting third parties.  This is just the sort of short, plain statement that is sufficient under Rule 7.

      Nevertheless, the Court need not address this argument because the government has elected, in an abundance of caution, to voluntarily provide under separate cover additional detail as to the specific, unauthorized transactions and attempted transactions initiated by Santos, supplementing the previously identified transaction in paragraph 47 of the Indictment.  Because the government has provided the details of the transactions that are the subject of Santos's motion

---

[12]    If more detail were needed (it is not), it has been provided by the Indictment's prefatory language in paragraphs 19 through 42.  Those paragraphs plainly describe the Party Program Scheme, detailing how Santos and Marks conspired to artificially inflate the amounts that the Committee appeared to have collected.  And, as discussed earlier, paragraphs 27 and 38 recite the particular misrepresentations made to the FEC.  Indeed, paragraph 27 contains a chart, with columns identifying the contributor, the amount falsely reported to the FEC, and the purported date of each false contribution.

for a bill of particulars as to Counts Nine and Ten, that portion of his motion should be denied as moot.  See, e.g., United States v. Cherico, No. 08-CR-786, 2011 WL 4347178, at *2 (S.D.N.Y. Sept. 13, 2011) (denying motion for bill of particulars as moot where government provided defense with the particulars requested).

<u>POINT SIX</u>

<u>COMPULSORY PRESERVATION AND DISCLOSURE OF
INVESTIGATIVE MATERIALS IS UNNECESSARY AND IMPROPER</u>

Santos further moves for an order compelling the production of "all evidence and information related to the interviews, and follow-up interviews, with ███████████████ and ████████████ including, but not limited to the FD-302s, notes, drafts, recordings, or other records memorializing the statements each allegedly made as summarized in the government's disclosure letters dated October 27, 2023 and March 14, 2024."  Mot. 40.

As an initial matter, Federal Rule of Criminal Procedure 16 expressly bars this sort of request.  Rule 16(a)(2) states that "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," nor "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  While some of the requested materials may eventually constitute Jencks Act materials for witnesses at trial, the government is under no obligation to produce such materials at this time.[13]  <u>See</u> 18 U.S.C. § 3500.

---

[13]     As the Court has previously stated, courts are "without authority to order the government to disclose Jencks material prior to trial."  <u>United States v. Hatfield</u>, No. 06-CR-550, 2009 WL 10673620, at *5 (Seybert, J.) (E.D.N.Y. July 10, 2009); <u>see also</u> <u>United States v. Coppa</u>, 267 F.3d 132, 145 (2d Cir. 2001) ("We have previously held that Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements.").  Courts have further noted that disclosure of such material two weeks in advance of trial "comports closely with disclosures approved in other cases."  <u>United States v. Barrett</u>, 153 F. Supp. 3d 552, 574 (E.D.N.Y. 2015).  Here, the government will, consistent with the Court's scheduling order, produce Jencks Act materials on or before August 19, 2024, three weeks prior to trial.  In an abundance of caution, the government intends to produce, at that time, notes and FD-302s reflecting witness statements for all witnesses that it has interviewed during the course of its investigation, not just those witnesses it intends to call at trial.

Without a statutory basis to obtain the material he seeks, Santos attempts to circumvent the clear strictures of Rule 16 and the Jencks Act by arguing that Brady v. Maryland, 373 U.S. 83 (1963), and its progeny compel their production.  This argument is meritless.

I.     Legal Standards

The government has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment."  Coppa, 267 F.3d at 135 (citing Brady, 373 U.S. at 87).  Favorable evidence includes not only evidence that tends to exculpate a defendant, but evidence that is useful for impeaching a witness.  See id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).  "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that an outcome of a trial in which the evidence had been disclosed would have been different."  Id. at 142.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  Id. at 141.  "The rationale underlying Brady is not to supply a defendant with all the evidence in the [g]overnment's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the [g]overnment."  United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982).  Because materiality cannot be determined with certainty until after a trial, prosecutors have been advised to err on the side of disclosure of information.  See, e.g., United States v. Agurs, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure.").

Consistent with this guidance, the Department of Justice has advised that because "it is sometimes difficult to assess the materiality of evidence before trial," federal prosecutors should "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."  Justice Manual ("JM") § 9-5.001(B)(1).  Providing materials arguably not

expressly covered by <u>Brady</u> only out of an abundance of caution is therefore in line with Department of Justice policy and a common practice.

Furthermore, the Second Circuit has explained that:

> Like the extent of the required disclosure, the timing of a disclosure required by <u>Brady</u> is also dependent upon the anticipated remedy for a violation of the obligation to disclose: the prosecutor must disclose 'material' (in the <u>Agurs</u>/<u>Brady</u> sense) exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made.  Thus, we have never interpreted due process of law as requiring more than that <u>Brady</u> material must be disclosed in time for its effective use at trial.

<u>Coppa</u>, 267 F.3d at 142; <u>see</u> <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of disclosure <u>Brady</u> and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated.").  This reflects a "longstanding constitutional principle that as long as a defendant possesses <u>Brady</u> evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." <u>Coppa</u>, 267 F.3d at 144.  Indeed, courts have not considered exculpatory material improperly "suppressed" within the meaning of <u>Brady</u> even when the government has disclosed the evidence immediately before or even during trial.  <u>See</u> <u>United States v. Douglas</u>, 525 F.3d 225, 245–46 (2d Cir. 2008).

Where the government makes a good faith representation to the Court and to defense counsel that it recognizes its disclosure obligations under <u>Brady</u> and that it will comply with its <u>Brady</u> obligations in a timely manner, courts in the Second Circuit have repeatedly denied pretrial requests for discovery orders pursuant to <u>Brady</u>.  <u>See</u> <u>United States v. Mohamed</u>, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015); <u>United States v. Ordaz-Gallardo</u>, 520 F. Supp. 2d 516, 522 (S.D.N.Y. 2007) ("Courts in the Second Circuit generally do not compel immediate disclosure of

47

Brady/Giglio materials where . . . the Government represents it is aware of and will comply with its Brady/Giglio obligations and . . . the Defense does not provide any reason for suspecting the Government will not comply"); United States v. Underwood, No. 04-CR-424, 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005) (citing cases).

II.    Discussion

The government understands its various discovery obligations under Brady, Giglio and their progeny, has complied with those obligations, and will continue to do so.  Consistent with Agurs and the Justice Manual, it has taken a broad view of materiality and erred on the side of disclosing material to the defense out of an abundance of caution, including in its letters dated October 27, 2023, and March 14, 2024, related to ███████████████████.

Although the government has made these disclosures out of an abundance of caution, the statements made by those witnesses can hardly be characterized as materially exculpatory.  For example, although ████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████ See Mot. Ex. B, at 2.  Moreover, as Santos is well aware, ██████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████[14]

_____

[14]    In the Motion, Santos indicates that he is seeking to identify ███████████████ and claims that █████████████████████████████ ██████████████████████████████████████████████ ████████████████████████ Mot. 42.  Santos's unsupported and self-serving accusation that the government would seek to strategically circumvent its Brady obligations through its framing of the Indictment is entirely baseless.  Notably, prior to filing the

48

Similarly, ██████████████████████████████████████

████████████████████████████████████████████████

██████████████████ See Mot. Ex. C, at 2. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Finally, ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Santos's claim to the contrary

reflects his fundamental misunderstanding of the materiality element of the wire fraud statute and

the Supreme Court's holding in Dubin.  With respect to materiality, a statement is material if the

"misinformation or omission would naturally tend to lead or is capable of leading a reasonable

person to change his conduct."  United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017).  Here,



Motion, Santos had never requested ████████████████████████████ or
articulated any basis, credible or otherwise, to believe that such information might be exculpatory.
In an abundance of caution, the government is providing this information to Santos under separate
cover.

████████████████████████████████████████████

The government has already addressed Santos's Dubin-related arguments above and will not repeat them here.

In any event, the question of whether the statements by ████████████ ████ are materially exculpatory is ultimately irrelevant because summaries of their statements, excerpted from the underlying FD-302s, were already provided to Santos months ago. The question for the Court is not whether these statements constitute Brady Materials (they do not), but whether Brady, or any other legal authority, requires the government to go one step further and provide to the defendant the underlying FD-302s and notes of these interviews now (as opposed to at the time it produces Jencks Act material). As previously discussed, Rule 16 and the Jencks Act expressly provide otherwise.

Moreover, contrary to Santos's contentions, courts have repeatedly held that "[w]ith regard to . . . FBI 302s and related notes, the government fulfill[s] its Brady obligation by disclosing the substance of the exculpatory statements." United States v. Collins, 409 F. Supp. 3d 228, 233 (S.D.N.Y. 2019). In Collins, the district court specifically addressed this issue:

> Defendants do not cite case law that supports their argument that the Government is required to produce primary materials containing exculpatory statements in order to meet its Brady obligation. This is not surprising because such disclosure is not legally required; rather, in order to meet its Brady obligation the Government need only disclose the essential facts which would enable the defendants to call the witnesses and thus take advantage of any exculpatory testimony that they might furnish.

Id. at 244–45.

Similarly, in United States v. Parnas, No. 19-CR-725, 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021), the district court held before trial that the government did not have "any

50

obligation at this stage to provide 'backup' for witness statements—essentially, the notes from which the summaries were created.  The Government represents that it has provided multiple letters disclosing the essential facts that would enable Defendants to call witnesses and take advantage of any exculpatory testimony.  Assuming this to be true, the Court concludes that the Government has met its <u>Brady</u> obligations."  Here, the government has advised Santos of the essential facts that would enable him to call ███████████████████ at trial and take advantage of any exculpatory testimony that they might furnish; nothing further is required at this time.  <u>See also</u> <u>United States v. Mavashev</u>, No. 08-CR-902, 2010 WL 670083, at *3 (E.D.N.Y. Feb. 23, 2010) (finding that the government had satisfied its <u>Brady</u> obligations when it disclosed the identities of witnesses with potentially exculpatory information and one- to two-sentence summaries).[15]

        In addition, it is worth noting that many of Santos's arguments regarding the FD-302s and notes sound in <u>Giglio</u> and his preparation to impeach potential government witnesses. <u>See</u> Mot. 44–45.[16]  However, courts in this district have repeatedly held that "[d]efendants in criminal cases generally have no pretrial right to <u>Giglio</u> material," and approved the government's representation that it will "adhere to the customary practice in this district and produce <u>Giglio</u>

---

[15]    Santos argues that <u>Brady</u> requires the production of "'evidence,' not merely information."  Mot. 41 (citing <u>Brady</u>, 373 U.S. at 87).  Yet <u>Brady</u> makes no such distinction.  More importantly, FD-302s and notes are not evidence.  They are not attested to by the witness being interviewed, nor are they admissible at trial.  And again, the government will produce all FD-302s and notes in its possession reflecting witnesses' statements at the time it produces Jencks Act material in this case, including for witnesses the government does not intend to call at trial.

[16]    One of Santos's complaints is that "the defense cannot use a summary written by an AUSA to cross examine a witness," Mot. 44–45, but this argument fails to acknowledge both that the summary Santos received was derived from the corresponding FD-302, and, in any event, the FD-302s and notes for each witness will be produced in advance of trial as Jencks Act material.

material prior to the testimony of its witnesses." United States v. Persing, No. 06-CR-815 (BMC), 2008 WL 11344620, at *4 (E.D.N.Y. May 6, 2008); see United States v. Inniss, No. 18-CR-134 (KAM), 2019 WL 6117987, at *3 (E.D.N.Y. Nov. 18, 2019) ("As there is no pretrial right to Giglio material and the government has represented that it will produce such materials in advance of trial, the court denies, as moot and without prejudice, [the defendant's] motion to compel disclosure of Giglio material."); Shkreli, 2016 WL 8711065, at *3 ("There is no pre-trial right to Giglio material, which specifically concerns impeachment.  Nor is there a pre-trial right to statements and reports of witnesses in the Government's possession."); United States v. Rivera, 89 F. Supp. 3d 376, 396-97 (E.D.N.Y. 2015) (same); United States v. Badoolah, No. 12-CR-774, 2014 WL 4793787, at *16 (E.D.N.Y. Sept. 25, 2014) (same); see also United States v. Gonzalez, No. 21-CR-288, 2022 WL 3685796, at *3 (S.D.N.Y. Aug. 24, 2022) (denying motion for pre-trial production of Giglio material and noting that "the usual date for disclosure in [the Southern District of New York] is at least one day before the witness is called to testify").  Here, the government also intends to produce any additional Giglio material regarding its trial witnesses at the time it produces its Jencks Act material.

Santos additionally claims that production of the FD-302s and notes regarding the interviews of █████████████████ is needed now for the preparation of Santos's motion to dismiss certain counts of the Indictment.  See, e.g., Mot. 44.  This argument reflects Santos's fundamental misunderstanding as to the nature of a motion to dismiss in a criminal matter, in which reliance on facts outside the scope of the Indictment (such as the content of the FD-302s and notes) is inappropriate.  As explained above, "at the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense."  Dawkins, 999 F.3d at 780. Were it otherwise, courts "would effectively be ask[ed] . . . to engage in summary judgment

proceedings—something that does not exist in federal criminal procedure." Id.  Arguments that "turn on facts outside of the indictment" are "not appropriate grounds for dismissal of [an] indictment," but instead should be raised at trial and in post-trial motions.  United States v. Eisenberg, No. 23-CR-10, 2023 WL 8720295, at *6 (S.D.N.Y. Dec. 18, 2023).  Because reliance on such facts is improper at the stage of a motion to dismiss, the Court should deny Santos's request to supplement his motion to dismiss at a later date.

In sum, the government has made substantial disclosures to Santos, in an abundance of caution, pursuant to and exceeding its obligations under Brady and its progeny.  The government understands its obligations, has complied with them, and will continue to do so.  Santos's arguments that the Court should doubt the government's commitment to meeting its Brady obligations is baseless.  As discussed above, the information provided by the government to Santos regarding ███████████████████ is not materially exculpatory, but was nonetheless disclosed out of an abundance of caution.  Santos cannot be heard to complain about the timing of such disclosures where they were made six months prior to trial.  Accordingly, the Court should deny the motion to compel in all respects.

*     *     *

So too should the Court deny Santos's related request for an order directing the government to preserve any "rough notes and other evidence taken by law enforcement agents during their interviews with all witnesses."  Mot. 50–51.

As explained at length above, the government understands its various obligations under Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, Brady, and Giglio, and will continue to comply with them, including by preserving and producing all such materials to the defense at the appropriate time.  No such additional order is required to ensure that the government

complies with its various statutory and constitutional obligations, and Santos has identified no credible reason for suggesting otherwise.

Second, "precedent in this circuit holds that [agents] need not preserve such notes if the agents incorporate them into formal reports." United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); see Yik Man Mui v. United States, No. 99-CV-3627, 2013 WL 6330661, at *27 (E.D.N.Y. Dec. 5, 2013) (same); United States v. Ma, No. 03-CR-734, 2006 WL 708559, at *15-16 (S.D.N.Y. Mar. 21, 2006) (same); United States v. Orena, 876 F. Supp. 20, 24 (E.D.N.Y. 1995) (same); United States v. Leonard, 817 F. Supp. 286, 303 (E.D.N.Y. 1992) (same).  Here, the government understands that all rough notes have been, or are in the process of being, incorporated into official reports.  As such, the Court should deny the motion as moot.  See United States v. Guevara, No. 99-CR-445, 1999 WL 639720, at *3 (S.D.N.Y. Aug. 23, 1999).

Third, consistent with its usual practice, the government has already directed law enforcement agents to preserve all rough notes of its interviews of witnesses and related evidence. Under these circumstances, courts regularly deny such motions as moot, which the Court should also do here.  See United States v. Brown, 627 F. Supp. 3d 206, 241 (E.D.N.Y. 2022); United States v. Mercado, No. 02-CR-675, 2003 WL 21756084, at *6 (S.D.N.Y. July 30, 2003); United States v. Richards, 94 F. Supp. 2d 304, 314 (E.D.N.Y. 2000); United States v. Ciriaco, No. 99-CR-332, 1999 WL 1267470, at *1 (S.D.N.Y. Dec. 29, 1999); United States v. Hotte, No. 97-CR-669, 1997 WL 694718, at *3 (E.D.N.Y. Nov. 6, 1997).

POINT SEVEN

THE INDICTMENT DOES NOT CONTAIN IMPERMISSIBLE SURPLUSAGE

Lastly, Santos moves to strike certain phrases from the Indictment, arguing, among other things, that they are "overbroad, invite[] speculation," are "highly prejudicial because they are likely to inflame the jury's perception of Santos' character beyond the specific charges," "suggest[] a general disposition towards fraud and deceit," "imply[] a criminal propensity," may "lead the jury to infer further wrongdoing not specified in the charges," and "impl[y] that Santos engaged in other unspecified illegal activities beyond those detained in the [Indictment]." Mot. 47–50.[17] The phrases at issue are underlined below:

- "During the 2022 election cycle, the defendant GEORGE ANTHONY DEVOLDER SANTOS devised and executed at least three fraudulent schemes to obtain money for himself and for the Committee by making various material misrepresentations and omissions to, among others, the FEC, National Party Committee #1, potential contributors to the Committee and the public." S-2 ¶ 15.

- "In or about and between December 2021 and January 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS and Nancy Marks conspired and agreed to falsely inflate the Committee's fundraising totals, including, but not limited to, in public filings with the FEC, in order to mislead the FEC, National Party Committee #1 and the public so that DEVOLDER SANTOS would qualify for the Program and receive financial and logistical support from National Party Committee #1." S-2 ¶ 22.

- "DEVOLDER SANTOS attempted to use the credit card billing information of Contributor #12 to make contributions to the Committee and to the campaign committees of other candidates for elected office in the names of, among others:

---

[17]     To the extent the Court does not plan to present the Indictment to the jury at trial, Santos's motion to strike surplusage can be denied as moot. See United States v. Adelglass, No. 20-CR-605, 2022 WL 6763791, at *5 (S.D.N.Y. Oct. 11, 2022) ("[T]his Court's uniform policy is never to present an indictment to the jury, and so . . . this motion is denied as moot."); United States v. Doyle, No. 16-CR-506, 2018 WL 1902506, at *6 (S.D.N.Y. Apr. 19, 2018) (noting that "it does not typically read portions of the indictment to the jurors at trial," rendering the motion "academic"); United States v. Monserrate, No. 10-CR-965, 2011 WL 3480957, at *3 (S.D.N.Y. Aug. 4, 2011).

(a) DEVOLDER SANTOS himself; (b) Person #2; (c) Person #3, an individual whose identity is known to the Grand Jury; and (d) Person #4, an individual whose identity is known to the Grand Jury." S-2 ¶ 46.

- "Again, in an effort to mask the true source of the funds and to circumvent the Election Act's limits on individual contributions, DEVOLDER SANTOS repeatedly masked those fraudulent transactions by using the names of other unwitting individuals, including individuals who had previously contributed to his campaign and his own relatives, among others." S-2 ¶ 48.

In addition, Santos claims there are several other problematic sentences in the Indictment, but it appears that the cited sentences do not exist.  First, Santos cites to the following sentence: "These schemes involved, among other things, falsifying donor information and laundering campaign funds." Mot. 49.  In fact, this sentence appears nowhere in the Indictment (either the S-2 or prior iterations), nor has the government identified any sentence in the Indictment apparently similar to the described sentence.   Second, Santos cites to the following sentence with the purported problematic phrase underlined: "First, in or about and between December 2021 and November 2022, the defendant GEORGE ANTHONY DEVOLDER SANTOS and Nancy Marks devised and executed a scheme to submit materially false reports to the FEC on behalf of the Committee in which they fraudulently inflated the Committee's fundraising numbers for the purpose of misleading the FEC, National Party Committee #1 and the public, among others." Although a variation of this sentence appears in the Indictment, the assertedly problematic phrase does not (nor did it appear in prior iterations of the Indictment).  Compare S-2 ¶ 16 with Mot. 49. The Court should deny Santos's request to strike this non-existent surplusage.

I.   Legal Standards

Federal Rule of Criminal Procedure 7(d) provides that, upon motion of the defendant, "the court may strike surplusage from the indictment."  However, "[c]ourts in this Circuit are loath to tinker with indictments." United States v. Block, No. 16-CR-595, 2017 WL

1608905, at *5 (S.D.N.Y. Apr. 28, 2017).   Accordingly, "[m]otions to strike surplusage are . . . subject to an 'exacting standard,' and will be granted only where the challenged material is 'not relevant to the crime charged <u>and</u> [is] inflammatory and prejudicial.'"  <u>Tournant</u>, 2023 WL 8649893, at *12 (emphasis in original); <u>see also</u> <u>Doyle</u>, 2018 WL 1902506, at *6 ("Under this exacting standard, only rarely is alleged surplusage stricken from an indictment.").  "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."  <u>Tournant</u>, 2023 WL 8649893, at *12.

## II.   <u>Discussion</u>

The Court should deny Santos's motion to strike the phrases "at least," "various," "among others," and "including, but not limited to," because it is "well-established . . . that this type of so-called 'broadening' language is only subject to removal when it 'appears in a charging paragraph' within an indictment."  <u>United States v. Wey</u>, No. 15-CR-611, 2017 WL 237651, at *27 (S.D.N.Y. Jan. 18, 2017); <u>see also</u> <u>United States v. Kassir</u>, No. 04-CR-356, 2009 WL 995139, at *3-4 (S.D.N.Y. Apr. 9, 2009) (collecting cases); <u>United States v. Booth</u>, No. 99-CR-378, 1999 WL 1192317, at *11 (S.D.N.Y. Dec. 14, 1999) ("When a means paragraph, which refers to the matter of proof to sustain the charges, contains surplusage, a court <u>should</u> <u>not</u> strike the language.") (emphasis added).  "Such language is permissible . . . when it appears only in sections of an indictment alleging the means and methods by which the defendant committed the charged offense."  <u>Wey</u>, 2017 WL 237651, at *27; <u>United States v. Gupta</u>, No. 11-CR-907, 2012 WL 1066804, at *2 (S.D.N.Y. Mar. 27, 2012) ("[T]he words do not in any material respect broaden or otherwise alter the essential allegations of the crimes charged . . . but simply indicate that the Government's proof of the charges will not be limited only to certain items of proof that the

indictment specifies.").[18]  "Because the phrases of which [Santos] complains appear only in sections of the Indictment setting forth the 'means and methods' by which he allegedly committed the charged offenses," the portion of the Motion seeking to strike such language should be denied. Wey, 2017 WL 237651, at *27.

In addition, each of the phrases at issue serves a purpose in identifying the manner and means by which Santos committed the charged offenses and previewing the government's anticipated evidence.  For example, the government anticipates that its evidence will establish that Santos "masked th[e] fraudulent transactions [at issue in the Credit Card Fraud Scheme] by using the names of other unwitting individuals," beyond simply "individuals who had previously contributed to his campaign and his own relatives."  S-2 ¶ 48.  Along these same lines, the government anticipates that its evidence will establish that Santos "attempted to use the credit card billing information of Contributor #12 to make contributions to the Committee and to the campaign committees of other candidates for elected office in names of" other individuals beyond simply Santos and the specific individuals listed in paragraph 46 of the Indictment.  Further, to the extent that any of the phrases at issue could be construed to suggest Santos's malfeasance beyond the charges laid out in the Indictment, such language is nonetheless permissible because it previews the government's intention to introduce evidence of other bad acts committed by Santos to complete the narrative or pursuant to Federal Rule of Evidence 404(b).  See United States v. Liburd, No. 17-CR-296, 2021 WL 4521964, at *4 (E.D.N.Y. Oct. 3, 2021) ("Indeed, it is generally

---

[18]     Even one of the cases cited by Santos in the Motion, United States v. DePalma, 461 F. Supp. 778 (S.D.N.Y. 1978), recognizes this distinction.  See id. at 798–99 ("The means paragraph, however, goes to the matter of proof to sustain the charges.  Accordingly, the phrase 'and other activities' or 'among the means' when contained therein can be equated to allegations of overt acts in a conspiracy charge where the Government is not required to set forth all the acts relied upon to effectuate the conspiracy.").

permissible for the indictment to refer to acts that may not be elements of, or necessary to prove, the charged crimes, such as Rule 404(b) evidence.").  Indeed, the government has already provided Santos with notice pursuant to Rule 404(b) of certain bad acts it intends to prove at trial.  It may supplement such notice at a future date.

To the extent the Court has any lingering concerns about the phrases at issue, the Court can deny the motion without prejudice and then revisit the issue following the completion of the presentation of evidence at trial.  See United States v. Maxwell, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021) (noting that courts "generally delay ruling on any motion to strike until after the presentation of the Government's evidence at trial, because that evidence may affect how specific allegations relate to the overall charges"); United States v. Johnson, No. 21-CR-428, 2023 WL 5632473, at *12 n.19 (S.D.N.Y. Aug. 31, 2023) (same); Block, 2017 WL 1608905, at *5 (same). "[I]f it should be appropriate to give a copy of the indictment to the jury in connection with their deliberations, that copy can be redacted according to the charges, allegations, and evidence that remain relevant in light of the entire trial."  United States v. Tuzman, 301 F. Supp. 3d 430, 453–54 (S.D.N.Y. 2017).

CONCLUSION

For the reasons set forth above, the government respectfully submits that Santos's

Motion should be denied in its entirety.

Dated:  Central Islip, New York
        May 31, 2024

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

                                        ____/s/_____
                                        Ryan C. Harris
                                        Anthony Bagnuola
                                        Laura Zuckerwise
                                        Assistant U.S. Attorneys


                                        COREY R. AMUNDSON
                                        Chief, Public Integrity Section
                                        U.S. Department of Justice

                                        ____/s/_____
                                        Jacob R. Steiner
                                        John P. Taddei
                                        Trial Attorneys