

April 12, 2024

**By ECF**
The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

      Re: US v. George Anthony Devolder Santos, 23-cr-197 (JS)
         Reply Letter In Support of Defendant's Request For
         <u>A Jury Questionnaire</u>

Dear Judge Seybert:

  We respectfully submit this letter in reply to the government's responsive letter dated August 9, 2024 ("Response"), opposing defense counsel's request for a juror questionnaire. The government argues that a jury questionnaire should not be provided because (1) it is "unfeasible at this juncture"; (2) the "anticipated media attention does not warrant a questionnaire"; and (3) "a questionnaire will not provide a better or more efficient voir dire". ECF 96. We respectfully submit that the government is incorrect on all three grounds.[1]

  Preliminarily, contrary to the government's argument, Santos has absolutely no interest in "bogging down" the trial or delaying it. Resp. at 5. His sole interest is in securing a fair and impartial jury, to the extent that is possible in light of the negative media coverage.

---

[1] The government's opposition to Santos' request for a jury questionnaire on the grounds of untimeliness and their claim that Santos has somehow brought the negative publicity on himself, appears to be entirely pretextual. Their stance appears to stem not from legitimate procedural concerns, but from a desire to capitalize on the overwhelmingly negative media coverage of Santos. By advocating for a quicker jury selection process with less in-depth questioning, the government seems to be strategically maneuvering to seat jurors who may have been unduly influenced by this biased negative media narrative. Accordingly, we urge the Court to view the government's arguments carefully, as common sense indicates that their position is less about procedural efficiency and more about gaining a tactical advantage at the expense of constitutional safeguards.

## I. The Request is Timely and Feasible

The government's claim that Santos' request is "unfeasible at this late juncture" is without merit and ignores the flexibility inherent in court procedures, especially when it comes to safeguarding a defendant's constitutional rights.

First, the Court could employ two different methods for implementing the requested questionnaire, both of which are feasible. Under one method, the Court could mail the questionnaires to the jurors and have them mail them back no later than August 30, 2024. Once the Court receives them they can be scanned and emailed to the parties to confer regarding challenges "for cause." Jurors that both parties agree to strike can be informed that they need not return to Court, the remainder may return on September 9th for in-person *voir dire*.

Alternatively, the Court could have all the potential jurors appear on September 9th to complete the juror questionnaire at the Courthouse and then be instructed to return on Wednesday morning unless told otherwise by the Court. On Tuesday, counsel would confer regarding agreed upon jurors to strike and the remainder would return on Wednesday, September 11th, to start *voir dire*. The defense anticipates that if either of these methods are employed a jury could be selected before the end of the week.

We respectfully submit that both proposed methods would streamline jury selection. However, the alternative approach would require the Court to individually question all potential jurors in chambers to avoid "taint", significantly prolonging the process. *See* Jeffrey T. Frederick, *Mastering Voir Dire and Jury Selection*, at 200 (4th ed. 2018) (internal citations omitted) ("In questioning jurors regarding pretrial publicity, it is important to develop methods for questioning that will not "taint" the other jurors. Appropriate methods are questioning jurors exposed to pretrial publicity on an individual basis in the judge's chambers or in open court, with all other jurors sequestered. However, the practice of questioning all "exposed" jurors at one time (with unexposed jurors absent) risks tainting exposed but otherwise acceptable jurors"). Our suggested questionnaire method allows the parties to agree on eliminating unsuitable candidates upfront, saving considerable time and resources.

Second, the government's claim of untimeliness is not persuasive. There is no rule or deadline in the Federal Rules of Criminal Procedure, or in this Court's local rules, that prescribes a specific time by which a request for a juror questionnaire must be made. Our request was made on August 6, 2024, a little more than a month prior to the scheduled trial date. We submit that this allows for sufficient time to implement a questionnaire.

In addition, courts routinely demonstrate flexibility in accommodating important trial measures, even on the eve of trial, and enjoy broad discretion in doing so. The suggestion that the summoning of jurors for September 9th somehow precludes the use of a questionnaire is shortsighted. This Court has ample discretion to adjust its procedures to ensure a fair trial, including, as discussed above, potentially mailing the questionnaires, having jurors arrive on September 9th to complete the questionnaire and allowing for the parties to review those on September 19th, or adjusting the trial schedule as needed. *See* Local R. Crim. P. 23.1(h).

The government's concerns about witness scheduling and resource allocation, while noted, pale in comparison to the fundamental necessity of ensuring a fair trial. If a brief delay is required to properly screen the jury pool, it is a small price to pay to safeguard the integrity of these proceedings. However, again, counsel is not suggesting that any such delay would be required.

To be clear, we do not propose the questionnaire as a replacement for oral *voir dire*, but as a *complement* to it. The questionnaire will provide a foundation for more targeted and efficient in-person questioning, and it will allow the Court to delve deeper into areas of concern identified in the written responses.

## II.     Media Attention Warrants Extra Precaution, Regardless of Source

The government's argument that Santos' request for a questionnaire is somehow "improp[er]" because Santos was responsible for generating some of the media coverage is a complete non-sequitur. Resp. at 3. First and foremost, the origin of the media attention—whether it stems from Santos' own efforts, the government's actions, or Santos' former position as a member of Congress—is immaterial. The paramount objective of jury selection is to ensure an impartial jury, regardless of the source or extent of pre-trial publicity. We strongly believe a questionnaire will serve as a much more reliable detector of bias in this case because of the amount of negative press this case has garnered.

The government's implication that permitting a questionnaire would "reward" Santos for his media presence reveals a troubling perspective on the fundamental right to a fair trial. Is the government suggesting that Santos' media engagement somehow forfeits his right to an impartial jury? That is simply not the law, for even assuming Santos had been partially responsible for some of the media attention, the right to an impartial jury is not contingent on a defendant's behavior. *See Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) (Supreme Court held that, despite defendant's own involvement in causing pretrial publicity, the trial court did not take proper precautions to protect his due process, stating "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused."). This Court's duty is to ensure a fair trial, not to punish or reward a defendant for their out-of-court conduct or media coverage.

Second, the government's claim that Santos is primarily responsible for the media attention surrounding this case is misguided. Contrary to the government's assertions, Santos is not the cause of the vast majority of the media attention. Rather, the media's focus on Santos is a byproduct of the current polarized political climate, Santos' unique meteoric rise into politics and election into Congress, and the nature of the allegations against him. To the extent that Santos has participated in any way, it was to defend himself against the overwhelming negative press. His appearances were not motivated by a desire for publicity, let alone negative publicity. We submit that this does not equate to courting controversy or seeking undue attention.

3

**III.    A Questionnaire Is Necessary To Secure Any Impartial Jury**

Contrary to the government's belief that "there is no basis here to conclude that a customary *voir dire* process will fail to properly screen for pretrial bias" (Resp. at 5), the heightened difficulty in securing a fair and impartial jury in a case with extensive pretrial publicity is well documented:

> Jurors tend to minimize or downplay their exposure, awareness of relevant information, and opinions arising from pretrial publicity. Some jurors are defensive about their ability to recall information encountered in the media or through discussions with their friends and acquaintances. Other jurors may feel, as a result of questioning by the judge or the parties, that they should not have read, watched, or listened to the media coverage of events. Many jurors formed opinions at the time they were exposed to the media coverage but feel that, as jurors, they "are not supposed to have any opinions." All of these factors contribute to jurors' lack of candor about their exposure to pretrial publicity and the opinions formed as a result.

Jeffrey T. Frederick, *Mastering Voir Dire and Jury Selection*, at 189 (4th ed. 2018) (internal citations omitted). Accordingly, it is absolutely crucial for the parties and the Court to secure thorough and candid information about each juror in a case such as this where nearly every prospective juror has likely heard about the allegations and formed opinions concerning Santos and the merits of this case.

"One tool for increasing juror self disclosure and candor is the use of juror questionnaires. Written questionnaires, including electronically administered questionnaires, *have been shown to increase disclosure in [..] jury selection*." *Id.* at 201 (emphasis added) (*citing* Susan A. Jones, *Judge-versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor*, 11 LAW & HUM. BEHAV. 131 (1987), and David Flores, *Methods of Expanded Voir Dire and Written Questionnaires: Experimental Results on Juror Self-Disclosure and Implications for Trial Practice*, CT. CALL 1 (Summer 2011); *see also* Lin S. Lilley, *Techniques for Targeting Juror Bias*, 32 TRIAL 74 (1994), *citing* U.S. District Judge Richard Bilby's comments that he found that one in three potential jurors would admit knowing someone who had been sexually abused on a supplemental juror questionnaire, while only one in ten would do so during *voir dire* in open court)). The government's insistence on the superiority of in-person questioning ignores well-established social science research and the practical realities of jury selection in high-profile cases.[2] Research has consistently shown that individuals are more likely to give socially desirable responses in face-to-face settings, particularly when discussing sensitive topics. A written questionnaire mitigates this bias, allowing for more honest responses.

---

[2] "There are a number of potential benefits to using supplemental juror questionnaires, including (1) increased juror disclosure; (2) development of more effective follow-up questions; (3) ability to prescreen jurors; (4) minimizing infection of the panel; (5) availability of greater total information; and (6) promotion of a faster jury selection." *Id.* at 208.

4

Not only do questionnaires tend to elicit more honest responses, they also lead to more comprehensive and thoughtful responses because they allow time for the jurors to reflect on their answers. *See id.* ("The use of written questionnaires provides jurors with a greater sense of privacy and comfort than does answering questions in open court, in front of their fellow jurors and, often, the press. As a result, jurors are likely to be more candid in their answers to questions in supplemental juror questionnaires than to questions posed in open court, particularly when faced with group questioning. This factor is important when considering potentially sensitive topics [...]") *Id.* (internal citations omitted)

Here, use of written questionnaires is particularly crucial because political affiliations and opinions, especially those influenced by our polarized media, may influence juror impartiality. Politics is a highly sensitive subject, especially leading up to this unprecedented election, and it is not difficult to imagine that prospective jurors might be reluctant to discuss their go-to sources for political information, their political affiliations, and their pre-formed opinions of Santos and this case in open court.

In addition the government's attempt to equate this case with other "high-profile" trials where questionnaires were not used overlooks unique aspects of Santos' situation. For example, in *United States v. Hadden*, the court's primary concern was the jurors' unwillingness to disclose answers related to sexual assault in the proposed questionnaire, a situation distinctly different from the concern of the national media attention garnered by Santos. *Hadden,* No. 20-CR-468 (RMB) (S.D.N.Y. Jan. 20, 2022) (ECF No. 151 at 1). Additionally, Santos' personal notoriety far exceeds that of other nationally covered cases cited by the government, such as *United States v. Ray*, where the pretrial publicity focused more on the story behind the indictment than on the defendant's personally. *Ray*, No. 20-CR-110 (LJL) (S.D.N.Y. Jan. 6, 2022) (ECF No. 290 at 4). Similarly, while *United States v. Parnas* involved national media attention, it primarily concerned the defendant's association with Rudy Giuliani rather than his personal life, beliefs, and history, which are central to the media coverage of Santos in this case. *Parnas*, No. 19-CR-725 (JPO) (S.D.N.Y. Oct. 5, 2021) (ECF No. 275 at 13). In *United States v. Doud*, pre-trial publicity was not of major concern, which sharply contrasts with the pretrial publicity in this case. *Doud*, No. 19-CR-285 (GBD) (S.D.N.Y. Jan. 10, 2022) (ECF No. 134 at 86).

The government's comparison to figures like Senator Menendez or Martin Shkreli is also inapt. Menendez had established public personas over many years.[3] In contrast, Santos went from relative obscurity to the center of a national media firestorm in a matter of months. This rapid and intense focus creates a distinct risk of juror bias that requires careful management. Shkreli's case was highly distinct because his notoriety stemmed from his role in the pharmaceutical industry and his controversial business practices rather than from any involvement in government or political affairs like Santos. Comparisons to Malcolm Smith, a former New York State Senator, also fail. While he was a prominent figure in New York State politics, his recognition was more localized, drawing less national media attention, whereas Santos has achieved widespread national notoriety due to the unprecedented nature of his controversies.

---

[3] In addition, Menendez may appeal based on the district court's denial of his request for a jury questionnaire.

We submit that the unique circumstances of this case - including the nature of the charges, the intensity and rapidity of media coverage, and the political context - set it apart from the government's cited examples.

**IV.     Conclusion**

The government's arguments against the use of a questionnaire are based on mischaracterizations of Santos' relationship with the media and fail to account for the unique challenges presented by this case.  The extensive media coverage, largely beyond Santos' control and often unrelated to the charges at hand, creates a distinct risk of juror bias.  A well-designed questionnaire, used in conjunction with oral *voir dire*, will enhance the jury selection process and help ensure Santos receives a fair trial before an impartial jury.

For these reasons, we respectfully request that the Court grant our motion for the use of a juror questionnaire.

Sincerely,

*/s/ Andrew Mancilla*
Andrew Mancilla, Esq.
Joseph Murray, Esq.
Robert Fantone, Esq.

cc:     **VIA ECF**
AUSA Ryan C. Harris (Ryan.Harris2@usdoj.gov)
AUSA Anthony Bagnuola (Anthony.Bagnuola@usdoj.gov)
AUSA Laura Zuckerwise (Laura.Zuckerwise@usdoj.gov)
CRM Jacob Steiner (Jacob.Steiner@usdoj.gov)
CRM John Taddei (john.taddei@usdoj.gov)

6