1

```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2       - - - - - - - - - - - - - - X
    UNITED STATES OF AMERICA,    :   23-CR-197(JS)
3                                 :
                                  :
4                                 :   United States Courthouse
           -against-             :   Central Islip, New York
5                                 :
                                  :
6                                 :   August 19, 2024
    GEORGE ANTHONY DEVOLDER       :   3:00 p.m.
7   SANTOS,                       :
                                  :
8             Defendant.
       - - - - - - - - - - - - - - X
9
              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10           BEFORE THE HONORABLE JOANNA SEYBERT
                  UNITED STATES DISTRICT JUDGE
11
                    A P P E A R A N C E S:
12
     For the Government: BREON S. PEACE, ESQ.
13                       United States Attorney
                         Eastern District of New York
14                       610 Federal Plaza
                         Central Islip, New York 11722
15                       BY:  RYAN HARRIS, ESQ.
                              ANTHONY BAGNUOLA, ESQ.
16                            LAURA ZUCKERWISE, ESQ.
                              Assistant United States Attorneys
17
                         DEPARTMENT OF JUSTICE
18                       PUBLIC INTEGRITY SECTION
                         BY:  JACOB STEINER, ESQ.
19                            JOHN TADDEI, ESQ.

20
     For the Defendant:        JOSEPH MURRAY, ESQ.
21                             ANDREW MANCILLA, ESQ.
                               ROBERT FANTONE, JUNIOR, ESQ.
22

23   Court Reporter:  Marie Foley, RMR, CRR
                      Official Court Reporter
24                    Telephone: (631) 712-6104
                      E-mail: Marie_Foley@nyed.uscourts.gov
25   Proceedings recorded by computerized stenography.
     Transcript produced by Computer-aided Transcription.
```

*Proceedings*

2

```
1            (In open court; defendant present.)
2            COURTROOM DEPUTY:  Calling case 23-CR-197 the
3   United States of America versus George Anthony Devolder
4   Santos.
5            Counsel, please state your appearances for the
6   record.
7            MR. HARRIS:  Good afternoon, your Honor.  Ryan
8   Harris for the United States.  I'm joined by Assistant
9   United States Attorneys Anthony Bagnuola, Laura Zuckerwise
10  from the Eastern District of New York.  I'm also joined by
11  trial attorneys Jacob Steiner and John Taddei from the
12  Public Integrities Section of Main Justice.
13           THE COURT:  Good afternoon to you all.
14           MR. MANCILLA:  Good afternoon, your Honor.
15  Andrew Mancilla on behalf of Mr. Santos.  I'm accompanied
16  by Joseph Murray and my partner Robert Fantone and, with
17  the Court's permission, our lovely interns seated behind
18  counsel's table Jessica Pertrucci and Kyra Mangle.
19           THE COURT:  Yes.
20           MR. MANCILLA:  Thank you.
21           THE COURT:  Good afternoon to you all.
22           All right.  I understand this is going to be a
23  disposition.  Is that correct?
24           MR. HARRIS:  It is, your Honor.
25           MR. MANCILLA:  That's correct, your Honor.
```

*Proceedings*

3

```
 1              THE COURT:  Mr. Santos, if you would stand, I'll
 2    have you sworn in.
 3              COURTROOM DEPUTY:  Sir, please raise your right
 4    hand.
 5              (Defendant sworn.)
 6              THE COURT:  Mr. Santos, you're under oath now.
 7              THE DEFENDANT:  Yes, ma'am.
 8              THE COURT:  You have to understand that anything
 9    you say that is not true can subject you to penalties of
10    perjury.
11              All right.
12              THE DEFENDANT:  Yes, your Honor.
13              THE COURT:  Let me advise you that you can talk
14    to your attorneys before you answer any question.
15              THE DEFENDANT:  Yes, your Honor.
16              THE COURT:  And you can do that in private.
17              Also, you should be aware of the fact that if
18    you don't understand a question, tell me you don't
19    understand it and I'll rephrase it.
20              All right?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Are you willing to answer my
23    questions under oath knowing the consequences of telling a
24    lie?
25              THE DEFENDANT:  Yes, your Honor.
```

*Proceedings*

4

1    THE COURT:  Prior to coming to court today, have

2    you had any medication, any drugs, alcohol, anything that

3    might alter your ability to understand the proceedings?

4    THE DEFENDANT:  Just my regular prescriptions.

5    THE COURT:  All right.  And they don't affect

6    your ability to understand?

7    THE DEFENDANT:  No, your Honor.

8    THE COURT:  Okay.

9    And are you satisfied with your lawyers?

10   THE DEFENDANT:  Yes, your Honor.

11   THE COURT:  You understand that you have a whole

12   host of rights that you are now going to give up if I

13   accept your guilty plea?

14   THE DEFENDANT:  Yes, your Honor.

15   THE COURT:  Including the right to go to trial,

16   the right to subpoena witnesses on your behalf, the right

17   to testify if you chose to testify.  If you chose not to

18   testify, the jury would be instructed that they could not

19   hold that against you.  Your right to confront witnesses

20   against you, your right to subpoena witnesses to come in,

21   your right and your presumption of innocence, the

22   requirement that the Government prove your guilt beyond a

23   reasonable doubt.

24   You're giving that all up, do you understand

25   that, if I accept your guilty plea?

*Proceedings*

5

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Right off the bat, has anyone

3    promised you, coerced you in any way to enter into this

4    plea?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  You understand that your lawyers are

7    retained here.  If you chose to get counsel and you

8    couldn't afford counsel, the Court would assign counsel to

9    you.

10          Do you realize that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  All right.

13          In preparation for your plea today, I understand

14    that you signed the standard plea form, and that indicates

15    a variety of things.  Is that correct, sir?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  All right.

18          And you've gone over all of this with your

19    attorneys, and you've indicated how it is that you're

20    guilty of two charges, Count Two and Count Nine, I

21    believe, Aggravated Identity Theft.  Is that correct?

22          THE DEFENDANT:  Count Six, your Honor.

23          MR. MANCILLA:  Six.

24          THE COURT:  Count Six.

25          So, you've reviewed all of that, and you have

*Proceedings*

6

 1   reviewed with counsel the advisory guidelines, your rights

 2   as I've indicated them to you.

 3          Restitution here as to Count Two would be in the

 4   amount of, at this time it's estimated to be $373,749.97.

 5   And there is an inclusion in the plea agreement as to how

 6   this can be paid, and that's in paragraph 7 of the plea

 7   agreement.

 8          There's also a $100 special assessment.

 9          The maximum supervised release term for this

10   particular offense is three years, to follow any term of

11   imprisonment.  If a condition of release is violated, the

12   defendant may be sentenced up to two years without credit

13   for pre-release imprisonment or time previously served on

14   post-release supervision.

15          And also, the wire count here, Count Two,

16   there's a maximum term of imprisonment of 20 years and a

17   minimum term, there is no minimum term.

18          Other penalties are the criminal forfeiture

19   that's outlined in the plea agreement in paragraphs 8

20   through 15.

21          Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  There's a maximum term of

24   imprisonment on aggravated identity theft of two years,

25   and there's a minimum term of two years.

*Proceedings*

7

1          I've never seen that before.  That's a new type

2     of statute, having the minimum and the maximum the same

3     amount.

4          In any event, there is also a supervised release

5     term of one year.

6          And it's very important that you understand that

7     this sentence must run consecutively to any other count

8     that you're pleading guilty to.

9          Do you understand that?

10          THE DEFENDANT:  One moment, your Honor.

11          THE COURT:  Sure.

12          (Defendant and defense counsel confer.)

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Also with regard to restitution,

15     that would be in the total amount of $373,749.97.

16          Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Okay.

19          Then in paragraph 2, it indicates all the acts

20     that you're pleading guilty to.

21          Have you reviewed that in detail with counsel?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you --

24          MR. HARRIS:  Your Honor?

25          THE COURT:  Yes.

*Proceedings*

8

1           MR. HARRIS:  Just to clarify, paragraph 2 sets

2   forth conduct to which he is stipulating and admitting to.

3           THE COURT:  Yes.

4           MR. HARRIS:  In addition to the counts to which

5   he is pleading to.

6           THE COURT:  That is correct.  And he'll be held

7   responsible in the sense that the Court will consider that

8   when it goes to sentence in terms of the nature and

9   circumstances of the offense.

10          MR. HARRIS:  Yes, your Honor.

11          THE COURT:  Okay.

12          So with regard to the aggravated identity theft,

13  which I'm still on, you understand that that sentence must

14  run consecutively, and you've stipulated in paragraph 2 to

15  all the different acts that you're responsible for and

16  guilty of and you know that particular section.

17          Do you need me to read that out loud, Mr.

18  Santos?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Okay.  You've reviewed it with

21  counsel.

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you have any questions?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  Do you have any objections?

*Proceedings*

9

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Okay.

3          Does the Government have any need for the Court

4     to read the whole recitation here of what he's admitting

5     to?

6          I don't have a problem of doing it one way or

7     the other.

8          MR. HARRIS:  Your Honor, I'd like to put the

9     stipulation on the record.

10          THE COURT:  Okay.  So it is as follows.

11          The defendant stipulates and admits to the

12     following:

13          A.  The defendant committed access device fraud,

14     including as charged in Count Nine of the superseding

15     indictment, by using, between July 2020 and October 2022,

16     the personal identity and credit card numbers of one or

17     more individuals, without their knowledge or

18     authorization, to fraudulently cause those individuals'

19     credit cards to be charged for the benefit of his

20     campaign, the campaigns of other individuals for elected

21     office, and his own personal benefit, resulting in the

22     receipt of payments of at least $1,000 in a one-year

23     period.  In connection with this access device fraud, the

24     defendant caused his campaign committee to make false

25     statements and falsify records to the Federal Election

*Proceedings*

1    Commission (the "FEC") during the same period.

2    Subparagraph B.  The defendant committed wire

3    fraud, as charged in Count Fourteen of the superseding

4    indictment, by communicating, and causing another person

5    to communicate, between September '22 and October '22,

6    false information about Redstone Strategies LLC

7    ("Redstone") to one or more supporters of his candidacy

8    for the U.S. House of Representatives (the "House"),

9    including that Redstone was a Section 501(c)(4) social

10   welfare organization and that contributions made to

11   Redstone would be used on independent expenditures in

12   support of his candidacy, including television

13   advertisements, when, in actuality, funds contributed to

14   Redstone in reliance on those false statements were

15   converted by the defendant for his own personal benefit.

16   These communications included, but were not limited to, a

17   text message sent by defendant on October 21, 2022, to

18   Andrew Intrater stating that the funds received by

19   Redstone from Intrater would be used, in part, to purchase

20   television advertisements supporting the defendant 's

21   candidacy for the House.

22   C.  Defendant committed theft of public money,

23   as charged in Count Nineteen of the superseding

24   indictment, by applying for and receiving unemployment

25   insurance benefits to which he was not entitled, between

*Proceedings*

11

June 2020 and April 2021, by falsely informing the New York State Department of Labor that he was unemployed, available to take on new work, and otherwise eligible for benefits, during a period of time when he was gainfully employed as the regional director at Harbor City Capital Corp.

D.  The defendant made false statements, as charged in Count Twenty-Three of the superseding indictment, in connection with his candidacy for the House, when, on or about September 6th, 2022, he made materially false statements and omissions in a Financial Disclosure Statement transmitted to the Clerk of the House, for delivery to the House Committee on Ethics, concerning his assets and income, including (a) falsely claiming his earned income consisted of $750,000 salary from Devolder Organization LLC; (b) falsely claiming his unearned income included dividends from the Devolder Organization LLC valued at between $1,000,001 and $5,000,000; (c) falsely claiming that he had no compensation exceeding $5,000 from a single source in which he had an ownership interest; (d) falsely claiming he owned a checking account with deposits totaling between 100,001 and $250,000; (e) falsely claiming he owned a savings account with deposits totaling between $1,000,001 and $5,000,000; and (f) failing to disclose that he

*Proceedings*

12

1   received approximately $28,107 in income from Harbor City

2   Capital Corp. and approximately $20,304 in unemployment

3   insurance benefits from the New York State Department of

4   Labor during the relevant reporting period.

5           The defendant also stipulates that, pursuant to

6   United States Code Section 1B1.2(c), the conduct described

7   in paragraphs 2(a) through 2(d) shall be considered by the

8   Court, quote, as if the defendant had been convicted of

9   additional counts charging those offenses, end quote.

10          Is that your understanding, sir, of what you're

11  actually admitting to?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And you also understand that

14  although the imposition of a sentence in accordance with

15  United States Guidelines is not mandatory, in other words,

16  they're advisory, the Court is required to look at the

17  guideline calculations and come up with the appropriate

18  formula and also included the factors under Title 18

19  United States Code 3553(a) so I can arrive at the proper

20  sentence.

21          Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And I'm going to be getting from the

24  Probation Department, and also the U.S. Attorney's Office

25  will give me, information regarding sentence, criminal

*Proceedings*

1    activity engaged in by you, and information, and I'll use

2    that as well as submissions from your defense attorneys.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And there's no limitation on

6    background, character, and conduct that they can inquire

7    into and I can consider, if appropriate.

8              The U.S. Attorney's Office estimates the likely

9    offense level for the guidelines is a 27, and indicates

10   what it's based on: the base offense for Count Two; the

11   loss amount between 250,000 and 550,000; the

12   misrepresentation concerning charitable political

13   organizations; vulnerable victims; organizer, leader,

14   manager, or supervisor enhancement; and abuse of trust,

15   the highest level would be a 27.

16             And also under Count Six, identity theft, the

17   term of imprisonment required, as I indicated before, is

18   24 months to run consecutively to any other sentence.  And

19   if you clearly demonstrate acceptance of responsibility,

20   the guidelines, according to the Office, the U.S.

21   Attorney's Office, can be reduced to a level 25 if they

22   find that, and your imprisonment then would be 57 to 71

23   months, assuming that you're a Criminal History

24   Category I.  The sentence for Count Six would be 24

25   months, and that would run consecutive to, effectively, a

*Proceedings*

14

1    guideline range of 81 to 95 months.

2             There also is indicated that there may be a

3    one-level reduction, if warranted, that would bring you to

4    an adjusted offense level of 24, and this range of

5    imprisonment would be 51 to 63 months, again assuming that

6    you're a Category Criminal History I.

7             Also, the sentence for Count Six is 24 months,

8    as I mentioned multiple times now, to run consecutive to

9    all other counts.  So we're talking about 75 to 87 months.

10            And you reserve the right, Mr. Santos, to argue

11   that organizer, leader, manager, or supervisor enhancement

12   under 3B1.1(c) and vulnerable victims enhancement do not

13   apply.  You can argue that.  I'll make a determination as

14   to whether or not those items apply.

15            So, with regard to paragraph 3, if, for any

16   reason, there's an error, you don't get the right to

17   withdraw your guilty plea.  In other words, the

18   calculations, and the Court can come up with a different

19   calculation.  However, you do retain the right to file an

20   appeal or otherwise challenge the sentence unless I

21   sentence you to a term of 95 months or less.

22            Do you understand that?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  And the only thing that would allow

25   you to appeal would be ineffective assistance of counsel,

*Proceedings*

15

1    and you've told me you're satisfied with your attorneys in

2    the way they've represented you.

3                    THE DEFENDANT:  Yes, your Honor.

4                    THE COURT:  All right.

5                    Do you have any questions about the waiver of

6    appeal?

7                    THE DEFENDANT:  No, your Honor.

8                    THE COURT:  Okay.

9                    And the U.S. Attorney's Office says that in

10   exchange for your guilty plea, they'll bring no further

11   charges against you for:

12                   One, falsifying and conspiring to falsify

13   fund-raising data reported to the FEC by the

14   Devolder-Santos for Congress campaign committee (the

15   "Committee"), including through false statements

16   concerning the number and amounts of loans the defendant

17   reportedly made to the Committee and the unauthorized use

18   of third-party victims' names and personal identifying

19   information to falsely and fraudulently report to the FEC

20   nonexistent contributions to the Committee for the purpose

21   of fraudulently inducing the National Republican

22   Congressional Committee to provide money and property to

23   the defendant's campaign for the election of the U.S.

24   House of Representatives (the "House"), and impeding the

25   proper administration of a matter within the jurisdiction

*Proceedings*

16

1    of the FEC, all between October 2020 and November 2022,

2    also known as the Party Program Scheme;

3              Also, using, without lawful authority, the

4    personal and financial information of one or more

5    individuals to cause those individuals' credit cards to be

6    charged without the authorization of the cardholders for

7    the benefit of the Committee, for the benefit of the

8    campaigns for other candidates for elected office, and for

9    the defendant's personal benefit between July 2020 and

10   October 2022, known as the Credit Card Fraud Scheme;

11             And also, fraudulently inducing putative

12   political contributors to contribute money to Redstone,

13   representing that the funds would be used on independent

14   expenditures in support of the defendant's candidacy for

15   the House, but which funds were, in fact, used for the

16   defendant's personal benefit, again between October 2022

17   and November 2022, the Redstone Fraud Scheme;

18             Applying for, and collecting, unemployment

19   insurance benefits to which the defendant was not entitled

20   through submissions containing materially false

21   information between June 2020 and April 2022, the

22   Unemployment Fraud Scheme;

23             And making one or more materially false

24   statements and omissions concerning the defendant's assets

25   and income on financial disclosure statements submitted to

*Proceedings*

17

1    the House in connection with his candidacy on May 11, 2020

2    and September 6, 2022.

3              It being understood that this agreement does not

4    bar the use of such conduct as a predicate act or the

5    basis for a sentencing enhancement in a subsequent

6    prosecution, including, but not limited to, a prosecution

7    pursuant to 18 United States Code Section 1961.

8              And at the time of sentence, the Office will

9    move to dismiss the remaining counts of the superseding

10   indictment and all underlying indictments with prejudice.

11   And this is based on what the U.S. Attorney's Office knows

12   at the present time.

13             Also, they will make no motion for an upward

14   departure under the sentencing guidelines based on what

15   they know now, but they won't be bound by this should they

16   find that you violated any provision of this agreement and

17   you will not be released from your plea of guilty.

18             The U.S. Attorney's Office will be released from

19   its obligations under the agreement, including, but not

20   limited to, the paragraphs here that I've just read to you

21   6(a) through 6(b).

22             Do you understand all of that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  You also understand that you're

25   agreeing to pay restitution in the amount I previously

*Proceedings*

18

1   mentioned, and that will be to the victims of the Party

2   Program Scheme and that lists the amounts that would be

3   $178,402.97; the victims of the Credit Card Fraud Scheme

4   in the amount of $120,700; and with respect to the victims

5   of the Redstone Fraud Scheme in the amount of 50,000; and

6   to the victims of the Unemployment Fraud Scheme in the

7   amount of $24,647, all payable as I direct.

8           You agree that I will impose restitution

9   pursuant to United States Code 3664(f).  Is that right?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  You also agree that you have

12  obtained and acquired property that is subject to

13  forfeiture, and that is in the amount and you consent to

14  the entry of a judgment in the amount of $205,002.97, and

15  you agree that you will make payments and the forfeiture

16  money judgment represents all the property, real or

17  personal, assets that are obtained directly or indirectly

18  as a violation of 18 United States Code 1343, and/or any

19  substitute assets that are forfeitable.  And then it goes

20  on to cite the various sections.

21          Also, the forfeiture judgment shall be paid in

22  full 30 days in advance of the sentencing due date.

23          Is that correct, counsel?

24          MR. MANCILLA:  We're going to make our best

25  efforts to, your Honor.

*Proceedings*

19

1          THE COURT:  Okay.  That's paragraph 9.

2          You've conferred with your attorneys on that,

3   Mr. Santos?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And you understand that the

6   Government is expecting to be paid in full on this

7   forfeiture.  Is that correct?

8          MR. HARRIS:  It is, your Honor.

9          THE COURT:  It also mentions in paragraph 10 if

10  you fail to pay any portion of the forfeiture money

11  judgment on or before the due date, you consent to the

12  forfeiture of any property of yours up to the amount of

13  unpaid forfeiture judgment, if those conditions have not

14  been met.  In other words, you have to agree to this, and

15  this would survive any bankruptcy, any other claim that

16  might be made.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  And the failure to forfeit any

20  monies or properties, including to execute any documents

21  to accomplish this on timely notice, can be considered a

22  breach of the agreement, and you won't be entitled to

23  withdraw your plea, and additional criminal charges can be

24  brought against you for that.

25          Do you realize that?

*Proceedings*

20

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you have any questions as to how

3     you have to make this forfeiture?

4               In other words, you're required to make the

5     forfeiture and the following paragraphs outline what's

6     expected of you and what rights you'd be giving up with

7     regard to the forfeiture, including that the forfeiture

8     monies will survive any claim of bankruptcy.

9               You realize that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.

12               And you know that this agreement doesn't bind

13     any other federal, state, or local prosecuting authorities

14     other than the U.S. Attorney's Office for the Eastern

15     District of New York, and it doesn't stop the U.S.

16     Attorney's Office from starting or prosecuting you on any

17     civil or administrative proceedings, either directly or

18     indirectly.  You realize that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Apart from any written proffer

21     agreements, have there been any other promises,

22     agreements, or conditions given to you with respect to

23     this plea?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  No one's forcing you to plead

*Proceedings*

21

1    guilty.  Is that fair to say?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  And you've reviewed, as I mentioned

4    earlier, the plea form.

5            And can you tell me what it is, in your own

6    words, that you did that makes you guilty of this crime?

7            THE DEFENDANT:  May I sit, your Honor, or should

8    I stand?

9            THE COURT:  Just sit and talk directly into the

10   microphone so we have an accurate record.

11           THE DEFENDANT:  Thank you.

12           Your Honor, I participated in a scheme between

13   October 2021 and November 2022 to file false FEC filings

14   through transmissions of interstate wires for the purpose

15   of obtaining money and support from the NRCC.

16           In furtherance of that, on January 31st, 2022,

17   in the Eastern District of New York, I, along with Nancy

18   Marks, knowingly filed a list of false donors with the FEC

19   for the year-end 2021 report --

20           THE COURT:  Slow down a little bit, okay.

21           THE DEFENDANT:  Yes, ma'am, sorry.

22           Knowing it was not true, and the donors, who are

23   friends and family members of Ms. Marks and myself, didn't

24   actually donate and didn't give me permission to use their

25   names.

*Proceedings*

22

1    We used the names of our friends and family to

2    make it seem like real people were donating to my campaign

3    which I believed was required by the FEC.

4    I made these misrepresentations to artificially

5    inflate the amount my campaign raised to meet thresholds

6    set by the NRCC, so that the NRCC would spend money on my

7    campaign.  I believed that the false information was

8    material to the NRCC and to the FEC, and that they would

9    rely on it.

10    I understand that my actions have betrayed the

11    trust of my supporters, constituents.  I deeply regret my

12    conduct and harm it has caused.

13    And I accept full responsibility for my actions,

14    and I am committed to making amends and learning from this

15    experience.

16    THE COURT:  How do you plead, sir, to Count Two

17    Wire Fraud?

18    THE DEFENDANT:  Guilty.

19    THE COURT:  And how do you plead to Count Six

20    Aggravated Identity Theft?

21    THE DEFENDANT:  Guilty.

22    THE COURT:  The Government's proof at trial

23    would be?

24    MR. HARRIS:  Your Honor, if this case went to

25    trial, the evidence that the Government would marshal and

*Proceedings*

23

1    present to a jury would be extensive.  Over the course of

2    a trial, more than 40 witnesses would testify, including

3    victims who were defrauded, had their identities stolen,

4    their credit cards misused, or their funds embezzled.  It

5    would include members of the defendant's campaign staff,

6    his coworkers, political party officials, donors, other

7    intended targets of the defendant's various schemes,

8    members of his family and those of his co-conspirator, as

9    well as state and federal officials.

10            The Government would also present more than 500

11   exhibits, including text messages, photographs, location

12   records seized from the defendant's cell phone and from

13   his iCloud account pursuant to search warrants.  It would

14   include dozens of emails, audio recordings, video

15   recordings.  It would include a plethora of financial

16   records, records from banks, credit card companies,

17   payment processors, 1099s and other employment records.

18   It would include hotel records, flight records, telephone

19   records, historical cell site analysis demonstrating his

20   location at various dates and times.  It would include a

21   host of official public records, such as records from the

22   New York State Department of Labor, the Internal Revenue

23   Service, the Federal Election Commission, and the U.S.

24   House of Representatives.

25            These witnesses and these exhibits would

*Proceedings*

24

1   establish the defendant's guilt of all the crimes charged

2   in the indictment beyond a reasonable doubt.

3           With respect to Count Two and Count Six, this

4   evidence would specifically demonstrate that, during the

5   2020 and 2022 election cycles, the defendant campaigned as

6   a candidate for the United States House of

7   Representatives.

8           Between December 2021 and November 2022, he and

9   his campaign treasurer, Nancy Marks, devised and executed

10  a scheme to submit materially false reports to the FEC on

11  behalf of his campaign committee, in which they

12  fraudulently inflated the campaign committee's fundraising

13  numbers for the purpose of misleading not only the FEC,

14  but the National Republican Congressional Committee, or

15  the NRCC as well, and the public at large.

16          The purpose of the scheme was to qualify the

17  defendant for different phases of the Young Guns program,

18  a program administered by the NRCC, pursuant to which the

19  NRCC provided financial and logistical support for

20  congressional candidates who qualified as Young Guns.

21          Young Guns had three phases, each with its own

22  qualifying criteria.  To qualify for the second phase of

23  Young Guns, congressional candidates were required, among

24  other things, to demonstrate that their campaign committee

25  had raised at least $250,000 from third-party contributors

*Proceedings*

1    in a single quarter.

2            The evidence would establish beyond a reasonable

3    doubt that throughout 2021, the defendant and Nancy Marks

4    sought for his campaign committee to report fund-raising

5    totals sufficient to meet that $250,000 threshold

6    necessary to qualify for the second phase of Young Guns.

7    For the third quarter of 2021, his campaign committee

8    failed to qualify due to its failure to meet this

9    threshold.

10            Pursuant to their scheme to defraud, in December

11    2021, the defendant and Nancy Marks drafted a list of the

12    names of approximately ten family members of the defendant

13    and Nancy Marks, along with a list of fake, max-out

14    contribution amounts for each corresponding family member,

15    totaling more than $50,000 for Marks to enter into a

16    report to the FEC on behalf of the campaign committee so

17    that it would appear that they had met this $250,000

18    threshold and qualified for the second phase of Young

19    Guns.  However, that was not true.  None of these family

20    members had made, ever did make, or could afford these

21    contributions.

22            Thereafter, pursuant to this scheme, the

23    campaign committee submitted a report to the FEC which it

24    certified as true.  It falsely reported these more than

25    $50,000 in fake campaign contributions, causing the

*Proceedings*

26

1    committee to just barely surpass the $250,000 threshold

2    with reported total quarterly receipts of $251,000.  The

3    defendant and Nancy Marks knew these contributions were

4    fake, the evidence would show, but used them to qualify

5    for Young Guns.

6         The evidence would further show that between

7    March and April 2022, the defendant and Nancy Marks

8    continued their efforts to falsely inflate his campaign

9    committee's fundraising totals.  And pursuant to that

10   scheme, the defendant and Nancy Marks agreed to falsely

11   represent, in presentations and communications with the

12   NRCC, as well as quarterly submissions to the FEC, that

13   the defendant had loaned his campaign committee $500,000

14   when in fact he had not.

15        In March 2022, the evidence would show, the

16   defendant had his campaign committee deliver a

17   presentation to the NRCC which falsely represented that he

18   was loaning his campaign $500,000 in the first quarter of

19   2022, and the FEC filing was made on April 15th, 2022

20   reporting the same.  In subsequent press releases which

21   the defendant himself touted, he reported this fundraising

22   total inflated by, in a substantial way, by this fake

23   $500,000 loan.  In truth, the defendant had not loaned his

24   campaign these funds, did not have anywhere near the funds

25   necessary to cover such a loan.  And the evidence would

*Proceedings*

27

1   show that this illegal scheme was successful.  Based on

2   the misrepresentations made by the defendant and Nancy

3   Marks, the NRCC announced that the defendant had qualified

4   as a Young Gun in June 2022, and thereafter, the NRCC

5   provided financial and logistical support to the

6   defendant's campaign.

7           THE COURT:  Thank you.

8           The Court finds that the defendant has made a

9   knowing and voluntary waiver of his rights.  He has

10  allocuted to all the elements of the crime, and the Court

11  accepts his guilty plea.

12          We're going to put it over.

13          I also would like to just put on the record that

14  jury selection date is now withdrawn and any remaining

15  pretrial submission deadlines are cancelled.

16          So, we have to come up with a date for sentence,

17  and we're thinking February because there's going to be an

18  extensive examination regarding these offenses that the

19  Probation Department has to get started with.

20          COURTROOM DEPUTY:  Counsel, February 7th at

21  10:30.

22          MR. HARRIS:  Fine for the Government.  Thank

23  you, your Honor.

24          THE COURT:  All right.

25          And memorandum, I need at least two weeks.

*Proceedings*

28

```
1          Is that okay with you, February 7th, defense
2     counsel?
3          MR. MURRAY:  Yes, your Honor.
4          MR. MANCILLA:  Yes, your Honor.
5          COURTROOM DEPUTY:  Counsel, sentencing
6     memorandums will be due January 24th.
7          THE COURT:  Does that work for everyone?
8          MR. HARRIS:  It does.
9          MR. MURRAY:  Yes, your Honor.
10         THE COURT:  I'd also like to extend my thanks to
11    both the Government and defense counsel for their
12    presentation today.
13         The media also has been very polite.  The
14    courtroom has been a calm place in which to take this
15    plea, and it really makes a difference for the courts to
16    preside over such a proceeding.
17         If there's nothing else.
18         MR. HARRIS:  Your Honor, a few housekeeping.
19         MR. MANCILLA:  Just one other issue, your Honor.
20         I just want to make clear for the record we had
21    this conversation with the Government already, it's
22    regarding forfeiture and restitution.  We've advised the
23    Government that at this time, he does not have the money,
24    although he will be making his best efforts to be able to
25    pay that by the sentencing or the 30 days before the
```

*Proceedings*

29

1    sentencing.  We've already advised them, and we will, we

2    do anticipate to be making an application to apply the

3    forfeiture to the restitution.

4         I just wanted to advise the Court of that.

5         THE COURT:  Well, that's not in the agreement.

6    So if that's what your position is, the Government agrees

7    with that or not?  You tell me.

8         MR. HARRIS:  Your Honor, we'll consult with

9    defense counsel between now and sentencing.

10        THE COURT:  That's a big ask, you know, because

11   the forfeiture is not -- it's substantial, so.

12        MR. HARRIS:  Yes, your Honor, it is.

13        THE COURT:  And the penalties for not complying

14   with it are substantial too, so.

15        MR. HARRIS:  I believe the defendant understands

16   his obligations under the plea agreement.  If he wants to

17   consult with the Government between now and sentencing,

18   we're happy to speak to him, but his obligations under the

19   agreement are these obligations.

20        MR. MURRAY:  Judge, I just want to make clear,

21   though, the whole issue, and the Government's aware of his

22   financial situation.  He's going to use best efforts and

23   wants to avail himself of this plea, but he's not -- he's

24   not saying he's willfully going to default.  He's going to

25   do the best he can to make that, and I don't think the

*Proceedings*

1    Government's asking him to do more than that.

2           However, if they do try to sanction him for not

3    being able to make that, I would like to be able to raise

4    that as an issue because it's an impossibility if, for

5    some reason, he's totally unemployable and can't pay it.

6    We don't believe that to be the case, but I just want him

7    not to suffer sanctions when he's making best efforts to

8    meet that obligation.

9           MR. HARRIS:  Your Honor, I don't believe there's

10   anything in the plea agreement precluding him from making

11   the application that he has indicated he'd like to make.

12          So we'll confer.  I'm sure the parties will be

13   able to resolve this prior to sentencing.

14          THE COURT:  All right.  But I want everyone to

15   understand at the last possible minute at the time of

16   sentencing, this might be protracted if he hasn't made the

17   restitution.

18          MR. HARRIS:  Understood, your Honor.

19          THE COURT:  And forfeiture, we'll see how it

20   goes, but I see substantial problems if he can't comply.

21          MR. MURRAY:  The Government's been acting in

22   good faith, and we've had these conversations.  They're

23   well aware of his financial situation, and they know he's

24   going to put forth his best efforts.  I find it hard to

25   believe that they would seek additional sanctions knowing

*Proceedings*

1   that he's made those best efforts as we are communicating.

2   Unless they find otherwise.

3           THE COURT:  Anything that the Government would

4   like to add?

5           MR. HARRIS:  A few housekeeping matters, your

6   Honor.  I'm sure that your Honor advised the defendant of

7   these and I just missed them, and so if you'll indulge me.

8           In addition to retaining the ability to argue

9   those two guidelines enhancements does not apply.

10          THE COURT:  Right.

11          MR. HARRIS:  He is stipulating to the remainder

12  of the guidelines enhancements.

13          THE COURT:  Yes, he indicated in the plea

14  agreement that he is stipulating, and the plea agreement

15  contains specific portions that I did go into in terms of

16  what he's admitting to.

17          MR. HARRIS:  Yes, your Honor.  Thank you.

18          And I would just like to confirm on the record

19  the defendant understands that there are no promises

20  outside of the plea agreement and that he's affirmatively

21  waiving his trial rights.

22          THE COURT:  Affirmatively waiving?  It sure

23  seems that way.

24          Are you waiving your trial rights?

25          I did ask you know you're not going to trial.

*Proceedings*

32

```
 1    You can't call witnesses on your behalf with respect to

 2    the trial.  I went through the whole litany of things that

 3    you're giving up, and you've indicated that you understand

 4    them and you've gone over them with your attorneys.

 5              Is that correct.

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Do you have any questions now?

 8              THE DEFENDANT:  No, your Honor.

 9              MR. MURRAY:  Your Honor, I'm so sorry, I don't

10    want to blow up this agreement, but I am concerned now

11    because Mr. Ryan is saying that my client is aware of the

12    conditions of that plea agreement, negating the

13    conversations between the defense and the prosecution.

14              So I'm just asking is our representation of what

15    will happen if he makes best efforts to pay that before

16    sentencing, you're not going to seek additional sanctions?

17              THE COURT:  I don't think they're making that

18    promise.

19              But counsel for the Government, let me know.

20              MR. HARRIS:  Your Honor, could we have a minute

21    to confer?

22              THE COURT:  Sure.

23              MR. MURRAY:  Thank you, your Honor.

24              (Counsel confer.)

25              MR. HARRIS:  Your Honor, I'm ready to proceed.
```

*Proceedings*

1          THE COURT:  All right.

2          MR. HARRIS:  Under the terms of the agreement,

3    the defendant must pay any funds that he has available to

4    him.  If he does not have additional assets to pay, the

5    Government can seek substitute assets or the liquidation

6    of assets to satisfy that.  So, of course the Government

7    cannot collect anything that the defendant does not have,

8    but it can collect up to any assets he has, including the

9    liquidation of any real property or other kinds of assets

10   to satisfy the forfeiture amount.

11         THE COURT:  In other words, you concede that the

12   defendant is not saying he has available at this time

13   $205,002.97 to pay the money forfeiture which would have

14   to be paid 30 days before sentence.

15         MR. HARRIS:  Your Honor, I don't think that

16   we're representing full knowledge of his financial assets.

17              In paragraph 13, he states that he will disclose

18   all of his assets to the United States on a financial

19   statement as part of the agreement.  He will do that, we

20   will review it, and then we will rely on those

21   representations, with independent verification, to satisfy

22   the forfeiture amount.

23         THE COURT:  Is that your understanding, Mr.

24   Santos?

25              You want to confer with your lawyer, please do

*Proceedings*

34

1   so.

2           THE DEFENDANT:  Yes, ma'am.

3           (Defendant and defense counsel confer.)

4           MR. MURRAY:  Your Honor, if by chance this

5   becomes an issue with the sentencing date that we have set

6   five months from now and we need a little extra time to

7   satisfy them, would you entertain a brief adjournment in

8   order to do that?

9           THE COURT:  Obviously I'm reasonable on dates.

10          However, I think there should be some

11  understanding that Mr. Santos believes that he has the

12  ability to gather up over $200,000 in the next four

13  months, six months, whatever, that he's expected to do

14  that.

15          MR. MURRAY:  We do believe that he can right

16  now, but we don't know what the adverse effect of this

17  plea and these proceedings will have on his employability.

18  That's our only unknown, Judge.  And that's why we're

19  asking possibly we may not meet that deadline.

20          THE COURT:  Is the Government accepting that

21  representation?

22          I don't want to have a protracted forfeiture

23  proceeding.

24          MR. HARRIS:  Your Honor, if defense counsel

25  comes to us and asks for an adjournment for additional

*Proceedings*

35

1   time to gather the forfeiture, we will confer with them.

2           Without knowing the details, and this is

3   hypothetical in the future, I don't think it would be fair

4   for me to take a position right now.

5           THE COURT:  So that sounds like you just have to

6   hope.

7           But if Mr. Santos is willing to do that, I'll

8   accept the plea finally.  But I'm not making any

9   representations as to how that might affect sentence.

10          MR. MURRAY:  I understand, Judge.

11          And I do appreciate that you are our judge for

12  sentencing.  I've had prior experience with you.  It's not

13  about you, Judge.

14          What I'm saying is the Government and us, we

15  have been working so well together throughout this

16  process, and my understanding was that they appreciate the

17  situation.  Nobody can predict with any specificity as to

18  what the outcome will be, but he will use his best efforts

19  to meet that need, and hopefully we can work together on

20  it.  That's all I wanted them to acknowledge, that that

21  conversation took place and that we're willing to both do

22  that.

23          THE COURT:  Anything further that you'd like to

24  add?

25          MR. HARRIS:  No, your Honor.

*Proceedings*

36

1        THE COURT:  All right.

2        I have reviewed all the discovery material,

3    including the proffer agreement which is under seal, and I

4    intend for it to be under seal.  But I want to make sure

5    there's no misunderstanding so we don't spend a lot of

6    time on motions related to forfeiture.

7        So if there's anything that you disagree with

8    now with regard to what defense counsel has said, let me

9    know.

10       MR. HARRIS:  Your Honor, the Government's

11   position is that the agreement is the agreement.  I've

12   heard defense counsel say they're going to make best

13   efforts.  They'll contact us if they find they have an

14   inability to pay.  We will hear them at that time.  The

15   agreement, however, is the agreement.

16       THE COURT:  All right.

17       So we have a sentence date.  Get your

18   submissions in.

19       If there's nothing else, please take your client

20   down to Probation and have him get ready and set up an

21   interview with regard to the presentence investigation

22   report.

23       COURTROOM DEPUTY:  They'll contact him, Judge.

24       THE COURT:  They'll contact you, I'm told.

25       MR. HARRIS:  Thank you, your Honor.

*Proceedings*

37

1          MR. MURRAY:  Thank you, your Honor.

2          THE COURT:  Have a good day, everyone.

3          That completes the proceeding.

4          (Time noted:  4:02 p.m.)