UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

    -against-

GEORGE ANTHONY DEVOLDER SANTOS,

          *Defendant,*

Case No. 27-CR-197 (JS)

---

## DEFENDANT'S SENTENCING MEMORANDUM

---

**Mancilla & Fantone, LLP**
260 Madison Avenue, 22nd Fl
New York, New York 10016

**Joseph W. Murray, Esq.**
3505 Veterans Memorial Highway, Suite Q
Ronkonkoma, NY 11779

# INTRODUCTION

Pursuant to 18 U.S.C. § 3553(a), George Anthony Devolder Santos respectfully submits this memorandum in support of his request for a sentence of 24 months incarceration as to Count Six and a term of probation as to Count Two. Mr. Santos has pleaded guilty to Count Two (Wire Fraud) and Count Six (Aggravated Identity Theft) of the Second Superseding Indictment (S-2), stemming from the Party Program Scheme. (Plea Agreement ("Plea Agr.") ¶ 1). He has accepted full responsibility for his actions, as evidenced by his guilty plea entered on August 19, 2024, and his stipulation to the relevant conduct underlying Counts Nine (Access Device Fraud), Fourteen (Wire Fraud), Nineteen (Theft of Public Money), and Twenty-Three (False Statements). (Plea Agr. ¶ 2). Mr. Santos understands the gravity of his conduct, expresses genuine remorse, and has agreed to pay restitution totaling $373,749.97. (Plea Agr. ¶ 7).

While the Presentence Investigation Report ("PSR") calculates an advisory Guidelines range of 75 to 87 months' imprisonment (PSR ¶¶ 115, 107), this calculation includes a contested two-level enhancement for being an organizer or leader under U.S.S.G. § 3B1.1(c). (PSR ¶ 104). As detailed below, this enhancement is factually and legally unsupported. Mr. Santos withdraws his previously reserved objection to the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1). (PSR ¶ 102). Removing the leader/organizer enhancement, results in an advisory range of 51 to 65 months.

Regardless of the final Guidelines calculation, the factors outlined in 18 U.S.C. § 3553(a)—including Mr. Santos's personal history, his cooperation in a separate federal investigation, the non-violent nature of his offenses, his lack of any criminal history, the need to avoid unwarranted sentencing disparities—support a variance. We respectfully request that the Court impose a total sentence of 24 months' imprisonment, comprising probation on Count Two

and the mandatory consecutive 24-month term on Count Six. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

I.     **OFFENSE CONDUCT**

Mr. Santos acknowledges the seriousness of his offenses. He pleaded guilty to wire fraud related to the Party Program Scheme, involving the fraudulent inflation of campaign fundraising numbers submitted to the Federal Election Commission ("FEC") to qualify for National Republican Congressional Committee ("NRCC") support. (PSR ¶¶ 11-12, 20). He also pleaded guilty to aggravated identity theft in connection with this scheme, based on the unauthorized use of contributor names. (PSR ¶¶ 16-17, 21). Furthermore, Mr. Santos stipulated to engaging in conduct constituting access device (credit card) fraud, wire fraud related to Redstone Strategies LLC, theft of public money (unemployment benefits fraud), and making false statements on House financial disclosure forms. (Plea Agr. ¶ 2; PSR ¶¶ 36-50, 74-84).

While these offenses are serious, several contextual factors are relevant. Mr. Santos's crimes were non-violent and did not involve narcotics or physical harm. The financial harm, while significant, is quantifiable and addressed through the agreed-upon restitution of $373,749.97. (Plea Agr. ¶ 7; PSR ¶ 93). Mr. Santos has accepted responsibility, obviating the need for a trial. His conduct, though involving dishonesty and abuse of trust, stemmed largely from a misguided desperation related to his political campaign, rather than inherent malice. Ironically, evidence shows that Mr. Santos' desperate efforts to meet these fundraising thresholds may have been unnecessary, as such benchmarks were not actually required to secure the party program's financial backing.

## II. GUIDELINES CALCULATION

### A. Probation Department's Calculation

The PSR calculates a total offense level of 24 and a Criminal History Category of I. (PSR ¶¶ 115, 118). For the grouped counts (Count 2 and Stipulated Conduct in Counts 9, 14, 19, 23), the PSR starts with a base offense level of 7 (U.S.S.G. § 2B1.1(a)(1)). (PSR ¶ 99). It adds:

+12 levels for loss amount ($373,749.97) (§ 2B1.1(b)(1)(G)); (PSR ¶ 100).

+2 levels for misrepresentation on behalf of a political organization (§ 2B1.1(b)(9)(A)); (PSR ¶ 101).

+2 levels for vulnerable victims (§ 3A1.1(b)(1)); (PSR ¶ 102).

+2 levels for abuse of position of trust (§ 3B1.3); (PSR ¶ 103).

+2 levels for organizer or leader role (§ 3B1.1(c)). (PSR ¶ 104).

This results in an adjusted offense level of 27. (PSR ¶ 106). After a 3-level reduction for acceptance of responsibility (§ 3E1.1), the total offense level for the group is 24. (PSR ¶ 115). This yields an advisory Guidelines range of 51 to 63 months for Count 2. (PSR at 1). Count 6 carries a mandatory consecutive sentence of 24 months. 18 U.S.C. § 1028A(a)(1); U.S.S.G. § 2B1.6. Thus, the PSR calculates a total effective Guidelines range of 75 to 87 months (51-63 months plus 24 months). (PSR at 3).

### B. Defense Objections and Proposed Calculation

Mr. Santos maintains his objection, reserved in the Plea Agreement (Plea Agr. ¶ 3), to the two-level enhancement under U.S.S.G. § 3B1.1(c) for being an organizer or leader. (PSR ¶ 104). He withdraws his previously reserved objection to the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1). (PSR ¶ 102).

The organizer/leader enhancement requires the defendant to have organized, led, managed, or supervised at least one other criminally responsible participant. U.S.S.G. § 3B1.1

4

cmt. n.2; *United States v. Ojeikere*, 545 F.3d 220, 222 (2d Cir. 2008). The PSR asserts Mr. Santos qualifies by "devising the fraudulent schemes and directing Marks on her role." (PSR ¶ 90). This finding is unsupported by the record and contrary to law.

First, the evidence suggests Nancy Marks, the campaign treasurer with extensive experience, played an equal, if not greater, role. (PSR ¶¶ 12, 16, 24). The PSR itself notes Marks submitted the false reports (PSR ¶¶ 20, 30) and certified their accuracy. While Mr. Santos provided names of family members for false reporting (PSR ¶¶ 16-17), Marks did the same with her own family members (PSR ¶ 16). This indicates shared planning and execution, not direction by Mr. Santos. In addition, please see the remarks made by Ms. Marks contained in the Government's disclosure. (ECF No. 73.3 [Exhibit C. Gov Disclosure Letter dated 3.14.24]). Taken together, Ms. Mark's behavior indicates that she played a larger role in the campaign fraud than Mr. Santos. At the very least, her and Santos were equally responsible for the crime.

An enhancement under § 3B1.1 is inappropriate where participants "bear equal responsibility for 'organizing' their own commission of a crime." *United States v. Greenfield*, 44 F.3d 1141, 1146 (2d Cir. 1995) (*quoting United States v. Katora*, 981 F.2d 1398, 1402-03 (3d Cir. 1992)). There can be multiple leaders, U.S.S.G. § 3B1.1 cmt. n.4, but the evidence does not show Mr. Santos exercised the requisite "decision making authority" or "control and authority" over Marks. *See id.; United States v. Raj Rajaratnam*, No. 09 Cr. 1184 (RJH), 2012 U.S. Dist. LEXIS 14961, at *47-48 (S.D.N.Y. Jan. 31, 2012). Marks had run several political campaigns, and as an experienced treasurer, she had the wherewithal concerning how such a crime could even be committed.

Removing the unsupported two-level leader/organizer enhancement reduces the adjusted offense level from 27 to 25. Applying the three-level reduction for acceptance of responsibility

5

yields a total offense level of 22.

A total offense level of 22 with Criminal History Category I yields an advisory Guidelines range of 41 to 51 months for Count 2. Combined with the mandatory 24-month consecutive sentence for Count 6, the defense calculation results in a total effective Guidelines range of 65 to 75 months.

Regardless of the final calculation, the Guidelines are advisory. *United States v. Booker*, 543 U.S. 220 (2005). The Court must impose a sentence "sufficient, but not greater than necessary," considering all § 3553(a) factors. 18 U.S.C. § 3553(a).

### III. THE 18 U.S.C. § 3553(a) FACTORS

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The nature and circumstances of the offense, while serious, must be considered alongside Mr. Santos's personal history and characteristics. He is a 36-year-old individual (PSR Identifying Data; PSR ¶ 124) with no prior criminal history (PSR ¶ 118). Mr. Santos's personal history contains several mitigating factors that warrant consideration.

Mr. Santos was raised in a household with various challenges. His father had "high drinking proclivities" and his mother gambled frequently (PSR ¶ 127). While his basic necessities were met (PSR ¶ 127), he described his childhood as "convoluted," noting that he "was not raised in a peaceful, stable environment" due to difficult relationships between the adults around him (PSR ¶ 127). His parents began experiencing marital problems around 1998 due to his father's infidelity and divorced in 2000 (PSR ¶ 128).

Mr. Santos's education was disrupted when he moved to Brazil with his mother and sister after 4th grade, where he "experienced difficulty in adjusting to the change because he could not speak the language well and had a hard time making friends" (PSR ¶ 128). After returning to

New York, he attended William Cullen Bryant High School for only one month in 2004 before leaving because he was being bullied by older students (PSR ¶ 138). He eventually obtained his High School Equivalency diploma on March 4, 2006 (PSR ¶ 138).

Mr. Santos provides significant financial and emotional support to his sister Tiffany and her 6-year-old daughter, who has severe autism, attention-deficit/hyperactivity disorder (ADHD), and a sensory processing disorder (PSR ¶ 125). His sister "relies heavily on the defendant to help care for the child while she is in school because the child requires around the clock supervision" (PSR ¶ 125). His incarceration will impose severe hardship on his sister and this vulnerable child, for whom he serves as a crucial support figure (PSR ¶¶ 125, 126). Mr. Santos suffers from chronic back pain following a 2016 car accident, which resulted in a slipped disc and herniated disc, causing flare-ups that leave him debilitated and require medication (PSR ¶ 133). He also has respiratory issues, including a history of bronchitis, requiring an inhaler as needed (PSR ¶ 134).

Mr. Santos has experienced significant mental health challenges, including a history of "depression coupled with suicidal thoughts as well as anxiety attacks resulting from instances of high stress" (PSR ¶ 135). He recalled being placed on a voluntary psychiatric hold at Elmhurst Hospital's Department of Psychiatry in 2013 or 2014, following which he was released after a 72-hour hold (PSR ¶ 135). His mental health struggles coincided temporally with significant life stressors, including his mother's diagnosis of Stage III cervical cancer in October 2015 and her subsequent death in December 2016 (PSR ¶ 124), and related stress impacting his first marriage (PSR ¶ 130).

### Mitigating Circumstances Related to Count Two

Count Two of the S-2 Indictment charges Wire Fraud. In connection with the fraud, the NRCC paid Mr. Santos' campaign a total of $178,402.97, which constitutes a significant portion of the total loss amount stemming from Mr. Santos' offenses ($373,749.97). While the following discussion in no way excuses Mr. Santos' conduct, it is important to consider the context surrounding the NRCC's funding of Mr. Santos' 2022 campaign to be elected representative of New York's 3rd District.

The circumstances surrounding this loss amount are mitigating in that the NRCC would have likely provided Mr. Santos such funds even if he did not fraudulently inflate the fundraising totals on his 2021 year-end report to the FEC.[1] As explained in the S-2 Indictment, Count Two is premised upon Mr. Santos' inclusion of eleven individuals in his year-end 2021 FEC report, despite knowing that they did not in fact donate to his campaign as stated in the report. The individuals were all friends and family of himself and his campaign treasurer Nancy Marks. This was done to inflate the amount his campaign had raised in the fourth quarter of 2021. Specifically, the fraudulent 2021 year-end report stated that these eleven individuals had donated approximately $55,000, which artificially inflated Mr. Santos' total amount raised in the fourth quarter of 2021 from approximately $196,000 to approximately $251,000.

The following facts indicate that the NRCC would have paid such amounts despite the fraud: The 2022 election for New York's 3rd District was hotly contested by democrats and republicans. Just two years prior, Mr. Santos lost the 2020 election for the same District by only

---

[1] As stated in his plea agreement and subsequent plea before the Court, Mr. Santos accepts full responsibility for including the eleven donors on his FEC report knowing that such donors did not actually donate to his campaign. Further, he concedes that, under the law, the fact that the NRCC would have provided him the funding anyway is not a legal defense to the charge because his misrepresentations were material to, although not dispositive of, the NRCC's decision to provide funding to Mr. Santos' campaign.

12 percentage points, and only after mail-in ballots had been counted. With the democratic incumbent choosing not to run in the 2022 election, Mr. Santos was a clear front-runner in the race for the District, which had seen a democratic representative for the prior 10 years. As such, the NRCC was eager to support Mr. Santos in the race for New York's 3rd District, and would have likely provided the same funding it did even if Mr. Santos did not falsely represent that his campaign had raised an additional $55,000. This conclusion is further supported by the Government's disclosure on March 14, 2024 (ECF No. 73.3 [Exhibit C. Gov Disclosure Letter dated 3.14.24]).

These mitigating factors render the guideline range for Count Two overstated, because, as noted above, the range is driven up in large part based on the NRCC loss amount. Mr. Santos therefore respectfully requests the Court to consider these mitigating factors in determining an appropriate, below-guideline sentence with respect to Count Two.

**B.**     **Post-Offense Conduct: Cooperation in Related Federal Investigation**

Mr. Santos's character and respect for the judicial process are further demonstrated by his cooperation in a separate federal investigation. Between June and August 2023, Mr. Santos was targeted by Hector Medina, Jr., who attempted to solicit a bribe of $900,000 from Mr. Santos by falsely claiming he could make Mr. Santos's federal charges disappear through corrupt means involving prosecutors and judges. *See* Compl. ¶¶ 5-8, *United States v. Medina*, No. 24-MJ-00178 (E.D.N.Y. Feb. 28, 2024)).

Recognizing the threat to the justice system, Mr. Santos, through counsel, immediately reported Medina's scheme to the U.S. Attorney's Office for the Eastern District of New York— the office prosecuting him. (Compl. ¶¶ 4-5). He then cooperated fully, providing a nearly three-hour proffer detailing Medina's communications. (See Compl. ¶ 20). Mr. Santos also offered to

assist proactively by performing controlled calls with Medina, but the government declined solely because such assistance could warrant a 5k1.1 letter in aid of Mr. Santos' sentence in the instant matter.

This cooperation proved valuable information that led to Medina's arrest and charges for wire fraud. (Compl. ¶¶ 2, 21). The investigation revealed Medina targeted other high-profile individuals with similar schemes. (Compl. ¶¶ 15-19). Mr. Santos's proactive assistance in bringing another offender to justice underscores a fundamental respect for the law and warrants significant mitigating weight under § 3553(a)(1).

## C.     The Need for the Sentence Imposed

The sentence we propose would satisfy all of the statutory purposes of sentencing. A sentence of 24 months' imprisonment, combining a below-Guidelines term on Count 2 with the mandatory consecutive term on Count 6, would reflect the seriousness of the offense and provide just punishment. This sentence, coupled with the significant collateral consequences Mr. Santos has already suffered—including the loss of his congressional seat (PSR ¶ 141) and public humiliation —would send a clear message that such conduct will not be tolerated.

A 24-month sentence would provide adequate deterrence to Mr. Santos and others. The prospect of any period of incarceration, particularly for someone with no prior criminal history (PSR ¶ 118), is a powerful deterrent. Moreover, the public nature of this case and Mr. Santos's fall from a position of public trust serve as a stark warning to others who might contemplate similar offenses.

Mr. Santos poses minimal risk of recidivism. His offense was contextually specific, arising from his campaign for public office. Given his public disgrace and removal from Congress (PSR ¶ 141), he is unlikely to commit similar offenses in the future in the unlikely

event he finds himself in the position to do so. His lack of any prior criminal record further supports a lower risk assessment (PSR ¶ 118).

A shorter period of incarceration, followed by supervised release with appropriate conditions, would better serve the goal of rehabilitation than a lengthy prison term. Mr. Santos has expressed interest in alcohol treatment to address his regular consumption pattern, recognizing that "a treatment program may be beneficial to help him adjust to not having alcohol while in custody" (PSR ¶ 137).

**D.      Avoiding Unwarranted Sentencing Disparities**

Under 18 U.S.C. § 3553(a)(6), this Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As established in *Booker*, the Guidelines are advisory, allowing the Court to tailor sentences based on the § 3553(a) factors, including disparity avoidance. Imposing a sentence within the advisory range of 51-63 months on Count 2 (leading to a total sentence of 75-87 months) would create an unwarranted disparity compared to sentences imposed on similarly situated defendants convicted of comparable white-collar and political fraud offenses.

In the case of *United States v. Denenberg*, (14-cr-00594-JS (E.D.N.Y.)), the defendant pled guilty to mail fraud after billing a client for more than $2.3 million in fraudulent legal services over an eight-year period, the Court imposed a significantly reduced sentence of three months' incarceration followed by three month's home confinement and a three-year term of supervised release. This was despite the fact that the probation recommended a 41 month term of incarceration.

While Mr. Denenberg's lengthy term of stellar public service and outpouring of public support certainly distinguish him from Mr. Santos, Mr. Santos' loss amount is almost six times

11

smaller than Mr. Denenberg's. Yet Mr. Santos' recommended sentence is more than twenty times larger than what Mr. Denenberg received for his fraud. Additionally, like Mr. Denenberg, others rely on Mr. Santos for financial support, and the work he accomplished while in office should not be overshadowed by his fraud.

Additionally, in the case of *United States v. Mackenzie*, (19-cr-0307-LO (E.D.Va)) the defendant served as treasurer for multiple political action committees (PACs). Mackenzie was accused of an ongoing scheme of filing false reports with the FEC to facilitate a fraud wherein millions of dollars in donations were spent for the benefit of those involved and not in aid of any campaigns. The court determined that these facts justified a sentence of just 12 months incarceration, commensurate with several of the other defendants that participated in the PAC fraud.

Mackenzie's co-defendant Kelley Rogers, who organized and benefited most from the multi-million dollar scheme, received only 36 months' incarceration. *United States v. Kelley Rogers*, 19-cr-00270-RDA (E.D.Va.). Similarly, the defendant in *United States v. William Tiereny*, (18-cr-00804-JMF (S.D.N.Y)), received only 24 months after orchestrating a scheme that defrauded donors of over 14 million dollars. Again, these sentences are far below what the guidelines call for here, despite the astronomical loss amounts that dwarf Mr. Santos'.

In *United States v. Durand*, (14-cr-00247-SJ (E.D.N.Y.)), the defendant was convicted of falsifying records of a political committee's spending to the FEC. Despite the serious nature of this campaign finance fraud, the court sentenced Durand to 3 months' incarceration followed by 1 year of supervised release. Likewise, in *United States v. Benton*, (15-cr-00103-HCA (S.D. Iowa)) involving fraud by a campaign chairman for a presidential campaign in the amount of $73,000, the court found that the applicable guidelines range was 27 months, based on a total

12

offense level of 16 and criminal history category I. However, the court imposed a sentence of 2 years' probation with six months of home confinement, 80 hours of community service per year, and a $10,000 fine, despite his conviction after trial on four counts related to concealing payments to a state senator for an endorsement.

With respect to deterrence, the court recognized that the significant public nature of the case itself served as a deterrent, stating: "I've considered the need for adequate deterrence to criminal conduct, and I said it more times than I can count, there's nothing like prison time to deter white collar activity. That said, nobody watching this litigation would want a part of the next prosecution for a similar offense."

The cases above demonstrate that courts routinely impose sentences well below the guidelines range in campaign finance and fraud cases for first-time offenders who have accepted responsibility. Mr. Santos's case presents several parallels to these cases: Mr. Santos has no prior criminal history; Mr. Santos has suffered severe collateral consequences, including the loss of his elected position and significant damage to his reputation; Mr. Santos's offenses involve violations related to election finance, an area where courts recognize the need to balance the serious nature of the offense with the individual characteristics of the defendant.

Further, numerous other federal courts have imposed sentences significantly below the advisory Guideline range in similar cases, particularly for first-time offenders who accepted responsibility and presented mitigating circumstances:

**Politicians and Public Figures:**
- **Jesse L. Jackson Jr.** (Former U.S. Rep.): Misused ~$750k campaign funds. Guidelines: 46-57 months. Sentence: **30 months**. *United States v. Jesse L. Jackson Jr.*, 13-cr-00058-ABJ (D.C.).

- **Michael G. Grimm** (Former U.S. Rep.): Tax fraud (related to ~$900k unreported income). Guidelines: 24-30 months. Sentence: **8 months**. *United States v. Michael G. Grimm.*, 14-cr-000248-PKC (E.D.N.Y.).

- **Christopher Collins** (Former U.S. Rep.): Insider trading/false statements (loss in hundreds of thousands). Guidelines: 46-57 months. Sentence: **26 months**. *United States v. Christopher Collins.*, 18-cr-00567-VSB (S.D.N.Y.).

- **Duncan D. Hunter** (Former U.S. Rep.): Stole ~$250k campaign funds. Guidelines: 8-14 months. Sentence: **11 months**. *United States v. Duncan D. Hunter*, 18-cr-03677-TJW (S.D. Ca).

- **Joseph Harding** (Former FL State Rep.): COVID relief fraud ($150k). Suggested Guidelines: 8-14 months. Sentence: **4 months**. *United States v. Joseph Harding*, 22-cr-00032-AW (N.D. Fla).

- **Jerry Lundergan** (Former KY Dem. Chair): Illegal campaign contributions (>$200k). Guidelines: 51-63 months. Sentence: **21 months** (mitigation: health). *United States v. Gerald G. Lundergan*, 18-cr-00106-GFVT (E.D. Ky).

- **Dean A. Tran** (Former MA State Sen.): Wire fraud/tax fraud (~$85k loss). Multiple counts with high statutory maximums. Sentence: **18 months**. *United States v. Dean A. Tran*, 23-cr-10299-FDS (D. Mass).

These cases demonstrate a consistent pattern: courts frequently exercise their discretion under *Booker* and § 3553(a) to impose below-Guideline sentences in white-collar cases involving public trust, campaign finance issues, wire fraud, and similar loss amounts.. Factors justifying these variances often include acceptance of responsibility, first-time offender status, health, family circumstances, and proportionality – factors present in Mr. Santos's case.

A sentence of 24 months' followed by a term of probation would serve several purposes. It would reflect the seriousness of Mr. Santos's offenses while acknowledging his acceptance of responsibility and the significant collateral consequences he has already suffered. This sentence would also avoid creating an unwarranted disparity with similarly situated defendants while still reflecting the unique aspects of Mr. Santos's case. It would balance the need to promote respect for the law with an acknowledgment that Mr. Santos, as a first-time offender, presents a low risk of recidivism.

## VI. CONCLUSION

For the foregoing reasons, including Mr. Santos's acceptance of responsibility, his personal history and characteristics, his significant cooperation in assisting the government's prosecution of Hector Medina, the significant collateral consequences he has endured, the need to avoid unwarranted sentencing disparities, and all the factors set forth in 18 U.S.C. § 3553(a), we respectfully request that the Court impose a total sentence of 24 months' imprisonment, consisting of probation on Count Two consecutive to the mandatory 24-month term on Count Six. This sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Dated: April 4, 2025
New York, New York

Respectfully Submitted,

**Mancilla & Fantone, LLP**

/s/ *Robert M. Fantone*
Robert Fantone, Esq.
Andrew Mancilla, Esq.
260 Madison Avenue, 22nd Fl
New York, New York 10016
robert@law-mf.com

**Joseph W. Murray, Esq.**

  /s/  *Joseph Murray*
3505 Veterans Memorial Highway, Suite Q
Ronkonkoma, NY 11779
joe@murray-law.com


cc: All Parties via ECF