Docusign Envelope ID: 9BDD3908-8F9B-4EF0-A7A4-D0D8A4DD3BE6

April 19, 2025

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722

Dear Judge Seybert,

I ask the Court's indulgence for a lengthy letter. Much has been said *about* me—by prosecutors, pundits, and partisans. Very little has been heard *from* me in a sustained, reflective voice. I have long ago accepted full responsibility for my actions and have taken meaningful steps toward reflection and understanding how I arrived at this point. Despite this, the government appears determined to shape my narrative through assumptions and misinterpretations of my online activity. I am writing this to personally express two ideas that can and do coexist: 1- I am profoundly sorry for the criminal conduct to which I pled guilty; 2- I believe, just as fervently, that the Department of Justice's demand for an 87-month sentence, and its effort to weaponize my speech as proof of incorrigibility, is an overreach that I have both a constitutional right and a civic duty to protest.

Last August, standing before Your Honor, I admitted under oath that I had submitted a fraudulent year-end FEC report and misused donor information. I explained that "I understand that my actions have betrayed the trust of my supporters and constituents. I deeply regret my conduct and the harm it has caused. I accept full responsibility and am committed to making amends."

Those words were not a scripted contrition; they were the culmination of months of bruising self-examination. This case has cost me my congressional seat, my reputation, my livelihood, and, most painful of all, the confidence of people who believed in me. Every sunrise since that plea has carried the same realization: <u>I did this, me. I am responsible.</u>

But saying I'm sorry doesn't require me to sit quietly while these prosecutors try to drop an anvil on my head. True remorse isn't mute; it is aware of itself, and it speaks up when the penalty scale jumps into the absurd. This distinction seems lost on the prosecution, who would rather slap a "keep quiet or else" sticker on me and steam-press whatever spirit I've got left.

In 1940 Attorney General Robert H. Jackson warned that a federal prosecutor "has more control over life, liberty, and reputation than any other person in America" and must therefore wield that control dispassionately, reasonably, and justly. When this prosecution plucks a seven-word tweet—*"They will never break my spirit"*—and tries to turn it into evidence that I am "unrepentant," it screams prosecutorial overreach. A prosecutor's mandate is to do justice, not to crush resolve. By fixating on my resilience rather than my conduct, the Government weighs the wrong scale. Contesting the severity of a proposed sentence is not the same as contesting guilt,

Docusign Envelope ID: 9BDD3908-8F9B-4EF0-A7A4-D0D8A4DD3BE6

and punishing protected speech because it questions punishment should trouble anyone who values fair prosecution over personal vindication.

The same is true of my “scapegoat” tweet. I wrote those nine letters because the Government insists that I am the “organizer/leader” warranting a two-level guideline enhancement, while my former treasurer, Nancy Marks, is treated almost as a bystander, or may I dare say a “victim” of mine. They do this even though they know she was committing fraud in my campaign without me knowing. I texted Ms. Marks—twice—the names of my own relatives to insert into the FEC filing. If I were the criminal mastermind they portray, I would be the clumsiest in modern memory: leaving a trail of screenshots pointing directly back to myself. Common sense, *and the fact that Marks herself put her own family members’ names on the FEC filings before she herself signed them*, would and should dispel any notion that a leadership enhancement is appropriate. Did I force her to put her own family members’ names on the FEC filing and sign it? Is it the government’s position that I also forced her to put all those fake expenditures on the filings as well that she admitted she did behind my back? Please, I admit what I did, but the government is just lying at this point. My tweet was a protest against being cast as the sole architect of misconduct that was, at minimum, jointly executed. Calling out selective blame-shifting is not a renunciation of my guilt, its a demand for fair and proportional accountability. My speech does not undermine my remorse; it illuminates the government’s irresponsible abuse of their awesome powers that Jackson warned against.

The Government seeks 87 months—63 months on Count Two plus 24 mandatory months for aggravated identity theft. Yet in the last fifteen years these federal courts have sentenced:

- Jesse L. Jackson Jr. – misused $750 k in campaign funds → **30 months**;
- Michael Grimm – concealed $900 k in wages & taxes → **8 months**;
- Kelley Rogers – multi-million-dollar PAC fraud → **36 months**;
- William Tierney – more than $1 million charity fraud → **24 months**.

All involved greater dollar loss, many involved sophisticated concealment, and none faced leadership enhancements for texting their own relatives’ names to their campaign treasurer. My posts may be colorful but they don’t justify a sentence triple the norm, and the government should be ashamed of itself for even seeking such a high sentence.

Ironically, the same political ambition that underpinned my own wrongdoing now seems to fuel the government’s overreach in this case. You’d think they might have learned something from the very person they chose to prosecute so vehemently!

If the Government can pervert an otherwise Constitutionally protected tweet into a ten-year bid, without any correction from the Courts, then tomorrow’s defendants are stuck with a sleazy ultimatum: zip your lips and pocket the guideline points, or open your mouth and watch the sentencing hammer come down with extra force. I’m not buying that gag order. The red, white, and blue runs through my veins long before the ink of any plea agreement. I grew up believing—still believe—that America is at its best when a loud outsider can spar with the powerful and still get a fair shake. So when I fire back, it isn’t vanity or defiance for sport; it’s my way of saluting the messy, glorious free-speech tradition that makes this country worth every bruise.

Docusign Envelope ID: 9BDD3908-8F9B-4EF0-A7A4-D0D8A4DD3BE6

There is a very real human cost to a 87-month term of imprisonment, not just to me, but to those who rely and depend on me, and that's in addition to the destruction that has already affected me and my family. I have been expelled from Congress—the career I had worked years to build—and my public standing collapsed almost overnight. The likelihood of returning to public service—or even securing ordinary employment—has dwindled to near zero. Legal fees have consumed the resources I managed to earn these past two years, and friendships that anchored my life have disappeared under the glare of national attention. I do not list these outcomes for sympathy—they are the predictable fallout of my own wrongdoing—but to give the Court an accurate picture of the penalties already in place before a single day of incarceration is added. I have made sincere efforts to rebuild my life and earn an honest living. I have liquidated personal assets, reduced my living expenses, and tried as hard as I could to raise some money for restitution. The Government's memorandum treats these efforts as footnotes; I view them as the core of making amends.

I have also continued psychological counseling—weekly sessions dissecting the insecurities and narcissistic blind spots that paved the road to my misconduct. Those sessions began months *before* the Government filed its high-end recommendation. They are not optics; they are excavation of the character flaws that brought me here.

I'm sure the Court noticed that I did not include a single character letter in support in my sentencing memorandum. Nor will I have a single person at my sentencing, aside from the media, eager to watch me get shipped off to prison. The reason is because I'm too embarrassed, too ashamed, and I don't want any of the few who know me and love me to be tortured for doing so. I don't want to bring anyone else in my life into this mess. This is mine to deal with and mine alone.

So, I am guilty, I am remorseful, but I'm still outraged that my constitutionally protected speech—speech objecting to the government's ridiculous sentencing demand and selective attribution of leadership—has been repurposed as a sword against me. My guilty plea didn't require me to check my First-Amendment rights at the courthouse door; that freedom is the keel that keeps our republic steady when political seas get rough.

Your Honor, I do not ask the Court to ignore my crimes. I ask the Court see through what the government is doing, and to rise above it.

Thank you for reading this letter. I planned on saying at least some of this at sentencing, and may still do so, but the government's filing in defiance of Your Honor's scheduling Order cannot go uncorrected. Whatever sentence the Court imposes, I will pay my restitution and continue personal reform. But I will also continue to speak, because silence in the face of perceived injustice is not repentance; it is complicity.

Respectfully,

DocuSigned by:

9EE56A1C58514A1...

George Santos